1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARBOGAST & BERNS LLP
Jeffrey K. Berns (SBN 131351)
David M. Arbogast (SBN 167571)
6303 Owensmouth Avenue, 10th Floor
Woodland Hills, CA 91367-2263
Tel: 818.961.2000 -- Fax 818.936.0232
Email: jberns@law111.com;
darbogast@law111.com

Attorneys for Plaintiffs and all others
Similarly Situated

*[Additional Counsel listed on signature
page]*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | Case No. M:09-CV-2015-JF |
| | **PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| _____ | |
| This Document Relates to: All Actions | Date: December 16, 2010 Time: 1:30 p.m. Courtroom: 3, 5th Floor Judge: Hon. Jeremy Fogel |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................iii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 3

I.      INTRODUCTION ...................................................................................... 3

II.     SUMMARY OF THE CASE ..................................................................... 3

III.    SUMMARY OF THE PROPOSED SETTLEMENT ................................. 7

   A.    Settlement Negotiations ................................................................... 7

   B.    The Settlement Class......................................................................... 7

   C.    The Terms of the Proposed Settlement Agreement ......................... 9

      1.    Settlement Payments ................................................................ 9

      2.    Loan Modification Program.................................................... 10

      3.    Short-Sale/Deed-In-Lieu of Foreclosure Incentives Program .................... 11

      4.    Plaintiffs' Litigation Costs and Fees ..................................... 12

      5.    Service Payments ................................................................... 12

      6.    Release By Settlement Class Members .................................. 12

      7.    Notice ..................................................................................... 12

      8.    Fairness Hearing .................................................................... 13

   D.    The Proposed Implementation Schedule ....................................... 13

IV.    PROVISIONAL CERTIFICATION OF THE
       SETTLEMENT CLASS IS WARRANTED .............................................. 14

   A.    Numerosity...................................................................................... 15

   B.    Commonality................................................................................... 15

   C.    Typicality ........................................................................................ 16

   D.    Adequacy ........................................................................................ 17

   E.    Rule 23(b) ....................................................................................... 18

   F.    Nationwide Certification................................................................. 18

i

V.    PRELIMINARY APPROVAL OF THE TERMS OF THE
      PROPOSED SETTLEMENT IS WARRANTED ..........................................19

   A.    The Settlement Terms are Fair, Reasonable, and
         Adequate, Within the Range of Reasonableness ......................................22

      1.  Strength of Plaintiffs' Case .........................................................23

      2.  Risk, expense, complexity, and likely duration of further litigation ..........23

      3.  The amount offered in settlement ................................................23

      4.  The experience and views of counsel .......................................24

   B.    The Court Should Order Dissemination Of The Proposed Class Notice ...24

   C.    The $125,000 Service Payment to Plaintiffs is Reasonable ......................26

VI.   APPOINTMENT OF PLAINTIFFS AS CLASS REPRESENTATIVES
      AND THEIR ATTORNEYS AS CLASS COUNSEL
      IS WARRANTED..........................................................................26

VII.  A HEARING FOR FINAL APPROVAL OF THE PROPOSED
      SETTLEMENT AND FOR PAYMENT OF THE ATTORNEYS'
      FEES SHOULD BE SET, ALONG WITH PRE-HEARING
      EXCLUSION AND OBJECTION DEADLINES ..........................................27

VIII. THE COURT SHOULD APPPOINT RUST CONSULTING, INC.
      AS SETTLEMENT ADMINISTRATOR......................................................28

IX.   CONCLUSION.............................................................................28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES
## CASES

*Acosta v. Trans Union,*
    243 F.R.D. 377 (C.D. Cal. 2007) ....................................................................... 20

*Amchem Prods. Inc. v. Windsor,*
    521 U.S. 591 (1997) ............................................................................ 14, 15

*Armstrong v. Davis,*
    275 F.3d 849 (9th Cir. 2001) ........................................................................ 17

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ........................................................................ 15

*Chun-Hoon v. McKee Foods Corp.,*
    2009 WL 3349549 (N.D. Cal. Oct. 15, 2009) ................................................. 20

*Churchill Village, L.L.C. v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ................................................................... 20, 21

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ...................................................................... 20

*De La Fuente v. Stokely- Van Camp, Inc.,*
    713 F.2d 225 (7th Cir. 1983) ........................................................................ 16

*Dukes v. Wal-Mart Stores, Inc.,*
    603 F.3d 571 (9th Cir. 2010), cert. granted, 2010 WL 3358931 (U.S.
    Dec. 6, 2010) (No. 10-277) .................................................................... 15, 17

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ................................................................................... 25

*General Tel Co. v. Falcon,*
    457 U.S. 147 (1982) ................................................................................... 18

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................... passim

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ........................................................................ 16

*In re Compact Disc Minimum Advertised Price Antitrust Litig.,*
    216 F.R.D. 197, 218 (D. Me. 2003) ............................................................... 26

*In re Corrugated Container Antitrust Litig.,*
    643 F.2d 195, 205 (5th Cir. 1981) ................................................................. 20

*In re Glassine & Greaseproof Paper Antitrust Litig.,*
    88 F.R.D. 302, 304 (E.D. Pa. 1980 ) .............................................................. 16

*In re Pacific Enterprises Securities Litig.*
    47 F.3d 373, 378 (9th Cir. 1995) ................................................................... 20

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litigation,*
  122 F.R.D. 251, 257 (C.D. Cal. 1988) ...............................................................17

*Nat'l Rural Telecomms. Cooperative v. DirecTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................20, 21, 22, 23

*Perry v. FleetBoston Financial Corp.,*
  229 F.R.D. 105 (E.D. Pa. 2003) .......................................................................26

*Rodriguez v. West Publishing Corp.,*
  563 F.3d 948 (9th Cir. 2009) ............................................................................20

*Rosario v. Livaditis,*
  963 F.2d 1013 (7th Cir. 1992) ....................................................................16, 18

*Scholes v. Stone, McGuire & Benjamin,*
  143 F.R.D. 181 (N.D. Ill. 1992) .......................................................................17

*Schwartz v. Harp,*
  108 F.R.D. 279 (C.D. Cal. 1985) .....................................................................16

*Silber v. Mabon,*
  18 F.3d 1449 (9th Cir. 1994) ............................................................................25

*Smith v. University of Washington Law School,*
  2 F.Supp.2d 1324 (W.D. Wash. 1998) .............................................................16

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ......................................................................20, 26

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) ..............................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005) ...............................................................................26

*Washington Mutual Bank, FA v. Superior Court,*
  24 Cal.4th 906, 103 Cal.Rptr.2d 320 (2001) ...................................................19

*Wershba v. Apple Computer, Inc.,*
  91 Cal.App.4th 224 (2001).........................................................................18, 19

## STATUTES

Fed. R. Civ. P. 23................................................................................*passim*

1   **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**

2   TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3     PLEASE TAKE NOTICE THAT on December 16, 2010, at 1:30 p.m., or as

4   soon thereafter as counsel may be heard, Plaintiffs and proposed Class

5   Representatives Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R.

6   Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke,

7   Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C.

8   Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa

9   L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr.,

10   Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark

11   Chaney, Gloria Chaney, and Terry L. Costello ("Plaintiffs") will bring on for

12   hearing before the Honorable Jeremy Fogel, United States District Judge, in

13   Courtroom 3, 5th Floor, at the United States Courthouse, 280 South 1st Street, San

14   Jose, CA 95113, their Motion for Preliminary Approval of Class Action Settlement.

15     The motion seeks an order:  (1) granting preliminary approval of the

16   proposed Stipulation of Settlement (the "Settlement Agreement")[1] between

17   Plaintiffs and Defendants World Savings, Inc., World Savings Bank, FSB,

18   Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells

19   Fargo Bank, N.A, Wachovia Corporation, Golden West Financial Corporation,

20   Wachovia Bank, FSB, f/k/a World Savings Bank, FSB-TX, Wachovia Mortgage

21   Corporation, Wells Fargo Home Mortgage, and Wells Fargo Bank, N.A.

22   ("Defendants"); (2) provisionally certifying the Settlement Class, as defined below,

23   for settlement purposes only; (3) appointing Plaintiffs as Class Representatives, and

24   their counsel as Class Counsel, and Rust Consulting, Inc. as Settlement

25   Administrator; (4) approving the form and manner of notice to Settlement Class

26   Members, and (5) scheduling a fairness hearing to consider final approval of the

27

28   [1] Capitalized terms herein shall have the same meaning as in the Settlement Agreement, which is annexed hereto as Exhibit A.

Agreement and Stipulation of Settlement of Class Action (the "Settlement Agreement").

For the reasons set forth in greater detail in the accompanying Memorandum of Points and Authorities, Plaintiffs respectfully submit that this Court should grant preliminary approval of the proposed settlement, including:

1.     Conditionally certifying for settlement purposes only and authorizing Plaintiffs to represent the proposed Settlement Class, because the Settlement Class satisfies the requirements of Rules 23(a), (b), and (e) of the Federal Rules of Civil Procedure;

2.     Preliminarily finding that the proposed settlement (the "Settlement") reflected in the Settlement Agreement is fair, reasonable, and in the best interests of the proposed Settlement Class, and that it warrants notifying the Settlement Class of the terms of the proposed Settlement and of their rights in connection with the proposed Settlement;

3.     Approving the form and content of the long form notices of settlement for the Settlement Class (the "Settlement Notices") and the summary notice of settlement ("Summary Notice"), substantially in the form of Exhibits 1 through 4 to the Settlement Agreement;

4.     Directing that the Settlement Notice and Summary Notice be disseminated in the manner described in Section X of the Settlement Agreement;

5.     Establishing deadlines for requests for exclusion from the Settlement Class and the filing of objections to the proposed Settlement;

6.     Setting the fairness hearing on the final approval of the proposed Settlement and its terms, an award of attorneys' fees and expenses for Plaintiffs' counsel, and an award to Plaintiffs for their service in this action; and

7.     Appointing Rust Consulting, Inc. as Settlement Administrator.

This Motion is based on the Notice of Motion; the attached Memorandum of Points and Authorities; the accompanying Declaration of Jeffrey K. Berns, with

-2-

1  exhibits (the "Berns Decl."); the Settlement Agreement, with exhibits (including the

2  proposed Settlement Notices and Summary Notice, Claim Form, and Final Order

3  and Judgment); the pleadings, orders, transcripts, and other papers on file in this

4  matter; and any further evidence and arguments as may be presented at the hearing

5  of this matter.

6  **MEMORANDUM OF POINTS AND AUTHORITIES**

7  **I.     INTRODUCTION**

8          By this motion, Plaintiffs seek preliminary approval of their proposed

9  class action Settlement with Defendants on behalf of a nationwide class of

10 consumers who obtained Pick-a-Payment mortgage loans from Defendants on or

11 after August 1, 2003 and on or before December 31, 2008.  The parties intend to

12 seek final settlement approval at a Fairness Hearing to be scheduled by the Court no

13 less than 130 calendar days from the date on which it grants preliminary approval

14 of the Settlement and, to that end, they request provisional certification of the

15 Settlement Class (as defined below), preliminary approval of the proposed

16 Settlement Agreement, appointment of Plaintiffs' counsel as Class Counsel and

17 Plaintiffs as representatives of the Settlement Class, approval of the proposed

18 Settlement and Summary Notices, and the setting of a hearing date for the Fairness

19 Hearing, and for Plaintiffs' motion for an award to Plaintiff's counsel for their

20 attorney's fees and costs and an award to Plaintiffs for their service in this action.

21 **II.    SUMMARY OF THE CASE**

22         The consolidated actions that comprise this action, concern Defendants' Pick-

23 a-Payment mortgage loans, which permitted the borrower to select and make a

24 minimum payment amount for a limited time and subject to certain conditions.  In

25 particular, for each payment, the borrower could choose from four (4) options.

26 Borrowers could (1) make a fully-amortized 30-year interest and principal payment

27 such that the loan would be satisfied in the traditional 30-year term; (2) make a

28 fully-amortized 15-year interest and principal payment such that the loan would be

-3-

1   satisfied in a 15-year term; (3) make an "interest-only payment"; or (4) make a

2   lesser, minimum payment.  When a payment was insufficient to pay the interest

3   owed, unpaid interest was added to the loan balance and the outstanding loan

4   balance increased.  Plaintiffs allege that the "Pick-a-Payment" mortgage loans

5   violated the federal Truth-in-Lending Act ("TILA"), state unfair competition and

6   consumer protection laws, were fraudulent and breached the covenant of good faith

7   and fair dealing because the relevant loan documents failed to make adequate

8   disclosures regarding the potential for negative amortization, the actual payment

9   schedules, the interest rates of these schedules, and the full terms of the parties'

10   legal obligations.  Berns Decl., ¶2.

11         On August 30, 2007, after an extensive investigation by Plaintiffs' counsel

12   involving, among other things, the review of over five hundred (500) sets of loan

13   documents from individuals who had received Pick-a-Payment mortgage loans

14   from World Savings Bank, FSB, Dolores Mandrigues filed a complaint in this

15   Court (as defined hereafter) captioned *Dolores Mandrigues, individually and on*

16   *behalf of all others similarly situated v. World Savings, Inc., World Savings Bank,*

17   *FSB, Wachovia Mortgage Corporation, and Does 1 through 10 inclusive*, N.D.

18   Cal., Case No. 5:07-cv-4497 ("*Mandrigues*").  The complaint alleged causes of

19   action for violations of TILA and California's Unfair Competition Law, breach of

20   contract, and breach of the implied covenant of good faith and fair dealing.  The

21   *Mandrigues* action was assigned to this Court.  On October 11, 2007, Dolores

22   Mandrigues filed a First Amended Complaint in *Mandrigues*, and, on December 14,

23   2007, during the initial case management conference, Dolores Mandrigues, through

24   counsel, orally moved the Court for leave to file a Second Amended Complaint,

25   which motion was granted.  On December 31, 2007, Dolores Mandrigues filed a

26   Second Amended Complaint and a Corrected Second Amended Complaint in

27   *Mandrigues*, naming additional plaintiffs and putative class representatives, and

28   adding, among other things, a cause of action for fraud.  Berns Decl., ¶¶3-4.

-4-

1  In January 2008, Defendants World Savings, Inc., World Savings Bank, FSB, and

2  Wachovia Mortgage Corporation filed a motion to dismiss *Mandrigues*, which

3  asserted that the relevant loan documents complied with TILA and that the state law

4  causes of action were preempted by the Home Owners Loan Act ("HOLA").  The

5  *Mandrigues* plaintiffs opposed the motion.  In April 2008, the Court denied the

6  motion to dismiss.  Berns Decl., ¶5.

7       During 2008, the *Mandrigues* plaintiffs served multiple sets of interrogatories

8  and requests for production of documents on Defendants.  Defendants also served

9  discovery requests on each of the putative class representatives and took their

10  depositions, along with the depositions of certain third-party brokers who brokered

11  the subject loan transactions.  Production by Defendants included over fifteen

12  thousand (15,000) pages of documents and approximately twenty (20) hours of

13  video and audio materials, all of which was reviewed by Plaintiffs' counsel.  Berns

14  Decl., ¶6.

15       Also during 2008, other borrowers filed additional putative class actions and

16  single-plaintiff actions against Defendants, which generally asserted the same

17  claims and allegations as alleged by the *Mandrigues* plaintiffs.  In November 2008,

18  a petition to coordinate those actions was filed with the Judicial Panel on

19  Multidistrict Litigation (the "MDL Panel") and those actions subsequently were

20  coordinated and transferred to the Court.[2]  The actions are now referred to

21  ─────────────────

22  [2] The cases that were filed later did not have the same opportunity to be developed factually
before stays were entered pending resolution of the MDL petition, but several of these actions
were actively litigated.  The later-filed cases include *Bonnie Mincey, Stephanie O'Rourke, and
Tina Singer, individually and on behalf of all others similar situated v. World Savings Bank, FSB,
Golden West Financial Corporation, and Wachovia Corporation*, D.S.C., Case No. 2:07-cv-3762
(motion to dismiss and for judgment on the pleadings with a subsequent motion for
reconsideration by Defendants); *Laura Johnson v. Wachovia Mortgage Corporation, Equity
Source Home Loans LLC, Don Haupt, and John Does #1 - #10*, D.N.J., Case No. 2:08-cv-04147;
*Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, and Clara C. Rotruck, individually and
on behalf of others similarly situated v. World Savings Bank, FSB, now known as Wachovia
Mortgage, FSB, Golden West Financial Corporation, and Wachovia Corporation*, N.D. Fla.,
Case No. 4:08-cv-380 (motion to dismiss and for class certification); *Judith M. Holley, Roland
Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, and James W. Collins, Jr.,*

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1   collectively as the *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing*

2   *and Sales Practices Litigation*, Case No. M:09-CV-2015-JF (the "Lawsuit").  Berns

3   Decl., ¶7.

4       In November 2008, the *Mandrigues* plaintiffs filed a motion for class

5   certification and a motion for preliminary injunction to prohibit Defendants from

6   foreclosing on the homes of any putative class members.  In January 2009, the

7   Court stayed the class certification motion and all other litigation pending a

8   decision from the MDL Panel.  The Court held a hearing on the preliminary

9   injunction motion, which it subsequently denied in a written order.  Berns Decl., ¶8.

10      In August 2009, Plaintiffs requested that the Court dissolve the January 2009

11  stay entered in *Mandrigues*.  At the same time, the Defendants requested that

12  Plaintiffs file a consolidated complaint for all of the coordinated actions in the

13  Lawsuit, while Plaintiffs requested that the Court conduct a hearing concerning the

14  pending class certification motion in *Mandrigues*, which had been fully briefed

15  since late 2008.  The Court agreed to allow a class certification motion on the TILA

16  claims in *Mandrigues t*o proceed, along with summary judgment motions from both

17  sides on the TILA claims in *Mandrigues*.  Berns Decl., ¶9.

18      In December 2009, Plaintiffs filed motions for summary judgment and class

19  ───────────────────────────────────

20  *individually and on behalf of others similarly situated v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, D. Md., Case No. 1:08-cv-02307 (motion to

21  dismiss); *Michael Brunkhorst and Jayme Brunkhorst v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, S.D. Ill., Case No. 3:09-cv-00127 (no

22  activity); *Michael T. Harber and Mary Harber v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, E.D. Mo., Case No. 4:09-cv-00258 (no

23  activity); *Mark Chaney, Gloria Chaney, and Terry L. Costello v. Wachovia Mortgage, FSB, f/k/a World Savings Bank, FSB; Wachovia Bank, FSB, f/k/a World Savings Bank, FSB-TX; and Golden

24  West Financial Corporation*, D. Ariz., Case No. 2:10-cv-01001-MHB (no activity);   *Joseph Henning v. Wachovia Mortgage Corporation*, D. Mass, Case No. 1:09-cv-11053-MLW (no

25  activity); *Bernardino Bettinelli and Carol G. Bettinelli v. Wells Fargo Home Mortgage, Inc*., D. Mass., Case No. 1:09-cv-11079-MLW (no activity); *Fattu Salia v. World Savings Bank, FSB*, D.

26  Md., Civil Action No. DKC-2010-1553; and *Derrick Davis v. World Savings Bank, FSB, Wachovia Mortgage Corp., and Wells Fargo Bank, N.A.*, D.D.C., Case No. 1:10-cv-01761-RMC

27  (no activity).

28

certification concerning the TILA claims in *Mandrigues*, while Defendants filed their own summary judgment motion concerning those claims.  In January 2010, both sides filed their opposition and reply briefs.  Berns Decl., ¶10.

## III.   SUMMARY OF THE PROPOSED SETTLEMENT

### A.   Settlement Negotiations

Since March 2009, the Parties have engaged in extensive settlement negotiations.  At all times, the Parties' negotiations were adversarial, non-collusive, and at arms' length.  As detailed above, prior to and during these negotiations, the Parties engaged in vigorous, and often contentious, litigation.  Berns Decl., ¶10.

In February 2010, the Parties commenced mediation  with Retired Justice John Trotter.  Thereafter, as progress in the negotiations was being made, the Court agreed, on multiple occasions, to continue the hearing on the pending motions in *Mandrigues*.  Ultimately, an agreement in principal, which is now embodied in the Settlement Agreement, was reached with Justice Trotter's assistance. Berns Decl., ¶¶11-13.

### B.   The Settlement Class

Pick-A-Payment mortgage loan borrowers fall into three categories: those whose loans are paid off, those who still hold loans and are not currently in default, and those who still hold loans and are currently in default.  Thus, the proposed Settlement provides appropriate relief to each of these three classes (collectively, the "Settlement Class"), which are defined as follows:

**Settlement Class A: Borrowers Who No Longer Have Their Pick-a-Payment Mortgage Loans**

All current and former Borrowers of World Savings Bank, FSB or Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that, as of the date of the loan's funding, was

-7-

secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, no longer have a Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, paid off the loan personally, or have already obtained a loan modification that converted the loan from a Pick-a-Payment mortgage loan.

**Settlement Class B:   Non-Defaulting Borrowers Who Still Have Their Loans**

All current Borrowers of World Savings Bank, FSB or Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that is secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to another settlement agreement, final judgment, or other dealings with Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, still have a Pick-a-Payment mortgage loan and are not in Default.

**Settlement Class C:  Borrowers in Default Who Still Have Their Loans**

All current Borrowers of World Savings Bank, FSB or Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. ("Wachovia Mortgage") who, (a) on or after August 1, 2003 and on or before December 31, 2008 entered into a loan transaction with Wachovia Mortgage that is secured by their primary residence; (b) obtained financing from Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan promissory note; (c) have not previously released their claims pursuant to

1   another settlement agreement, final judgment, or other dealings with

2   Wachovia Mortgage; and (d) as of the Date of Preliminary Approval, still

3   have a Pick-a-Payment mortgage loan and are in Default.

4   Settlement Agreement, § IV.

5   Excluded from the Settlement Class are the Defendants, the Additional

6   Defendants, and any respective parent, subsidiary, affiliate, or control person of the

7   Defendants and the Additional Defendants, as well as the officers, directors, agents,

8   servants, and employees of the Defendants and Additional Defendants, or any judge

9   presiding over the Lawsuit and/or any of the Related Actions, and the immediate

10  family members of any such Person(s). Settlement Agreement, § I(1.66).

11  **C.     The Terms of the Proposed Settlement Agreement**

12  **1.     Settlement Payments**

13  Within fifteen (15) calendar days after the Effective Date of the Settlement,

14  Defendants are required to pay $50 million to the Settlement Administrator (the

15  "Settlement Fund"), which will be used for (1) Settlement Payments to Settlement

16  Class A Members who timely submit a valid claim form, and Settlement Class B

17  and C Members who do not exclude themselves from the Settlement; and (2)

18  Service Payments to the Class Representatives, which are to be approved by the

19  Court in the maximum total amount of $125,000. Settlement Agreement, §§ VI(A),

20  VII.

21  All costs of administering the Settlement, and providing notice of the

22  Settlement to the Settlement Class in accordance with the notice program discussed

23  below, will be paid by Defendants and not from the Common Fund, up to a

24  maximum of $1 million, to which the Settlement Administrator has agreed.

25  Settlement Agreement, §§ VI(C), Berns Decl., ¶17.

26  Once the Settlement is effective, after subtracting the Service Payments, the

27  entire balance of the Settlement Fund will be divided, on a *pro rata* basis, among

28  Settlement Class A Members who timely submit a valid claim form and Settlement

-9-

Class B and C Members who do not exclude themselves from the Settlement. Settlement Agreement, § VI(A).  The funds from any uncashed checks sent to Settlement Class Members from the Settlement Fund will first be used to offset administration and notice expenses, and then any remaining funds will be distributed in a *cy pres* fund to the National Consumer Law Center, a not-for-profit organization selected by Plaintiffs, and a not-for-profit organization to be selected by Defendants prior to the Fairness Hearing.  *Id.*

## 2.    Loan Modification Program

From December 18, 2010 through June 30, 2013, Defendants will offer permanent loan modifications to eligible, qualified Settlement Class C Members who reside in their homes and who are at least 60 days delinquent, and eligible, qualified Settlement Class B Members who reside in their homes and who are in "Imminent Default," due to financial hardship such as death of a borrower, permanent or long-term disability, divorce, or other substantial reduction in income. Settlement Agreement, §§ VI(E), I(1.33).

Eligible Settlement Class Members will first be considered for the federal Home Affordable Modification Program ("HAMP"), and if the Settlement Class Member does not qualify under HAMP or elects not to accept a HAMP modification, Defendants will consider the Settlement Class Member for its new modification program known as MAP2R (Mortgage Assistance Program 2).  The goal of the MAP2R program is to reduce a Settlement Class Member's DTI[3] to 31% or less.  In order to accomplish this, Defendants will apply a series of steps to reduce DTI, such as waiver of accrued interest and other charges, temporary

---

[3] "DTI" is the ratio of the Settlement Class Member's first-lien monthly mortgage obligations (including monthly amounts for principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees, and homeowners' association fees, as applicable, regardless of whether any of the foregoing are included in the Settlement Class Member's Monthly Payment, and including any escrow payment shortage amounts subject to a repayment plan) to the Settlement Class Member's gross monthly income, all determined in accordance with HAMP, as defined in Treasury's Supplemental Directive 9-01: Introduction of the Home Affordable Modification Program, April 6, 2009.  Settlement Agreement, § 1.22.

principal forgiveness (which can become permanent if the borrower makes timely payments on account of the modified loan), and interest rate reduction.  Once the DTI of 31% is reached, the loan will be converted to a fully-amortizing loan and the negative amortization feature will be eliminated.  Settlement Agreement, § VI(E).

In order to ensure that Settlement Class Members are appropriately considered for a MAP2R Modification in a timely manner, Defendants shall:

a.     Maintain a dedicated, adequately staffed help line to handle inquiries from Settlement Class Members (including Spanish-speaking Settlement Class Members), including Settlement Class B Members who believe that they are in Imminent Default and wish to be considered for the Loan Modification Program;

b.     Assign a primary point of contact to each Settlement Class B Member and Settlement Class C Member seeking a loan modification;

c.     Notify Settlement Class Members in writing within ten (10) days of their submitting a modification request of any documents believed to be missing and necessary for evaluation for a MAP2R loan modification; and

d.     Establish a formal second-look and escalation protocol for all Settlement Class B Members and Settlement Class B Members seeking a loan modification.  Settlement Agreement, § VI(E)(8),

Settlement Class Members who do not qualify for HAMP or MAP2R Modifications shall receive, within thirty (30) calendar days of the Defendants' receipt of all required documentation from the Settlement Class Member, a written description, which shall be copied to Lead Class Counsel, which clearly explains the reasons that the modification was denied.  *Id.*

**3.     Short-Sale/Deed-in-Lieu of Foreclosure Incentives Program**

Eligible Settlement Class B Members and Settlement Class C Members who are unable to qualify for modifications under the HAMP or MAP2R guidelines and who are otherwise qualified for short-sale or deed-in-lieu of foreclosure under the Home Affordable Foreclosure Alternatives ("HAFA") guidelines will be offered

-11-

incentive payments of at least $1,500 for a short-sale or deed-in-lieu of foreclosure. These options will remain open through June 30, 2013.  Settlement Agreement, § VI(F).

### 4.    Plaintiffs' Litigation Costs and Fees

Subject to the Court's approval at a Rule 23(h) hearing, within five (5) business days after the Effective Date, Defendants shall pay attorneys' fees and costs in an amount not to exceed $25 million with respect to the Settlement of the claims of all Settlement Class Members.  This amount will be paid separate from, and in addition to, the Settlement Fund.  Settlement Agreement, § VI(B).

### 5.    Service Payments

Within thirty (30) calendar days after the Effective Date, subject to Court approval, Service Payments in a total amount not to exceed $125,000 will be paid from the Settlement Fund to the Class Representatives.  Settlement Agreement, § VII.

### 6.    Release By Settlement Class Members

Following entry of Judgment, and upon the Effective Date, as defined in the Settlement Agreement, the Settlement Class will have released the "Released Parties" from the "Alleged Claims," all as defined in the Settlement Agreement, including a waiver of Civil Code § 1542.   Settlement Agreement, § V.

### 7.    Notice

Defendants will notify Settlement Class Members of the proposed Settlement terms as follows:  (a) by having the Settlement Administrator mail, within 45 days of Preliminary Approval, the appropriate Settlement Notice to each member of the Settlement Class; and (b) by publishing a short-form Summary Notice in the main News section of *USA Today* for three consecutive days.  Additionally, a dedicated web site (www.pickapaysettlement.com) will be established that will provide links to the Settlement Notices, key documents in this case, the Settlement Agreement, and other information to assist members of the Settlement Class in assessing their

-12-

rights and options under the proposed Settlement.  Settlement Agreement, § X(B).
As discussed above, all of the costs associated with the notice program will be paid
directly by Defendants and not from the Common Fund.

### 8.    Fairness Hearing

Following a 45-day objection and exclusion (opt-out) period, the Court will
hold a Fairness Hearing and, if the Settlement is approved, enter a Judgment and
Order of Dismissal providing Final Approval of the Settlement Agreement,
certifying the Settlement Class, and dismissing with prejudice all claims by the
Settlement Class that were asserted in this action.  Settlement Agreement, §§ XII,
I(1.26).

### D.    The Proposed Implementation Schedule

The following schedule, drawn from the Settlement Agreement, sets forth a
proposed sequence for the relevant dates and deadlines, assuming this court grants
preliminary approval of the proposed Settlement Agreement.

| | |
|---|---|
| No later than 10 calendar days after preliminary approval | Defendants to notify appropriate federal and state officials  (28 U.S.C. § 1715) |
| No later than 30 calendar days after preliminary approval | Defendants to provide addresses for all Settlement Class Members to Settlement Administrator; Defendants to advance to the Settlement Administrator the sums necessary to cover the costs of issuing the Settlement Notices and other Administration Expenses, up to maximum of $1 million |
| No later than 15 calendar days after receiving addresses | Settlement Administrator to mail Settlement Notices and post links to Settlement Agreement, Settlement Notices, Claim Form and case documents |

| No later than 30 calendar days after preliminary approval (or as soon thereafter as publication schedule will permit) | Defendants to cause publication of Summary Notice in *USA Today* |
|---|---|
| No earlier than 90 calendar days after preliminary approval | Deadline for Settlement Class Members to mail Objections and requests for exclusion; deadline for Settlement Class A Members to file Claim Form |
| No later than 14 calendar days before Fairness Hearing | Parties to file joint motion for final approval, with Class Counsel filing a memorandum of points and authorities in support of such motion; Class Counsel to file motion requesting the Court's approval of the Fee Award and Service Payments; and Class Counsel to file a memorandum addressing any timely submitted Objections to the Settlement |
| No earlier than 130 calendar days after preliminary approval | Fairness Hearing |
| To be determined | Effective Date |
| No later than 5 business days after the Effective Date | Defendants to pay Fee Award to Class Counsel; Defendants to create Common Fund by paying or causing to be paid $50 million to Settlement Administrator |
| No later than 30 calendar days after the Effective Date | Settlement Administrator shall distribute payments from the Common Fund to Settlement Class Members; Settlement Administrator to pay Service Payments to Class Representatives |

## IV. PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

Before granting preliminary approval of a settlement, the Court must determine that the proposed settlement class is a proper class for settlement purposes. *See generally* Fed. R. Civ. P. 23(e); Manual for Complex Litigation (4th ed. 2004) § 21.632; *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 620 (1997). All

-14-

of the Rule 23 criteria for certification of a class for litigation purposes, except manageability, apply to certification of a class for settlement purposes.  *Amchem Prods.*, 521 U.S. at 620.  Courts routinely and properly certify classes for settlement purposes only and the proposed certification of the class is entirely consistent with the applicable authorities.  *Id.* at 619-29.

## A.    Numerosity

The proposed Settlement Class meets the requirement of numerosity, in that it is comprised of hundreds of thousands of borrowers.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) ("The prerequisite of numerosity is discharged if the class is so large that joinder of all members is impracticable.").

## B.    Commonality

The Ninth Circuit has made it clear that in the litigation context, the commonality requirement is to be "construed permissively."  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 559-600 (9th Cir. 2010), cert. granted, 2010 WL 3358931 (U.S. Dec. 6, 2010) (No. 10-277).  Commonality can be established by a showing "that the class is united by a common interest."  *See Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (holding that "slight differences in class members' positions" will not defeat commonality).  Because the relevant standard for commonality is qualitative rather than quantitative, "one significant issue common to the class may be sufficient to warrant certification."  *Dukes*, 603 F.3d at 559.

Here, the common questions of fact and law include the following:

> (a)    Whether the Pick-a-Payment loan documents (the "Loan Documents") failed to disclose that the payment amounts listed in the Note and TILDS were insufficient to pay both principal and interest;

> (b)    Whether the Pick-a-Payment loan documents failed to

1      disclose that negative amortization was absolutely certain to

2      occur if borrowers made payments according to the payment

3      schedule provided in the TILDS; and

4      (c) Whether the Pick-a-Payment loan documents violated TILA.

**C.    Typicality**

A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely- Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Slight factual distinctions between the named plaintiff and the claims of absent class members do not undermine typicality. *In re Glassine & Greaseproof Paper Antitrust Litig.*, 88 F.R.D. 302, 304 (E.D. Pa. 1980). Rather, courts focus on the defendants' conduct and the plaintiff's legal theory. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the classes that they seek to represent, the typicality requirement is usually satisfied, irrespective of varying fact patterns which underlie individual claims. *Smith v. University of Washington Law School*, 2 F.Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members."). Furthermore, the test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other members have been injured by the same course of conduct. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The

-16-

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  typicality requirement is construed liberally.  *Scholes v. Stone, McGuire &*
2  *Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).  Accordingly, differences that may
3  exist in the amount of injury suffered by each class members do not render
4  plaintiffs' claims atypical.  *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

5       Here, Plaintiffs' claims are typical of the Settlement Class that they seek to
6  represent.  All of them entered into Pick-a-Payment loans and were subject to the
7  same undisclosed, or improperly disclosed terms challenged in these suits, and their
8  claims are "reasonably coextensive with those of absent class members."  *Dukes*,
9  603 F.3d at 613.  None of the Plaintiffs has any cognizable conflicts of interest with
10 the proposed classes, and they are represented by qualified and competent counsel.
11 Berns Decl., ¶¶32, 34-39, Exs. A-G.

12      **D.     Adequacy**

13      Plaintiffs will fairly and adequately protect the interests of the class for
14 purposes of this settlement.  The adequacy requirement has two prongs:  "(1) That
15 the representative parties' attorney be qualified, experienced, and generally able to
16 conduct the litigation; and (2) that the suit not be collusive and plaintiff's interests
17 not be antagonistic to the class."  *In re United Energy Corp. Solar Power Modules*
18 *Tax Shelter Inv. Sec. Litigation*, 122 F.R.D. 251, 257 (C.D. Cal. 1988).

19      Both prongs are met here.  First, Plaintiffs in the various actions have
20 retained counsel who are qualified and experienced to litigate this action.  The
21 Court appointed Class Counsel after consolidation by the order of the JPML and
22 these attorneys are highly experienced in consumer class actions and complex
23 litigation.  Second, Plaintiffs and Settlement Class Members do not have any
24 antagonistic interests.  On the contrary, Plaintiffs and the Settlement Class
25 Members are united in their common interest in pursuing claims against
26 Defendants.  Moreover, as discussed herein, this settlement was reached after
27 vigorous litigation and arms-length negotiations.

28

**E.   Rule 23(b)**

Once the four prerequisites of Rule 23(a) are met, "the potential class must also satisfy at least one provision of Rule 23(b)." *Rosario*, 963 F.2d at 1017; *see also General Tel Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Here, the Settlement Class satisfies Rule 23(b)(3), which states that a class may be certified when "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and […] a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The questions of law and fact common to all class members are set forth above.  These common issues predominate over any individual issues, as the claims of the Settlement Class Members all turn on the sufficiency of the disclosures in the form loan documents for Pick-a-Payment loans.  Additionally, a class action is clearly superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all class members would be impracticable.  Fed. R. Civ. P. 23(b)(3).

**F.   Nationwide Certification**

In this case, the claims "asserted by the class representatives are not sufficiently anomalous" to non-California class members to justify denial of certification.  *Hanlon*, 150 F.3d. at 1022-23.  The Court may reach this conclusion without requiring a fifty-state comparison of all possible consumer claims that might arise from the conduct alleged in this action.  This is true for several reasons:  First, "to the extent distinct remedies exist, they are local variants of a generally homogenous collection of causes which include products liability, breaches of express and implied warranties, and 'lemon laws.'" *Id.* at 1011.  Second, there is little risk that non-California class members' substantive rights would be sacrificed, given that "California's consumer protection laws are among the strongest in the country." *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 242, 110

-18-

Cal.Rptr.2d 145 (2001) (affirming approval of nationwide class for claims based on California's Unfair Competition Law and Consumers Legal Remedies Act).  Third, certification for purposes of approving a settlement does not require a showing that the class is "manageable," and thus does not implicate the concern that "claims of nonresident class members will require adjudication under the laws of the members' home states," creating a level of complexity that "results in common legal questions not predominating or makes nationwide class litigation unmanageable." *Washington Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 915, 103 Cal.Rptr.2d 320 (2001).  Fourth, "where the defendant is a California corporation (here, a California-based Delaware corporation) and some or all of the challenged conduct emanates from California," it is proper to apply California statutes to non-California members of a nationwide class. *Wershba*, 91 Cal.App.4th at 243.  Fifth, "so long as the requisite significant contacts with California are shown to exist, sufficient to meet constitutional standards, the burden is on the parties challenging the nationwide certification to demonstrate that 'foreign law, rather than California law, should apply to class claims.'" *Washington Mutual*, 24 Cal.4th at 921 (certification of a nationwide class is proper where "the legal questions are sufficiently similar to be manageable and all other requirements for certification are satisfied."]); *Wershba,* 91 Cal.App.4th at 244.

Accordingly, nationwide certification is proper.

In short, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval of the Settlement.[4]

## V.   PRELIMINARY APPROVAL OF THE TERMS OF THE PROPOSED SETTLEMENT IS WARRANTED

Settlements of complex class actions prior to trial are strongly favored.  *See,*

---

[4]  Defendants have agreed not to contest class certification solely for purposes of this Settlement. Settlement Agreement, § IV(A).

1   *e.g.*, *Churchill Village, LLC v. General Electric Co.*, 361 F.3d 566, 576 (9th Cir.

2   2004); *In re Pacific Enterprises Securities Litig.*, 47 F.3d 373, 378 (9th Cir. 1995);

3   and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "[I]f

4   the proposed settlement appears to be the product of serious, informed, non-

5   collusive negotiations, has no obvious deficiencies, does not improperly grant

6   preferential treatment to class representatives or segments of the class, and falls

7   within the range of possible approval, then the court should direct that notice be

8   given to the class members of a formal fairness hearing."  *Chun-Hoon v. McKee*

9   *Foods Corp.*, 2009 WL 3349549, at *2 (N.D. Cal. Oct. 15, 2009).  The Ninth

10  Circuit has repeatedly ruled that the courts "put a good deal of stock in [class

11  settlements that are] the product of arms-length, non-collusive, negotiated

12  resolution."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir.

13  2009); *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1027 (9th Cir. 1998).

14        Federal Rule of Civil Procedure 23(e) "requires the district court to

15  determine whether a proposed settlement is fundamentally fair, adequate, and

16  reasonable."  *Hanlon*, 150 F.3d at 1026 (9th Cir. 1998).  This "involves a two-step

17  process in which the Court first determines whether a proposed class action

18  settlement deserves preliminary approval and then, after notice is given to class

19  members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v.*

20  *DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

21        At the preliminary approval stage, a court must determine whether a

22  proposed settlement is "within the range of possible approval" and whether notice

23  should be sent to class members.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th

24  Cir. 2003); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir.

25  1981); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To

26  determine whether preliminary approval is appropriate, the settlement need only be

27  potentially fair, as the Court will make a final determination of its adequacy at the

28  hearing on Final Approval, after such time as any party has had a chance to object

1   and/or opt out.").

2         Assessing a settlement proposal requires the district court to balance a

3   number of factors, including but not limited to:  ". . . the strength of the plaintiffs'

4   case; the risk, expense, complexity, and likely duration of further litigation; the risk

5   of maintaining class action status throughout the trial; the amount offered in

6   settlement; the extent of discovery completed and the stage of the proceedings; the

7   experience and views of counsel; the presence of a governmental participant; and

8   the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at

9   1026 (citation omitted).  Other factors may include, *inter alia*:  "the advantages of

10  the proposed settlement versus the probable outcome," "the comparison of the

11  results achieved for individual class or subclass members by the settlement or

12  compromise and the results achieved or likely to be achieved for other claimants

13  pressing similar claims," "the reasonableness of any provisions for attorney fees,"

14  "the fairness and reasonableness of the procedure for processing individual claims

15  under the settlement," and "the apparent intrinsic fairness of the settlement terms."

16  MCL 4th § 21.62.

17        The fact that "the settlement could have been better . . . does not mean the

18  settlement presented was not fair, reasonable or adequate."  *Hanlon*, 150 F.3d. at

19  1027.  The district courts have "wide discretion in assessing the weight and

20  applicability of each factor."  *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 526.

21  The factors are non-exclusive and not all need be shown.  *Churchill Village, L.L.C.*

22  *v. General Electric*, 361 F.3d 566, 576 n. 7 (9th Cir. 2004.  Indeed, "one factor

23  alone may prove determinative in finding sufficient grounds for court approval."

24  *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 525; *Torrisi v. Tucson Elec. Power*

25  *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) (upholding settlement where one factor

26  (defendant's financial condition) predominated]).  "Ultimately, the district court's

27  determination is nothing more than an 'amalgam of delicate balancing, gross

28

1   approximations, and rough justice.'" *Nat'l Rural Telecomm. Coop.,* 221 F.R.D. at

2   526 (citations omitted).

3       The proposed Settlement of the Action easily satisfies the standards for

4   preliminary approval.

5       **A.    The Settlement Terms are Fair, Reasonable, and Adequate,**

6           **Within the Range of Reasonableness**

7       The proposed Settlement "taken as a whole," is fundamentally fair, adequate,

8   and reasonable. *Hanlon*, 150 F.3d at 1026. The Settlement is "fair" because the

9   remedies offered are tailored to the circumstances of the various categories of

10  borrowers -- cash for all Settlement Class Members, and loan modifications for

11  Settlement Class Members who are currently in default or imminent default, or who

12  become in imminent danger of default over the next 30 months.

13      The Settlement is "reasonable" because the cash and modification remedies

14  directly and proportionately address the alleged injury from Defendants' alleged

15  failure to disclosure critical loan terms to borrowers, including that the subject Pick-

16  a-Payment loans were guaranteed to cause negative amortization even if borrowers

17  made the required payments. *See, e.g.,* Corrected Second Amended Complaint

18  (*Mandrigues*, Docket No. 24), ¶¶ 29, 35, 71. Thus, Settlement Class Members will

19  receive a refund of a portion of the negative amortization that they have paid or

20  incurred, while Settlement Class Members who are in default or imminent default,

21  or become in imminent danger of default, will also have the opportunity to modify

22  their loans to address the impact of the undisclosed negative amortization.

23      The Settlement is "adequate" because this relief is not any less valuable than

24  the economic relief Class Members might have obtained without using the class

25  action process, while avoiding the delay, risk and expense of litigation. Here, out

26  of approximately 500,000 Class Members, only a handful of Borrowers have

27  brought individual claims against Defendants. Thus, it is apparent that few Class

28  Members would be able to prove individual damages claims sufficient to justify the

-22-

1   effort and expense of bringing an individual action.  There is thus little risk that the

2   Settlement will create real prejudice to any individual Class Member's rights.

3       Further, several of the balancing factors discussed above weigh in favor of

4   approval of the proposed Settlement Agreement:

5       **1.     Strength of Plaintiffs' case**:  If this case continued to be litigated, the

6   contested factual and legal issues of liability under TILA, state consumer, unfair

7   competition, and fraud laws stemming from the alleged nondisclosures, along with

8   contested class certification issues, would be extensive.  Approval of a settlement is

9   proper where "the settlement terms compare favorably to the uncertainties

10  associated with continued litigation regarding the contested issues in this case

11  [including where] . . . the Settlement provides Class Members with a meaningful

12  business resolution regarding contested issues." *Nat'l Rural Telecomms. Coop.,*

13  221 F.R.D. at 526.

14      **2.     Risk, expense, complexity, and likely duration of further litigation**:

15  "In most situations, unless the settlement is clearly inadequate, its acceptance and

16  approval are preferable to lengthy and expensive litigation with uncertain results."

17  *Id*. (citations omitted).  The proposed Settlement Agreement is not "clearly

18  inadequate," given that, among other things, it provides for a Settlement Fund of

19  $50 million, which will not be diminished by attorneys' fees or notice and

20  administration costs, and an extensive loan modification program that will be in

21  place until June 30, 2013.

22      **3.     The amount offered in settlement**:  "In assessing the consideration

23  obtained by the class members in a class action settlement, '[i]t is the complete

24  package taken as a whole, rather than the individual component parts, that must be

25  examined for overall fairness.' In this regard, it is well-settled law that a proposed

26  settlement may be acceptable even though it amounts to only a fraction of the

27  potential recovery that might be available to the class members at trial." (*Id*.

28

-23-

1   (citations omitted).)  The proposed Settlement Agreement, taken as a whole, is fair,

2   as discussed above.

3       **4.      The experience and views of counsel**:  "'Great weight' is accorded to

4   the recommendation of counsel, who are most closely acquainted with the facts of

5   the underlying litigation."  This is because '[p]arties represented by competent

6   counsel are better positioned than courts to produce a settlement that fairly reflects

7   each party's expected outcome in the litigation.'  Thus, 'the trial judge, absent

8   fraud, collusion, or the like, should be hesitant to substitute its own judgment for

9   that of counsel.'"  *Id.* (citations omitted).  Here, in pursuing this action aggressively

10  for over three years, Class Counsel have demonstrated a high degree of competence

11  in the litigation of this case, and strongly believe that the Settlement is a fair,

12  adequate, and reasonable resolution of the Settlement Class's disputes with

13  Defendants and is preferable to continued litigation.  Berns Decl., ¶¶28, 29, 41.

14  There is no evidence of fraud or collusion in the settlement negotiations, which

15  were conducted at arms-length, before Justice Trotter, a respected retired Judge for

16  the California Court of Appeals and experienced mediator with JAMS.  Berns

17  Decl., ¶¶11, 29 .

18      Accordingly, Plaintiffs respectfully request that the proposed Settlement

19  Agreement be preliminarily approved.

20      **B.      The Court Should Order Dissemination Of The Proposed Class**

21          **Notice**

22      Rule 23(e)(1)(B) states that, "[t]he court must direct notice in a reasonable

23  manner to all class members who would be bound by a proposed settlement,

24  voluntary dismissal, or compromise."  Rule 23(e) requires that notice of a proposed

25  settlement inform class members of the following:  (1) the nature of the pending

26  litigation; (2) the general terms of the proposed settlement; (3) that complete

27  information is available from the court files; and (4) that any class member may

28  appear and he heard at the fairness hearing.  *Newberg on Class Actions* § 8.32, at

-24-

262-68.  The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel.  Fed. R. Civ. P. 23(c)(2).

Here, Plaintiffs request approval of the proposed Settlement Notices and Summary Notice.  The Settlement Notices and Summary Notice meet all of the requirements of Rule 23(e):  they identify the Plaintiffs and the Defendants and describe the lawsuit and the Settlement Class in a straightforward manner; succinctly describe the essential terms of the proposed Settlement, and identify all parties against whom claims are being released; provide Settlement Class Members with information on how to opt-out of the Settlement Class or to object to the Settlement and provide all applicable deadlines for such action; and inform Settlement Class Members that if they do not exclude themselves from the Settlement Class, and the Settlement is approved, they will be bound by the resulting judgment.  Settlement Agreement, Exs. 1-3.  In addition, the notices instruct Settlement Class Members to contact Lead Class Counsel to obtain more detailed information and provides information regarding counsel's fee and expense application.  *Id.*  In short, the Settlement Notices will provide the necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement.

As a general rule, due process requires individualized notice where the names and addresses of class members "may be ascertained through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 177 (1974), and "is appropriate, for example, if class members are required to take action—such as filing claims—to participate in the judgment, or if the court orders a settlement opt-out opportunity under Rule 23(e)(3)."  *See* Fed. R. Civ. P. 23(e)(1), 2003 Committee Note.  As courts have repeatedly held, notice by direct mail or e-mail and publication are often the "best practicable" notice under the circumstances.  *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994).

1    Here, the proposed Settlement provides for direct mail notice to each

2    borrower, bolstered by a publication effort including a press release announcing the

3    Settlement, publication in *USA Today* for three consecutive days, and a dedicated

4    internet site with expansive information.  Settlement Agreement, § X(B).  The

5    comprehensive notice program here more than sufficiently satisfies all due process

6    requirements.  *See, e.g., Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 113

7    (E.D. Pa. 2003)  (direct mail notice to credit card holders with one day

8    advertisement in *USA Today* is best practicable notice)*; In re Compact Disc*

9    *Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003)

10   (individual mailed notice normally constitutes best practicable notice).

11          **C.      The $125,000 Service Payment to Plaintiffs is Reasonable**

12          Class representatives "are eligible for reasonable incentive payments," after

13   consideration of relevant factors, including the actions the representative has taken

14   to protect the interests of the class and the degree to which the class has benefited

15   from those actions.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

16   Plaintiffs, several of whom have provided document discovery and appeared for

17   depositions, should be rewarded for taking the initiative to file their actions, and for

18   their role in reaching an early Settlement providing for valuable relief to the

19   Settlement Class.  Indeed, the Ninth Circuit has approved incentive awards to class

20   representatives that far exceed the modest award proposed to be distributed among

21   Plaintiffs (an average of less than $5,000 per Plaintiff).  *Id.* at 976-77.

22   **VI.    APPOINTMENT OF PLAINTIFFS AS CLASS REPRESENTATIVES**

23          **AND THEIR ATTORNEYS AS CLASS COUNSEL IS WARRANTED**

24          Plaintiffs' claims are predicated on alleged facts identical to those alleged on

25   behalf of the putative class, and their interests in seeking relief through settlement

26   are aligned with those of the class.  Plaintiffs should thus be appointed as

27   representatives of the Settlement Class.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,

28   396 F.3d 96, 113 (2d Cir. 2005).

Class Counsel (Lead Counsel Jeffrey K. Berns and David M. Arbogast, and the members of Plaintiffs' Executive Steering Committee) should be appointed Class Counsel for purposes of certification of the Settlement Class, as required by Rule 23(g). "An attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The appointment is to be based on the court's consideration of "the work counsel has done in identifying or investigating potential claims in the action," "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action," "counsel's knowledge of the applicable law," "the resources counsel will commit to representing the class," and "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Class Counsel amply meets these standards, and thus should be appointed Class Counsel in connection with the Settlement. *See* Berns Decl., ¶¶34-39, Exs. A-G.

## VII.   A HEARING FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND FOR PAYMENT OF ATTORNEYS' FEES SHOULD BE SET, ALONG WITH PRE-HEARING EXCLUSION AND OBJECTION DEADLINES

"Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." MCL 4th § 21.633. The proposed date for the Fairness Hearing is at least 130 days after preliminary approval. The proposed deadline for mailing in exclusion or objection notices is 90 days after preliminary approval.

These dates are appropriate because, by the time of the Fairness Hearing, Defendants will have had to comply with their obligations to enable the Settlement Administrator to mail the Settlement Notices (including a Claim Form for Settlement Class A Members), to publish the Summary Notice in *USA Today*, and

1  to place the Settlement and Summary Notices, Claim Form, Settlement Agreement

2  and case documents on the dedicated settlement website.  Following dissemination

3  and publication of the Settlement and Summary Notices, Settlement Class Members

4  will have over six weeks to mail in their requests for exclusion or objections,

5  allowing for sufficient time thereafter for the parties to address any objections in the

6  moving papers.  Settlement Agreement, § XII.  Additionally, Settlement Class A

7  Members will have had the same amount of time to mail in, or complete on-line,

8  their Claim Forms.  Settlement Agreement, §§ I(1.9), VIII(B).

9  Moreover, by the time of the Fairness Hearing, the Court will be in a position

10 to rule on Class Counsel's Rule 23(h) motion for attorneys' fees, and for Service

11 Payments to Plaintiffs.

12 Plaintiffs request that the Fairness Hearing and Rule 23(h) hearing be set for

13 no earlier than 130 days after Preliminary Approval.  Submitted herewith is a

14 proposed Preliminary Approval Order, which has been approved by Defendants.

15 **VIII.  THE COURT SHOULD APPOINT RUST CONSULTING, INC. AS**

16 **SETTLEMENT ADMINISTRATOR**

17 The parties have retained Rust Consulting, Inc. ("Rust") to act as Settlement

18 Administrator. As is set forth in Rust's Resume (Berns Decl., Ex. H) Rust has

19 provided settlement administration for over 2,500 class action settlements. As such,

20 Rust has the requisite experience to act as Settlement Administrator in this case.

21 **IX.   CONCLUSION**

22 For all the foregoing reasons, Plaintiffs respectfully request that the Court

23 enter an Order in the form lodged herewith:  (1) Preliminarily Approving Class

24 Action Settlement; (2) Provisionally Certifying a Settlement Class; (3) Approving

25 Form and Methods of Class Notice, Claim Form and Release; (4) Appointing Class

26 Representatives, Class Counsel and Settlement Administrator; and (5) Scheduling

27 Hearing on Motions for Final Approval of Settlement and for Payment of

28 Attorneys' Fees and Service Payments.

1

2

3  Dated:  December 9, 2010

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

ARBOGAST & BERNS LLP

By:  /s/ Jeffrey K. Berns
   David M. Arbogast
   Jeffrey K. Berns

Lead Counsel for Plaintiffs and the Proposed
Settlement Class

SMOGER & ASSOCIATES
Gerson H. Smoger
3175 Monterey Boulevard
Oakland, California 94602-3560
Tel 510.531.4529 / Fax 510.531.4377

WILLIAMS CUKER BEREZOFSKY
Mark R. Cuker (Admitted *Pro Hac Vice*)
1617 J.F.K. Boulevard, Suite 800
Philadelphia, Pennsylvania 19103-1819
Tel 215.557.0099 / Fax 215.557.0673

BROWNE WOODS GEORGE LLP
Eric M. George
2121 Avenue of the Stars, Suite 2400
Los Angeles, California 90067
Tel 310.274.7100 / Fax 310.275.5697

SEEGER WEISS LLP
Christopher A. Seeger (Admitted *Pro Hac Vice*)
One William Street
New York, New York 10004
Tel 212.584.0700 / Fax 212.584.0799

KABATEK BROWN KELLNER LLP
Brian S. Kabateck
644 S. Figueroa Street
Los Angeles, California 90017
Tel 213.217.5000 / Fax 213.217.5010

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
A. Hoyt Rowell, III (Admitted *pro hac vice*)
1037-A Chuck Dawley Blvd.
Mt. Pleasant, South Carolina 29464
Tel 843.727.6500 / Fax 843.216.6509

-29-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUXNER LAW
Evan D. Buxner (Admitted *pro hac vice*)
230 South Bemiston, Suite 500
St. Louis, Missouri 63105
Tel 314.720.0623 / Fax 314.725.9597

Members of Plaintiffs' Executive Steering
Committee

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION | Case No. M:09-CV-2015-JF<br><br>**AGREEMENT AND STIPULATION OF SETTLEMENT OF CLASS ACTION** |

This Agreement and Stipulation of Class Action Settlement ("Agreement") is entered into by and among plaintiffs Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke, Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C. Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr., Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark Chaney, Gloria Chaney, and Terry L. Costello (the "Class Representatives"), on behalf of themselves and as representatives of the Settlement Class described herein, and defendants World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A. (the "Defendants"). The Class Representatives and the Defendants are collectively referred to herein as "the Parties."

This Agreement is made for the sole purpose of attempting to consummate settlement of this action on a class-wide basis. As detailed below, in the event that the Court does not execute and file an Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become final for any reason, this Agreement shall be deemed null and void

and shall be of no effect or force whatsoever.  The Parties agree to cooperate fully with each other to accomplish the terms of this Agreement, including but not limited to execution of such documents and taking such other action as may be reasonably necessary to implement the terms of this Agreement.

## FACTUAL BACKGROUND AND RECITALS

1.      Prior to commencing any actions against Defendants, Plaintiffs' (as defined in Section 1.54 hereafter) counsel conducted a thorough investigation of the underlying facts and claims in this action, including the review of over five hundred (500) sets of loan documents from individuals who had received Pick-a-Payment mortgage loans from World Savings Bank, FSB.

2.      On August 30, 2007, Dolores Mandrigues filed a Complaint in the Court (as defined in Section 1.15 hereafter) captioned *Dolores Mandrigues, individually and on behalf of all others similarly situated v. World Savings, Inc., World Savings Bank, FSB, Wachovia Mortgage Corporation, and Does 1 through 10 inclusive*, N.D. Cal., Case No. 5:07-cv-4497 ("*Mandrigues*").  The Complaint alleged causes of action for violations of the federal Truth-in-Lending Act ("TILA"), violations of California's Unfair Competition Law, breach of contract, and breach of the implied covenant of good faith and fair dealing.  The *Mandrigues* action was assigned to the Honorable Jeremy Fogel.  On October 11, 2007, Dolores Mandrigues filed a First Amended Complaint in *Mandrigues*, and, on December 14, 2007, during the initial case management conference, Dolores Mandrigues, through counsel, orally moved the Court for leave to file a Second Amended Complaint, which was granted.  On December 31, 2007, Dolores Mandrigues filed a Second Amended Complaint and a Corrected Second Amended Complaint in *Mandrigues*, naming Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, and Christina Clauson as additional plaintiffs and putative class representatives.  The operative

pleading in *Mandrigues* is the Corrected Second Amended Complaint.  The Corrected Second Amended Complaint added, among other things, a cause of action for fraud.

In January 2008, Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation filed a motion to dismiss *Mandrigues*, which asserted that the relevant loan documents complied with TILA and that the state law causes of action were preempted by the Home Owners Loan Act ("HOLA").  The *Mandrigues* plaintiffs opposed the motion.  In April 2008, the Court denied the motion to dismiss.

During 2008, the *Mandrigues* plaintiffs served multiple sets of interrogatories and requests for production of documents on Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation.  Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation also served discovery requests on each of the putative class representatives and took their depositions.  Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation also took the depositions of some third-party brokers who brokered the subject loan transactions.  Production by Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation included over fifteen thousand (15,000) pages of documents and approximately twenty (20) hours of video and audio materials, all of which was reviewed by Plaintiffs' counsel.

As explained in Paragraph 3 below, also during 2008, other borrowers filed additional lawsuits against the Defendants, which generally asserted the same claims and allegations as alleged by the *Mandrigues* plaintiffs.  As explained in Paragraph 4 below, in November 2008, a petition to coordinate those actions was filed with the Judicial Panel on Multidistrict Litigation (the "MDL Panel") and those actions subsequently were coordinated and transferred to the Court.

In November 2008, the *Mandrigues* plaintiffs filed a motion for class certification and a motion for preliminary injunction to prohibit Defendants World Savings, Inc., World Savings Bank, FSB, and Wachovia Mortgage Corporation from foreclosing on the homes of any putative class members.  In January 2009, the Court stayed the class certification motion and all other litigation pending a decision from the MDL Panel.  It did, however, hold a hearing on the preliminary injunction motion, which it subsequently denied.

3.      During 2008 and continuing through 2010, other putative class actions and single-plaintiff actions were filed against the Defendants alleging claims substantially similar to those alleged against the Defendants in *Mandrigues*, including:

a.      *Bonnie Mincey, Stephanie O'Rourke, and Tina Singer, individually and on behalf of all others similar situated v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, D.S.C., Case No. 2:07-cv-3762 ("*Mincey*"). The *Mincey* Complaint was filed on November 16, 2007 and an Amended Complaint, adding additional plaintiffs, was filed on January 18, 2008.  On February 21, 2008, Defendants Golden West Financial Corporation and Wachovia Corporation filed their motion to dismiss, and Defendant World Savings Bank, FSB filed its answer as well as a motion for judgment on the pleadings.  On April 4, 2008, the *Mincey* plaintiffs filed a response to Golden West Financial Corporation and Wachovia Corporation's motion to dismiss, and a cross-motion for judgment on the pleadings as to the claims alleged against Defendant World Savings Bank, FSB.  On August 15, 2008, the *Mincey* court issued an order granting Golden West Financial Corporation and Wachovia Corporation's motion to dismiss, and granting in part and denying in part the motions for judgment on the pleadings (the "August 15, 2008 Order").

Defendant World Savings Bank, FSB filed a motion for reconsideration of the August 15, 2008 Order, to which the *Mincey* plaintiffs responded.   After receiving information that the Defendants and/or their agents were contacting Pick-a-Payment mortgage loan borrowers to refinance or modify their loans, the *Mincey* plaintiffs filed a Motion to Require Defendants to Provide Refinancing Documents and Information under Rule 23(d), seeking information regarding contacts with putative class members and the modification programs initiated by the Defendants.   The *Mincey* court did not rule on World Savings Bank, FSB's motion for reconsideration or the *Mincey* plaintiffs' Motion to Require Defendants to Provide Refinancing Documents and Information before the MDL Panel issued its order coordinating the actions.

b.      *Laura Johnson v. Wachovia Mortgage Corporation, Equity Source Home Loans LLC, Don Haupt, and John Does #1 - #10*, D.N.J., Case No. 2:08-cv-04147 ("*Johnson*").   The *Johnson* Complaint was filed on July 3, 2008 and an Amended Complaint adding class allegations was filed on February 13, 2009.

c.      *Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, and Clara C. Rotruck, individually and on behalf of others similarly situated v. World Savings Bank, FSB, now known as Wachovia Mortgage, FSB, Golden West Financial Corporation, and Wachovia Corporation*, N.D. Fla., Case No. 4:08-cv-380 ("*Whatley*").   The *Whatley* Complaint was filed on August 25, 2008.   The First Amended Complaint, which added additional plaintiffs, was filed on September 11, 2008.   Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their motions to dismiss on October 22, 2008.   The *Whatley* plaintiffs' responses in opposition to the motions to dismiss were filed on November 10, 2008.   Pursuant to the *Whatley* court's

local rule requiring the filing of a motion for class certification within 90 days of the filing of a putative class action complaint, the *Whatley* plaintiffs filed their motion for class certification and supporting materials on November 24, 2008.  The *Whatley* action was subsequently stayed pending resolution of the MDL petition.

        d.     *Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, and James W. Collins, Jr., individually and on behalf of others similarly situated v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, D. Md., Case No. 1:08-cv-02307 ("*Holley*").   The *Holley* Complaint was filed on September 4, 2008.  Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their motions to dismiss on October 20, 2008.  The *Holley* plaintiffs' responses in opposition to the motions to dismiss were filed on November 12, 2008.  Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their replies in support of their motions to dismiss on December 4, 2008.  Subsequently, *Holley* was stayed pending resolution of the MDL petition.

        e.     *Michael Brunkhorst and Jayme Brunkhorst v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, S.D. Ill., Case No. 3:09-cv-00127 ("*Brunkhorst*").   The *Brunkhorst* Complaint was filed on February 17, 2009.  On April 28, 2009, Defendant World Savings Bank, FSB filed its answer to the *Brunkhorst* Complaint, and Defendants Golden West Financial Corporation and Wachovia Corporation filed their motion to dismiss.

        f.     *Michael T. Harber and Mary Harber v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, E.D. Mo., Case No. 4:09-cv-

00258 ("*Harber*").  The *Harber* Complaint was filed on February 17, 2009.  On April 28,

2009, Defendant World Savings Bank, FSB filed its answer to the *Harber* Complaint, and

Defendants Golden West Financial Corporation and Wachovia Corporation filed their

motion to dismiss.

        g.    *Mark Chaney, Gloria Chaney, and Terry L. Costello v. Wachovia*

*Mortgage, FSB, f/k/a World Savings Bank, FSB; Wachovia Bank, FSB, f/k/a World*

*Savings Bank, FSB-TX; and Golden West Financial Corporation*, D. Ariz., Case No.

2:10-cv-01001-MHB ("*Chaney*").  The *Chaney* Complaint was filed on May 5, 2010.  On

August 23, 2010, Defendants Wachovia Mortgage, FSB, Wachovia Bank, FSB, and

Golden West Financial Corporation filed their motion to dismiss.  The *Chaney* plaintiffs

and Defendants Wachovia Mortgage, FSB, Wachovia Bank, FSB, and Golden West

Financial Corporation subsequently agreed to stay further briefing on the motion to

dismiss pending continued settlement negotiations.

        h.    *Joseph Henning v. Wachovia Mortgage Corporation and Wachovia*

*Mortgage, FSB,* D. Mass, Case No. 1:09-cv-11053-MLW ("*Henning*").  The *Henning*

Complaint was filed on May 4, 2009, and on October 20, 2009, Defendant Wachovia

Mortgage Corporation filed a motion for summary judgment.

        i.    *Bernardino Bettinelli and Carol G. Bettinelli v. Wells Fargo Home*

*Mortgage, Inc*., D. Mass., Case No. 1:09-cv-11079-MLW ("*Bettinelli*").  The *Bettinelli*

Complaint was filed on June 23, 2009 and an Amended Complaint was filed on June 24,

2009.  On October 28, 2009, Defendant Wells Fargo Home Mortgage filed its motion to

dismiss, and the *Bettinelli* plaintiffs filed their opposition to the motion to dismiss on

November 24, 2009.  Defendant Wells Fargo Home Mortgage filed its reply in support of

its motion to dismiss on December 31, 2009.

       j.      *Fattu Salia v. World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation*, D. Md., Civil Action No. DKC-2010-1553 ("*Salia*").  The *Salia* Complaint was filed on June 11, 2010.  On July 2, 2010, Defendants World Savings Bank, FSB, Golden West Financial Corporation, and Wachovia Corporation filed their motions to dismiss.

      4.      In November 2008, the *Mincey* plaintiffs filed with the MDL Panel a motion to centralize the *Mandrigues*, *Mincey*, *Holley*, and *Whatley* actions for coordinated or consolidated pretrial proceedings.  On February 13, 2009, the MDL Panel transferred *Mincey*, *Holley*, and *Whatley* to the Court and consolidated those actions with *Mandrigues* as *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015-JF.  The MDL Panel subsequently transferred *Brunkhorst*, *Harber*, *Johnson, Chaney, Henning*, *Bettinelli*, and *Salia* to the Court, and also consolidated those actions with *Mandrigues*. The *Mandrigues*, *Mincey*, *Johnson*, *Whatley*, *Holley*, *Brunkhorst*, *Harber, Chaney, Henning, Bettinelli*, and *Salia* actions now are collectively referred to as the *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015-JF (the "Lawsuit").

      5.      In August 2009, Plaintiffs requested that the Court dissolve the January 2009 stay entered in *Mandrigues*.  At the same time, the Defendants requested that Plaintiffs file a consolidated complaint for all of the coordinated actions in the Lawsuit, while Plaintiffs requested that the Court conduct a hearing concerning the pending class certification motion in *Mandrigues*, which had been fully briefed since late 2008.  The Court agreed to allow a class certification motion on the TILA claims in *Mandrigues* to proceed, along with summary

judgment motions from both sides on the TILA claims in *Mandrigues*.

6.      In December 2009, Plaintiffs filed motions for summary judgment and class certification concerning the TILA claims in *Mandrigues*, while Defendants filed their own summary judgment motion concerning those claims.   In January 2010, both sides filed their opposition and reply briefs.

7.      Since March 2009, the Parties have engaged in extensive settlement negotiations. At all times, the Parties' negotiations were adversarial, non-collusive, and at arms' length.   As explained in Paragraphs 1 through 6 above, prior to and during these negotiations, the Parties engaged in vigorous, and often contentious, litigation in many of the actions that comprise the Lawsuit.

8.      In February 2010, the Parties commenced mediation with Retired Justice John Trotter.   Thereafter, as progress in the negotiations was being made, the Court agreed, on multiple occasions, to continue the hearing on the pending motions in *Mandrigues*.   Ultimately, an agreement in principal was reached with Justice Trotter's assistance.

## GENERAL STATEMENTS

9.      The Class Representatives and Class Counsel (as defined in Sections 1.12 and 1.10 hereafter) believe that the claims asserted in the Lawsuit have merit.   The Class Representatives and Class Counsel, however, recognize and acknowledge the uncertainty and risks inherent in litigation, along with the significant expense and length of continued proceedings necessary to prosecute the litigation against the Defendants through trial and possible appeal.   The Class Representatives and Class Counsel also are mindful of the potential problems of proof and possible defenses to the Alleged Claims (as defined in Section 1.6 hereafter).   After careful consideration and after participating in seven (7) full-day mediation sessions over the past twenty-

one (21) months, the Class Representatives and Class Counsel have concluded that it is desirable that this class action lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.  Both the Class Representatives and Class Counsel believe that the settlement set forth in this Agreement is fair, reasonable, and adequate and confers substantial benefits upon the Settlement Class (as defined in 1.66 hereafter) and each of the Settlement Class Members (as defined in Section 1.67 hereafter).

10.     The Parties are sufficiently familiar with the facts of the Lawsuit and the applicable law so as to warrant settlement at this time.  The Parties have engaged in extensive discovery in order to evaluate the relative strength of the Parties' claims and defenses, including written discovery, document production, and depositions.  As discussed above, the Parties also have conducted significant briefing in connection with the motions in this case, including the briefing of dispositive motions in multiple cases and a motion for class certification in *Mandrigues*.  The Parties have mediated the case with two different mediators on multiple occasions.  In connection with each mediation session, the Parties exchanged information, data, and documents necessary to fully and fairly evaluate the claims of existing and putative class members.

11.     The Parties are represented by competent counsel experienced in class action litigation and have had the opportunity to consult with counsel prior to the submission of this Agreement to the Court.

12.     Nothing in this Agreement, or the fact of this Agreement itself, shall be construed or deemed an admission of liability, culpability, negligence, or wrongdoing of any kind on the part of the Defendants with respect to the Alleged Claims.  The Defendants deny all the claims and contentions alleged by the Class Representatives in the Lawsuit.  Nonetheless, the Defendants have

concluded that further litigation would be protracted and expensive, and would also divert management and employee time. The Defendants have taken into account the uncertainty and risks inherent in litigation, especially in multi-party cases. The Defendants therefore have concluded that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement.

13. Pursuant to Federal Rule of Evidence 408 and California Evidence Code Sections 1119 and 1152, this Agreement and any related documents filed or created in connection with it shall be inadmissible as evidence in any proceeding, except as necessary to approve, interpret, or enforce this Agreement.

### TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Class Representatives, for themselves and the Settlement Class (as defined in Section 1.66 hereafter), and the Defendants that, subject to the terms and conditions precedent set forth below, the Lawsuit and the Alleged Claims (as defined in Section 1.6 hereafter) shall be finally and fully compromised, released, resolved, relinquished, discharged, and settled; and the Lawsuit shall be dismissed in accordance with Sections XIV and XV of this Agreement, without any adverse findings or conclusions against the Defendants or anyone else, upon and subject to the terms and conditions of this Agreement, as follows:

## I.   DEFINITIONS

As used in this Agreement, the following terms shall have the meanings specified below:

1.1.   *Usage*.   The following rules apply to the construction of this Agreement:

1.1.1.  The singular includes the plural and the plural includes the singular;

1.1.2.  "Include" and "including" are not limiting;

1.1.3.   The headings of the Sections and Subsections are for convenience only and shall not constitute a part of this Agreement, and shall not affect the meaning, construction, or effect of the applicable provisions of this Agreement;

1.1.4.   Words such as "hereunder," "hereto," "hereof," and "herein," and other words of like import shall, unless the context clearly indicates to the contrary, refer to the whole of this Agreement and not to any particular Section, subsection, or clause hereof.

1.2.   "*Accrued Interest*" means scheduled periodic interest owed in accordance with the applicable mortgage note.

1.3.   "*Additional Defendants*" means Wells Fargo & Company, John Stumpf, and Marc C. Oman, who are named defendants in the action entitled *Charles and Jerri H. Holmes and John D. Moller v. Wells Fargo and Company, Wachovia Mortgage Corporation, World Savings, Inc., John Stumpf, and Marc C. Oman*, N.D. Cal., Case No. 5:10-cv-02406-JF, and who will be named as Released Entities in the Judgment.

1.4.   "*Administration Expenses*" means the expenses incurred by the Settlement Administrator in handling the administration of the settlement, including, but not limited to, expenses related to the processing of the Claim Forms submitted by Settlement Class A Members pursuant to this Agreement and Notice Expenses.

1.5.   "*Agreement*" means this Agreement and Stipulation of Class Action Settlement.

1.6.   "*Alleged Claims*" means the claims that are alleged in the Lawsuit and the Related Actions, including, but not limited to, claims that the Defendants and the

Additional Defendants violated TILA, state unfair competition laws, state unfair and deceptive trade practices statutes, and state consumer protection laws; breached the terms of the Parties' contracts; engaged in fraudulent misrepresentations or omissions; and breached the implied duty of good faith and fair dealing in connection with the Plaintiffs' Pick-a-Payment mortgage loans by failing to adequately disclose the loans' potential for negative amortization, providing Borrowers with inaccurate payment schedules, failing to disclose the interest rates on which those payment schedules were based, and failing to disclose the terms of the Parties' legal obligations, entitling them to damages, statutory penalties, restitution, punitive damages, interest, attorneys' fees, costs, injunctive relief, and other legal or equitable relief under state and federal law.

1.7.   "***Borrower***" means the obligor(s) on a Pick-a-Payment mortgage loan note and the title holder(s) who signed the security instrument subjecting certain real estate property as collateral for such note.

1.8.   "***Claim Form***" means the paper and electronic claim forms referenced in Section VIII(B) of this Agreement and approved by the Court.  The Claim Form will require the Settlement Class A Member to provide basic information, including the address of the property that secured his or her Pick-a-Payment mortgage loan.  The Claim Form will not require notarization, but will require that the information supplied be attested to as true according to the Settlement Class A Member's best knowledge and belief.

1.9.   "***Claims Deadline***" means the date by which all Claim Forms must be postmarked or submitted online to be considered timely and shall be no earlier than ninety (90) calendar days after the Date of Preliminary Approval (as defined in Section 1.17

hereafter).  The Claims Deadline shall be clearly set forth in the Settlement Notices, in the Claim Form, on the Settlement website, and in the Court's order granting Preliminary Approval of the Agreement.

1.10.   "*Class Counsel*" means Lead Class Counsel and the attorneys comprising the Executive Steering Committee.

1.11.   "*Class Period*" means August 1, 2003 through and including December 31, 2008.

1.12.   "*Class Representatives*" means Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke, Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C. Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr., Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark Chaney, Gloria Chaney, and Terry L. Costello.

1.13.   "*Class Representative Award*" means such funds as may be awarded by the Court to the Class Representatives to compensate them for their efforts in bringing the Lawsuit and achieving the benefits of this Agreement on behalf of the Settlement Class.

1.14.   "*Corporate and Default-Related Advances*" shall mean any default- or foreclosure-related fee or cost assessed to a Borrower's account for expenditures such as attorneys' fees, statutory expenses, foreclosure fees and costs, fees for property valuations, property inspections, property preservation, and protective advances.

1.15.   "*Court*" means the United States District Court for the Northern District of California, the Honorable Jeremy F. Fogel, currently presiding, or any other court that obtains competent jurisdiction of the Lawsuit.

1.16.   "*Date of Final Approval*" means the date the Court enters an order granting final approval of the Settlement.

1.17.   "*Date of Preliminary Approval*" means the date the Court enters an order granting preliminary approval of the Settlement.

1.18.   "*Default*" means that a Borrower's mortgage payment is sixty (60) or more calendar days past due.

1.19.   "*Defendants*" means World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A.

1.20.   "*Defendants' Counsel*" means T. Thomas Cottingham, III of Winston & Strawn LLP and Jack R. Nelson of Reed Smith LLP.

1.21.   "*Deferred Interest*" means the interest charges added to the Borrower's principal balance as a result of the Borrower making a payment that did not include all of the interest that Defendants claimed was owed on the Pick-a-Payment mortgage loan.

1.22.   "*DTI*" *or* "*Debt-to-Income Ratio*" means the ratio of the Borrower's first-lien monthly mortgage obligations (including monthly amounts for principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees, and

homeowners' association fees, as applicable, regardless of whether any of the foregoing are included in the Borrower's Monthly Payment (defined in Section 1.41 hereafter), and including any escrow payment shortage amounts subject to a repayment plan) to the Borrower's gross monthly income, all determined in accordance with HAMP, as defined in Treasury's Supplemental Directive 9-01: Introduction of the Home Affordable Modification Program, April 6, 2009.

1.23. "**_Effective Date_**" means the date, if any, on which the Judgment entered pursuant to this Agreement becomes Final.

1.24. "**_Escrow-related Advances_**" means advances for items such as property taxes, hazard insurance, homeowners' association or condominium fees advanced on behalf of the Borrower by World Savings Bank, FSB, now known as Wachovia Mortgage, FSB.

1.25. "**_Executive Steering Committee_**" means Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

1.26. "**_Fairness Hearing_**" means the hearing before the Court where the Parties will request that Judgment be entered by the Court approving the Agreement as fair, reasonable, and adequate, approving the Fee Award, and approving the Class Representative Award, which hearing shall occur no earlier than one hundred and thirty (130) calendar days following the Date of Preliminary Approval.

1.27.   "***Fee Award***" means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Class Counsel to compensate Class Counsel for all of the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements incurred by them, their experts, staff, and consultants in connection with the Lawsuit and the Related Actions.

1.28.   "***Final***" means that the Judgment has become final, binding, and effective and no longer subject to appellate review, which shall be ten (10) business days following the Court's Final Approval of the Settlement should no Settlement Class Members file Objections to the Settlement; or, if Objections to the Settlement are filed, then no earlier than one (1) business day following the latest of the following events: (a) the date upon which the time expires for filing or noticing any appeal of the Court's Judgment ordering the dismissal with prejudice of the Alleged Claims and approving the Agreement as fair, reasonable, and adequate; (b) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (c) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

1.29.   "***Final Approval***" means final approval of the Settlement by the Court.

1.30.   "*Fully Amortizing*" means a Pick-a-Payment mortgage loan in which the Borrower's Monthly Payment covers the interest accrued and due each month, as well as paying a portion of the principal balance such that the balance of the loan should be paid in full at the expiration of the term of the loan if all Monthly Payments are made when due.

1.31.   "*Good Standing*" means that a Borrower is not currently and, since the effective date of the Borrower's MAP2R Modification agreement, has not ever been delinquent by the equivalent of three (3) full Monthly Payments at the end of the month in which the last of the three (3) delinquent payments was due.  Once lost, Good Standing cannot be restored even if the Borrower subsequently cures the default.

1.32.   "*HAMP*" means the Home Affordable Modification Program administered by the United States Department of the Treasury.

1.33.   "*Imminent Default*" describes a Borrower (as defined in Section 1.7) who the Defendants have determined, in accordance with applicable HAMP guidance, as necessary, that default by the Borrower in making scheduled payments on his or her Pick-a-Payment mortgage loan is reasonably foreseeable.  In assessing whether a Borrower is facing Imminent Default, the Defendants will not consider funds held in a 401K, 457, 401(a), or 503 retirement account, an IRA, SEP IRA, Simple IRA, or Roth IRA.  Additionally, the fact that a Borrower is projected to Recast to a fully-amortizing payment under the terms of the Pick-a-Payment mortgage loan within the upcoming four (4) contractual Monthly Payments (as defined in Section 1.41 hereafter) using the current applicable interest rate as determined under the terms of the note, and the resulting increase, if any, to the respective Borrower's DTI (as

defined in Section 1.22), shall be considered as a factor in the determination of Imminent Default.

1.34.   "***Judgment***" means the Order to be entered by the Court approving this Agreement, without material modifications that are unacceptable to any of the Parties, as fair, adequate, and reasonable in accordance with applicable jurisprudence, confirming the certification of the Class for settlement purposes, and issuing such other findings and determinations as the Court or the Parties deem necessary and appropriate to effectuate all terms of this Agreement.

1.35.   "***Lawsuit***" means the action styled *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015-JF, the Honorable Jeremy F. Fogel presiding.

1.36.   "***Lead Class Counsel***" means Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP.

1.37.   "***LTV***" means the current ratio of the unpaid principal balance of the Pick-a-Payment mortgage loan, less any amounts of principal forbearance, to the Market Value of the residential property that secures such Pick-a-Payment mortgage loan as of the time reviewed for eligibility for modification.

1.38.   "***MAP2R***" shall mean Wells Fargo's Mortgage Assistance Program 2 which is based on the terms described in this Agreement.

1.39.   "***Market Rate***" is the Freddie Mac Weekly Primary Mortgage Market Survey ("PMMS") Rate for 30-year fixed-rate conforming loans, rounded to the nearest

0.125 percent, as of the date that the modification or option is prepared, plus one hundred (100) basis points.

1.40.   "*Market Value*" shall mean the value of the residential property that secures the Pick-a-Payment mortgage loan as determined by the Defendants in reliance on an appraisal report prepared not more than one hundred eighty (180) calendar days before the date of determination, broker price opinion prepared not more than one hundred twenty (120) calendar days before the date of determination, or automated valuation model prepared not more than ninety (90) calendar days before the date of determination.  Notwithstanding the foregoing, for the purposes of Section VI(E) of this Agreement, the Defendants may rely on the most recent value available in its system of record for determining the value of the residential property.

1.41.   "*Monthly Payment*" shall mean the amount that is due from the Borrower on a monthly basis according to the note, and shall include any principal amounts, monthly accrued interest, monthly amounts to apply to escrow for taxes, hazard insurance, and homeowners' association or condominium fees.

1.42.   "*Negative Amortization*" shall have the same meaning as Deferred Interest.

1.43.   "*Notice Expenses*" means all reasonable costs and expenses expended in the execution of the Notice Plan, including (a) all reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, internet hosting, and publishing the Settlement Notices to the Settlement Class of the proposed settlement and identifying and notifying Settlement Class Members of the proposed settlement; (b) all reasonable costs and expenses incurred in connection with operating and maintaining an Interactive Voice Response System or

live response personnel to provide further information and address questions relating to the Settlement Notices; and (c) any other necessary notice or notice-related expenses.

1.44. "*Notices of Class Action Settlement*" or "*Settlement Notices*" have the meaning set forth in Section X of this Agreement.

1.45. "*Notice of Intention to Appear and Object*" means the written communication that must be filed with the Court prior to the last day of the Opt-Out Period/Objection Deadline by a Class Member in order to object to the approval of any portion of this Agreement.

1.46. "*Notice Plan*" means the plan described in Section X(B) of this Agreement for disseminating the Settlement Notices to the Settlement Class Members.

1.47. "*NPV Test*" means the calculation and comparison of the net present value ("NPV") of conducting a modification of a Pick-a-Payment mortgage loan versus the NPV of not conducting a modification of the same Pick-a-Payment mortgage loan. The NPV formula has been explained to Lead Class Counsel and will be disclosed to the Court, *in camera*, if the Court requests. If the NPV of the modification would be greater than the NPV if there was no modification, the result is deemed "positive." If the NPV of the modification would be less than the NPV if there was no modification, the result is deemed "negative."

1.48. "*Objection*" shall have the same meaning as Notice of Intention to Appear and Object.

1.49.   "*Opt-Out*" means to opt-out of the Settlement Class certified for purposes of this Settlement as provided in Section XII below.

1.50.   "*Opt-Out Period/Objection Deadline*" means the date to be set by the Court in the Lawsuit for a Settlement Class Member to submit a Request for Exclusion or a Notice of Intention to Appear and Object.  The deadline for submitting a Request for Exclusion or a Notice of Intention to Appear and Object will be clearly set forth in the Settlement Notices and shall be no earlier than ninety (90) calendar days after the Date of Preliminary Approval.

1.51.   "*Parties*" means the Class Representatives and the Defendants.

1.52.   "*Person*" means any individual, corporation, trust, partnership, limited liability company, or other legal entity and their respective predecessors, successors, or assigns.

1.53.   "*Pick-a-Payment mortgage loan*" shall mean a Pick-a-Payment mortgage loan originated or acquired by World Savings Bank, FSB or Wachovia Mortgage, FSB that is or was secured by the Borrower's principal residence.   The Pick-a-Payment mortgage loan permitted the Borrower to select and make a minimum payment amount for a limited time and subject to certain conditions.   In particular, for each payment, the Borrower could choose from up to four (4) options:   (1) a fully-amortized 30-year interest and principal payment such that the loan would be satisfied in the traditional 30-year term; (2) a fully-amortized 15-year interest and principal payment such that the loan would be satisfied in a 15-year term; (3) an "interest-only payment"; or (4) a lesser, minimum payment.   When a payment was insufficient to

pay the interest the Defendants claimed was owed, unpaid interest was added to the loan's principal balance and the outstanding principal balance increased.

1.54.   "*Plaintiffs*" means Dolores Mandrigues, Juanita Jones, Al F. Minyen, Wilma R. Minyen, Mark Clauson, Christina Clauson, Bonnie Mincey, Stephanie O'Rourke, Tina Singer, Chad R. Whatley, Anita H. Whatley, Jerrold L. Rotruck, Clara C. Rotruck, Judith M. Holley, Roland Harris, Gloria Harris, Emogen White, Vanessa L. McLeaurin, by Travis A. Budd, personal representative, James W. Collins, Jr., Michael Brunkhorst, Jayme Brunkhorst, Michael T. Harber, Mary Harber, Mark Chaney, Gloria Chaney, and Terry L. Costello, and each of the Settlement Class Members.

1.55.   "*Plan of Allocation*" shall have the meaning set forth in Section VI(A) hereafter.

1.56.   "*Preliminary Approval*" means the Court's conditional certification of the Settlement Class, preliminary approval of this Agreement, as well as approval of the Settlement Administrator and approval of the form and methods of dissemination of the Settlement Notices, the Notice Plan, and the Claim Form.

1.57.   "*Recast*" means a recalculation establishing a new fully-amortizing periodic payment triggered by the unpaid principal balances cap, or date certain, such that the payment increase as a result of such Recast exceeds seven and one-half percent (7.5%).

1.58.   "*Related Actions*" means the following pending actions:

a.   *Charles and Jerri H. Holmes and John D. Moller v. Wells Fargo and Company, Wachovia Mortgage Corporation, World Savings, Inc., John*

*Stumpf, and Marc C. Oman*, N.D. Cal., Case No. 5:10-cv-02406-JF ("*Holmes*"); and

b. *Eric Hodge v. World Savings, Inc., World Savings, FSB, Wachovia Mortgage Corporation, and Does 1 through 10*, N.D. Cal., Case No. 5:09-cv-01598-JF ("*Hodge*").

1.59. "***Release***" shall have the meaning set forth in Section V(A) hereafter.

1.60. "***Released Entities***" means World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; Wells Fargo & Company; Wells Fargo Bank, N.A., John Stumpf; and Marc C. Oman, and each and all of their respective past, present, and future parents, subsidiaries, affiliated companies and corporations, and each and all of their respective past, present, and future directors, officers, managers, employees, general partners, limited partners, principals, agents, insurers, reinsurers, shareholders, attorneys, advisors, representatives, predecessors, successors, divisions, joint venturers, assigns, or related entities, and each and all of their respective executors, successors, assigns, and legal representatives.

1.61. "***Releasing Party***" means each of the Plaintiffs and any other person claiming by or through any Plaintiff and his/her/its spouse, child, heir, associate, co-owner, attorney, agent, administrator, devisee, predecessor, successor, assignee, representative of any kind, shareholder, partner, director, employee, or affiliate.

1.62.   "*Request for Exclusion*" is a timely written communication by or on behalf of a Borrower in the Settlement Class stating that he or she wishes to be excluded from the Settlement Class.  To be timely, any Request for Exclusion must be postmarked on or before the last day of the Opt-Out Period/Objection Deadline.

1.63.   "*Settlement*" means the terms and conditions set forth in this Agreement.

1.64.   "*Settlement Administrator*" means, subject to approval by the Court, a mutually-agreeable independent third-party that will oversee the dissemination of the Settlement Notices pursuant to the Notice Plan, the payment of any Settlement Benefits due to Settlement Class Members, and the collection and maintenance of Requests for Exclusion and Notices of Intent to Appear and Object, as set forth in this Agreement.

1.65.   "*Settlement Benefits*" means the benefits a Settlement Class Member may receive pursuant to this Agreement as described in Section VI hereafter.

1.66.   "*Settlement Class*" means all Settlement Class A Members, Settlement Class B Members, and Settlement Class C Members (as defined hereinafter), which classes are to be certified for purposes of Settlement only, following the entry of an appropriate Order by the Court.  Excluded from the Settlement Class are the Defendants, the Additional Defendants, and any respective parent, subsidiary, affiliate, or control person of the Defendants and the Additional Defendants, as well as the officers, directors, agents, servants, and employees of the Defendants and Additional Defendants, or any judge presiding over the Lawsuit and/or any of the Related Actions, and the immediate family members of any such Person(s).

1.67.    "**Settlement Class Member**" or "**Class Member**" means all of those Persons and entities who are members of the Settlement Class and who do not submit a valid Request for Exclusion that is postmarked on or before the last day of the Opt-Out Period/Objection Deadline.

1.68.    "**Unknown Claims**" means claims that could have been raised in the Lawsuit and/or in the Related Actions and that the Releasing Parties, or any one of them, do not know or suspect to exist, which, if known by him, her, or it, might affect his, her, or its agreement to release the Released Entities or the Alleged Claims, or might affect his, her, or its decision to agree, object to, or not object to the Settlement. Upon the Effective Date, any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each Releasing Party shall be deemed to have, and shall have, waived any and all provisions, rights, and benefits conferred by any law of any state, the District of Columbia or territory of the United States, or principle of common law, or the law of any jurisdiction outside the United States, which is similar, comparable, or equivalent to § 1542 of the California Civil Code. Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or

believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Alleged Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

## II.     FOR SETTLEMENT PURPOSES ONLY

This Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and neither the fact of any provision contained in this Agreement, nor any action taken hereunder or in filings or arguments made with the Court in connection with seeking the approval of this Agreement, shall constitute, or be construed as, or be admissible as evidence as any admission of the validity of any claim or any fact alleged by the Plaintiffs in the Lawsuit, the Related Actions, or in any other pending or future action, nor as an admission of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Defendants or the Additional Defendants, or as an admission by the Defendants or the Additional Defendants of any claim or allegation made in the Lawsuit, the Related Actions, in any other pending or future action, nor as an admission by the Plaintiffs, Settlement Class Members, or Class Counsel of the validity of any fact or defense asserted against them in the Lawsuit, the Related Actions, or in any pending or future other action, nor as an admission as to any other fact or matter of any kind.

## III.    REQUIRED EVENTS AND COOPERATION BY THE PARTIES

### A.     Preliminary Approval

No later than December 10, 2010, Class Counsel shall submit this Agreement to the Court for its Preliminary Approval and shall move the Court, without objection from the Defendants or any of the Additional Defendants, for one or more orders, which by their terms shall:

1.      Appoint the Class Representatives as the representatives of the Settlement Class;

2.      Appoint Class Counsel;

3.      Certify the Settlement Class under Rule 23(e) of the Federal Rules of Civil Procedure for settlement purposes only and preliminarily approve this Agreement for purposes of issuing notice to the Settlement Class;

4.      Approve the retention of a Settlement Administrator;

5.      Approve the form and contents of the Settlement Notices and the method of their dissemination to the members of the Settlement Class; and

6.      Schedule the Fairness Hearing to review Objections regarding this Settlement, to consider the Settlement's fairness, reasonableness, and adequacy, to consider the application for the Fee Award, to consider the application for the Class Representative Award, and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for fees and expenses and the Class Representative Award, and dismissing the Lawsuit and the Related Actions with prejudice.

B.      **Cooperation/Timing**

The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court.  The Parties also agree that time is of the essence and that the dates set forth herein are material terms of this Agreement.

IV.     **CERTIFICATION OF SETTLEMENT CLASSES**

For the sole and limited purpose of Settlement only, the Parties stipulate to and request that the Court certify Settlement Class A, Settlement Class B, and Settlement Class C (defined below), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind or be used for any purpose in the Lawsuit, the Related Actions, or in any other pending or future action.

The Court's certification of Settlement Class A, Settlement Class B, and Settlement Class C shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered the law of the case, *res judicata*, or collateral estoppel in the Lawsuit, the Related Actions, or any other proceeding unless and until the Court enters an order of Judgment, and whether or not the Judgment becomes Final, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be any stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.  In the event the Court does not enter an order of Judgment, or the Judgment does not become Final, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Settlement Class for settlement purposes shall be null and void and the Court's certification order shall be vacated, and thereafter no class or classes will remain certified; provided, however, that Class Representatives and Class Counsel may thereafter seek certification of the same or a new class or classes before the Court, and the Defendants and the

Additional Defendants may oppose such certification on any available grounds.  Nothing in this

Agreement shall be argued as support for, or admissible in, an effort to certify any class in this

Court or any other court if the Court does not enter an order of Judgment and the Judgment does

not become Final, nor shall anything herein be admissible in any proceeding to certify this or any

other classes in any other court under any circumstances.

A.    **Settlement Class A**

For the sole and limited purpose of Settlement only, the Parties stipulate to and request

that the Court certify Settlement Class A pursuant to Rule 23 as follows:

> All current and former Borrowers of World Savings Bank, FSB,
> now known as Wachovia Mortgage, FSB ("Wachovia Mortgage")
> who, (a) on or after August 1, 2003 and on or before December 31,
> 2008 entered into a loan transaction with Wachovia Mortgage that,
> as of the date of the loan's funding, was secured by their primary
> residence; (b) obtained financing from Wachovia Mortgage
> pursuant to a Pick-a-Payment mortgage loan promissory note; (c)
> have not previously released their claims pursuant to another
> settlement agreement, final judgment, or other dealings with
> Wachovia Mortgage; and (d) as of the Date of Preliminary
> Approval, no longer have a Pick-a-Payment mortgage loan because
> they sold the property securing the loan, refinanced the loan, paid
> off the loan personally, or have already obtained a loan
> modification that converted the loan from a Pick-a-Payment
> mortgage loan.

B.    **Settlement Class B**

For the sole and limited purpose of Settlement only, the Parties stipulate to and request

that the Court certify Settlement Class B pursuant to Rule 23 as follows:

> All current Borrowers of World Savings Bank, FSB, now known
> as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on
> or after August 1, 2003 and on or before December 31, 2008
> entered into a loan transaction with Wachovia Mortgage that is
> secured by their primary residence; (b) obtained financing from
> Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan
> promissory note; (c) have not previously released their claims
> pursuant to another settlement agreement, final judgment, or other
> dealings with Wachovia Mortgage; and (d) as of the Date of
> Preliminary Approval, still have a Pick-a-Payment mortgage loan

and are not in Default.

C.    **Settlement Class C**

For the sole and limited purpose of Settlement only, the Parties stipulate to and request

that the Court certify Settlement Class C pursuant to Rule 23 as follows:

> All current Borrowers of World Savings Bank, FSB, now known
> as Wachovia Mortgage, FSB ("Wachovia Mortgage") who, (a) on
> or after August 1, 2003 and on or before December 31, 2008
> entered into a loan transaction with Wachovia Mortgage that is
> secured by their primary residence; (b) obtained financing from
> Wachovia Mortgage pursuant to a Pick-a-Payment mortgage loan
> promissory note; (c) have not previously released their claims
> pursuant to another settlement agreement, final judgment, or other
> dealings with Wachovia Mortgage; and (d) as of the Date of
> Preliminary Approval, still have a Pick-a-Payment mortgage loan
> and are in Default.

## V.    RELEASES

A.    **The Release**:  In consideration for the Settlement Benefits described herein, each

and all of the Plaintiffs hereby agree to and by operation of law shall be deemed to agree to fully,

finally, and completely release and forever discharge the Alleged Claims and any and every

actual or potential known or unknown claim, liability, right, demand, suit, matter, obligation,

damage, loss or cost, action or cause of action, of every kind and description that the Releasing

Party has or may have, including assigned claims and Unknown Claims, asserted or unasserted,

latent or patent, that is, has been, or could have been or in the future might be asserted by any

Releasing Party in the Lawsuit, the Related Actions, any other case consolidated in the Lawsuit,

or in any other action or proceeding in this Court, or any other court, administrative venue,

tribunal or arbitration or other forum, regardless of the type or amount of relief or damages

claimed, against any of the Released Entities arising out of the Alleged Claims, the origination of

the Settlement Class Member's Pick-a-Payment mortgage loan, the manner in which the

Defendants applied the Settlement Class Member's payments to principal and interest, negative

amortization, the Pick-a-Payment mortgage loan's potential for negative amortization, the disclosure of the Pick-a-Payment mortgage loan's potential for negative amortization, and the disclosure of the manner in which payments would be applied to principal and interest.

B.      Subject to the provisions of Section V(A), nothing in this Release shall preclude any Settlement Class Member from later negotiating a modification of the terms of their Pick-a-Payment mortgage loan with the Defendants.

C.      The Plaintiffs hereby agree and acknowledge, and by operation of law will be deemed to agree and acknowledge as of the Effective Date, that each and all of the provisions of this Section V, separately and severally, constitute essential terms of this Agreement and shall be construed in favor of effectuating a complete settlement of the Lawsuit and the Related Actions.

## VI.    SETTLEMENT BENEFITS

A.      **Common Fund**.  The Defendants shall establish a Common Fund in the amount of Fifty Million and No/100 Dollars ($50,000,000.00) for the benefit of all Settlement Class Members.  The Defendants shall pay or cause to be paid to the Settlement Administrator the total sum of $50 million within five (5) business days after the Effective Date.  The distribution of the Common Fund to Settlement Class Members shall be based upon a Plan of Allocation that divides the total amount of the Common Fund, after deduction of the Class Representative Award, by the total number of (1) Settlement Class A Members who timely submit a valid Claim Form pursuant to the process described in Section VIII(B) hereafter and (2) all Settlement Class B and Settlement Class C Members.  Settlement Class B and Settlement Class C Members will not be required to submit a Claim Form to receive payment.  Settlement Class Members shall be entitled to obtain only one (1) payment from the Common Fund, regardless of the number of Pick-a-Payment mortgage loans the Settlement Class Members obtained during the Class Period.

The Settlement Administrator will be responsible for distributing payments to the Settlement Class A Members who timely submit a valid Claim Form and to all Settlement Class B and Settlement Class C Members, pursuant to the Plan of Allocation.  All payments to Settlement Class A Members who timely submit a valid Claim Form and to Settlement Class B and Settlement Class C Members, pursuant to the Plan of Allocation, will be by check, sent by first class mail to the address provided in the valid Claim Form for each Settlement Class A Member who timely submits a valid Claim Form, and to the last known address for each Settlement Class B and Settlement Class C Member.  Each check will state on its face that the check will expire and become null and void unless cashed within ninety (90) calendar days of the date of issuance. Any check to a Settlement Class Member that is returned to the Settlement Administrator with a forwarding address will be re-sent to that forwarding address and the Settlement Administrator's database will be updated with the forwarding address information.  For any check to a Settlement Class Member that is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall check for an NCOA® update or conduct an Accurint® search to determine the Settlement Class Member's location, if possible.  If any check to a Settlement Class Member is not cashed sixty (60) calendar days after the date of the instrument, the Settlement Administrator shall send a reminder notice by first class mail to that Settlement Class Member.  The total amount of all checks that are returned as undeliverable, with no forwarding address, or that remain uncashed ninety (90) calendar days after the date of issuance of the instrument shall first be used to reimburse the Defendants for Administration Expenses, with any remaining funds to become part of a *cy pres* fund to be distributed equally to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

B.      **Fee Award**.  Class Counsel will apply to the Court for an award of attorneys' fees and costs in a total amount not to exceed Twenty-Five Million and No/100 Dollars ($25,000,000.00).  The Defendants will not object to the request so long as it does not exceed $25,000,000.00, and the Defendants will pay the amount awarded by the Court, up to but not more than $25,000,000.00, to Class Counsel as compensation for attorneys' fees and costs.  This payment is separate from and in addition to any other payments agreed to as part of this Settlement.  The Defendants shall pay such amount, as ordered by the Court, within five (5) business days after the Effective Date, by wire transfer to an account designated by Lead Class Counsel, and such payment shall constitute complete consideration for all work performed and all expenses and costs incurred to date and for all work to be performed and all expenses and costs to be incurred through the completion of the Lawsuit, the Related Actions, and this Settlement, other than those costs described in Section VI(C) below.

C.      The Defendants shall pay all Administration Expenses in an amount not to exceed One Million and No/100 Dollars ($1,000,000.00) separate from and in addition to any other payments agreed to as part of this Settlement.

D.      The Defendants shall not be obligated to pay more than the amount of the Common Fund ($50,000,000.00), plus the amount of the Fee Award approved by the Court, Administration Expenses not to exceed $1,000,000.00, any costs associated with the Loan Modification Program discussed in Section VI(E) below, and the HAFA/Short Sale/Deed-in-Lieu of Foreclosure payments discussed in VI(F) below, in total settlement of the Lawsuit, including all Settlement Class Member payments, Administration Expenses, the Class Representative Award, the Fee Award, and any other amounts whatsoever.

E.      **Loan Modification Program**.    Commencing on December 18, 2010 and continuing until June 30, 2013, the Defendants shall make loan modifications available for Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members in accordance with the following provisions of this Section VI(E).  Such loan modifications shall be in addition to the amounts paid pursuant to the Common Fund, the Fee Award, and Administration Expenses described in Sections VI(A), (B), and (C) of this Agreement.

       1.      ***Loan Modifications To Be Considered***.    Subject to the provisions contained in Section VI(E)(4) and consistent with federal requirements, each Settlement Class B Member in Imminent Default, who later becomes in Imminent Default, or who later becomes in Default, and all Settlement Class C Members first shall be considered for a HAMP Modification.  Subject to the provisions contained in Section VI(E)(4), Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for or elect not to accept a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(2), (3), and (5) of this Agreement.

       2.      ***MAP2R Modification***.    Subject to the provisions contained in Section VI(E)(4), Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for or elect a HAMP Modification shall be considered for a MAP2R Modification on the terms as outlined in Sections VI(E)(3) and (5) of this Agreement. The following process shall commence upon receipt of the documents described in

Section VI(E)(7) and subsequent verification that the Settlement Class Member's DTI is above thirty-one percent (31%).  If a loan is modified under MAP2R, the loan will be converted to a fully-amortizing loan and the negative amortization feature will be eliminated.

3.      ***Waiver of Prepayment Penalties***.    The Defendants will waive all prepayment penalties and assess no fees in connection with a MAP2R Modification. The Defendants shall not require a Borrower to make any up-front payment of arrears as part of the MAP2R Modification process.

4.      ***Borrowers With Prior Modifications***.  Settlement Class Members who have received earlier loan modifications not pursuant to this Agreement will not be eligible to be considered for new loan modifications under this Agreement.

5.      ***MAP2R Waterfall***.  The Defendants will apply the following waterfall, in the order listed below, until the Settlement Class Member's Monthly Payment reaches a DTI of thirty-one percent (31%).  The DTI may be slightly higher than thirty-one percent (31%) if the next step or action within the waterfall will result in a DTI below thirty-one percent (31%).  Once a DTI as close as possible to thirty-one percent (31%) is reached, the Defendants are not required to apply any additional steps in the waterfall, nor actions within a step.  If any step in the waterfall is already achieved, the Defendants will proceed to the subsequent step.  If all steps of the waterfall have been exhausted and a DTI of thirty-one percent (31%) cannot be achieved, the Defendants are not required to offer a MAP2R Modification.  Following application of the waterfall, all loans must pass the NPV test (as outlined in Section 1.47 and Section VI(E)(6) before a MAP2R Modification must be offered.  The MAP2R Modification waterfall is as follows:

      a.    **_Step 1_**:  Waive all Accrued Interest, outstanding late charges, and outstanding fees.

      b.    **_Step 2_**:  Escrow-related Advances and Corporate and Default-Related Advances first will be capitalized, then immediately and permanently forgiven.  If this forgiveness combined with the waiver of all Accrued Interest, outstanding late charges, and outstanding fees in Section VI(E)(5)(a) does not equal a number that represents ten percent (10%) of the unpaid principal balance (calculated by multiplying the pre-modification unpaid principal balance by ten percent (10%)), then Deferred Interest, if any exists, will be waived until the total of the waived Accrued Interest, Escrow-related Advances, outstanding late charges, outstanding Corporate and Default-Related Advances, and Deferred Interest results in a number that represents ten percent (10%) of the unpaid principal balance.  In the absence of Deferred Interest, only Accrued Interest, outstanding late charges, outstanding fees, Escrow-related Advances, and Corporate and Default-Related Advances will be forgiven.  While Accrued Interest, outstanding late charges, outstanding fees, Escrow-related Advances, and Corporate and Default-Related Advances will be waived for Settlement Class B Members in Imminent Default and all Settlement Class C Members, regardless of LTV, forgiveness of Deferred Interest will be applied only to the extent that it does not reduce the Settlement Class Member's current LTV below one hundred percent (100%), even if the amount of such forgiveness represents less than ten percent (10%) of the unpaid principal balance.

c.      **Step 3**:   Forgive  principal  until  an  LTV  of  one  hundred  fifty percent (150%) is achieved.

d.      **Step 4**:   Extend the loan term and re-amortize the loan in one (1) month increments to a maximum term of four hundred eighty (480) months.

e.      **Step 5**:   Forbear principal with the opportunity to be forgiven, as outlined in Section VI(E)(5)(h), until an LTV of one hundred twenty-five percent (125%) is achieved.  The principal forbearance amount is non-interest bearing and non-amortizing.   The  amount  of  principal  forbearance  that  is  not  forgiven  will result in a balloon payment fully due and payable upon the earliest of the transfer of  ownership  of  the  property,  payoff  of  the  interest-bearing  unpaid  principal balance, or maturity of the loan.  Should the Defendants choose to participate in HAMP Principal Reduction Alternative ("PRA"), Supplemental Directive 10-05, the LTV level of this step shall be adjusted from one hundred twenty-five percent (125%) to  one  hundred  fifteen  percent  (115%)  for  modifications  done  on  a prospective basis from the date the Defendants elect to participate in the PRA directive.

f.      **Step 6**:  Reduce the interest rate in .125% increments.  In all cases, the interest rate shall not be reduced below a floor of two percent (2%).  If the interest rate after modification is below the Market Rate, this reduced rate will be in effect for the first three (3) years following the date of the loan modification. Thereafter, it will be increased by a maximum of one percent (1%) per year at each twelve (12) month anniversary date of the original modification until it reaches the Market Rate, at which time the rate shall be fixed for the remaining

loan term.  If the interest rate after modification is above or equal to the Market Rate, then that resulting rate shall become the permanent rate for the remaining loan term.  In no event will a step rate increase result in a greater than fifteen percent (15%) increase in the portion of the monthly payment for principal and interest.  If it does, then the rate shall only be increased by the amount that results in an interest rate such that the increase in the monthly principal and interest portion of the payment is no greater than fifteen percent (15%); thereafter, the rate will continue to increase according to the terms above each year until the Market Rate is ultimately reached.

g.      ***Step 7***:  Forbear principal without the opportunity for conditional forgiveness until an LTV of one hundred percent (100%) is reached.

h.      ***Step 8***:  Conditional Forgiveness.  Principal forborne under Section VI(E)(5)(e) will be forgiven if the Settlement Class Member who received a MAP2R Modification is in Good Standing on the first, second, and third anniversaries of the loan modification.  On each of the above anniversary dates that such Settlement Class Member is in Good Standing, equal portions of one-third (1/3) of the principal forbearance amount will be permanently forgiven.

6.      ***NPV Test***.  All potential MAP2R Modifications will be subjected to the NPV Test described in Section 1.47 prior to being offered to a Settlement Class Member. The Defendants shall not be required to offer a MAP2R Modification to any Settlement Class Member whose NPV Test yields a negative NPV result.  However, the Defendants, may, in their sole discretion, offer a MAP2R Modification to a Settlement Class Member

whose NPV Test yields a negative NPV result, or, if possible, the Defendants may offer an alternate modification.

7. **_Documentation Requirements_**.  In determining the documents required of Settlement Class Members to apply for MAP2R Modifications, the Defendants, consistent with their need to obtain relevant financial information, will seek to minimize the burden on Settlement Class Members and maximize participation in the MAP2R Modification program.   The Defendants will not request signed affidavits from Settlement Class Members to document their hardship, and will not require more than one (1) year's income tax return, but will require documentary evidence of the Settlement Class Member's current income.

8. **_Servicing Commitments_**.   In order to ensure that Borrowers are appropriately considered for a MAP2R Modification in a timely manner, the Defendants shall:

   a.   Maintain a dedicated, adequately staffed help line to handle inquiries from Settlement Class Members, including Spanish-speaking Settlement Class Members;

   b.   Assign a primary point of contact to each Settlement Class B Member and Settlement Class C Member seeking a loan modification;

   c.   Notify Settlement Class Members in writing within ten (10) business days of their submitting a modification request of any documents believed to be missing and necessary for evaluation for a MAP2R Modification;

   d.   Provide Settlement Class Members who do not qualify for HAMP or MAP2R Modifications, within thirty (30) calendar days of the Defendants'

receipt of all required documentation from the Settlement Class Member, with a written explanation. Defendants shall provide Lead Counsel information about who did not qualify and the reason for the denial;

e. Establish a formal second-look and escalation protocol for all Settlement Class B Members and Settlement Class C Members seeking a loan modification.

9. There is no obligation for the Defendants to offer MAP2R Modifications to Settlement Class Members who cannot be qualified under the HAMP or MAP2R guidelines.

10. ***Restrictions on the Foreclosure Process***. The Defendants will apply HAMP rules under Supplemental Directive 10-02, dated March 24, 2010, and any applicable state laws regarding initiating or advancing foreclosures to Settlement Class Members being considered for HAMP or MAP2R Modifications. In addition, the Defendants will ensure that each Settlement Class B Member and Settlement Class C Member being considered for HAMP or MAP2R Modifications:

a. Has notes in his or her electronic records accessible to all loan mitigation, modification, and foreclosure departments that indicate whether he or she is being considered for a loan modification; and

b. Receives in any foreclosure-related communication notice that he or she is still being considered for a modification, with the exception of notices generated by outside counsel or foreclosure trustee companies retained by the Defendants to assist with or conduct the foreclosure process. The Defendants will develop and implement policies and procedures to provide notification to

their foreclosure attorneys/trustees regarding a Settlement Class Member's modification status.

11. ***Loan Modifications After June 30, 2013.*** Subsequent to June 30, 2013, the Defendants will continue to evaluate Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members for potential loan workout solutions that are commercially reasonable and are designed to help avoid foreclosure. These solutions may or may not be MAP2R Modifications and their terms will be in the sole discretion of the Defendants.

F. **HAFA/Short Sale/Deed-in-Lieu of Foreclosure Provisions**. The Defendants will offer the Home Affordable Foreclosure Alternatives ("HAFA") or its internal short-sale or deed-in-lieu of foreclosure alternatives to Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who are unable to qualify for loan modifications under the HAMP or MAP2R guidelines and who are otherwise qualified for a short-sale or deed-in-lieu of foreclosure under HAFA or the Defendants' internal guidelines. Settlement Class B Members in Imminent Default, who later become in Imminent Default,or who later become in Default, and Settlement Class C Members who qualify for HAFA will receive an incentive payment of at least Three Thousand and No/100 Dollars ($3,000.00) for a short-sale or deed-in-lieu of foreclosure to assist with relocation expenses. Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in Default, and Settlement Class C Members who do not qualify for HAFA but otherwise qualify under the Defendants' internal guidelines for a short-sale or deed-in-lieu of foreclosure will receive payments of at least One Thousand Five Hundred

Dollars ($1,500.00) to assist with relocation expenses. These benefits are in addition to and separate from the Common Fund and shall remain open until June 30, 2013.

G.       Settlement Class C Members who, at any time after the Date of Preliminary Approval, cure their Default but who later become in Imminent Default or who again go into Default still shall be eligible for the Loan Modification Program described in Section VI(E), or, if applicable, the HAFA/Short Sale/Deed-in-Lieu of Foreclosure Provisions described in Section VI(F).

H.       The Defendants shall designate an employee as the Compliance Officer responsible for this Agreement. The Compliance Officer will be responsible for providing Lead Class Counsel quarterly reports, through June 30, 2013, which will be provided within forty-five (45) calendar days after the end of each quarter. The quarterly reports will provide the following information: (1) the number of Settlement Class Members who have requested loan modifications; (2) the number of Settlement Class Members who received HAMP Modifications or MAP2R Modifications; (3) the number of Settlement Class Members denied loan modifications; and (4) the number of Settlement Class members who received HAFA/Short Sale/Deed-in-Lieu of Foreclosure payments.

I.       The Common Fund, the Loan Modification Program, the HAFA/Short Sale/Deed-in-Lieu of Foreclosure payments, and the payments of the Fee Award and Administration Expenses described in Sections VI(A) through (F) above will constitute adequate consideration for the Settlement and will be made in full and final settlement of:

1.       The Alleged Claims during the Class Period;

2.       Administration Expenses;

3.       Claims for attorneys' fees and costs;

4.      The Class Representative Award; and

5.      Any other obligation of the Parties under this Agreement.

## VII.   CLASS REPRESENTATIVE AWARD

The Parties have agreed that Class Counsel shall be entitled to apply to the Court for a Class Representative Award, the total of which shall not exceed One Hundred Twenty Five Thousand and No/100 Dollars ($125,000.00) and that the Defendants will not object to any application by Class Counsel for a Class Representative Award of up to this amount.  The Class Representative Award shall be paid from the Common Fund described in Section VI(A), and is intended to collectively compensate all of the Class Representatives for their efforts in bringing these claims and achieving the benefits of this Agreement on behalf of the Settlement Class, in addition to any Settlement Benefits to which they may be entitled under this Agreement.  The Settlement Administrator will pay or cause to be paid any Class Representative Award approved by the Court (subject to the maximum described above), within thirty (30) calendar days of the Effective Date, by check to the Class Representatives, in accordance with instructions to be provided by Lead Class Counsel.  Lead Class Counsel shall be solely responsible for allocation of the Court-awarded amount of the Class Representative Award amongst the Class Representatives.

## VIII.   SETTLEMENT ADMINISTRATION

A.      **Settlement Administrator's Duties**

1.      Cost Effective Administration.  The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement in a rational, responsive, cost effective, and timely manner.

2.      Maintenance of Records.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and the Defendants' Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and the Defendants' Counsel with information concerning notice, administration, and implementation of the Agreement.  Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Common Fund paid to Settlement Class Members.  Without limiting the foregoing, the Settlement Administrator shall:

a.      Receive Requests for Exclusion from Plaintiffs seeking to exclude themselves from this Agreement and provide Class Counsel and the Defendants' Counsel with copies thereof within three (3) business days of the deadline for postmarking such forms and requests.  If the Settlement Administrator receives any Requests for Exclusion or other requests from Plaintiffs after its initial provision of Requests for Exclusion to Class Counsel and Defendants' Counsel, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and the Defendants' Counsel.

b.      Receive and review Claim Forms, and reject materially incomplete Claim Forms.  In addition, the Settlement Administrator may reject a Claim Form where there is evidence of abuse or fraud.

c. Make available for inspection by Class Counsel and the Defendants' Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

d. Assist in the dissemination of notices to Class Members and in the publication of Notice as set forth herein.

e. Payments to Settlement Class Members. Within thirty (30) calendar days of the Effective Date, the Settlement Administrator shall distribute payments to the Settlement Class Members as outlined in Section VI(A).

f. Requests for Additional Information. In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Settlement Class Member.

g. Deposit of Common Fund. The Settlement Administrator will place all monies received by it under the terms of this Agreement, other than payments to it for services rendered or for expenses, into a separate, interest-bearing trust account or other escrow account at an institution to be approved by Lead Class Counsel and the Defendants' Counsel until such funds are disbursed. All interest and other earnings received shall accrue to the benefit of said account. The account shall be designated the "Pick-a-Payment Settlement Fund." Such account shall satisfy the requirements of Treas. Reg. § 1.468B-1(h).

h. The Common Fund shall be deemed at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1 and Section 468B of the Internal Revenue Code (the "Code"). The Settlement Administrator, and

any successor administrator, shall comply with all requirements applicable to such qualified settlement fund, including all requirements under Section 468B of the Code, the Treasury Regulations promulgated thereunder, and any comparable provisions of state or local tax laws, shall take all actions necessary to create and maintain the status of the Common Fund as a qualified settlement fund for federal, state, and local income tax purposes, and shall take no action that will adversely affect the qualification of the Common Fund as a qualified settlement fund for federal, state, and local income tax purposes.  In addition, if requested by the Defendants, the Settlement Administrator, and any successor administrator, shall join with the Defendants in the timely filing of a "relation-back election" (within the meaning of Treas. Reg. § 1.468B-1(j)(2)) with respect to the Common Fund.  Pursuant to such election, the Settlement Administrator, or any successor administrator, shall comply with all of the requirements contained in Treas. Reg. § 1.468B-1(j)(2) that apply to such election.  It shall be the responsibility of the Settlement Administrator, or any successor administrator, to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.

      i.     For purposes of Section 468B of the Code, and the Treasury Regulations promulgated thereunder, the Settlement Administrator, or any successor administrator, shall be the "administrator" (as defined under Treas. Reg. § 1.468B-2(k)(3)) of the qualified settlement fund.  The Settlement Administrator, or any successor administrator, shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Common Fund

(including, without limitation, the returns described in Treas. Reg. §§ 1.468B-2(k) and 1.468B-2(1)).  Such returns (as well as the election described in Section VIII(A)(2)(h) of this Agreement) shall be consistent with this Section VIII(A)(2)(i) and in all events shall reflect that all taxes (including any interest, penalties, or additions to tax ("Taxes") on the income earned by the Common Fund shall be paid out of the Common Fund as provided herein).

j.      All Taxes arising with respect to the income earned on the Common Fund, including any Taxes that may be imposed upon the Defendants with respect to any income earned by the Common Fund for any period during which the Common Fund does not qualify as a "qualified settlement fund" for federal and state income tax purposes, any withholding Taxes on distributions from the Common Fund, and all expenses and costs incurred in connection with the operation and implementation of this Section (including, without limitation, expenses of mailing and distribution costs and expenses relating to filing any return described in this Section) ("Tax Expenses") shall be paid by the Settlement Administrator out of the Common Fund.

k.      It shall be the duty of the Settlement Administrator, or any successor administrator, to file or cause to be filed all necessary tax returns or other necessary reports regarding the administration of the Common Fund.

B.      **Submission of Claim Forms**

1.      The Settlement Administrator shall maintain and administer a dedicated settlement website (www.pickapaysettlement.com) containing claims information and related documents, along with an electronic version of the Claim Form that Settlement

Class A Members can view, complete, and submit electronically, as discussed below. The Parties shall agree on all information and documents to be posted on this website.

2.      Paper Claim Form Submission.  The Settlement Notices to Settlement Class A Members shall include a Claim Form, substantially in the form attached as Exhibit 1.  Settlement Class A Members wishing to receive payment pursuant to Section VI(A) of this Agreement by submitting a paper Claim Form must mail completed paper Claim Forms to the Settlement Administrator, and those paper Claim Forms must be postmarked on or before the Claims Deadline.  Any paper Claim Form that is postmarked after the Claims Deadline shall be deemed untimely, an invalid claim, and a waiver by the submitting Settlement Class A Member of any claim for payment under Section VI(A) of this Agreement.

3.      Electronic Claim Form Submission.  The Settlement Notices to Settlement Class A Members shall also include a statement informing Settlement Class A Members that a version of the Claim Form that can be viewed, completed, and submitted electronically is available on the Settlement website.  Settlement Class A Members wishing to receive payment pursuant to Section VI(A) of this Agreement by submitting an electronic Claim Form must complete and submit the electronic Claim Form on or before the Claims Deadline.  After the Claims Deadline, the electronic Claim Form shall be disabled such that electronic Claim Forms will no longer be able to be submitted.

## IX.    PAYMENTS TO SETTLEMENT ADMINISTRATOR

Within ten (10) calendar days after the Date of Preliminary Approval as contemplated by this Agreement, or before, at the Defendants' sole discretion, the Defendants shall advance to the

Settlement Administrator the sums necessary to cover the costs of issuing the Settlement Notices and other Administration Expenses.

## X.    NOTICE TO THE SETTLEMENT CLASS

A.    Upon Preliminary Approval of this Agreement (and as the Court may direct), the Parties shall cause the Settlement Administrator to disseminate the Settlement Notices to the Settlement Class Members.  Such notices shall comport with due process and be effectuated pursuant to a Notice Plan.

B.    The Notice Plan shall include:

1.    Direct Notice.  Within thirty (30) calendar days after the Date of Preliminary Approval, the Defendants shall—based on a review of business records and data in their possession, custody, and control—provide the Settlement Administrator with the U.S. mail addresses and property addresses for any reasonably identifiable Persons who are potential members of the Settlement Class.  The Settlement Administrator shall conduct a National Change of Address Update as soon as practicable after receipt of this information.  Within fifteen (15) calendar days of the receipt of such addresses, Settlement Notices substantially in the form attached as Exhibits 2 through 4 will be sent by the Settlement Administrator to such potential Persons in the Settlement Class by First Class U.S. Mail.

2.    Publication Notice.  Publication Notice shall be made by purchasing, for three (3) consecutive calendar days, a one-quarter (1/4) page advertising space in the main news section of *USA Today*, to be published within thirty (30) calendar days after the Date of Preliminary Approval of this Agreement or as soon thereafter as the

publication schedule of that newspaper will permit.  The text of such notice is provided in Exhibit 5.

       3.      Internet Publication Notice.  Immediately following Preliminary Approval of the Agreement, notice shall be provided on a dedicated settlement website (www.pickapaysettlement.com) to be administered by the Settlement Administrator.

       4.      Press Release.  After the Date of Preliminary Approval, the Parties shall prepare and distribute to local, national, and syndicated news organizations a joint press release, approved by all Parties, describing this Agreement.  The Parties agree that they will keep confidential the terms of this Agreement, the existence of this Agreement, and the negotiations surrounding this Agreement, and that they will not make any comments regarding this Agreement, or the negotiations surrounding this Agreement, until the Date of Preliminary Approval.  The Parties agree that if they receive media or other inquiries regarding this Agreement, or the negotiations surrounding this Agreement, prior to the Date of Preliminary Approval, they will jointly agree on the response to such inquiry, or if no joint agreement has been reached, to respond that they have no comment. Notwithstanding the provisions of this Section, the Parties agree that they are required to move the Court for Preliminary Approval and to file this Agreement with the Court in connection with moving for such Preliminary Approval, and that such filing shall not be considered a breach of this Agreement or any other agreement of the Parties.

       5.      The Settlement Notices shall advise the Settlement Class of its rights, including the right to opt-out and/or comment upon or object to the Agreement or its terms, and for Settlement Class A Members, contain a Claim Form.  The Settlement Notices shall provide that any objection to this Agreement, and any papers submitted in

support of said objection, shall be reviewed by the Court at the Fairness Hearing, only if, on or before the Opt-Out Period/Objection Deadline as approved by the Court and to be specified in the Settlement Notices, the Person making the objection files notice of his or her intention to do so and files copies of such papers he or she proposes to submit at the Fairness Hearing with the Clerk of Court and delivers copies of the same by mail (postmarked by the Opt-Out Period/Objection Deadline), hand (delivered by the Opt-Out Period/Objection Deadline), or overnight delivery service (delivered to overnight courier by the Opt-Out Period/Objection Deadline) to both Class Counsel and the Defendants' Counsel as specified in the Settlement Notices.

## XI.      NOTICE UNDER THE CLASS ACTION FAIRNESS ACT

A.      The Class Action Fairness Act of 2005 ("CAFA") requires the Defendants to inform certain federal and state officials about this Settlement.  *See* 28 U.S.C. § 1715.1.

B.      Under the provisions of CAFA, the Settlement Administrator, on behalf of the Defendants,will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Settlement with the Court.  *See* 28 U.S.C. § 1715(b).

C.      The Parties agree that the Defendants are permitted to provide CAFA notice as required by law and that any notice by the Defendants shall be done to effectuate the Settlement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

## XII.     OPT-OUTS AND OBJECTIONS

A.      Any Person may request to be excluded from the Settlement Class at any time before the Opt-Out Period/Objection Deadline, by complying with the procedures for doing so as set forth in the Court-approved Settlement Notices.  In order to exercise the right to opt-out and be excluded from the Settlement Class, the Person seeking to do so must complete and return to

the Settlement Administrator a Request for Exclusion, such that it is postmarked on or before the Opt-Out Period/Objection Deadline.  Requests for Exclusion that are postmarked after the Opt-Out Period/Objection Deadline will be considered invalid and of no effect, and the Person who untimely submits a Request for Exclusion will remain a Settlement Class Member and will be bound by any Orders entered by the Court, including a Judgment approving the Agreement and implementing the Release contemplated thereby.  Except for those Persons who have properly and timely submitted Requests for Exclusion, all Settlement Class Members will be bound by this Agreement and the Judgment, including the Release herein contained.  Any Person who timely and properly submits a Request for Exclusion shall not (1) be bound by any orders or Judgment entered in the Lawsuit nor by the Release herein contained; (2) be entitled to any relief under this Agreement; (3) gain any rights by virtue of this Agreement; or (4) be entitled to object to any aspect of this Agreement or the Lawsuit.  Each Person requesting exclusion from the Settlement Class must personally sign his or her own individual Request for Exclusion.  No Person may opt-out of the Settlement Class any other Person, or be opted-out by any other Person, and no Person shall be deemed opted-out of the Settlement Class through any purported "mass" or "class" opt-outs.

B.      Any Settlement Class Member who intends to object to this Agreement must submit to the Court, with copies sent to Lead Class Counsel and the Defendants' Counsel, such that it is postmarked on or before the Opt-Out Period/Objection Deadline, a Notice of Intent to Appear and Object that includes his or her personal signature and his or her full name and address, and includes all arguments, citations, and evidence supporting the objection, states that he or she is a member of the Settlement Class, and provides a statement whether the objector intends to appear at the Fairness Hearing, either with or without counsel.  Objections must be

postmarked on or before the Opt-Out Period/Objection Deadline. No Settlement Class Member shall be heard, and no papers, briefs, or pleadings submitted by such Settlement Class Member, shall be received or considered by the Court unless the Settlement Class Member's properly completed and signed statement of objection and Notice of Intent to Appear and Object is postmarked by the Opt-Out Period/Objection Deadline. Any Settlement Class Member who fails to timely or properly file a written objection and Notice of Intent to Appear and Object shall be deemed to have waived his or her objections and be forever barred from making any such objections in this Lawsuit, the Related Actions, or in any other action or proceeding.

       C.     Any Settlement Class Member who fails to strictly comply with the provisions and deadlines of this Section shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement, by the Release, and by all other proceedings, orders, and Judgment in the Lawsuit.

## XIII. TERMINATION OF AGREEMENT

       A.     The Class Representatives in the Lawsuit, on behalf of the Settlement Class Members, by Class Counsel, and the Defendants, by their counsel, shall each have the right to unilaterally terminate this Agreement by providing written notice of their or its election to do so ("Termination Notice") to all other Parties hereto within forty-five (45) calendar days of: (1) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (2) the Court's refusal to grant final approval of this Agreement in any material respect; (3) the Court's refusal to enter the Judgment in the Lawsuit in any material respect; or (4) the date upon which the Judgment is modified or reversed in any material respect by the Ninth Circuit Court of Appeals or the U.S. Supreme Court. If, at the conclusion of Opt-Out Period/Objection Deadline, (1) more than three thousand (3,000) of the Persons identified by the Defendants as potential

Settlement Class A Members; **or** (2) more than two thousand (2,000) of the Persons identified by the Defendants as potential Settlement Class B Members; **or** (3) more than five hundred (500) of the Persons identified by the Defendants as potential Settlement Class C Members, complete and return a proper and timely Request for Exclusion or Notice of Intent to Appear and Object, the Defendants shall have, in their sole and absolute discretion, the option to terminate this Agreement, within ten (10) business days after the conclusion of the Opt-Out Period/Objection Deadline.  In order to invoke this right, the Defendants must file with the Court a document entitled "Notice of Nullification of Settlement."

## XIV.  EXCLUSIVE REMEDY; DISMISSAL OF LAWSUIT; JURISDICTION OF COURT

A.     This Agreement shall be the sole and exclusive remedy of Settlement Class Members against any Released Entity relating to any and all Alleged Claims.  No Released Entity shall be subject to any other Alleged Claim-related liability or expense of any kind to any Settlement Class Member who has not timely filed a valid Request for Exclusion with respect to any Alleged Claim.  Upon the Effective Date, each and every Settlement Class Member shall be permanently barred and enjoined from initiating, asserting, and/or prosecuting any Alleged Claim(s) against any Released Entity in any court, tribunal, forum, or proceeding.

B.     The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Lawsuit, the Parties, Settlement Class Members, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations under this Agreement.

## XV.   FINAL APPROVAL AND JUDGMENT ORDER

A.     No later than ten (10) calendar days prior to the Fairness Hearing, the Settlement Administrator shall file with the Court and serve on counsel for all Parties a declaration stating

that any required Notice has been completed in accordance with the terms of the Preliminary Approval Order.

    B.    At least fourteen (14) calendar days prior to the Fairness Hearing:

        1.    The Parties shall file a joint motion requesting that the Court grant final approval of the Settlement Agreement, with Class Counsel filing a memorandum of points and authorities in support of such motion;

        2.    Class Counsel shall file with the Court and serve on counsel for the Defendants its motion requesting the Court's approval of the Fee Award; and

        3.    Class Counsel shall file a memorandum addressing any timely submitted Objections to the Settlement.

    C.    At the Fairness Hearing, the Court will consider and determine whether the provisions of this Agreement should be approved, whether the Settlement should be finally approved as fair, reasonable, and adequate, whether any Objections to the Settlement should be overruled, whether the Fee Award and the Class Representative Award should be approved, and whether a Judgment finally approving the Settlement should be entered.

    D.    This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment which grants final approval of this Agreement in accordance with applicable jurisprudence, and providing the relief specified below, which relief shall be subject to the terms and conditions of this Agreement, the occurrence of the Effective Date, and the Parties' performance of their continuing rights and obligations hereunder.  Such Judgment shall:

        1.    Dismiss the Lawsuit with prejudice and without costs, other than as described herein, and order Class Counsel to effectuate the dismissal of all Related Actions with prejudice;

2.    Decree that neither the Judgment nor this Agreement constitute an admission by the Defendants or the Additional Defendants of any liability or wrongdoing whatsoever;

3.    Bar and enjoin all Settlement Class Members from asserting against any Released Entity any Alleged Claim which the Settlement Class Member had, has, or may have in the future, including in the Lawsuit and any Related Actions;

4.    Release each Released Entity from the Alleged Claims, which any Settlement Class Members have, had, or may have in the future, against such Released Entity;

5.    Determine that this Agreement is entered into in good faith and is reasonable, fair, and adequate, and in the best interests of the Settlement Class;

6.    Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including the Defendants and all Settlement Class Members, to administer, supervise, construe, and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment; and

7.    Incorporate any other provisions deemed necessary and just which are consistent with this Agreement.

## XVI.   REPRESENTATIONS AND WARRANTIES

Each signatory represents and warrants:

A.    That he, she, or it has all requisite power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby;

B.      That the execution, delivery, and performance of this Agreement and the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory; and

C.      That this Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid, and binding obligation.

## XVII.  MISCELLANEOUS PROVISIONS

A.      **Entire Agreement**

This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement.  This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval.  The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent agreement of Class Counsel and Defendants' Counsel prior to dissemination to the Settlement Class.

B.      **Governing Law**

This Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

C.      **More Favorable Agreement**

In the event that Wells Fargo Bank, N.A. is required to change the terms of its 2010 settlement with the Attorneys General of Arizona, Florida, Georgia, Colorado, New Jersey, Washington, Texas, Illinois, and Nevada (the "AG Settlement") because it has entered into an agreement with the Attorney General of any state in a form or on terms that the Attorneys

General who are parties to the AG Settlement determine are more favorable than those contained in the AG Settlement with respect to MAP2R, then the Parties will prospectively amend Section VI(E) of this Agreement with respect to MAP2R to reflect any such terms or form of agreement in place of the terms set forth in Section VI(E) of this Agreement, and shall submit any such amendment to the Court for approval.  The Defendants will give Lead Class Counsel notice of a request to change the terms of the AG Settlement within ten (10) business days of the Defendants' receipt of such request.

 D. **Execution by Counterparts**

 This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Facsimile signatures or signatures sent by email shall be deemed original signatures and shall be binding.

 E. **Notices**

 All notices to the Parties or counsel required by this Agreement shall be made in writing and communicated by facsimile and email to the following:

 If to Plaintiffs or Class Counsel:

 Jeffrey K. Berns
 JBerns@law111.com
 **ARBOGAST & BERNS LLP**
 6303 Owensmouth Avenue, 10th Floor
 Woodland Hills, CA 91367
 Facsimile: (818) 936-0232

 If to Defendants or Defendants' Counsel:

 T. Thomas Cottingham, III
 tcottingham@winston.com
 **WINSTON & STRAWN LLP**
 214 N. Tryon Street
 Charlotte, NC 28202

Facsimile: (704) 350-7800

**~ and~**

Jack R. Nelson
jnelson@reedsmith.com
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105
Facsimile: (415) 391-8269

F.    **Miscellaneous**

1.    This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of all Parties.   Any action seeking directly or indirectly to challenge, modify, construe, obtain relief from, extend, limit, or enforce this Agreement shall be commenced and maintained only by the Court.

2.    No opinion concerning the tax consequences, if any, of this Agreement as to individual Settlement Class Members is being given by the Defendants or by Defendants' Counsel, nor is any representation or warranty in this regard made by virtue of this Agreement.   Settlement Class Members are directed to consult their own tax advisors regarding the tax consequences of the Agreement, and any tax reporting obligations they may have with respect thereto.   Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.   Nothing in this Agreement is to be construed as tax advice of any kind.

3.    Subject to Court approval, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Agreement.

4.      The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.   Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.  All Parties agree that this Agreement was drafted by Class Counsel and Defendants' Counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

5.      The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

6.      In the event that any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Agreement.

**REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK**

By executing this Agreement, which consists of sixty-two (62) pages, including signature

pages, the Parties signify their agreement to abide by and be bound by all the terms of this

Agreement.

Signed on the dates below written:

ON BEHALF OF THE PLAINTIFFS:

Jeffrey K. Berns, Attorney for the Plaintiffs                    Date  12/10/10

ON BEHALF OF DEFENDANTS WORLD SAVINGS, INC.; WORLD SAVINGS BANK,
FSB; WACHOVIA MORTGAGE, FSB, NOW KNOWN AS WACHOVIA MORTGAGE, A
DIVISION OF WELLS FARGO BANK, N.A.; WACHOVIA CORPORATION; GOLDEN
WEST FINANCIAL CORPORATION; WACHOVIA BANK, FSB, FORMERLY KNOWN AS
WORLD SAVINGS BANK, FSB-TX; WACHOVIA MORTGAGE CORPORATION; WELLS
FARGO HOME MORTGAGE; AND WELLS FARGO BANK, N.A.:

By: _____                    12/10/2010
Terry Krapfl, Their Managing Counsel            Date

_____                    12/10/2010
T. Thomas Cottingham, III, Attorney for the Defendants    Date

Page 62 of 62

# TAB 1

SETTLEMENT CLASS A

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Had a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## You Could Receive Money from a Class Action Settlement.

> A Pick-a-Payment mortgage loan allowed borrowers to make monthly payments in an amount lower than the monthly amount of interest due on the loan.

*A federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans.

- **The Defendants' records show that you obtained a Pick-a-Payment mortgage loan between August 1, 2003 and December 31, 2008.**

- The Settlement will provide payments and other benefits to those who qualify. You will need to file a Claim Form to get a payment from the Settlement.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | The only way to get a payment. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no money from the Settlement. This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like about the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Get no payment. Give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**For More Information:** **Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** …………………………………………………………………………**PAGE 3**

    1.     Why is there a notice?
    2.     What is this lawsuit about?
    3.     What is a Pick-a-Payment mortgage loan?
    4.     Why is this a class action?
    5.     Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** …………………………………………………………………**PAGE 4**

    6.     How do I know if I'm part of the Settlement?

**THE SETTLEMENT BENEFITS**………………………………………………………….……**PAGE 4**

    7.     What does the Settlement provide?
    8.     What can I get from the Settlement?
    9.     What other benefits does the Settlement provide?
    10.    What am I giving up to stay in the Class?

**HOW TO GET A PAYMENT** ………………………………………………………………**PAGE 5**

    11.    How can I get a payment?
    12.    When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ………………………………………**PAGE 6**

    13.    How do I get out of the Settlement?
    14.    If I don't exclude myself, can I sue the Defendants for the same thing later?
    15.    If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** …………………………………………………**PAGE 6**

    16.    Do I have a lawyer in the case?
    17.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** …………………………………………….……**PAGE 7**

    18.    How do I tell the Court what I think about the Settlement?
    19.    What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** …………………………………………………**PAGE 7**

    20.    When and where will the Court decide whether to approve the Settlement?
    21.    Do I have to come to the hearing?
    22.    May I speak at the hearing?

**IF YOU DO NOTHING** …………..……………………………………………………….……**PAGE 8**

    23.    What happens if I do nothing at all?

**GETTING MORE INFORMATION** …………………………………………………….……**PAGE 8**

    24.    How do I get more information?

**For More Information:**   **Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

2

## BASIC INFORMATION

| **1.  Why is there a notice?** |
|---|

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In Re: Wachovia Corp."Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015-F.  The people who sued are called Plaintiffs, and the companies they sued, World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A., are called the Defendants.

| **2.  What is this lawsuit about?** |
|---|

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product (*see* Question 3 below). The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions.  When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization").  The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

| **3.  What is a Pick-a-Payment mortgage loan?** |
|---|

The way the loans work is that borrowers choose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment.  When a minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

| **4.  Why is this a class action?** |
|---|

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims.  All these people are a "class" or "class members," except for those who exclude themselves from the class.  U.S. District Judge Jeremy D. Fogel in the United States District Court for the Northern District of California is in charge of this class action.

| **5.  Why is there a Settlement?** |
|---|

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation.  The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.   The Settlement provides the opportunity for payments and other benefits to Class Members.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

## WHO IS IN THE SETTLEMENT

| 6.  How do I know if I am part of the Settlement? |
| --- |

There are three Settlement Classes.  **If you received this notice in the mail, the Defendants' records show you are a member of Settlement Class A.**  If you believe you are a member of Settlement Class B or Settlement Class C, you should call 1-800-000-0000.  You can view the detailed Notices for each Settlement Class at www.PickaPaySettlement.com.

Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

**Settlement Class A (no longer have a Pick-a-Payment mortgage)**
- Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

**Settlement Class B (mortgage payments are not 60 or more days past due)**
- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of [insert date of preliminary approval], are <u>not</u> 60 or more days past due.

**Settlement Class C (mortgage payments are 60 or more days past due)**
- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of [insert date of preliminary approval], are 60 or more days past due.

Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage loan in a prior case against any of the Defendants.

## THE SETTLEMENT BENEFITS

| 7. What does the Settlement provide? |
| --- |

A $50 million Settlement Fund will be established.  After deducting a payment of up to $125,000 for the Class Representatives (*see* Question 17), the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C.  Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program (*see* Question 9 below).  In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs (*see* Question 17) and up to $1 million to administer the Settlement.

If there is any money remaining in the $50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses.  Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

The Settlement Agreement, available at the website, contains more details about the Settlement.

**For More Information:    Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

### 8.  What can I get from the Settlement?

If you submit a valid Claim Form, you can get a payment from the Settlement Fund (*see* Question 11). Your exact payment cannot be calculated at this time.  It will depend on the number of valid claims that are filed.  Please note that if you had a co-borrower on your Pick-a-Payment mortgage loan, or if you had more than one Pick-a-Payment mortgage loan, you and all other co-borrowers will only get one Settlement Payment.

### 9.  What other benefits does the Settlement provide?

You are not eligible to receive a loan modification or participate in other incentive programs because you no longer have your Pick-a-Payment mortgage loan.  However, the Defendants will offer permanent loan modifications to eligible Class Members who still have their Pick-a-Payment mortgage loan (Settlement Classes B and C).  Settlement Class B and C Members who are unable to qualify for loan modifications may be eligible for incentive payments of at least $1,500 for a short sale or deed-in-lieu of foreclosure. More information about the Loan Modification Program and the Short Sale/Deed-in-Lieu of Foreclosure Incentive Program can be found at www.PickaPaySettlement.com.

### 10.  What am I giving up to stay in the Class?

Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. The Settlement Agreement is available at www.PickaPaySettlement.com.

## HOW TO GET A PAYMENT

### 11.  How can I get a payment?

To ask for a payment, simply complete and submit the attached Claim Form. Claim Forms are also available at www.PickaPaySettlement.com or by calling 1-800-000-0000.  Please read the instructions carefully, fill out the Claim Form, and mail it postmarked no later than **Month 00, 2011**, to:

> Pick-a-Mortgage Settlement
> PO Box 0000
> City, MN 00000

### 12.  When will I get my payment?

Payments will be mailed to Class Members who send in valid Claim Forms on time, after the Court grants "final approval" to the Settlement and after any appeals are resolved.  If Judge Fogel approves the Settlement after a hearing on Month 00, 2011, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

### EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement Fund, and you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or it is sometimes referred to as "opting out" of the Class.

**13. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter that includes the following:
- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- A statement that you want to be excluded from this Settlement, and
- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2011**, to:

Pick-a-Payment Exclusions
PO Box 0000
City, MN 00000

**14. If I don't exclude myself, can I sue the Defendants for the same thing later?**

No. Unless you exclude yourself, you give up the right to sue the Defendants for the claims that the Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Class to continue your own lawsuit.

**15. If I exclude myself from the Settlement, can I still get a payment?**

No. You will not get any money from the Settlement if you exclude yourself. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

### THE LAWYERS REPRESENTING YOU

**16. Do I have a lawyer in the case?**

Yes. The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**17. How will the lawyers be paid?**

The Court will decide how much Class Counsel will be paid. Class Counsel will ask the Court for attorneys' fees, costs, and expenses of up to $25 million. These fees and expenses will be paid separately

**For More Information:** Call 1-800-000-0000 or Visit www.PickaPaySettlement.com

6

by the Defendants and will not reduce the benefits available for the Class.  Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.

## OBJECTING TO THE SETTLEMENT

### 18. How do I tell the Court that I don't like the Settlement?

If you are a Class Member, you can object to the Settlement or to Class Counsel's requests for fees and expenses.  To object, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The account number(s) of your loan(s),
- A sentence stating that "You confirm under penalty of perjury that you are a Settlement Class Member,"
- The reasons you object to the Settlement,
- A list of any witnesses you may call to testify at the Fairness Hearing (*see* Question 20),
- Copies of any exhibits you intend to present to the Court at the Fairness Hearing, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **Month 00, 2011**, to the following four addresses:

| Court | Defense Counsel |
|---|---|
| The United States District Court for the Northern District of California<br>280 South First Street<br>San Jose, CA 95113 | T. Thomas Cottingham, III<br>WINSTON & STRAWN LLP<br>214 North Tryon Street, Suite 2200<br>Charlotte, NC 28202 |
| **Class Counsel** | **Defense Counsel** |
| Jeffrey K. Berns<br>David M. Arbogast<br>ARBOGAST & BERNS LLP<br>6303 Owensmouth Avenue, 10th Floor<br>Woodland Hills, CA 91367 | Jack R. Nelson<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105 |

### 19. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object to the Settlement only if you do not exclude yourself from the Settlement.  Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement.  If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses.  You may attend and you may ask to speak, but you don't have to.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

**20. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Fairness Hearing at Time x.m. on **Month 00, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3. The hearings may be moved to a different date or time without additional notice, so it is a good idea to check www.PickaPaySettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**21.  Do I have to come to the hearing?**

No.  Class Counsel will answer questions Judge Fogel may have.  But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time to the proper address, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

**22.  May I speak at the hearing?**

Yes.  You may ask the Court for permission to speak at the Fairness Hearing.  To do so, you must send a letter saying that it is your "Notice of Intent to Appear."  In your letter, you must include the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing, and
- Your signature.

You must mail your Notice of Intention to Appear, postmarked no later than **Month 00, 2011**, to the four addresses in Question 18.

**IF YOU DO NOTHING**

**23.  What happens if I do nothing at all?**

If you do nothing, you will not get a payment from the Settlement.  Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

**GETTING MORE INFORMATION**

**24.  How do I get more information?**

This notice summarizes the proposed Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.PickaPaySettlement.com.  You may also write with questions to Pick-a-Payment Settlement, P.O. Box 0000, City, MN 00000.  You can also get a Claim Form at the website, or by calling the toll free number, 1-800-000-0000.

**For More Information:    Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

# TAB 2

SETTLEMENT CLASS B

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Have a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## You Could Receive Benefits from a Class Action Settlement.

> A Pick-a-Payment mortgage loan allows borrowers to make monthly payments in an amount lower than the monthly amount of interest due on the loan.

*A federal Court authorized this notice.  This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans.

- **The Defendants' records show that you obtained a Pick-a-Payment mortgage loan between August 1, 2003 and December 31, 2008.**

- The Settlement will provide payments and other benefits to those who qualify. You do not need to do anything to get benefits from the Settlement.

- Please note that this Settlement does not change your obligation to continue to make payments on your mortgage loan.  You should continue to make your payments.

- Your legal rights are affected whether you act, or don't act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **RECEIVE BENEFITS** | If the Court grants final approval to the Settlement, you will automatically receive benefits if you qualify. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no money from the Settlement.  This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like about the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Obtain Settlement benefits and give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Loan modifications are being offered by the Defendants now to eligible Class Members. Payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

**For More Information:    Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ……………………………………………………………………………**PAGE 3**
  1.     Why is there a notice?
  2.     What is this lawsuit about?
  3.     What is a Pick-a-Payment mortgage loan?
  4.     Why is this a class action?
  5.     Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** …………………………………………………………….…**PAGE 4**
  6.     How do I know if I'm part of the Settlement?

**THE SETTLEMENT BENEFITS**………………………………………………………………….…**PAGE 4**
  7.     What does the Settlement provide?
  8.     What about the Attorneys General Settlement with Wells Fargo?
  9.     What can I get from the Settlement?
  10.    What is a loan modification?
  11.    What is "Imminent Default"?
  12.    What is the incentive program?
  13.    What am I giving up to stay in the Class?

**HOW TO GET A PAYMENT** ………………………………………………………………….…**PAGE 6**
  14.    How can I get a payment?
  15.    When will I get my payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ………………………………………….…**PAGE 7**
  16.    How do I get out of the Settlement?
  17.    If I don't exclude myself, can I sue the Defendants for the same thing later?
  18.    If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** …………………………………………………………..**PAGE 7**
  19.    Do I have a lawyer in the case?
  20.    How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ……………………………………………………….…**PAGE 8**
  21.    How do I tell the Court what I think about the Settlement?
  22.    What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** …………………………………………………………...**PAGE 9**
  23.    When and where will the Court decide whether to approve the Settlement?
  24.    Do I have to come to the hearing?
  25.    May I speak at the hearing?

**IF YOU DO NOTHING** ……………...…………………………………………………...**PAGE 10**
  26.    What happens if I do nothing at all?

**GETTING MORE INFORMATION** …………………………………………………..…..……**PAGE10**
  27.    How do I get more information?

**For More Information:      Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

2

## BASIC INFORMATION

### 1. Why is there a notice?

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In Re: Wachovia Corp."Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015.  The people who sued are called Plaintiffs, and the companies they sued, World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, FSB, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A., are called the Defendants.

### 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product (*see* Question 3 below). The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions.  When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization").  The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

### 3. What is a Pick-a-Payment mortgage loan?

The way the loans work is that borrowers chose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment.  When a minimum payment was insufficient to pay the interest that was owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

### 4. Why is this a class action?

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims.  All these people are a "class" or "class members," except for those who exclude themselves from the class.  U.S. District Judge Jeremy D. Fogel in the United States District Court for the Northern District of California is in charge of this class action.

### 5. Why is there a Settlement?

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation.  The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.  The Settlement provides the opportunity for payments and other benefits to Class Members.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

## WHO IS IN THE SETTLEMENT

| 6. How do I know if I am part of the Settlement? |
|---|

There are three Settlement Classes. **If you received this notice in the mail, the Defendants' records show you are a member of Settlement Class B.** If you believe you are a member of Settlement Class A or Settlement Class C, you should call 1-800-000-0000. You can view the detailed Notices for each Settlement Class at www.PickaPaySettlement.com.

Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

**Settlement Class A (no longer have a Pick-a-Payment mortgage)**
- Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

**Settlement Class B (mortgage payments are not 60 or more days past due)**
- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of [insert date of preliminary approval], are not 60 or more days past due.

**Settlement Class C (mortgage payments are 60 days or more past due)**
- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of [insert date of preliminary approval], are 60 or more days past due.

Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage in a prior case against any of the Defendants.

## THE SETTLEMENT BENEFITS

| 7. What does the Settlement provide? |
|---|

The Settlement provides for a loan modification program and the establishment of a $50 million Settlement Fund. After deducting a payment of up to $125,000 for the Class Representatives (*see* Question 20), the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program (*see* Questions 10 and 12 below). In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs (*see* Question 20) and up to $1 million to administer the Settlement.

If there is any money remaining in the $50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses. Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

A Settlement Agreement, available at the website, contains more details about the Settlement.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

### 8.  What about the Attorneys General Settlement with Wells Fargo?

If you live in Arizona, Florida, Colorado, New Jersey, Washington, Texas, Illinois, or Nevada, you may receive a separate notice relating to a 2010 Settlement between those states' Attorneys General and Wells Fargo Bank, N.A. (the "Attorneys General Settlement"), which acquired World Savings Bank, FSB/Wachovia Mortgage FSB's Pick-a-Payment mortgage loan portfolio in 2008.  In the Attorneys General Settlement, Wells Fargo Bank, N.A. is offering permanent loan modifications to eligible borrowers.  You are allowed to participate in both the Attorneys General Settlement and this Settlement.

### 9.  What can I get from the Settlement?

As a member of Settlement Class B, you may be eligible to participate in the loan modification program if you are in "Imminent Default," if you later become in "Imminent Default," or if you later become 60 or more days past due on your mortgage payments.  The loan modification program and "Imminent Default" are described below.

You are also eligible to receive a payment from the Settlement Fund after the Court grants final approval to the Settlement (*see* Question 15).  Your exact payment cannot be calculated at this time.  It will depend on the number of valid claims that are filed by members of Settlement Class A.  Members of Settlement Class B do not have to file a claim form to receive a payment from the Settlement Fund.  Please note that if you had a co-borrower on your Pick-a-Payment mortgage loan, or if you had more than one Pick-a-Payment mortgage loan, you and all other co-borrowers will only get one Settlement Payment.

### 10.  What is a loan modification?

The Defendants will offer permanent loan modifications to eligible Settlement Class B Members who live in their homes, who are in "Imminent Default," (*see* Question 11), who later become in "Imminent Default," or who later become 60 or more days past due on their mortgage payments.  The Loan Modification Program will operate through June 30, 2013.  A loan modification is a change to your loan agreement and may include principal forgiveness, loan term extension, interest rate reduction, and principal forbearance (which gives the borrower additional time to pay off the loan principal).  Please be aware that a loan modification may affect your credit rating.

Eligible Settlement Class B Members will first be considered for the federal Home Affordable Modification Program ("HAMP").  HAMP provides eligible homeowners the opportunity to modify their mortgages to make them more affordable.  If the Settlement Class B Member does not qualify under HAMP or elects not to accept a HAMP loan modification, the Defendants will consider that Settlement Class B Member for their new modification program known as Mortgage Assistance Program 2 ("MAP2R").

Settlement Class B Members who remain current on their modified payments over three years may be able to earn additional principal forgiveness.  More details on these programs are in the Settlement Agreement, which is available at www.PickaPaySettlement.com.

### 11.  What is "Imminent Default"?

Imminent Default describes a borrower who meets a test to show the borrower is reasonably likely to default on his or her Pick-a-Payment mortgage loan because of financial hardship or other changed circumstances.  Generally, the current test for "Imminent Default" is as follows:

**For More Information:      Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

1. Long Term Hardship, meaning a borrower that is having difficulty making his or her mortgage payments and the duration of that difficulty is expected to be greater than 12 months; **and**

2. Financial Hardship, defined as one of the following that currently exists or occurs prior to June 30, 2013:
   a. Death of a borrower;
   b. Long-term or permanent disability or illness of a borrower or dependent family member;
   c. Legally-documented divorce or separation of the borrower and co-borrower;
   d. Separation of borrowers unrelated by marriage, civil union, or similar civil domestic partnership under applicable law;
   e. A combination of reduction of income and increase in housing expenses (principal and interest only) that exceeds 10% of current income.  The comparison period shall be approximately 12 months prior to the date modification is sought; however, a greater period may be used if the condition has been consistent; **and**

3. Cash reserves of less than $25,000, excluding retirement accounts; **and**

4. The property is occupied by the borrower as his or her principal residence; **and**

5. The borrower's loan-to-value ratio must exceed 80%, or the loan must have a positive "Net Present Value."

## 12.  What is the other incentive program?

Settlement Class B Members who are unable to qualify for modifications under the HAMP or MAP2R guidelines may qualify for incentive payments of at least $1,500 for a short-sale or deed-in-lieu of foreclosure.  The Settlement Class B Member must qualify for these payments under the Home Affordable Foreclosure Alternatives ("HAFA") guidelines.  HAFA guidelines are available at http://makinghomeaffordable.gov/hafa.html.

In a short sale, the bank allows the homeowner to list and sell the mortgaged property with the understanding that the net proceeds from the sale may be less than the total amount due on the first mortgage.  Generally, if the borrower makes a good faith effort to sell the property but is not successful, a bank may consider a deed-in-lieu of foreclosure.  With a deed-in-lieu of foreclosure, the borrower voluntarily transfers ownership of the property to the bank—provided the title is free and clear of other mortgages and liens.

These options will remain open through June 30, 2013.

## 13.  What am I giving up to stay in the Class?

Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case.  It also means that all of the decisions by the Court will bind you.  The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. The Settlement Agreement is available at www.PickaPaySettlement.com.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

HOW TO GET BENEFITS

**14.  How can I get benefits?**

You do not need to do anything to get benefits from the Settlement.  If the Court grants final approval to the Settlement, you will automatically be mailed a payment.  The Defendants have begun contacting Settlement Class B Members who are eligible for loan modifications or the incentive program.  If you move after you receive this Notice, please call 1-800-000-0000 to inform the administrator of your new address.

**15.  When will I get my benefits?**

Modifications are available now and eligible borrowers are being contacted by the Defendants.  Payments will be distributed to Class Members after the Court grants "final approval" to the Settlement and after any appeals are resolved.  If Judge Fogel approves the Settlement after a hearing on Month 00, 2011, there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time.

EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement Fund, and you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself – or it is sometimes referred to as "opting" out of the Class.

**16.  How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter that includes the following:
*   Your name, address, and telephone number,
*   The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
*   A statement that you want to be excluded from this Settlement, and
*   Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2011**, to:

Pick-a-Payment Exclusions
PO Box 0000
City, MN 00000

**17.  If I don't exclude myself, can I sue the Defendants for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the Defendants for the claims that the Settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

**18.  If I exclude myself from the Settlement, can I still get a payment?**

No.  You will not get any money from the Settlement if you exclude yourself from the Settlement.  If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

**THE LAWYERS REPRESENTING YOU**

| 19.  Do I have a lawyer in the case? |
| --- |

Yes.  The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

| 20.  How will the lawyers be paid? |
| --- |

The Court will decide how much Class Counsel will be paid. Class Counsel will ask the Court for attorneys' fees, costs, and expenses of up to $25 million.  These fees and expenses will be paid separately by the Defendants and will not reduce the benefits available for the Class.  Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.

**OBJECTING TO THE SETTLEMENT**

| 21. How do I tell the Court that I don't like the Settlement? |
| --- |

If you are a Class Member, you can object to the Settlement or to Class Counsel's requests for fees and expenses.  To object, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The account number(s) of your loan(s),
- A sentence stating that "You confirm under penalty of perjury that you are a Settlement Class Member,"
- The reasons you object to the Settlement,
- A list of any witnesses you may call to testify at the Fairness Hearing (*see* Question 22),
- Copies of any exhibits you intend to present to the Court at the Fairness Hearing, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **Month 00, 2011**, to the following four addresses:

| Court | Defense Counsel |
| --- | --- |
| The United States District Court for the Northern District of California<br>280 South First Street<br>San Jose, CA 95113 | T. Thomas Cottingham, III<br>WINSTON & STRAWN LLP<br>214 North Tryon Street, Suite 2200<br>Charlotte, NC 28202 |

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

| Class Counsel | Defense Counsel |
|---|---|
| Jeffrey K. Berns<br>David M. Arbogast<br>ARBOGAST & BERNS LLP<br>6303 Owensmouth Avenue, 10th Floor<br>Woodland Hills, CA 91367 | Jack R. Nelson<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105 |

### 22. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses. You may attend and you may ask to speak, but you don't have to.

### 23. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at Time x.m. on **Month 00, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3. The hearings may be moved to a different date or time without additional notice, so it is a good idea to check www.PickaPaySettlement.com. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 24. Do I have to come to the hearing?

No. Class Counsel will answer questions Judge Fogel may have. But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time to the proper address, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

### 25. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." In your letter you must include the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015 ),
- The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing, and
- Your signature.

**For More Information:   Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

You must mail your Notice of Intention to Appear, postmarked no later than **Month 00, 2011**, to the four addresses in Question 21.

## IF YOU DO NOTHING

| 26.  What happens if I do nothing at all? |
| --- |

If you do nothing, you will still get benefits from the Settlement.  However, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| 27.  How do I get more information? |
| --- |

The notice summarizes the proposed Settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement at www.PickaPaySettlement.com.  You may also write with questions to Pick-a-Payment Settlement, P.O. Box 0000, City, MN 00000, or by calling the toll free number, 1-800-000-0000.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

# TAB 3

SETTLEMENT CLASS C

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

# If You Have a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## You Could Receive Benefits from a Class Action Settlement.

> A Pick-a-Payment mortgage loan allows borrowers to make monthly payments in an amount lower than the monthly amount of interest due on the loan.

*A federal Court authorized this notice.  This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants failed to make complete and accurate disclosures with respect to their Pick-a-Payment mortgage loans.

- **The Defendants' records show that you obtained a Pick-a-Payment mortgage loan between August 1, 2003 and December 31, 2008.**

- The Settlement will provide payments and other benefits to those who qualify.  You do not need to do anything to get benefits from the Settlement.

- Please note that this Settlement does not change your obligation to continue to make payments on your mortgage loan.  You should continue to make your payments.

- Your legal rights are affected whether you act, or don't act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT | |
|---|---|
| **RECEIVE BENEFITS** | If the Court grants final approval to the Settlement, you will automatically receive benefits if you qualify. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no money from the Settlement.  This is the only option that allows you to ever be part of any other lawsuit against the Defendants about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you don't like about the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | Obtain Settlement benefits and give up rights to ever sue the Defendants about the legal claims in this case. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. Loan modifications are being offered by the Defendants now to eligible Class Members.  Payments will be made if the Court approves the Settlement and after any appeals are resolved.  Please be patient.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ……………………………………………………………………………**PAGE 3**
1. Why is there a notice?
2. What is this lawsuit about?
3. What is a Pick-a-Payment mortgage loan?
4. Why is this a class action?
5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ……………………………………………………….…**PAGE 4**
6. How do I know if I'm part of the Settlement?

**THE SETTLEMENT BENEFITS**…………………………………………………………….…**PAGE 4**
7. What does the Settlement provide?
8. What about the Attorneys General Settlement with Wells Fargo?
9. What can I get from the Settlement?
10. What is a loan modification?
11. What is the incentive program?
12. What am I giving up to stay in the Class?

**HOW TO GET BENEFITS** ……………….…………………………………………………**PAGE 6**
13. How can I get benefits?
14. When will I get benefits?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ………………………………………**PAGE 7**
15. How do I get out of the Settlement?
16. If I don't exclude myself, can I sue the Defendants for the same thing later?
17. If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU** ………………………………………………………..**PAGE 7**
18. Do I have a lawyer in the case?
19. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** …………………………………………….………**PAGE 8**
20. How do I tell the Court what I think about the Settlement?
21. What's the difference between objecting to and asking to be excluded?

**THE COURT'S FAIRNESS HEARING** ……………………………………………………...**PAGE 9**
22. When and where will the Court decide whether to approve the Settlement?
23. Do I have to come to the hearing?
24. May I speak at the hearing?

**IF YOU DO NOTHING** ………..……………………………………………….……**PAGE 10**
25. What happens if I do nothing at all?

**GETTING MORE INFORMATION** …………………………………………………….……**PAGE 10**
26. How do I get more information?

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

2

## BASIC INFORMATION

| **1.  Why is there a notice?** |
|---|

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of California, and the case is called *In Re: Wachovia Corp."Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015.  The people who sued are called Plaintiffs, and the companies they sued, World Savings, Inc.; World Savings Bank, FSB; Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A., are called the Defendants.

| **2.  What is this lawsuit about?** |
|---|

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product (*see* Question 3 below). The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions.  When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization").  The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

| **3.  What is a Pick-a-Payment mortgage loan?** |
|---|

The way the loans work is that borrowers choose one of up to four monthly payment options: a minimum payment, an interest only payment, a 15-year amortizing payment, or a 30-year amortizing payment.  When a minimum payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased.

| **4.  Why is this a class action?** |
|---|

In a class action, one or more people, called "class representatives," sue on behalf of people who have similar claims.  All these people are a "class" or "class members," except for those who exclude themselves from the class.  U.S. District Judge Jeremy D. Fogel in the United States District Court for the Northern District of California is in charge of this class action.

| **5.  Why is there a Settlement?** |
|---|

The Defendants are not admitting that they did anything wrong, but both sides want to avoid the cost of further litigation.  The Court has not decided in favor of the Plaintiffs or the Defendants. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.   The Settlement provides the opportunity for payments and other benefits to Class Members.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

## WHO IS IN THE SETTLEMENT

### 6. How do I know if I am part of the Settlement?

There are three Settlement Classes. **If you received this notice in the mail, the Defendants' records show you are a member of Settlement Class C.** If you believe you are a member of Settlement Class A or Settlement Class B, you should call 1-800-000-0000. You can view the detailed Notices for each Settlement Class at www.PickaPaySettlement.com.

Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB (now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.) anytime between August 1, 2003 and December 31, 2008.

<u>Settlement Class A</u> **(no longer have a Pick-a-Payment mortgage)**
- Includes borrowers who no longer have their Pick-a-Payment mortgage loan because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

<u>Settlement Class B</u> **(mortgage payments are not 60 or more days past due)**
- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of [insert date of preliminary approval], are <u>not</u> 60 or more days past due.

<u>Settlement Class C</u> **(mortgage payments are 60 days or more past due)**
- Includes borrowers who still have their Pick-a-Payment mortgage loan **and**
- Whose mortgage payments, as of [insert date of preliminary approval], are 60 or more days past due.

Please note that the Classes do not include any borrowers who have already released their claims involving their Pick-a-Payment mortgage loan in a prior case against any of the Defendants.

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

The Settlement provides for a loan modification program and the establishment of a $50 million Settlement Fund. After deducting a payment of up to $125,000 for the Class Representatives (*see* Question 20), the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications or another incentive program (*see* Questions 10 and 11 below). In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs (*see* Question 19) and up to $1 million to administer the Settlement.

If there is any money remaining in the $50 million Settlement Fund after all claims are paid, the Defendants will be reimbursed for the administration expenses. Any remaining funds will be distributed to The National Consumer Law Center, a not-for-profit organization selected by the Class Representatives, and a not-for-profit organization selected by the Defendants.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

A Settlement Agreement, available at the website, contains more details about the Settlement.

## 8.  What about the Attorneys General Settlement with Wells Fargo?

If you live in Arizona, Florida, Colorado, New Jersey, Washington, Texas, Illinois, or Nevada, you may receive a separate notice relating to a 2010 Settlement between those states' Attorneys General and Wells Fargo Bank, N.A. (the "Attorneys General Settlement"), which acquired World Savings Bank, FSB/Wachovia Mortgage, FSB's Pick-a-Payment mortgage loan portfolio in 2008.  In the Attorneys General Settlement, Wells Fargo Bank, N.A. is offering permanent loan modifications to eligible borrowers.  You are allowed to participate in both the Attorneys General Settlement and this Settlement.

## 9.  What can I get from the Settlement?

As a member of Settlement Class C, you are eligible to participate in the loan modification program, described below.

You are also eligible to receive a payment from the Settlement Fund after the Court grants final approval to the Settlement (*see* Question 15).  Your exact payment cannot be calculated at this time.  It will depend on the number of valid claims that are filed by members of Settlement Class A.  Members of Settlement Class C do not have to file a claim form to receive a payment from the Settlement Fund.  Please note that if you had a co-borrower on your Pick-a-Payment mortgage loan, or if you had more than one Pick-a-Payment mortgage loan, you and all other co-borrowers will only get one Settlement Payment.

## 10.  What is a loan modification?

The Defendants will offer permanent loan modifications to eligible Settlement Class C Members who live in their homes and who are at least 60 days delinquent on their mortgage payments.  Eligible Settlement Class C Members who become less than 60 days delinquent on their mortgage payments still will be eligible for the Loan Modification Program if they become in "Imminent Default" or if they again become at least 60 days delinquent on their mortgage payments.  "Imminent Default" is described in section 11 below.  The Loan Modification Program will operate through June 30, 2013.  A loan modification is a change to your loan agreement and may include principal forgiveness, loan term extension, interest rate reduction, and principal forbearance (which gives the borrower additional time to pay off the loan principal).  Please be aware that a loan modification may affect your credit rating.

Eligible Settlement Class C Members will first be considered for the federal Home Affordable Modification Program ("HAMP").  HAMP provides eligible homeowners the opportunity to modify their mortgages to make them more affordable.  If the Settlement Class C Member does not qualify under HAMP or elects not to accept a HAMP loan modification, the Defendants will consider that Settlement Class C Member for their new modification program known as Mortgage Assistance Program 2 ("MAP2R").

Settlement Class C Members who remain current on their modified payments over three years may be able to earn additional principal forgiveness.   More details on these programs are in the Settlement Agreement, which is available at www.PickaPaySettlement.com.

## 11.  What is "Imminent Default"?

Imminent Default describes a borrower who meets a test to show the borrower is reasonably likely to default on his or her Pick-a-Payment mortgage loan because of financial hardship or other changed circumstances.  Generally, the current test for "Imminent Default" is as follows:

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

1. Long Term Hardship, meaning a borrower that is having difficulty making his or her mortgage payments and the duration of that difficulty is expected to be greater than 12 months; **and**

2. Financial Hardship, defined as one of the following that currently exists or occurs prior to June 30, 2013:
   a. Death of a borrower;
   b. Long-term or permanent disability or illness of a borrower or dependent family member;
   c. Legally-documented divorce or separation of the borrower and co-borrower;
   d. Separation of borrowers unrelated by marriage, civil union, or similar civil domestic partnership under applicable law;
   e. A combination of reduction of income and increase in housing expenses (principal and interest only) that exceeds 10% of current income. The comparison period shall be approximately 12 months prior to the date modification is sought; however, a greater period may be used if the condition has been consistent; **and**

3. Cash reserves of less than $25,000, excluding retirement accounts; **and**

4. The property is occupied by the borrower as his or her principal residence; **and**

5. The borrower's loan-to-value ratio must exceed 80%, or the loan must have a positive "Net Present Value."

## 12.  What is the other incentive program?

Settlement Class C Members who are unable to qualify for modifications under the HAMP or MAP2R guidelines may qualify for incentive payments of at least $1,500 for a short-sale or deed-in-lieu of foreclosure. The Settlement Class C Member must qualify for these payments under the Home Affordable Foreclosure Alternatives ("HAFA") guidelines. HAFA guidelines are available at http://makinghomeaffordable.gov/hafa.html.

In a short sale, the bank allows the homeowner to list and sell the mortgaged property with the understanding that the net proceeds from the sale may be less than the total amount due on the first mortgage. Generally, if the borrower makes a good faith effort to sell the property but is not successful, a bank may consider a deed-in-lieu of foreclosure. With a deed-in-lieu of foreclosure, the borrower voluntarily transfers ownership of the property to the bank—provided the title is free and clear of other mortgages and liens.

These options will remain open through June 30, 2013.

## 13.  What am I giving up to stay in the Class?

Unless you exclude yourself from the Settlement, you can't sue the Defendants, continue to sue, or be part of any other lawsuit against the Defendants about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up if you get benefits from the Settlement. The Settlement Agreement is available at www.PickaPaySettlement.com.

## HOW TO GET BENEFITS

**14. How can I get benefits?**

You do not need to do anything to get benefits from the Settlement.  If the Court grants final approval to the Settlement, you will automatically be mailed a payment.  The Defendants are contacting Settlement Class C Members who are eligible for loan modifications or the incentive program.  If you move after you receive this Notice, please call 1-800-000-0000 to inform the administrator of your new address.

**15. When will I get my benefits?**

Modifications are available now and eligible borrowers are being contacted by the Defendants.  Payments will be distributed to Class Members after the Court grants "final approval" to the Settlement and after any appeals are resolved.  If Judge Fogel approves the Settlement after a hearing on Month 00, 2011 there may be appeals.  It's always uncertain whether these appeals can be resolved, and resolving them can take time.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue the Defendants on your own about the legal issues in this case, then you must take steps to get out.  This is called excluding yourself – or is sometimes referred to as opting out of the Class.

**16. How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must send a letter that includes the following:
- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- A statement that you want to be excluded from this Settlement, and
- Your signature.

You must mail your exclusion request, postmarked no later than **Month 00, 2011**, to:

Pick-a-Payment Exclusions
PO Box 0000
City, MN 00000

**17. If I don't exclude myself, can I sue the Defendants for the same thing later?**

No.  Unless you exclude yourself, you give up the right to sue the Defendants for the claims that the Settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately.  You must exclude yourself from this Class to continue your own lawsuit.

**18. If I exclude myself from the Settlement, can I still get a payment?**

No.  You will not get any money if you exclude yourself from the Settlement.  If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

**THE LAWYERS REPRESENTING YOU**

### 19.  Do I have a lawyer in the case?

Yes.   The Court has appointed these lawyers and firms as "Class Counsel," meaning that they were appointed to represent you and all Class Members: Jeffrey K. Berns and David M. Arbogast of Arbogast & Berns LLP; Gerson Smoger of Smoger & Associates; Mark Cuker of Williams Cuker Berezofsky; Eric George of Browne Woods George, LLP; Christopher Seeger of Seeger Weiss LLP; Brian Kabateck of Kabateck Brown Kellner LLP; A. Hoyt Rowell of Richardson, Patrick, Westbrook & Brickman LLP; and Evan Buxner of The Buxner Law Firm.

Class Counsel has spent over three years working on this lawsuit, including over a year of mediation to get to this Settlement.   You will not be charged for these lawyers.   If you want to be represented by your own lawyer, you may hire one at your own expense.

### 20.  How will the lawyers be paid?

The Court will decide how much Class Counsel will be paid.   Class Counsel will ask the Court for attorneys' fees, costs, and expenses of up to $25 million.   These fees and expenses will be paid separately by the Defendants and will not reduce the benefits available for the Class.   Class Counsel will also request that up to $125,000 be paid from the Settlement Fund to the 26 Class Representatives who helped the lawyers on behalf of the whole Class.


**OBJECTING TO THE SETTLEMENT**

### 21. How do I tell the Court that I don't like the Settlement?

If you are a Class Member, you can object to the Settlement or to Class Counsel's requests for fees and expenses.   To object, you must send a letter that includes the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The account number(s) of your loan(s),
- A sentence stating that "You confirm under penalty of perjury that you are a Settlement Class Member,"
- The reasons you object to the Settlement,
- A list of any witnesses you may call to testify at the Fairness Hearing (*see* Question 21),
- Copies of any exhibits you intend to present to the Court at the Fairness Hearing, and
- Your signature.

Your objection, along with any supporting material you wish to submit, must be mailed and postmarked no later than **Month 00, 2011**, to the following four addresses:

| Court | Defense Counsel |
|---|---|
| The United States District Court for the Northern District of California<br>280 South First Street<br>San Jose, CA 95113 | T. Thomas Cottingham, III<br>WINSTON & STRAWN LLP<br>214 North Tryon Street, Suite 2200<br>Charlotte, NC 28202 |

**For More Information:     Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

| Class Counsel | Defense Counsel |
|---|---|
| Jeffrey K. Berns<br>David M. Arbogast<br>ARBOGAST & BERNS LLP<br>6303 Owensmouth Avenue, 10th Floor<br>Woodland Hills, CA 91367 | Jack R. Nelson<br>REED SMITH LLP<br>101 Second Street, Suite 1800<br>San Francisco, CA 94105 |

### 22. What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement.  You can object to the Settlement only if you do not exclude yourself from the Settlement.  Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement.  If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and any requests for fees and expenses.  You may attend and you may ask to speak, but you don't have to.

### 23. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at Time x.m. on **Month 00, 2011**, at the United States District Court for the Northern District of California, located at 280 South First Street, San Jose, CA, 95113, in Courtroom #3.  The hearings may be moved to a different date or time without additional notice, so it is a good idea to check www.PickaPaySettlement.com.  At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives.  If there are objections, the Court will consider them at this time.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

### 24.  Do I have to come to the hearing?

No.  Class Counsel will answer questions Judge Fogel may have.  But, you may come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time to the proper address, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

### 25.  May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear."  In your letter you must include the following:

- Your name, address, and telephone number,
- The name of the case (*In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-CV-2015),
- The name, address, and telephone number of any attorney(s) who will be appearing on your behalf at the Fairness Hearing, and
- Your signature.

**For More Information:    Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

You must mail your Notice of Intention to Appear, postmarked no later than **Month 00, 2011**, to the four addresses in Question 20.


## IF YOU DO NOTHING

| **26.  What happens if I do nothing at all?** |
| --- |

If you do nothing, you may still get benefits from the Settlement.  However, unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the legal issues in this case, ever again.


## GETTING MORE INFORMATION

| **27.  How do I get more information?** |
| --- |

The notice summarizes the proposed Settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement at www.PickaPaySettlement.com.  You may also write with questions to Pick-a-Payment Settlement, P.O. Box 0000, City, MN 00000, and you can call the toll free number, 1-800-000-0000.

**For More Information:    Call 1-800-000-0000 or Visit www.PickaPaySettlement.com**

# TAB 4

# If You Have or Had a Pick-a-Payment Mortgage Loan with World Savings Bank or Wachovia Mortgage,

## *You Could Get Benefits from a Class Action Settlement.*

A Settlement has been reached in a class action involving Pick-a-Payment mortgages. The Settlement resolves litigation over whether the Defendants marketed their Pick-a-Payment mortgages in a deceptive manner. A Pick-a-Payment mortgage loan allowed borrowers to make payments lower than the interest due on the loan.

The Defendants include: World Savings, Inc.; World Savings Bank, FSB, Wachovia Mortgage, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A.; Wachovia Corporation; Golden West Financial Corporation; Wachovia Bank, FSB, formerly known as World Savings Bank, FSB-TX; Wachovia Mortgage Corporation; Wells Fargo Home Mortgage; and Wells Fargo Bank, N.A.

### What's this About?

The lawsuit claims that the Defendants violated various state and federal laws in connection with the Pick-a-Payment mortgage loan product. The Pick-a-Payment mortgage loan permitted the borrower to select and make a minimum payment amount for a limited time and subject to certain conditions. When a payment was insufficient to pay the interest owed, unpaid interest was added to the loan balance and the outstanding loan balance increased ("negative amortization"). The Plaintiffs claim that the Defendants did not adequately disclose the Pick-a-Payment loan's potential for negative amortization.

The Defendants deny all claims made against them, deny that their lending practices violated any laws, and deny that they financially harmed any of their customers.

### Who's Included?

There are three Settlement Classes. Each Class includes borrowers who obtained a Pick-a-Payment mortgage loan (for a primary residence) from World Savings Bank, FSB or Wachovia Mortgage, FSB anytime between August 1, 2003 and December 31, 2008.

**Settlement Class A** - Includes borrowers who no longer have their Pick-a-Payment mortgage because they sold the property securing the loan, refinanced the loan, personally paid off the loan, or have already obtained a loan modification that converted the loan to a regular mortgage.

**Settlement Class B** - Includes borrowers who still have their Pick-a-Payment mortgage loan and whose mortgage payments, as of Month 00, 2011, are not 60 or more days past due.

**Settlement Class C** -Includes borrowers who still have their Pick-a-Payment mortgage loan and whose mortgage payments, as of Month 00, 2011, are 60 or more days past due.

### What Does the Settlement Provide?

The Settlement provides for a loan modification program and the establishment of a $50 million Settlement Fund. After deducting a payment of up to $125,000 for the Class Representatives, the net Settlement Fund will be distributed equally to members of Settlement Class A who submit a valid Claim Form and all members of Settlement Classes B and C. Borrowers who still have a Pick-a-Payment mortgage loan (Settlement Classes B and C) may also be eligible for loan modifications (until June 2013) or at least $1,500 from another incentive program for a short-sale or deed-in-lieu of foreclosure.

In addition to the Settlement Fund, the Defendants will pay up to $25 million in attorneys' fees and costs and up to $1 million to administer the Settlement. More details on the Settlement are in the Settlement Agreement, which is available at www.PickaPaySettlement.com.

### How to Get Benefits?

Settlement Class A Members need to submit a Claim Form to get a payment from the Settlement Fund. Claim Forms are available online or by calling the toll-free number provided below. The deadline to submit a Claim Form is **Month 00, 2011**.

Settlement Class B and C Members **do not** have to do anything to get benefits from the Settlement. Settlement Class B and C Members will automatically be mailed a payment. Modifications are available now and eligible borrowers are being contacted by the Defendants. Payments will not be available until after the Court grants final approval to the Settlement.

### Your Other Rights

If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement. The deadline to exclude yourself from the Settlement is **Month 00, 2011**. If you stay in the Settlement, you will not be able to sue the Defendants for any claims relating to the Settlement. If you stay in the Settlement, you may object to it by **Month 00, 2011**.

The Court will hold a hearing on **Month 00, 2011** to consider whether to approve the Settlement and a request for attorneys' fees and expenses of up to $25 million and up to $125,000 for the Class Representatives, who helped the lawyers on behalf of the whole Class. The Court has appointed attorneys to represent the Class. You may hire your own attorney at your own expense.

**For More Information:     1-800-000-0000**
**www.PickaPaySettlement.com**

# TAB 5

<table>
<tr><td>

**FILE YOUR CLAIM
ONLINE AT:**

www.pickapaysettlement.com

</td><td>

FOR OFFICIAL USE ONLY

</td></tr>
</table>

## CLAIM FORM

## In Re: Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation
### In the United States District Court for the Northern District of California
### San Jose Division
### MDL No. 2015
### Lead Case No. 5:07-cv-04497

> If you are a Settlement Class A Member and wish to receive a Settlement Payment, your completed Claim Form must be Postmarked on or before _____ or Submitted Electronically to the Settlement Administrator at www.pickapaysettlement.com on or before _____.

Please read the full Notice (available at www.pickapaysettlement.com) carefully before filling out this Claim Form.

To be eligible to receive any money from the Settlement in this class action lawsuit, you must either: (1) complete this Claim Form and mail it postmarked on or before _____ to: _____; or (2) complete your Claim Form online at www.pickapaysettlement.com on or before _____. The claims of Settlement Class A Members who fail to submit their Claim Forms on time by U.S. Mail (properly addressed) or fail to fill out an online Claim Form by the deadline will be rejected and the Settlement Class A Member will be not be eligible to receive a payment.

**I wish to submit a claim and in support of that claim, I submit the following information:**

### PART 1: CLAIMANT INFORMATION

Name of Claimant who is a member of Settlement Class A, as that is defined in the Notice:
_____

Claimant Street Address: _____

City: _____ State: _____ Zip Code: _____

Claimant Telephone Number(s):   Daytime ( _ _ ) _ _ _ - _ _ _ _   Evening ( _ _ ) _ _ _ - _ _ _ _

### PART 2: SIGNATURE

Your signature below certifies that to the best of your knowledge the information above is truthful and correct. You certify that you had, but no longer have, a Pick-a-Payment mortgage loan because you sold the property securing the loan, refinanced the loan, paid off the loan personally, or have already obtained a loan modification that converted the loan from a Pick-a-Payment mortgage loan. You also certify that you have not previously released your claims pursuant to another settlement agreement, final judgment, or other dealings with the Defendants.

Signature: _____ Date: _____

# EXHIBIT A