Jack R. Nelson (SBN 111863)
jnelson@reedsmith.com
David De Jesus (SBN 173263)
ddejesus@reedsmith.com
Alicia A. Adornato (SBN 254228)
aadornato@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA  94105
Telephone:    +1 415 543 8700
Facsimile:    +1 415 391 8269

T. Thomas Cottingham, III *(admitted pro hac vice)*
tcottingham@winston.com
Stacie C. Knight *(admitted pro hac vice)*
sknight@winston.com
WINSTON & STRAWN LLP
214 North Tryon Street
Charlotte, NC 28202-1078
Telephone:    +1 704 350 7700
Facsimile:    +1 704 350 7800

Attorneys for Defendants
WACHOVIA MORTGAGE, FSB, WACHOVIA
BANK, FSB, AND GOLDEN WEST
FINANCIAL CORPORATION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to:<br><br><br>*ALL CASES* | Case No. M:09-cv-2015-JF<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**<br><br>Hearing Date:  April 29, 2011<br>Time:          9:00 a.m.<br>Place:         Courtroom 3, 5th Floor<br>Judge:         Hon. Jeremy Fogel |

*(left margin)* REED SMITH LLP — A limited liability partnership formed in the State of Delaware

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     ARGUMENT ................................................................................................................3

        A.      THE RELEASE IS NOT TOO BROAD. ..........................................................3

        B.      THE SETTLEMENT AGREEMENT PROVIDES NEW, TANGIBLE
                BENEFITS TO SETTLEMENT CLASS MEMBERS..........................................8

        C.      OBJECTIONS RELATING TO THE NET PRESENT VALUE FORMULA
                ARE UNFOUNDED............................................................................................12

III.    CONCLUSION.............................................................................................................14

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

## TABLE OF AUTHORITIES

**Page**

### Cases

*Aleem v. Bank of Am., N.A.,*
No. EDCV 09-01812-VAP (RZx), 2010 WL 532330 (C.D. Cal. Feb. 9, 2010) ........................ 11

*Amparan v. Plaza Home Mortgage, Inc.,*
678 F. Supp. 2d 961 (N.D. Cal. 2008) ................................................................................. 8

*Buick v. World Savings Bank,*
637 F. Supp. 2d 765 (E.D. Cal. 2008) ................................................................................. 6

*Carnero v. Weaver,*
No. 09-1995, 2009 U.S. Dist. LEXIS 117957 (N.D. Cal. Dec. 18, 2009) ...................................... 6

*Cross v. Downey Sav. & Loan Ass'n,*
No. CV 09-317, 2009 WL 481482 (C.D. Cal. Feb. 23, 2009) ............................................... 8

*Domnie v. Saxon Mortgage,*
No. C10-02361 HRL, 2010 WL 2991250 (N.D. Cal. July 14, 2010) ...................................... 10

*Escobedo v. Countrywide Home Loans, Inc.,*
No. 09cv1557 (BTM) (BLM), 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009) ........................... 10

*Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,*
458 U.S. 141 (1982) ............................................................................................................ 4

*Fox v. Consol. Rail Corp.,*
739 F.2d 929 (3d Cir. 1984) .............................................................................................. 12

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 13

*Hoffman v. Bank of Am., N.A.,*
No. C 10-2171 (SI), 2010 WL 2635773 (N.D. Cal. June 30, 2010) ...................................... 10

*In re Lacey,*
No. 10-1249, 2011 WL 705479 (Bankr. D. Mass. Feb. 17, 2011) ....................................... 10

*In re Vitamins Antitrust Class Actions,*
215 F.3d 26 (D.D.C. 2000) .................................................................................................. 2

*Joern v. Ocwen Loan Servicing, LLC,*
No. CV-10-0134-JLQ, 2010 WL 3516907 (E.D. Wash. Sept. 2, 2010) ................................ 10

*Jones-Boyle v. Wash. Mut. Bank, FA,*
No. CV 08-02142 JF (PVT), 2010 WL 2724287 (N.D. Cal. July 8, 2010) ...................... 5, 6, 7

*Jordan v. Paul Fin., LLC,*
No. C 07-04496, 2009 WL 192888 (N.D. Cal. Jan. 27, 2009) ............................................. 8

*Klamath Water Users Protective Ass'n v. Patterson,*
204 F.3d 1206 (9th Cir. 2000) ....................................................................................... 9, 11

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

*Manabat v. Sierra Pac. Mortgage Co.*,
    No. CV F 10-1018 LJO JLT, 2010 WL 2574161 (E.D. Cal. June 25, 2010) ............................... 11

*Marks v. Bank of Am., N.A.*,
    No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988 (D. Ariz. June 22, 2010) .......................... 11

*Mincey, v. World Savings Bank, FSB*,
    614 F. Supp. 2d 610 (D.S.C. 2009) ............................................................................... 4, 6, 7

*Newbeck v. Wash. Mut. Bank*,
    No. 09-1599, 2010 U.S. Dist. LEXIS 3830 (N.D. Cal. Jan. 19, 2010) ............................... 6

*Pennwalt Corp. v. Plough, Inc.*,
    676 F.2d 77 (3d Cir. 1982) ....................................................................................... 12

*Plascencia v. Lending 1st Mortgage*,
    583 F. Supp. 2d 1090 (N.D. Cal. 2008) ........................................................................ 8

*Quezada v. Loan Ctr. of Calif., Inc.*,
    No. CIV. 08-177, 2008 WL 5100241 (E.D. Cal. Nov. 26, 2008) ...................................... 8

*Sena v. Bank of Am. Home Loans*,
    No. 2:10-CV-00947-KJD-LRL, 2011 WL 1204333 (D. Nev. Mar. 29, 2011) .......................... 10

*Simmons v. Countrywide Home Loans, Inc.*,
    No. 09cv1245 JAH (JMA), 2010 WL 2635220 (S.D. Cal. June 29, 2010) .......................... 11

*Speleos v. BAC Home Loans Servicing, L.P.*,
    No. 10-11503-NMG, 2010 WL 5174510 (D. Mass. Dec. 14, 2010) .................................... 10, 11

*TNT Mktg., Inc. v. Agresti*,
    796 F.2d 276 (9th Cir. 1986) ....................................................................................... 12

*Torres v. Litton Loan Servicing LP*,
    No. 1:10-cv-01709-OWW-SKO, 2011 WL 149833 (E.D. Cal. Jan. 18, 2011) .......................... 10

*Valenzuela v. Am. Home Mortgage Inv. Trust 2005-2*,
    No. CV-F-08-1179, 2009 WL 839930 (E.D. Cal. Mar. 30, 2009) .................................... 8

*Wright v. Bank of Am.*,
    No. CV 10-01723 JF (HRL), 2010 WL 2889117 (N.D. Cal. July 22, 2010) .......................... 9

*Zendejas v. GMAC Wholesale Mortgage Corp.*,
    No. 1:10-CV-00184 OWW GSA, 2010 WL 2629899 (E.D. Cal. June 29, 2010) ...................... 11

*Zlotnik v. U.S. Bancorp.*,
    No. 09-3855, 2009 U.S. Dist. LEXIS 119857 (N.D. Cal. Dec. 22, 2009) .......................... 6

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-iii-

1

**Statutes and Rules**

2     12 C.F.R. § 560.2 (10) ........................................................................................ 5

3     12 C.F.R. § 560.2 (9) .......................................................................................... 5

4     12 C.F.R. § 560.2(a) ........................................................................................... 5

5     12 C.F.R. § 560.2(b) ........................................................................................... 7

6     12 C.F.R. § 560.2(b)(4) ...................................................................................... 5

7     Cal. Civ. Code § 1542 ........................................................................................ 3

8

**Other Authorities**

9     Restatement (Second) of Contracts, § 302 (1979) ............................................ 9

10    Restatement (Second) of Contracts, § 313(2) ................................................... 9

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

# I.   **INTRODUCTION**

Over the course of the last 3½ years, at least ten putative class actions have been filed against Defendants over the Pick-a-Payment loan product that was offered by Defendant World. The Pick-a-Payment loan is a mortgage loan that gives the borrower up to four payment options each month. In connection with the Pick-a-Payment loan, World provided its borrowers with many disclosures in documents pertinent to their loan transactions. These included, but were not limited to, the mortgage note (the "Notes"), the final Truth-in-Lending Disclosure Statement (the "TILDS"), the Loan Program Disclosure ("LPD"), and the Deferred Interest Acknowledgement ("DIA").

The complaints in these putative class actions, all of which have been consolidated into this multidistrict litigation (the "Action"), are virtually identical. Essentially, the complaints allege that World presented them with inaccurate payment schedules, did not disclose the interest rates on which those payment schedules were based, and failed to adequately disclose the Pick-a-Payment loan's negative amortization feature. *See, e.g., Mandrigues* Corrected Second Amended Complaint, ¶¶ 67-97. Based on these allegations, the plaintiffs claim that (1) World's loan disclosures violated the Truth-in-Lending Act ("TILA"); (2) World engaged in fraud; (3) World violated state unfair and deceptive trade practices statutes, including California's Unfair Competition Law (the "UCL"); and (4) World breached its loan contracts and breached the implied covenant of good faith and fair dealing.

Defendants deny that they engaged in any wrongdoing, deny that they violated TILA or any state unfair and deceptive trade practices statute, deny that they committed a breach of contract or breach of the implied covenant of good faith and fair dealing, and deny that they engaged in any type of fraudulent conduct. Defendants also deny that Plaintiffs have set forth any valid causes of action against them. Defendants have asserted numerous defenses to Plaintiffs' claims, including that Plaintiffs' state law claims are preempted by the Home Owners Loan Act of 1933 ("HOLA"), and that World's loan disclosures fully complied with TILA. Nevertheless, Defendants desire to settle and terminate the claims so as to avoid further lengthy and time-consuming litigation and the burden, inconvenience, and expense connected therewith. Accordingly, on December 10, 2010, the Parties

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-1-

reached an agreement in principal, which is now embodied in the Settlement Agreement.

The Settlement Agreement provides that Defendants will pay $50 million (the "Settlement Amount") for the benefit of all borrowers who, from August 1, 2003 to December 31, 2008, obtained a Pick-a-Payment loan from World that was secured by their primary residence. As described below, Defendants also have made a loan modification program available to qualifying Settlement Class Members who still have their Pick-a-Payment mortgage loans. This loan modification program, which will remain open until June 30, 2013, will provide Settlement Class Members with substantial, non-monetary benefits.

There are more than 522,000 Settlement Class Members covered by the Settlement Agreement, yet a mere 36 objections were filed (.000067% of the Settlement Class).[1] The majority of those few objections simply express personal dissatisfaction with the benefits of the Settlement Agreement.[2] Moreover, five of those objectors have actually opted out, and do not have standing to object to the settlement.[3] *See, e.g., In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 28-29 (D.D.C. 2000) (holding "class members who have opted out of a 23(b)(3) class action have no standing to object to a subsequent class settlement").

One of the lengthiest remaining objections was submitted by Florida attorney Michael V. Hargett—that filing is almost 200 pages long. Hargett's objections are directed at two primary issues: (1) the scope of the release; and (2) his assertion that the settlement benefits would be available to all Settlement Class Members in the absence of the Settlement Agreement. As explained below, however, these objections are without merit and do not provide a basis to reject the Settlement Agreement.

---

1 Some objectors have withdrawn their objections, and others were filed by individuals who are not in the Settlement Class. Those objections are not included in the total number of objections.

2 These "dissatisfaction" objections are the objections submitted by Evelyn Calangian, Alan and Laurie Carrico, Mary Christmas, Edwin Commet, Geeta and Basdeo Deosaran, Theodore T. Dooley, Marc and Rosemary Gaudreau, Lanette Gorman, Neno and Ashley Grguric, Robert Jennings, Robert and Deidre Jones, Vaid Kalyan, John and Lucia Kennedy, Deborah Lozano, Philip Minaudo, Richard Names, Marvin and Cheryl Nichols, Arlene Payne, Allyson Reilly, Jon Rickards, Marcella Rose, Marlin Roth, Scott and Janice Roussel, Donald Smith, Keith Smith, Patrick Standifer, Walter Thomas, Miguel and Viveca Vega, James Webb, and Stephanie Zimmerlink. Another set of objectors, Dustin and Sarah Maroney, has expressed their satisfaction with their Pick-a-Payment loan and object to the settlement because they do not believe Defendants did anything wrong.

3 The objectors who have opted out are David Bencivenga, Connie Pabon, Arthur Prisco, Vicki Rivera, and Andrew Nava.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    The final objections are largely redundant of Hargett's objections.  However, as explained

2    below, to the extent that these objections do anything other than re-till the barren ground staked out

3    by Hargett, none provides sufficient justification for scuttling what is, in fact, a very good deal for

4    the Settlement Class Members.  Accordingly, the Court should overrule all objections and enter a

5    final order approving the settlement.

6                            II.    **ARGUMENT**

7    **A.    THE RELEASE IS NOT TOO BROAD.**

8        The Settlement Agreement releases Defendants from:

9        the Alleged Claims[4] and any and every actual or potential known or
         unknown claim, liability, right, demand, suit, matter, obligation,
10       damage, loss or cost, action or cause of action, of every kind and
         description that the Releasing Party has or may have, including
11       assigned claims and Unknown Claims,[5] asserted or unasserted, latent
         or patent, that is, has been, or could have been or in the future might be
12       asserted by any Releasing Party in the Lawsuit, the Related Actions,
         any other case consolidated in the Lawsuit, or in any other action or
13       proceeding in this Court, or any other court, administrative venue,
         tribunal or arbitration or other forum, regardless of the type or amount
14       of relief or damages claimed, against any of the Released Entities
         arising out of the Alleged Claims, the origination of the Settlement
15       Class Member's Pick-a-Payment mortgage loan, the manner in which
         the Defendants applied the Settlement Class Member's payments to
16       principal and interest, negative amortization, the Pick-a-Payment
         mortgage loan's potential for negative amortization, the disclosure of
17       the Pick-a-Payment mortgage loan's potential for negative
         amortization, and the disclosure of the manner in which payments
18       would be applied to principal and interest.

19   ────────────────────────────────

20   4 Defined in the Settlement Agreement as "the claims that are alleged in the Lawsuit and the Related
     Actions, including, but not limited to, claims that the Defendants and the Additional Defendants
21   violated TILA, state unfair competition laws, state unfair and deceptive trade practices statutes, and
     state consumer protection laws; breached the terms of the Parties' contracts; engaged in fraudulent
22   misrepresentations or omissions; and breached the implied duty of good faith and fair dealing in
     connection with the Plaintiffs' Pick-a-Payment mortgage loans by failing to adequately disclose the
23   loans' potential for negative amortization, providing Borrowers with inaccurate payment schedules,
     failing to disclose the interest rates on which those payment schedules were based, and failing to
24   disclose the terms of the Parties' legal obligations, entitling them to damages, statutory penalties,
     restitution, punitive damages, interest, attorneys' fees, costs, injunctive relief, and other legal or
25   equitable relief under state and federal law." Settlement Agreement, Section 1.6.
     5 Defined in the Settlement Agreement as "claims that could have been raised in the Lawsuit and/or
26   in the Related Actions and that the Releasing Parties, or any one of them, do not know or suspect to
     exist, which, if known by him, her, or it, might affect his, her, or its agreement to release the
27   Released Entities or the Alleged Claims, or might affect his, her, or its decision to agree, object to, or
     not object to the Settlement.  Upon the Effective Date, any Releasing Party shall be deemed to have,
28   and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the
     provisions, rights, and benefits of § 1542 of the California Civil Code."  Settlement Agreement,
     Section 1.68.

Settlement Agreement, Section V.  Hargett challenges the scope of the Release, because he claims it precludes a Settlement Class Member from raising "counterclaims and defenses to [P]ick-a-[P]ay[ment] foreclosure action[s] filed by [Defendants]."  This objection is without merit.

First, although Hargett does not identify the specific "counterclaims and defenses to [P]ick-a-[P]ay[ment] foreclosure action[s] filed by [Defendants]" he claims should be preserved, the Release *does not* apply to any claims or defenses to the foreclosure proceeding itself—*i.e.*, claims challenging the manner in which Defendants conducted a foreclosure proceeding, claims alleging that Defendants failed to comply with state foreclosure requirements, and the like.  Those claims are preserved, and Settlement Class Members retain their rights raise them where applicable and appropriate.

Second, the claims covered by the Release are not claims that would entitle a borrower to an order preventing foreclosure.  Under TILA, *an extended right of rescission is the only remedy that could prevent a foreclosure*, and, as this Court has already explained, the TILA violations alleged in this Action (and covered by the Release), simply do not trigger an extended right to rescind.  *See* Order Denying Motion for Preliminary Injunction and Entering Stay of Action (1/20/09) at 7-12 (Doc. No. 157).  *See also Mincey*, v. *World Savings Bank, FSB,* 614 F. Supp. 2d 610, 634-35 (D.S.C. 2009) (no extended right of rescission for the TILA violations alleged herein).

Because TILA does not provide borrowers with any remedy that could prevent a foreclosure, borrowers are left with state law claims.  However, *none* of the state law claims covered by the Release would provide a borrower with a valid defense to foreclosure, because those claims are preempted by HOLA.  HOLA's paramount purpose is to ensure the solvency of federal associations through a uniform scheme of regulation so that the public has access to home financing. 12 C.F.R. §560.2. In furtherance of this goal, HOLA empowers the Office of Thrift Supervision (the "OTS") to authorize the creation of federal savings and loan associations, to regulate them, and by its regulations, to preempt conflicting state law. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161-62 (1982).  Accordingly, HOLA's implementing regulations provide:

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

> OTS hereby occupies the entire field of lending regulation of federal savings and loan associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law … without regard to state laws purporting to regulate or otherwise affect their credit activities … For purposes of this section, "state law" includes any state statute, regulation, ruling, order, or judicial decision.

12 C.F.R. § 560.2(a). The regulations go on to provide:

> The types of state laws preempted by … this section include, without limitation, state laws purporting to impose requirements regarding …
>
> ***The terms of credit***, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan …
>
> ***Disclosure and advertising***, including state laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents…
>
> ***Processing, origination, servicing,*** sale, or purchase of, or investment or participation in, mortgages …

12 C.F.R. §§ 560.2(b)(4), (9), (10) (emphasis added).   Thus, OTS has exclusive authority to regulate the savings and loan industry in the sense of establishing requirements for disclosure of credit information to customers. *See id.*

As this Court recently held in *Jones-Boyle v. Wash. Mut. Bank, FA*, No. CV 08-02142 JF (PVT), 2010 WL 2724287 (N.D. Cal. July 8, 2010), even broad state statutes are preempted when they purport to regulate the lending activities of a federally-chartered financial institution.  In *Jones-Boyle*, this Court examined and dismissed state law claims that are substantively indistinguishable from the state law claims asserted, and being released, by the Class Representatives here.

First, the plaintiff in *Jones-Boyle* sought to assert a fraudulent omissions claim based upon allegations virtually identical to those made by the Class Representatives here.[6]  Yet, as this Court explained in *Jones-Boyle*:

---

6 A comparison of the allegations in *Jones-Boyle* to the allegations made in *Mandrigues* is attached as Exhibit 1.  Because *Mandrigues* is the lead case in this Action, Defendants have elected to use that complaint for comparison purposes, but because all of the complaints in this Action are virtually identical, the result of a comparison of those complaints to the *Jones-Boyle* complaint would be the same.

-5-

> Examining [the plaintiff's] fraudulent omissions claim ..., it is apparent that the claim is preempted [by HOLA]. [The plaintiff] alleges **non-disclosure of negative amortization in the loan documents, non-disclosure of different monthly payment options and their respective effect over the life of the loan, misleading statements in the loan documents as to how payments would be applied, and misleading representations as to the interest rate in credit documents**. Applying state law to these claims clearly would impose requirements on a federal savings association and affect its "terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance ... or term to maturity of the loan" as well as its "disclosures and advertising included in credit-related documents."

*Jones-Boyle*, 2010 WL 2724287, at *7 (citations omitted and emphasis added). The court in *Mincey v. World Savings Bank, FSB,* 614 F. Supp. 2d at 645—also considering allegations identical to those made by the plaintiffs in *Mandrigues*—agreed. As it explained:

> Reading these allegations, it is clear that Plaintiffs' [fraudulent omissions claim] is preempted. The allegations concern what [World] should have **disclosed**, and 12 C.F.R. § 560.2(b)(9) specifically indicates that state laws purporting to impose requirements regarding "[d]isclosure and advertising" are preempted.

*Id.* (emphasis in original). The same reasoning would prevent borrowers from successfully asserting, in an effort to forestall or prevent foreclosure, any fraud-based claims challenging the sufficiency of World's loan disclosures.

Similarly, the UCL claim in *Jones-Boyle* was virtually indistinguishable from the UCL claims that were brought, and are being released, by the Class Representatives here. *See* Exhibit 1. However, this Court in *Jones-Boyle* found these claims to be preempted:

> [Plaintiff's] claim that WaMu violated the UCL in its marketing of Option ARM loans also is preempted by HOLA. **Requiring WaMu to comply with state laws with respect to the means by which it advertises, discloses, processes, and extends terms of credit conflicts directly with federal law**.

*Jones-Boyle*, 2010 WL 2724287, at *7 (citations omitted and emphasis added).[7]   As with the

---

7 Indeed, as this Court noted in *Jones-Boyle*, "[a] number of other district courts within the Ninth Circuit have concluded that UCL claims with similar allegations are preempted." *Id.* (citing *Newbeck v. Wash. Mut. Bank*, No. 09-1599, 2010 U.S. Dist. LEXIS 3830, at *14 (N.D. Cal. Jan. 19, 2010); *Zlotnik v. U.S. Bancorp.*, No. 09-3855, 2009 U.S. Dist. LEXIS 119857, at **24-25 (N.D. Cal. Dec. 22, 2009); *Carnero v. Weaver*, No. 09-1995, 2009 U.S. Dist. LEXIS 117957, at **7-9 (N.D. Cal. Dec. 18, 2009); and *Buick v. World Savings Bank*, 637 F. Supp. 2d 765, 774 (E.D. Cal. 2008)).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  fraudulent omissions claim, the court in *Mincey* agreed:

2  > The alleged violation of the [South Carolina Unfair Trade Practices
3  > Act] is in the failure to make certain disclosures concerning the loans
4  > at issue. Again, 12 C.F.R. § 560.2(b) specifically states that state laws
    > purporting to impose requirements regarding disclosures are
    > preempted.

5  *Mincey*, 614 F. Supp. 2d at 646. The same reasoning would prevent borrowers from successfully

6  asserting, in an effort to forestall or prevent foreclosure, any state unfair or deceptive trade practices

7  claims based on the sufficiency of World's loan disclosures.

8      Finally, this Court in *Jones-Boyle* dismissed claims for breach of contract and breach of the

9  implied covenant of good faith and fair dealing that were identical to those that were brought, and

10 are being released, in this Action. *See* Exhibit 1. As this Court explained:

11 > [The plaintiff] … alleges breach of contract and the implied covenant
    > of good faith and fair dealing. This claim is based entirely on the Note
12 > and the [Truth in Lending disclosure statement]. *[The plaintiff]*
    > *alleges that the interest rate in these documents did not apply to the*
13 > *payment schedule and that [the defendant] knew that the payment*
    > *schedule was not based on the interest rate listed but on a lower rate*
14 > *which caused the loan contract to be uncertain and ambiguous as to*
    > *the amount borrowers would have to pay each month to avoid*
15 > *negative amortization. [The plaintiff] also claims that [the*
    > *defendant] expressly and/or through its conduct and actions agreed*
16 > *that [the] plaintiff's monthly payment obligations would be sufficient*
    > *to pay both the principal and interest owed on the loan.* These
17 > allegations are premised on [the defendant's] conduct "processing,
    > originating, and servicing mortgages" and its disclosures in credit-
18 > related documents. Accordingly, the contract-based claims … are
    > preempted.

19

20 *Jones-Boyle*, 2010 WL 2724287, at *7 (citations omitted and emphasis added). As with claims for

21 fraud and unfair competition/deceptive trade practices, the same reasoning would prevent borrowers

22 from successfully asserting, in an effort to forestall or prevent foreclosure, any breach of contract

23 claim based upon the content of World's loan disclosures or the manner in which World applied

24 payments to principal and interest.[8]

25 ─────────────────────────

26 8 Defendants also note that the courts almost uniformly have held that where, as here, the note
   specifically explains that (1) the borrower's minimum payment "*may not be sufficient to pay the*
27 *entire amount of interest accruing on the unpaid Principal balance*" and (2) if the amount of his
   actual payment is insufficient to pay the total amount of interest that is due, "*the amount of interest*
28 *that is not paid each month, called "Deferred Interest," will be added to my Principal and will*
   *accrue interest at the same rate as the Principal,*" claims for breach of contract and breach of the
   implied covenant of good faith and fair dealing simply cannot survive. *See, e.g.*, *Jones-Boyle*, 2010

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

In sum, Hargett's claim that the Release is too broad simply is without merit.  None of the claims being released in this Action would provide a borrower with a valid defense to a foreclosure proceeding.  Accordingly, Hargett's Objection should be overruled.

**B.     THE SETTLEMENT AGREEMENT PROVIDES NEW, TANGIBLE BENEFITS TO SETTLEMENT CLASS MEMBERS.**

Next, Hargett argues that because Defendants have agreed with certain state Attorneys' General to make the Loan Modification Program available to borrowers in those states, the settlement benefits are available to all Settlement Class Members in the absence of the Settlement Agreement.  This argument also is without merit.

First, this argument overlooks that, under the Settlement Agreement, all Settlement Class Members *automatically* are entitled to a cash payment from the $50 million Settlement Fund, regardless of their individual circumstances.  This benefit is not available under any of the state Attorneys' General agreements.

Second, while Defendants acknowledge that the Loan Modification Program outlined in the Settlement Agreement is identical to the loan modification programs outlined in the Attorneys' General Assurances, these Assurances are in place in *only ten states* (Arizona, California, Colorado, Florida, Illinois, Kansas, Nevada, New Jersey, Texas, and Washington).  Thus, in the absence of the Settlement Agreement, the Loan Modification Program would be unavailable to borrowers in the remaining forty states.  Moreover, the Settlement Agreement in this Action was signed *before* a final agreement was reached with the California Attorney General[9]—a state where the highest percentage

WL 2724287, at *12-13 (dismissing claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on allegations identical to those made by the Class Representatives here); *Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1101 (N.D. Cal. 2008) (same); *Amparan v. Plaza Home Mortgage, Inc.*, 678 F. Supp. 2d 961, 978 (N.D. Cal. 2008) (same); *Valenzuela v. Am. Home Mortgage Inv. Trust 2005-2*, No. CV-F-08-1179, 2009 WL 839930, at *23-24 (E.D. Cal. Mar. 30, 2009) (same); *Cross v. Downey Sav. & Loan Ass'n*, No. CV 09-317, 2009 WL 481482, at *8-9 (C.D. Cal. Feb. 23, 2009) (same); *Jordan v. Paul Fin., LLC*, No. C 07-04496, 2009 WL 192888, at *7 (N.D. Cal. Jan. 27, 2009) (refusing to grant preliminary injunction where defendants "raised serious questions about the viability of plaintiff's contract claims"); *Quezada v. Loan Ctr. of Calif., Inc.*, No. CIV. 08-177, 2008 WL 5100241, at *7-9 (E.D. Cal. Nov. 26, 2008) (same); and *Nichols v. Greenpoint Mortgage Funding, Inc.*, No. SA CV 08-750 DOC, 2008 WL 3891126, at *4 (C.D. Cal. Aug. 19, 2008) (same).
9 The Settlement Agreement was signed on December 10, 2010.  The California Assurance was signed on December 16, 2010.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

of Settlement Class Members reside.  Thus, contrary to Hargett's claims, the Settlement Agreement does provide new, previously unavailable benefits to Settlement Class Members.

Finally, and most importantly, neither the Home Affordable Modification Program ("HAMP") nor the Attorneys' General Assurances provides individual borrowers with standing to enforce their terms, while the Settlement Agreement does.

Because the Settlement Class Members are not parties to the HAMP agreement or the Attorneys' General Assurances, they have standing to enforce those agreements only if they are intended third-party beneficiaries to those agreements.  In the Ninth Circuit, this analysis is governed by the Restatement of Contracts, which provides:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts, § 302 (1979) (the "Restatement").  Thus, "to sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties of the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210-11 (9th Cir. 2000).  As the Ninth Circuit Court of Appeals has explained, "one way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him or her." *Id.* (citing the Restatement, § 302(1)(b) cmt. d.).  Moreover,

> parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and *may not enforce the contract absent a clear intent to the contrary*.  Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested.

*Id.* at 1211 (citing the Restatement, § 313(2) and cmt. a. thereto) (emphasis added).

Using this analysis, this Court, and many others, have held that individual borrowers do not have any enforceable rights under HAMP.  For example, in *Wright v. Bank of Am.*, No. CV 10-01723 JF (HRL), 2010 WL 2889117 (N.D. Cal. July 22, 2010) (Fogel, J.), this Court held that there

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1   is no private right of action under HAMP because individual borrowers are not third-party

2   beneficiaries to the HAMP agreement.  As this Court explained:

3   > The HAMP contract … obviously was entered into with the intent of
>   aiding home-loan borrowers, but it is equally obvious that the contract
4   > does not secure an enforceable right for non-parties. … At most, the
>   [HAMP agreement] guarantee[s] only that an eligible borrower will be
5   > evaluated for a loan modification.

6   *Id.* at *4.  Similarly, in *Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 (BTM) (BLM),

7   2009 WL 4981618 (S.D. Cal. Dec. 15, 2009), the court reasoned that although the HAMP agreement

8   "was entered into in part for the benefit of qualified borrowers and with these borrowers in mind,"

9   "the language of the contract does not show that the parties intended to grant qualified borrowers the

10  right to enforce the [a]greement." *Id.* at *2. *See also Sena v. Bank of Am. Home Loans*, No. 2:10-

11  CV-00947-KJD-LRL, 2011 WL 1204333, at * 3 (D. Nev. Mar. 29, 2011) ("borrowers lack standing

12  to enforce the HAMP agreement"); *In re Lacey*, No. 10-1249, 2011 WL 705479, at *1 (Bankr. D.

13  Mass. Feb. 17, 2011 (no private right of action as a third-party beneficiary under HAMP); *Torres v.

14  Litton Loan Servicing LP*, No. 1:10-cv-01709-OWW-SKO, 2011 WL 149833, at *2 (E.D. Cal. Jan.

15  18, 2011) ("there is no private right of action under HAMP"); *Speleos v. BAC Home Loans

16  Servicing, L.P.*, No. 10-11503-NMG, 2010 WL 5174510, at *5 (D. Mass. Dec. 14, 2010) ("as a

17  general proposition, public citizens are not intended third-party beneficiaries to government

18  contracts despite the fact that such contracts are usually intended to benefit the public in some way.

19  Without any specific statement in the [HAMP] Agreement or the HAMP Guidelines that borrowers

20  may enforce a servicer agreement through breach of contract actions, this Court finds that the

21  plaintiffs have not stated a claim for breach of a third-party contract."); *Joern v. Ocwen Loan

22  Servicing, LLC*, No. CV-10-0134-JLQ, 2010 WL 3516907, at *5 (E.D. Wash. Sept. 2, 2010)

23  (borrowers lack standing to enforce HAMP); *Hoffman v. Bank of Am., N.A.*, No. C 10-2171 (SI),

24  2010 WL 2635773, at *5 (N.D. Cal. June 30, 2010) (no private right of action to enforce HAMP);

25  *Domnie v. Saxon Mortgage*, No. C10-02361 HRL, 2010 WL 2991250, at *2 (N.D. Cal. July 14,

26  2010) ("lenders and loan servicers generally do not owe a legal duty to their borrowers" and HAMP

27  "do[es] not place a duty upon [lenders] to provide a loan modification"); *Zendejas v. GMAC

28  Wholesale Mortgage Corp.*, No. 1:10-CV-00184 OWW GSA, 2010 WL 2629899, at *3 (E.D. Cal.

-10-

June 29, 2010) ("qualified borrowers are incidental beneficiaries of the [HAMP] [a]greement and do not have enforceable rights under the contract."); *Simmons v. Countrywide Home Loans, Inc.*, No. 09cv1245 JAH (JMA), 2010 WL 2635220, at *5 (S.D. Cal. June 29, 2010) (borrowers lack standing to sue for an alleged breach of the HAMP agreement); *Manabat v. Sierra Pac. Mortgage Co.*, No. CV F 10-1018 LJO JLT, 2010 WL 2574161, at *11 (E.D. Cal. June 25, 2010) ("Congress did not intend to create a private right of action for violation of HAMP against lenders that received HAMP funds."); *Marks v. Bank of Am., N.A.*, No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *7 (D. Ariz. June 22, 2010) (borrowers lack standing to enforce HAMP); *Villa v. Wells Fargo Bank, N.A.*, No. 10CV81 DMS (WVG), 2010 WL 935680, at *3 (S.D. Cal. Mar. 15, 2010) (individual borrowers do not have standing to enforce HAMP); *Aleem v. Bank of Am., N.A.*, No. EDCV 09-01812-VAP (RZx), 2010 WL 532330, at *4 (C.D. Cal. Feb. 9, 2010) ("There is no express or implied right to sue fund recipients ... under HAMP.").

The same reasoning holds true with respect to the Attorneys' General Assurances. Again, as the Ninth Circuit Court of Appeals has cautioned, "[p]arties that benefit from a governmental contract are generally assumed to be incidental beneficiaries, and may not enforce the contract ***absent a clear intent to the contrary***." *Klamath*, 204 F.3d at 1211. Here, the terms of the Attorneys' General Assurances are dispositive on this issue. As they all provide:

> Nothing in this Assurance shall be construed as authorizing any person or entity ***other than a State acting through its Attorney General*** to enforce or seek remedies under this Assurance or as a result of this Assurance or a breach thereof.

*See, e.g.*, Arizona Assurance, Section IV.B.; California Assurance, Section IV.B.; Florida Assurance, Section IV.B.; New Jersey Assurance, Section IV.B.; Texas Assurance, Section IV.B.; Washington Assurance, Section IV.B. (emphasis added). In light of this clear language, "and without any specific statement in the [Attorneys' General Assurances] that borrowers may enforce [those Assurances] through breach of contract actions," *Speleos*, 2011 WL 5174510, at *5, borrowers have no standing to enforce the Attorneys' General Assurances.

On the other hand, the Settlement Agreement creates a binding, enforceable contract between Defendants and the Settlement Class Members. *See, e.g.*, *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

278 (9th Cir. 1986); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir. 1982); *Fox v. Consol. Rail Corp.*, 739 F.2d 929 (3d Cir. 1984).   Under the Settlement Agreement, unlike the HAMP agreement, the Defendants are ***required*** to offer loan modifications to qualifying borrowers:

> Commencing December 18, 2010 and continuing until June 30, 2013, the Defendants ***shall*** make loan modifications available for Settlement Class B Members in Imminent Default, who later become in Imminent Default, or who later become in default, and Settlement Class C Members …

Settlement Agreement, Section VI.E.  (emphasis added).  And, importantly, ***all*** applications for loan modifications that result in a denial are reviewed by a management-level employee, and, that second-level review process can result, and has in fact resulted, in the denial being reversed—*i.e.*, the borrower receiving a loan modification.  *See* Declaration of Michael J. Dolan in Support of Final Approval of Settlement and in Response to Certain Objections ("Dolan Decl."), ¶ 14.   Nonetheless, because the Settlement Agreement creates a binding and enforceable contract between Defendants and Settlement Class Members, any Settlement Class Member who believes that the Defendants have erroneously denied him for a loan modification can raise that claim in any court of competent jurisdiction.   Similarly, any Settlement Class Member who believes the Defendants are not complying with the Settlement Agreement on a class-wide basis may look to this Court for enforcement.  And finally, all Settlement Class Members are directly represented by Class Counsel with respect to the benefits of the Settlement Agreement, rather than indirectly by a State Attorney General.   This benefit has already manifested itself through Class Counsel's monitoring of Defendants' compliance with the Settlement Agreement.

For all of these reasons, the Settlement Agreement does provide Settlement Class Members with new, previously unavailable benefits, and Hargett's argument to the contrary must be rejected.

## C.   OBJECTIONS RELATING TO THE NET PRESENT VALUE FORMULA ARE UNFOUNDED.

The final group of objectors who object on the basis of something other than general dissatisfaction with the Settlement Agreement, attacks the Settlement Agreement's Net Present Value ("NPV") provisions, arguing that the settlement should not be approved because Settlement Class Members do not have the ability to review Defendants' NPV calculations.  This argument is a

-12-

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  red-herring.

2      The NPV test compares the expected economic outcome of the loan with and without the

3  proposed modification.  Dolan Decl., ¶ 5.  The calculation depends, in part, on the current value of

4  the property securing the loan.  *Id.*  Since June 2010, Wells Fargo has maintained a practice of

5  obtaining a full appraisal from an independent, fully-licensed appraiser in order to assess a

6  property's current value.  *Id.*  ***The remaining data that goes into the NPV calculation is provided by***

7  ***the U.S. Department of the Treasury***.  *Id.*  Accordingly, contrary to the objectors' suggestions,

8  Defendants cannot manipulate the data that goes into the NPV calculations.

9      Class Counsel has reviewed Defendants' NPV formula on two separate occasions and is

10  satisfied that the formula is fair.  Moreover, the Settlement Agreement specifically provides that, if

11  the Court desires, Defendants will disclose the NPV formula to the Court *in camera*, for the Court's

12  independent review.   Accordingly, the objections relating to the Settlement Agreement's NPV

13  provisions should be overruled.

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

-13-

### III.   CONCLUSION

"Settlement is the offspring of compromise; the question [a court addresses] is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  That amply is the case here.  Accordingly, the Court should overrule all objections and enter a final order approving the settlement and dismissing the Action with prejudice.

DATED:  April 15, 2011

REED SMITH LLP

**s/ Jack R. Nelson**
Jack R. Nelson (SBN 111863)
David De Jesus (SBN 173263)
Alicia A. Adornato (SBN 254228)

WINSTON & STRAWN LLP

**s/ T. Thomas Cottingham, III**
T. Thomas Cottingham*
Stacie C. Knight*

*Admitted *pro hac vice*

Attorneys for Defendants

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT

EXHIBIT 1

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| *JONES-BOYLE* ALLEGATIONS | *MANDRIGUES* ALLEGATIONS |
|---|---|
| **Claim: Fraudulent Omissions** | **Claim: Fraudulent Omissions** |
| "As alleged herein, pursuant to TILA, 15 U.S.C. § 1601, *et. seq.*, Regulation Z (12 C.F.R. 226), and the Federal Reserve Board's Official Staff Commentary, Defendants ... had a duty to disclose to Plaintiff and Class Members (i) the actual interest rate on which the payment amounts listed in the Truth in Lending Disclosure Statement are based (12 C.F.R. § 226.17(c)); (ii) that making the payments according to the payment schedule listed in the Truth in Lending Disclosure Statement will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19); (iii) that the payment amounts listed on the Truth in Lending Disclosure Statement is insufficient to pay both the principal and interest; and (iv) complete information regarding the various monthly payment choices the borrower would have and how different options would affect the amount the borrower would pay over the life of the loan and the loss of equity in the borrower's home." *Jones-Boyle*, Second Amended Complaint, ¶ 124. | "As alleged herein, pursuant to TILA, 15 U.S.C. § 1601, *et. seq.*, Regulation Z (12 C.F.R. 226), and the Federal Reserve Board's Official Staff Commentary, Defendants had a duty to disclose to Plaintiffs, and each Class Member, (i) the actual interest rate on which the payment amounts listed in the Truth in Lending Disclosure Statement are based (12 C.F.R. § 226.17(c)); (ii) that making the payments according to the payment schedule listed in the TILDS will result in negative amortization and that the principal balance will increase (12 C.F.R. § 226.19; and (iii) that the payment amounts listed on the TILDS are insufficient to pay both the principal and interest." *Mandrigues*, Corrected Second Amended Complaint, ¶ 91. |
| "The Note states, 'I will pay Principal and interest by making payments' either monthly or every two weeks, based on whether the loan was paid on a biweekly or monthly basis. However, the true facts are that the payments listed by Defendants on the Truth in Lending Disclosure Statement are insufficient to pay both principal and interest. In fact, the payment amounts listed on the Truth in Lending Disclosure Statement are insufficient to pay enough interest to avoid negative amortization which, under the terms of the Note, was certain to occur if Plaintiff made the payments according to the payment schedule listed in the Truth in Lending Disclosure Statement." *Jones-Boyle*, Second Amended Complaint , ¶ 125. | "The Note(s) state at ¶ 3 (A) 'I will pay Principle [sic] and interest by making payments every month.' However, the true facts are that the payment amounts listed on the TILDS are insufficient to pay enough interest to avoid negative amortization which, under the terms of the Note(s), was absolutely certain to occur if Plaintiff made the payments according to the payment schedule listed in the TILDS." *Mandrigues*, Corrected Second Amended Complaint, ¶ 93. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "The Note further states, 'my monthly payment could be less or greater than the amount of the interest portion of the monthly payment.' However, the true facts are that the payment amounts listed by Defendants in the Truth in Lending Disclosure Statement were, at all times relevant, insufficient to pay the total amount of interest due on the Note. Therefore, this statement was false in that it omitted important material information concerning the true facts, that negative amortization was certain to occur if customers followed the payment schedule provided by Defendants in the Truth in Lending Disclosure Statement." *Jones-Boyle*, Second Amended Complaint, ¶ 126. | "The Note(s) further state, at ¶ 3(E) 'From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due.' However, the true facts are that the payment amounts listed by Defendants in the TILDS were, at all times relevant, insufficient to pay the total amount of interest due on the note and therefore this statement was false in that it omitted important material information concerning the true facts, that negative amortization was absolutely certain to occur if consumers followed the payment schedule provided by Defendants in the TILDS. *Mandrigues*, Corrected Second Amended Complaint, ¶ 94. |
| "The aforementioned omitted information was not known to Plaintiff which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all others similarly situated." *Jones-Boyle*, Second Amended Complaint, ¶ 127. | "The aforementioned omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all others similarly situated." *Mandrigues*, Corrected Second Amended Complaint, ¶ 95. |
| "Defendants failed to disclose, and by omission, failed to inform Plaintiff that (i) the payment rate provided to Plaintiff and the Class Members on the Truth in Lending Disclosure Statement was insufficient to pay both principal and interest; (ii) that negative amortization was certain to occur if Plaintiff and the Class Members made payments according to the payment schedule provided to them by Defendants in the Truth in Lending Disclosure Statement; and (iii) that loss of equity and/or loss of plaintiff and the Class Members' residences was certain to occur if Plaintiff and the Class Members made payments according to the payment schedule provided by Defendants." *Jones-Boyle*, Second Amended Complaint, ¶ 128. | "Defendants, and each of them, failed to disclose, and by omission, failed to inform Plaintiffs, and each Class member, that (i) the payment rate provided to Plaintiffs and the Class members on the TILD was insufficient to pay both principle [sic] and interest; (ii) that negative amortization was absolutely certain to occur if Plaintiffs and Class members made payments according to the payment schedule provided by Defendants in the TILDS; and (iii) that loss of equity and/or loss of Plaintiffs' and the Class members' residence was absolutely certain to occur if Plaintiffs and the Class members made payments according to the payment schedule provided by Defendants." *Mandrigues*, Corrected Second Amended Complaint, ¶ 96. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "As alleged herein, Defendants had a duty to disclose to Plaintiff, and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to the fact that (i) the payment amounts listed in the Truth in Lending Disclosure Statement were not based on the actual interest rate charged on the Note; (ii) that negative amortization was certain to occur; (iii) that the payment amounts listed in the Note and Truth in Lending Disclosure Statement are insufficient to pay both principal and interest; and (iv) complete information regarding the various monthly payment choices the borrower would have and how different options would affect the amount the borrower would pay over the life of the loan and the loss of equity in the borrower's home." *Jones-Boyle*, Second Amended Complaint, ¶ 129. | "As alleged herein, Defendants had a duty to disclose to Plaintiffs, and each Class member, and at all times relevant, failed to disclose and/or concealed material facts by making partial representations of some material facts when Defendants had exclusive knowledge of material facts, including but not limited to, (i) the payment amounts listed in the TILDS were not based on the actual interest rate charged on the Note(s); (ii) that negative amortization was absolutely certain to occur; and (iii) that the payment amounts listed in the Note and TILDS are insufficient to pay both principle [sic] and interest." *Mandrigues*, Corrected Second Amended Complaint, ¶ 97. |
| "The concealed and omitted information was not known to Plaintiff and the Class Members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all others similarly situated." *Jones-Boyle*, Second Amended Complaint, ¶ 130. | "The concealed and omitted information was not known to Plaintiffs and the Class members and which, at all times relevant, Defendants failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiffs and all others similarly situated." *Mandrigues*, Corrected Second Amended Complaint, ¶ 97. |
| "From the inception of the Option ARM loan scheme until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiff and the Class Members, regarding true facts concerning the interest rate upon which the payment schedule was based, the negative amortization that was certain to occur, complete information regarding the different payment options, and that the payment amounts listed in the Note and Truth in Lending Disclosure Statement are insufficient to pay both principal and interest, all of which Defendants were bound by duty to clearly and conspicuously disclose in the Truth in Lending Disclosure Statement and other loan documents provided to Plaintiff." | "From the inception of the Option ARM loan scheme, until the present, Defendants have engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not reasonably discoverable by Plaintiffs and the Class members, regarding true facts concerning the interest rate upon which the payment schedule was based, the negative amortization that was certain to occur, and that the payment amounts listed in the Note and TILDS are insufficient to pay both principle [sic] and interest, all of which Defendants were duty bound to clearly and conspicuously disclose in the TILD." *Mandrigues*, Corrected Second Amended Complaint, ¶ 98. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| *Jones-Boyle*, Second Amended Complaint, ¶ 131. | |
| "Defendants have known from the inception of their Option ARM loan scheme that (i) the interest rate upon which the payment amounts listed in the Notes and Truth in Lending Disclosure Statement are not based on the listed interest rate, but instead were based on a much lower rate; (ii) that making payments according to the payment schedule listed in the Note and Truth in Lending Disclosure Statement will result in negative amortization and that the principal balance will increase; and (iii) that the payment amounts listed in the Truth in Lending Disclosure Statement are insufficient to pay both principal and interest." *Jones-Boyle*, Second Amended Complaint, ¶ 132. | "Defendants, and each of them, have known from the inception of their Option ARM loan scheme that, (i) the interest rate upon which payment amounts listed in the Notes and TILDS are not based on the listed interest rate, but instead were based on a much lower rate; (ii) that making the payments according to the payment schedule listed in the Note and TILDS will result in negative amortization and that the principal balance will increase; and (iii) that the payment amounts listed on the TILDS are insufficient to pay both principle [sic] and interest." *Mandrigues*, Corrected Second Amended Complaint, ¶ 99. |
| "Defendants purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-payment loan, for up to the first 3 to 5 years and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principal and interest." *Jones-Boyle*,, Second Amended Complaint, ¶ 133. | "Defendants, and each of them, purposefully and intentionally devised this Option ARM loan scheme to defraud and/or mislead consumers into believing that these loans would provide a low-payment loan, for up to the first ten (10) years and that if they made their payments according to the payment schedule provided by Defendants that it would be sufficient to pay both principle [sic] and interest." *Mandrigues*, Corrected Second Amended Complaint, ¶ 100. |
| "The omitted information, as alleged herein, was material to Plaintiff and Class Members in that had the information been disclosed, Plaintiff and the Class Members would not have entered into the loan." *Jones-Boyle*, Second Amended Complaint, ¶ 134. | "The omitted information, as alleged herein, was material to Plaintiffs and each Class member in that had the information been disclosed, Plaintiffs and each Class member would not have entered into the loans." *Mandrigues*, Corrected Second Amended Complaint, ¶ 101. |
| "As a direct and proximate result of Defendants' failures to disclose and omission of material facts, as alleged herein, Plaintiff and the Class Members have suffered damages, which include, but are not limited to the loss of equity Plaintiff and the Class Members had in their homes prior to entering these loans." *Jones-Boyle*, Second Amended Complaint, ¶ 135. | "As a direct and proximate result of Defendants' failures to disclose and omission of material facts, as alleged herein, Plaintiffs and each Class member has [sic] suffered damages, which include, but are not limited to the loss of equity Plaintiffs and each Class member had in their homes prior to entering these loans." *Mandrigues*, Corrected Second Amended Complaint, ¶ 102. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "The wrongful conduct of Defendants, as set forth herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and in conscious disregard for the well being of the Plaintiff, and others similarly situated.  Accordingly, Plaintiff, and all others similarly situated seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the future." *Jones-Boyle*, Second Amended Complaint, ¶ 136. | "The wrongful conduct of Defendants, as set forth herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, malicious, and in conscious disregard for the well being of the Plaintiffs, and others similarly situated.  Accordingly, Plaintiffs, and all others similarly situated seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the future." *Mandrigues*, Corrected Second Amended Complaint, ¶ 103. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| *JONES-BOYLE* ALLEGATIONS | *MANDRIGUES* ALLEGATIONS |
|---|---|
| **Claim: Unfair Competition Law** | **Claim:  Unfair Competition Law** |
| "The present claim is predicated on the generally applicable duty of any contracting party to disclose important material facts, and on the duty to refrain from unfair and deceptive business practices.  The Plaintiff and the class Members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The present claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else."  *Jones-Boyle*, Second Amended Complaint, ¶ 142. | "The instant claim is predicated on the generally applicable duty of any contracting party to disclose important material facts, and on the duty to refrain from unfair and deceptive business practices.  The Plaintiffs and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else."  *Mandrigues*, Corrected Second Amended Complaint, ¶ 108. |
| "At all times relevant, [Defendants] engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loans. [Defendants] sold to Plaintiff and the Class Members a deceptively devised financial product.  [Defendant] sold its Option ARM loan product to consumers, including Plaintiff and the Class Members, in a false or deceptive manner.  [Defendants] promised that the loan would have a very low, fixed payment, with only a small annual increase in the payment amount, for a period of up to 3 to 5 years; and that the payment amount would be based on the listed interest rate.  [Defendants] withheld from Plaintiff and the Class Members the fact that its [sic] Option ARM loan was designed to, and did, cause negative amortization to occur."  *Jones-Boyle*, Second Amended Complaint, ¶ 143. | "At all times relevant, Defendants engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loans. Defendants, and each of them, sold to Plaintiffs and the Class members a deceptively devised financial product.    Defendants sold their Option ARM loan product to consumers, including Plaintiffs and the Class members, in a false or deceptive manner.    Defendants promised that the loan would have a very low, fixed payment, with only a small annual increase in the payment amount, for a period of up to ten years; and that the payment amount would be based on the listed interest rate. Defendants withheld from Plaintiffs and the Class members the fact that Defendant's Option ARM loan was designed to, and did, cause negative amortization to occur."  *Mandrigues*, Corrected Second Amended Complaint, ¶ 109. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "[Defendant] lured Plaintiff and the Class Members into the Option ARM loans with promises of low payments.  Once Plaintiff and the Class Members entered into these loans, [Defendants] began taking away equity from Plaintiff's home.  Moreover, Plaintiff could not escape because [Defendants] purposefully placed and [Defendants] purposefully enforced an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans.  Thus, once on the hook, consumers could not escape from the loans during this prepayment period." *Jones-Boyle*, Second Amended Complaint, ¶ 144. | "Defendants lured Plaintiffs and the Class members into the Option ARM loans with promises of low payments.  Once Plaintiffs and the Class members entered into these loans, Defendants began taking away equity from Plaintiffs' and the Class members' homes.  And, Plaintiffs and the Class members could not escape because Defendants purposefully placed into these loans an extremely onerous prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from these loans.  Thus, once on the hook, consumers could not escape from Defendants' loans." *Mandrigues*, Corrected Second Amended Complaint, ¶ 110. |
| "[Defendant] sold its Option ARM loans as having a low payment.  However, [Defendant] failed to disclose, and by omission, failed to inform Plaintiff that the low payments listed in the Note and Truth in Lending Disclosure Statement were insufficient to pay both principal and interest and were, in fact, at all times relevant, completely insufficient to pay all of the interest accruing on the loans.  Further, and in addition to [Defendants'] failure to disclose the actual cost of the loans, [Defendants] failed to disclose, and by omission, failed to inform Plaintiff that there was a discrepancy between the interest rate upon which the payments were based and the actual interest it [sic] charged on the loans." *Jones-Boyle*, Second Amended Complaint, ¶ 145. | "Defendants sold their Option ARM loans as having a low payment.  However, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that the low payments listed in the Note and TILDS were completely insufficient to pay both principle [sic] and interest and were, in fact, at all times relevant during the liability period, completely insufficient to pay all of the interest accruing on the loans.  Further, and in addition to Defendants' failure to disclose the actual cost of the loans, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that there was a discrepancy between the interest rate upon which the payments were based and the actual interest Defendants charged on the loans." *Mandrigues*, Corrected Second Amended Complaint, ¶ 112. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "At all times relevant, Plaintiff agreed to finance her primary residence through the Option ARM loan as a result of the misleading low interest and payment schedules provided to them by [Defendants] and statements provided to them by [Defendants] in accordance with the payment schedules. In particular, Plaintiff was lead to believe that if they [sic] made payments according to [Defendants'] payment schedule, the loan 'could' result in negative amortization. However, [Defendants] failed to disclose, and by omission, failed to inform Plaintiff that if she made her payments according to the payment schedule provided, that by the 4th to 6th year of the loan, the Plaintiff will have lost between 15-25% of the equity in her home, making it difficult, if not impossible to refinance to another home loan." *Jones-Boyle*, Second Amended Complaint, ¶ 146. | "At all times relevant, Plaintiffs and the Class members agreed to finance their primary residences through Defendants' Option ARM loans as a result of low interest and payment schedules. In particular, Plaintiffs and the Class members were lead to believe that if they made payments according to Defendants' payment schedule, the loans would only, 'from time to time,' result in negative amortization. However, Defendants failed to disclose, and by omission, failed to inform Plaintiffs and the Class members that if they made their payments according to Defendants' payment schedule, that by the 11th year of the loans, each class member will have lost between 15-25% of the equity in their home, making it difficult, if not impossible to re-finance to another home loan." *Mandrigues*, Corrected Second Amended Complaint, ¶ 113. |
| "[Defendant] aggressively sold its product based on the low payment. [Defendant] knew that if it sold these loans in such a manner, its Option ARM loan product would be a hugely popular and profitable product for it. [Defendant] also knew, however, that it was selling this product in a false and deceptive manner. While [Defendant trumpeted its low payment loan to the public, [Defendant] knew that this was false, or at best, only partially true." *Jones-Boyle*, Second Amended Complaint, ¶ 147. | "Defendants aggressively sold their product based on the low payment. Defendants knew that if they sold these loans in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them. Defendants also knew, however, that they were selling their product in a false and deceptive manner. While Defendants trumpeted their low payment loans to the public, Defendants knew, however, that this was false, and at best, only partially true." *Mandrigues*, Corrected Second Amended Complaint, ¶ 114. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "Defendants' Option ARM possessed a low, fixed payment that was unrelated to the interest rate listed. Unbeknownst to Plaintiff, the actual interest rate Defendants charged on her loans would require a much larger payment to pay both principal and interest. After purchasing Defendants' Option ARM loan product, Plaintiff never actually received the benefit of the loan promised to them [sic] because immediately, Defendants began taking away Plaintiff's equity. Once Plaintiff accepted Defendants' Option ARM loan, she had no viable option by which to extricate herself because the loan agreement included a draconian prepayment penalty." *Jones-Boyle*, Second Amended Complaint, ¶ 150. | "In fact, Defendants' Option ARM loan possessed a low, fixed payment that was unrelated to the interest rate listed. Unbeknownst to Plaintiffs and Class members, the actual interest rate Defendants charged on their loans would require a much larger payment to pay both 'Principle [sic] and interest.' After purchasing Defendants' Option ARM loan product, Plaintiffs and class members never actually received the benefit of the loan promised to them because immediately, Defendants in every instance and for every loan began secretly taking away Plaintiffs' and the Class members' equity. Once Plaintiffs and the Class members accepted Defendants' Option ARM loan, they had no viable option by which to extricate themselves because these loan agreements included a draconian prepayment penalty." *Mandrigues*, Corrected Second Amended Complaint, ¶ 115. |
| "Defendants initiated and continued this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits." *Jones-Boyle*, Second Amended Complaint, ¶ 151. | "Defendants initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendants' profits." *Mandrigues*, Corrected Second Amended Complaint, ¶ 116. |
| "Defendants perpetrated this bait-and-switch scheme uniformly and in the same manner on Plaintiff and each member of the Class." *Jones-Boyle*, Second Amended Complaint, ¶ 152. | "Defendants perpetrated this bait-and-switch scheme uniformly and in the same manner on Plaintiffs and each member of the Class." *Mandrigues*, Corrected Second Amended Complaint, ¶ 117. |
| "As alleged herein, Defendants' failures to disclose important material information concerning the actual cost of the loans is, and was, unfair, fraudulent, and deceptive." *Jones-Boyle*, Second Amended Complaint, ¶ 153. | "As alleged herein, Defendants' failures to disclose important material information concerning the actual cost of the loans is, and was, unfair, fraudulent, and deceptive." *Mandrigues*, Corrected Second Amended Complaint, ¶ 118. |
| "The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of the California Business and Professions Code, §§ 17200, 17500, *et. seq.*" *Jones-Boyle*, Second Amended Complaint, ¶ 154. | "The acts, misrepresentations, omissions, and practices of Defendants alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of the California Business and Professions Code Sections 17200, *et. seq.*" *Mandrigues*, Corrected Second Amended Complaint, ¶ 119. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the California Business and Professions Code, §§ 17200, 17500, *et. seq.*" *Jones-Boyle*, Second Amended Complaint, ¶ 155. | "By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the California Business and Professions Code Sections 17200, *et. seq.*" *Mandrigues*, Corrected Second Amended Complaint, ¶ 120. |
| "Defendants' conduct, as fully described herein, was likely to deceive, and did deceive, members of the consuming public, and at all times relevant, Defendants' omissions of material facts and failures to disclose have been and continue to be unfair, fraudulent, untrue, and/or deceptive." *Jones-Boyle*, Second Amended Complaint, ¶ 156. | "Defendants' conduct, as fully described above, was likely to deceive members of the consuming public, and at all times relevant, Defendants' failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue, and/or deceptive." *Mandrigues*, Corrected Second Amended Complaint, ¶ 121. |
| "Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over its [sic] competition." *Jones-Boyle*, Second Amended Complaint, ¶ 157. | "Defendants' misconduct as alleged herein gave Defendants an unfair competitive advantage over their competitors." *Mandrigues*, Corrected Second Amended Complaint, ¶ 122. |
| "As a direct and proximate result of the aforementioned acts, Defendants received monies and continues [sic] to hold the monies expended by Plaintiff." *Jones-Boyle*, Second Amended Complaint, ¶ 158. | "As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies and continues to hold the monies expended by Plaintiffs and others similarly situated who purchased the ARM loans as described herein." *Mandrigues*, Corrected Second Amended Complaint, ¶ 123. |
| "The harm to Plaintiff outweighs the utility of Defendants' policies, acts, and/or practices, and consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of the California Business and Professions Code, §§ 17200, 17500, *et. seq.*" *Jones-Boyle*, Second Amended Complaint, ¶ 159. | "The harm to Plaintiffs, members of the general public, and others similarly situated outweighs the utility of Defendants' policies, acts, and/or practices, and, consequently Defendants' conduct herein constitutes an unlawful business act or practice within the meaning of the California Business and Professions Code Sections 17200, *et. seq.*" *Mandrigues*, Corrected Second Amended Complaint, ¶ 124. |
| "The unfair, deceptive, and/or fraudulent business practices of Defendants, as fully described herein, present a continuing threat to members of the public to be misled and/or deceived by Defendants' Option ARM loans as described herein." *Jones-Boyle*, Second Amended Complaint, ¶ 160. | "The unfair, deceptive, and/or fraudulent business practices of Defendants, as fully described herein, presents [sic] a continuing threat to members of the public to be misled and/or deceived by Defendants' Option ARM loans as described herein. Plaintiffs and other members of the general public have no other |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | remedy at law that will prevent Defendants' misconduct as alleged herein from occurring and/or reoccurring in the future." *Mandrigues*, Corrected Second Amended Complaint, ¶ 125. |
|---|---|
| "As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost thousands of dollars of equity in their homes.  Plaintiff and Class Members are direct victims of the Defendants' unlawful conduct, and each have [sic] suffered injury in fact, and have lost money and/or property as a result of Defendants' unfair and deceptive acts and practices." *Jones-Boyle*, Second Amended Complaint, ¶ 161. | "As a direct and proximate result of Defendants' unfair and/or fraudulent conduct alleged herein, Plaintiffs and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiffs and members of the Class are direct victims of the Defendants' unlawful conduct, and each have [sic] suffered injury in fact, and have lost money or property as a result of Defendants' unfair competition." *Mandrigues*, Corrected Second Amended Complaint, ¶ 126. |

DEFENDANTS'
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL
OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS

EXHIBIT 1

| *JONES-BOYLE* ALLEGATIONS | *MANDRIGUES* ALLEGATIONS |
|---|---|
| **Claim: Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing** | **Claim: Breach of Contract/Breach of the Implied Covenant of Good Faith and Fair Dealing** |
| "The Note states the interest rate and the payment amounts required for Plaintiff to pay off the loan." *Jones-Boyle*, Second Amended Complaint, ¶ 164. | "The Note(s) state the interest rate and the payment amounts required Plaintiffs and Class members to pay off the loan." *Mandrigues*, Corrected Second Amended Complaint, ¶ 131. |
| "The Note further states that Plaintiff 'will pay Principal and interest by making payments every month.'" *Jones-Boyle*, Second Amended Complaint, ¶ 165. | "The Note(s) further state that Plaintiffs and Class members 'will pay Principle [sic] and interest by making payments every month.'" *Mandrigues*, Corrected Second Amended Complaint, ¶ 132. |
| "The Truth in Lending Disclosure Statement, which accompanied the Note, sets forth a payment schedule for Plaintiff to follow." *Jones-Boyle*, Second Amended Complaint, ¶ 166. | "The TILD, which accompanied the Note, sets forth a payment schedule for Plaintiffs and Class members to follow." *Mandrigues*, Corrected Second Amended Complaint, ¶ 133. |
| "The interest rate listed in the Note and in the Truth in Lending Disclosure Statement was not used to calculate the payment amounts stated in the Note and listed in the Truth in Lending Disclosure Statement. At all times relevant, [Defendants] knew that the payment schedule was not based on the interest rate listed, but instead, was based on a much lower rate which caused the loan contracts to be uncertain and ambiguous as to the amount borrowers would have to pay each month in order to avoid negative amortization. [Defendants] caused the uncertainty and ambiguity as alleged herein, by purposefully stating in the Note and Truth in Lending Disclosure Statement that Plaintiff 'will pay Principal and interest by making payments every month' and then providing Plaintiff with a payment schedule which is inconsistent with, and not based on the interest rate listed in the Note." *Jones-Boyle*, Second Amended Complaint, ¶ 167. | "The interest rate listed in the Note and in the TILDS was not used to calculate the payment amounts stated in the Note and listed in the TILDS. At all times relevant, Defendants knew that the payment schedule was not based on the interest rate listed, but instead, was based on a much lower rate which caused the loan contracts to be uncertain and ambiguous as to the amount borrowers would have to pay each month in order to avoid negative amortization. Defendants caused the uncertainty and ambiguity as alleged herein, by purposefully stating in the Note that Plaintiffs 'will pay Principle [sic] and interest by making payments every month' and then providing Plaintiffs with a payment schedule which is inconsistent with, and not based on the interest rate listed in the Note." *Mandrigues*, Corrected Second Amended Complaint, ¶ 134. |

DEFENDANTS'
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL
OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS

EXHIBIT 1

| | |
|---|---|
| "At all times relevant, [Defendants] drafted the Note and did not allow Plaintiff any opportunity to make changes to the Note and due to [Defendants'] superior bargaining position, the contract was offered on a take it or leave it basis. As such, the loan contracts at issue are contracts of adhesion." *Jones-Boyle*, Second Amended Complaint, ¶ 168. | "At all times relevant, Defendants drafted the Note and did not allow Plaintiffs or the Class members any opportunity to make changes to the Note and due to Defendants' superior bargaining position, the contract was offered on a take it or leave it basis. As such, the loan contracts at issue are contracts of adhesion." *Mandrigues*, Corrected Second Amended Complaint, ¶ 135. |
| "Defendants expressly and/or through its [sic] conduct and actions agreed that Plaintiff's monthly payment obligations would be sufficient to pay both the principal and interest owed on the loan. Defendants breached this agreement by failing to apply any of Plaintiff's payments to principal." *Jones-Boyle*, Second Amended Complaint, ¶ 171. | "Defendants expressly and/or through their conduct and actions agreed that Plaintiffs' and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loan. Defendants breached this agreement by failing to apply any of Plaintiffs' and the Class members' payments to principal." *Mandrigues*, Corrected Second Amended Complaint, ¶ 136. |
| "Instead, and in order to make up the difference between the interest rate used to calculate the payment schedule and the much higher rate listed in the Note, Defendants immediately began reducing Plaintiff's equity and her home and applied no part of the payments to the principal balance on her loan. In fact, because Defendants charged more interest than was included in the payments listed in the Truth in Lending Disclosure Statement, the payments were insufficient to cover the interest charged on the loan and thus the principal balance increased (which is the negative amortization Defendants purposefully built into these loan contracts)." *Jones-Boyle*, Second Amended Complaint, ¶ 172. | "Instead, and in order to make up the difference between the interest rate used to calculate the payment schedule and the much higher rate listed in the notes, Defendants immediately began secretly reducing Plaintiffs' and the Class members' equity in their homes and applied no part of the payments to the principal balances on their loans. In fact, because Defendants charged more interest than was included in the payments listed in the TILDS, the payments were insufficient to cover the interest charged on the loan and thus principal balances increased (which is the negative amortization Defendants purposefully built into these loan contracts)." *Mandrigues*, Corrected Second Amended Complaint, ¶ 137. |
| "As a result, Defendants breached the written contractual agreement by failing to apply any portion of Plaintiff's monthly payments towards their [sic] principal loan balance." *Jones-Boyle*, Second Amended Complaint, ¶ 173. | "As a result, Defendants breached the written contractual agreement by failing to apply any portion of Plaintiffs' and the Class members' monthly payments towards their principal loan balances." *Mandrigues*, Corrected Second Amended Complaint, ¶ 138. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "Plaintiff, on the other hand, did all of those things the contract required of her. Plaintiff made monthly payments in the amounts required under the terms of the Note and reflected in the payment schedule prepared and provided by Defendants." *Jones-Boyle*, Second Amended Complaint, ¶ 174. | "Plaintiffs and the Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and the Class members made monthly payments in the amounts required under the terms of the Note and reflected in the payment schedule prepared and provided by Defendants." *Mandrigues*, Corrected Second Amended Complaint, ¶ 139. |
| "As a result of Defendants' breach of the agreement, Plaintiff has suffered harm. Plaintiff has incurred additional charges to her principal loan balance. Plaintiff has incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's principal loan balance. Furthermore, Defendants' breaches have caused Plaintiff's principal loan balance to increase thereby limiting her ability to make future loan payments or obtain alternative home loan financing." *Jones-Boyle*, Second Amended Complaint, ¶ 175. | "As a result of Defendants' breach of the agreement, Plaintiffs and the Class members have suffered harm. Plaintiffs and the Class members have incurred additional charges to their principal loan balances. Plaintiffs and the Class members have incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiffs' and the Class members' principal loan balances. Furthermore, Defendants' breaches have placed Plaintiffs and the Class members in danger of losing their homes through foreclosure, as Defendants have caused Plaintiffs' and the Class members' principal loan balances to increase thereby limiting these consumers' ability to make future house payments or obtain alternative home loan financing." *Mandrigues*, Corrected Second Amended Complaint, ¶ 140. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "At all times relevant, there existed a gross inequality of bargaining position between the parties to the Option ARM loan contracts. At all times relevant, Defendants unreasonably and unconscionably exploited its [sic] superior bargaining position and foisted upon Plaintiff extremely harsh, one-sided provisions in the contract, which Plaintiff was not made aware of and did not comprehend due to Defendants' fraudulent omissions and failures to clearly and conspicuously disclose as alleged herein, and which attempted to severely limit Defendants' obligations under the contracts at the expense of Plaintiff. As a result of these extremely harsh, one-sided provisions, including but not limited to the provisions which seek to limit the low interest rate upon which the payment amounts listed in the Truth in Lending Disclosure for one month or less are based, these provisions are unconscionable and therefore unenforceable." *Jones-Boyle*, Second Amended Complaint, ¶ 176. | "At all times relevant during the liability period, there existed a gross inequality of bargaining position between the parties to the ARM loan contracts. At all times relevant, Defendants unreasonably and unconscionably exploited their superior bargaining position and foisted upon Plaintiffs and the Class members extremely harsh, one-sided provisions in the contract, which Plaintiffs and the Class members were not made aware of and did not comprehend (*e.g.*, Defendants' fraudulent omissions and failures to clearly and conspicuously disclose as alleged herein), and which attempted to severely limit Defendants' obligations under the contracts at the expense of Plaintiffs and the Class members, as alleged herein. As a result of these extremely harsh, one-sided provisions, including but not limited to the provisions which seek to limit the low interest rate upon which the payment amounts listed in TILDS for one month or less, these provisions are unconscionable and therefore unenforceable." *Mandrigues*, Corrected Second Amended Complaint, ¶ 141. |
| "Defendants entered into written agreements with Plaintiff and Class Members based upon the terms of the loans as stated in the Note and Truth in Lending Disclosure Statement." *Jones-Boyle*, Second Amended Complaint, ¶ 177. | "Defendants entered into written agreements with Plaintiffs and the Class Members based upon the terms on [sic] the loans as stated in the Note(s) and TILDS." *Mandrigues*, Corrected Second Amended Complaint, ¶ 144. |
| "The written payment schedules and statements reflecting the payment schedules prepared and created by Defendants, and applicable to Plaintiff's loan, did not disclose, and by omission, failed to inform Plaintiff that the payment amounts owed by Plaintiff to Defendants in years one through three to five are insufficient to cover the true costs of the loan." *Jones-Boyle*, Second Amended Complaint, ¶ 180. | "The written payment schedules prepared and created by Defendants, and applicable to Plaintiffs' and Class members' loans, did not disclose, and by omission, failed to inform Plaintiffs that the payment amounts owed by Plaintiffs and the Class members to Defendants in years one through ten are insufficient to cover the true costs of the loan." *Mandrigues*, Corrected Second Amended Complaint, ¶ 147. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

## EXHIBIT 1

| | |
|---|---|
| "Instead, Defendants immediately began charging and collecting more than the required payments and applied no part of Plaintiff's payment to principal. In fact, Plaintiff's payments were insufficient to cover the interest that Defendants charged, resulting in an increase in the amount of principal Plaintiff owed on her home." *Jones-Boyle*, Second Amended Complaint, ¶ 181. | "Instead, Defendants immediately began collecting more than the required payments and applied no part of Plaintiffs' and the Class members' payments to principal. In fact, Plaintiffs' and the Class members' payments were insufficient to cover the interest Defendants charged resulting in an increase in the amount of principal Plaintiffs and the Class members owed on their homes." *Mandrigues*, Corrected Second Amended Complaint, ¶ 148. |
| "Defendants unfairly interfered with Plaintiff's rights to receive the benefits of the contract. This loan will cost Plaintiff thousands of dollars more than represented by Defendants. Plaintiff did not receive the fixed low payment/interest rate home loan promised by Defendants. Instead, as alleged herein, Defendants foisted upon Plaintiff a loan which was guaranteed to result in negative amortization. As a result, Defendants have caused Plaintiff to lose equity in their [sic] homes [sic] and therefore has [sic] denied Plaintiff the enjoyment and security of one of her most important investments." *Jones-Boyle*, Second Amended Complaint, ¶ 182. | "Defendants unfairly interfered with Plaintiffs' and the Class members' rights to receive the benefits of the contract. These loans will cost Plaintiffs and the Class members thousands of dollars more than represented by Defendants. Plaintiffs and the Class members did not receive the fixed low interest rate home loan promised them by Defendants. Instead, as alleged herein, Defendants foisted upon Plaintiffs a loan which was guaranteed to result in negative amortization. As a result, Defendants have caused Plaintiffs and the Class members to lose equity in their homes and therefore have denied Plaintiffs and the Class members the enjoyment and security of one of her most important investments." *Mandrigues*, Corrected Second Amended Complaint, ¶ 149. |
| "Plaintiff, on the other hand, did all of those things the contract required of her. Plaintiff made the monthly payments in the amounts required of them [sic] by the terms of the Note and reflected in the payment schedule prepared and provided by Defendants." *Jones-Boyle*, Second Amended Complaint, ¶ 183. | "Plaintiffs and the Class members, on the other hand, did all of those things the contract required of them. Plaintiffs and the Class members made the monthly payments in the amounts required of them by the terms of the Note and reflected in the payment schedule prepared and provided by Defendants." *Mandrigues*, Corrected Second Amended Complaint, ¶ 150. |
| "At all times relevant, Defendants unreasonably denied Plaintiff the benefit promised to her under the terms of the Note, including providing clear and conspicuous disclosure of a payment amount sufficient to pay both principal and interest so as to avoid negative amortization." *Jones-Boyle*, Second Amended Complaint, ¶ 184. | "At all times relevant, Defendants unreasonably denied Plaintiffs and the Class members the benefits promised to them under the terms of the Note, including providing clear and conspicuous disclosure of a payment amounts [sic] sufficient to pay both principle [sic] and interest so as to avoid negative amortization." *Mandrigues*, Corrected Second Amended Complaint, ¶ 151. |

**DEFENDANTS'**
**MEMORANDUM OF POINTS**
**AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL**
**OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS**

**EXHIBIT 1**

| | |
|---|---|
| "Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or fraudulent omissions to mislead and/or deceive Plaintiff and others similarly situated as alleged herein." *Jones-Boyle*, Second Amended Complaint, ¶ 185. | "Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or fraudulent omissions to mislead and/or deceive Plaintiffs and others similarly situated as alleged herein." *Mandrigues*, Corrected Second Amended Complaint, ¶ 152. |
| "Defendants' breaches, as alleged herein, were committed with willful and wanton disregard for whether or not Plaintiff would actually receive a home loan that would provide the promised low interest and payment rate for up to three to five years sufficient to pay both principal and interest." *Jones-Boyle*, Second Amended Complaint, ¶ 186. | "Defendants' breaches, as alleged herein, were committed with willful and wanton disregard for whether or not Plaintiffs or others similarly situated would actually receive a home loan that would provide the promised low interest and payment rate for up to ten years sufficient to pay both principle [sic] and interest." *Mandrigues*, Corrected Second Amended Complaint, ¶ 153. |
| "Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about these loans, and otherwise sold these loans throughout the United States, including the State of California." *Jones-Boyle*, Second Amended Complaint, ¶ 187. | "Upon information and belief and at all times relevant, Defendants possessed full knowledge and information concerning the above facts about these loans, and otherwise sold these loans throughout the United States, including the State of California." *Mandrigues*, Corrected Second Amended Complaint, ¶ 154. |
| "Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and such acts and/or omissions were performed on the part of officers, directors, and/or managing agents of the Defendants and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiff and the general public." *Jones-Boyle*, Second Amended Complaint, ¶ 188. | "Defendants' placing of their corporate and/or individual profits over the rights of others is particularly vile, base, contemptible, and wretched and such acts and/or omissions were performed on the part of officers, directors, and/or managing agents of the Defendants and/or taken with the advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said acts and/or omissions.  Defendants thereby acted with malice and complete indifference to and/or conscious disregard for the rights and safety of others, including Plaintiff and the General Public." *Mandrigues*, Corrected Second Amended Complaint, ¶ 155. |
| "At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent." *Jones-Boyle*, Second Amended Complaint, ¶ 189. | "At all times relevant, Defendants' conduct, as alleged herein, was malicious, oppressive, and/or fraudulent." *Mandrigues*, Corrected Second Amended Complaint, ¶ 156. |

DEFENDANTS'
MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT OF FINAL APPROVAL
OF SETTLEMENT AND IN RESPONSE TO CERTAIN OBJECTIONS

EXHIBIT 1

| | |
|---|---|
| "As a result of Defendants' breach of the agreement and conduct, Plaintiff has suffered harm. Plaintiff has incurred additional charges to her principal loan balance. Plaintiff has incurred and will continue to incur additional interest charges on the principal loan balance and surplus interest added to Plaintiff's principal loan balance. Furthermore, Defendants' breach has placed Plaintiff in danger of losing her home through foreclosure and, as a direct and proximate result of said misconduct, caused Plaintiff's principal loan balance to increase and limiting her ability to make future loan payments or obtain alternative home loan financing." *Jones-Boyle*, Second Amended Complaint, ¶ 190. | "As a result of Defendants' conduct, Plaintiffs and the Class members have suffered harm. Plaintiffs and the Class members have incurred additional charges to their principal loan balances. Plaintiffs and the Class members have incurred and will continue to incur additional interest charges on the principal loan balances and surplus interest added to Plaintiffs' and the Class members' principal loan balances. Furthermore, Defendants' breach has caused and/or otherwise placed Plaintiffs and the Class members in danger of losing their homes through foreclosure, and, as a direct and proximate result of said misconduct, caused Plaintiffs' and the Class members' principal loan balances to increase limiting these consumers' ability to make their future house payments or obtain alternative home loan financing." *Mandrigues*, Corrected Second Amended Complaint, ¶ 157. |

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that copies of the foregoing **MEMORANDUM OF POINTS AND**
3    **AUTHORITIES IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT AND IN**
**RESPONSE TO CERTAIN OBJECTIONS** was served via the Court's electronic filing system
4    upon all counsel of record and upon Objector Michael V. Hargett by email and by first class mail,
postage prepaid, in an envelope addressed as follows:

5

Michael V. Hargett
6                                  mhargett@barnettbolt.com
7                                601 Bayshore Boulevard, Suite 700
Tampa, FL 33606-2756

8

9        DATED:  April 15, 2011

10

**s/ Jack R. Nelson**
11

12

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF FINAL APPROVAL OF SETTLEMENT