Jack R. Nelson (SBN 111863)
jnelson@reedsmith.com
David De Jesus (SBN 173263)
ddejesus@reedsmith.com
Alicia A. Adornato (SBN 254228)
aadornato@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

T. Thomas Cottingham, III *(admitted pro hac vice)*
tcottingham@winston.com
Stacie C. Knight *(admitted pro hac vice)*
sknight@winston.com
WINSTON & STRAWN LLP
214 North Tryon Street
Charlotte, NC 28202-1078
Telephone: +1 704 350 7700
Facsimile: +1 704 350 7800

Attorneys for Defendants
Wachovia Mortgage, FSB, Wachovia Bank FSB,
and Golden West Financial Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to:<br><br>*ALL CASES* | Case No. M:09-cv-2015-JF<br><br>**DEFENDANTS' OPPOSITION TO CLASS MEMBER STEPHEN JOSEPH'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Honorable Jeremy Fogel |

Defendants, by and through their undersigned counsel and pursuant to the Court's October 7 and 12, 2011 Orders, submit the following Opposition to Class Member Stephen Joseph's Motion for Temporary Restraining Order.

Mr. Joseph's October 7, 2011 filing is replete with half-truths, and, consistent with his prior filings, fails to identify any breach of the Settlement Agreement in this matter. For this reason, his Motion for Temporary Restraining Order should be denied, and the Court should permit Wells Fargo to move forward with the foreclosure sale—***a foreclosure Mr. Joseph could have avoided if he had simply complied with his earlier promise to list his property for sale***.

Wells Fargo ensures that borrowers are given every opportunity to avoid foreclosure. That is why Wells Fargo has delayed the foreclosure of Mr. Joseph's property ***for over 18 months***, and that is why Wells Fargo has allowed Mr. Joseph to apply for a loan modification ***ten times***. *See* Supplemental Declaration of Michael J. Dolan in Support of Defendants' Opposition to Ex Parte Motion of Stephen Joseph for Temporary Restraining Order (filed Oct. 7, 2011) ("Supp. Dolan Decl."), ¶¶ 2; Declaration of Michael J. Dolan in Response to Court's October 7, 2011 Order ("Dolan Decl."), ¶ 6. That also is why Wells Fargo allowed Mr. Joseph to re-apply for a loan modification in September after he represented that his income had increased. *See* Dolan Decl., ¶ 5; Declaration of Melanie Munoz in Response to Court's October 7, 2011 Order ("Munoz Decl."), ¶ 3.[1]

Mr. Joseph was contacted at the end of September as part of Wells Fargo's outreach program whereby all borrowers with an upcoming foreclosure sale are contacted in order to advise them of the sale date and to determine if anything further can be done to avoid foreclosure. Dolan Decl., ¶ 3. Again, Wells Fargo does this to ensure that borrowers are given every opportunity to avoid foreclosure. *See id*. During this conversation, Wells Fargo asks the borrower if he has had a change in circumstances since his last application for a loan modification. *See id*.; Munoz Decl., ¶ 2. If the borrower indicates that he has had a change in circumstances, then Wells Fargo typically will permit the borrower to re-apply for a loan modification and typically is able to get the sale date postponed. *See* Dolan Decl., ¶ 3. And that is exactly what happened in connection with Mr. Joseph: he was

---

[1] Ausha Merritt, the other Wells Fargo employee with whom Mr. Joseph spoke, is on bereavement leave, thus, Wells Fargo has not been able to obtain a declaration from her.

contacted as part of Wells Fargo's outreach program, he represented that his income had increased since his last application, and, based on that representation, Wells Fargo agreed to re-review him for a loan modification and agreed to postpone the upcoming foreclosure sale to allow sufficient time for that re-review.[2]

Certainly, Wells Fargo regrets that this last round of communications with Mr. Joseph was not routed through Michael Dolan, who has been Mr. Joseph's single point of contact since April 2011. *See* Dolan Decl., ¶ 4. As Ms. Munoz explains in her declaration, Mr. Joseph's account was appropriately flagged to indicate that all communications should go through Mr. Dolan, but Ms. Munoz was not familiar with the code. Munoz Decl., ¶ 4. Nonetheless, had Mr. Joseph represented to Mr. Dolan that his income had increased since his last review, Mr. Dolan would have re-reviewed him based upon changed circumstances. *See* Dolan Decl., ¶ 3.

The documentation Mr. Joseph submitted in connection with his last review revealed that Mr. Joseph has in fact experienced changed circumstances, but those changed circumstances are actually a substantial ***decrease*** in income rather than the increase he represented to Ms. Munoz. Dolan Decl., ¶ 9; Munoz Decl., ¶ 5. Had Mr. Joseph informed Ms. Munoz that his income had actually declined since his last application for a modification, he would have been told promptly that he was not eligible to re-apply for a loan modification. Dolan Decl., ¶ 10.[3] Nonetheless, Wells Fargo processed Mr. Joseph's most recent application using the income documentation he provided and the most recent appraisal in its files, from August 2011. *See id*. at ¶ 11. After processing his most recent request, Mr. Joseph did not qualify due to negative NPV. *Id*.

---

[2] As explained below, the postponement ended up being unnecessary, because Mr. Joseph promptly submitted the required documentation, and that documentation revealed that his income had decreased.

[3] Mr. Joseph's claim that there is no record of any activity on his account after April 2011 is false. Ms. Munoz explains in her declaration that Mr. Joseph's file indicates that he was being reviewed for a loan modification until the end of June 2011. Munoz Decl., ¶ 7.

After Mr. Dolan learned that Mr. Joseph had re-applied based upon changed circumstances, he contacted Mr. Joseph and his attorney because he had been serving as the single point of contact for Mr. Joseph's file since April 2011. *Id*., ¶ 12. Mr. Dolan explained to them that the most recent application was denied because of negative NPV. *Id*.

In his most recent filing, Mr. Joseph claims that Wells Fargo has not applied the NPV test in good faith. To support this accusation, Mr. Joseph *falsely* states that Mr. Dolan represented to him that any borrower with equity in his property will fail the NPV test. *See* Dolan Decl., ¶ 13 (explaining that he *never* told Mr. Joseph that any borrower with equity in his property will fail the NPV test). In other words, Mr. Joseph suggests to the Court that, for borrowers who have equity in their property, the outcome of the NPV test is preordained, and Wells Fargo should deny them the opportunity to apply for a loan modification outright rather than allow them to go through the process. Mr. Joseph and his attorneys apparently have not read the Settlement Agreement, nor have they read Mr. Dolan's prior declarations.

Mr. Joseph and his attorneys should know by now that Wells Fargo does not have any control over the outcome of the NPV test, nor can it predict the outcome of the test at the beginning of the loan modification process. Dolan Decl., ¶ 14. That is because (1) the majority of the input values for the NPV test are provided by the U.S. Treasury Department; and (2) the outcome of the NPV test ***depends on the actual terms of the proposed loan modification***, which can only be determined by running the borrower through the appropriate waterfall steps using the financial and other information provided by the borrower. *Id*., ¶¶ 13-14. That is why, under the Settlement Agreement, the NPV test is the last step in the MAP2R waterfall. *Id*., ¶ 14. And that is why Wells Fargo cannot refuse to review borrowers who have equity in their property. It simply is not true that anyone having any equity in his property will fail the NPV test. *Id*., ¶ 13. Indeed, since December 18, 2010, Wells Fargo has approved 862 loan modifications where the appraised value of the underlying property was higher than the outstanding loan balance. *Id*.

Because the outcome of the NPV test is never preordained, the fact that Mr. Joseph previously failed the NPV test was not outcome determinative for his most recent application. Again, because Mr. Joseph represented (albeit falsely) that his income had increased, Wells Fargo let him reapply. As Ms. Munoz explains in her declaration, Mr. Joseph never told her his prior application had been denied due to negative NPV, but even if he had, she would have encouraged him to re-apply based on his representation of changed circumstances. Munoz Decl., ¶ 9.

Certainly, had Wells Fargo refused to consider Mr. Joseph for a loan modification simply because he has equity in his property, as Mr. Joseph suggests it should have done, Mr. Joseph—and class counsel—would have accused Wells Fargo of breaching the Settlement Agreement.

Stripped of its false accusations, Mr. Joseph's latest filing does not identify any breach of the Settlement Agreement. Indeed, with respect to Mr. Joseph, Wells Fargo has more than exhausted its obligations under the Settlement Agreement. First, it made an exception and agreed to review Mr. Joseph based on his future earnings rather than historical earnings. Dolan Decl., ¶ 7. Second, it refrained from foreclosing on Mr. Joseph's property for the duration of the summer based on Mr. Joseph's ***false*** promise that he would list the property for sale—which would have allowed Mr. Joseph to pay his loan in full and potentially receive cash from the equity he has in the property. Supp. Dolan Decl., ¶ 12. Indeed, had Mr. Joseph complied with his agreement to list the property for sale, Wells Fargo gladly would agreed to postpone the foreclosure sale yet again to allow him more time to sell the property. *Id*., ¶ 13. And finally, Wells Fargo—in a good faith—allowed Mr. Joseph to re-apply based on his representation of changed circumstances in the form of increased income.

As this and all of Wells Fargo's previously filings indicate, Wells Fargo understands Mr. Joseph's desire to avoid foreclosure, and that is why it has done everything in its power to let him avoid that result. Mr. Joseph simply has no evidence that Wells Fargo has breached any of its

DEFENDANTS' OPPOSITION TO CLASS MEMBER
STEPHEN JOSEPH'S MOTION FOR TEMPORARY RESTRAINING ORDER

obligations under the Settlement Agreement.  His Motion for Temporary Restraining Order should be denied.

DATED:  October 13, 2011.   REED SMITH LLP

**s/ Jack R. Nelson**
Jack R. Nelson (SBN 111863)
David De Jesus (SBN 173263)
Alicia A. Adornato (SBN 254228)

WINSTON & STRAWN LLP

**s/ T. Thomas Cottingham, III**
T. Thomas Cottingham*
Stacie C. Knight*

*Admitted *pro hac vice*

Attorneys for Defendants