YELENA GUREVICH, SBN 269487
CONSUMER ACTION LAW GROUP
450 N. Brand Blvd., Ste. 600
Glendale, CA 91203
Tel. (949) 200-8413
Fax. (866) 936-6916

Attorneys for Defendant,
LARRAINE REEVES MORRISON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA- SAN JOSE DIVISION

| | |
|---|---|
| LARRAINE REEVES MORRISON,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., successor by merger with WELLS FARGO BANK SOUTHWEST, N.A. F/K/A WACHOVIA MORTGAGE CORPORATION, F/K/A WORLD SAVINGS BANK, FSB; NDEX WEST, LLC; SOLAR TRUST #2433, CITY INVESTMENT CAPITAL, INC, and DOES 1-50 inclusive,<br><br>Defendants. | Case No.: 5:09-md02015-JF<br><br>**PLAINTIFF'S EX PARTE APPLICATION FOR ORDER IMPOSING A TEMPORARY RESTRAINING ORDER TO STAY THE EVICTION OF PLAINTIFF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; EXHIBITS; AND DECLARATIONS IN SUPPORT**<br><br>No Hearing Required.<br><br>*Assigned for all purposes to the Honorable Jeremy Fogel* |

Pursuant to this court's Order granting Final Approval of Class Action Settlement in Case No. 5:09-md-02015-JF, "this court will retain continuing jurisdiction to interpret and enforce the settlement agreement." Thereby, this court has jurisdiction to enforce violations of this agreement.

PLEASE TAKE NOTICE that, by submission to the Honorable Jeremy Fogel of the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose CA 95113, Plaintiff Larraine Reeves Morrison (hereafter "Plaintiff"), by and through their undersigned counsel, hereby apply ex parte for an order imposing a temporary restraining order to stay the eviction of Plaintiff while this action is pending before the court from

1

her property located at 2433 Solar Drive, Los Angeles, CA 90046 ("the Property").

For reasons set forth below and summarized herewith, the nature of the emergency arises out of an upcoming threat of eviction scheduled for Plaintiff's property while Plaintiff litigates the legitimacy of the foreclosure sale itself and other numerous State and Federal violates by Defendants. Plaintiff filed a state court action against Defendant on August 4, 2011 in the Superior Court of California, Los Angeles. Defendants had removed this case to Federal Court on September 26, 2011. Plaintiff is currently in danger of being evicted from her home.

**NOTICE HAS BEEN GIVEN THAT** Plaintiff moves the Court for an order imposing a temporary restraining order to stay the eviction of Plaintiff while this action is pending before the court from her property.

**<u>Notice of Application to Counsel</u>**. On NOVEMBER 1, 2011, Plaintiffs gave notice to Defendants' counsel by telephone and electronic email, of Plaintiff's intention to file this Application on NOVEMBER 1, 2011 between approximately 6:00 p.m. and 12:00 a.m. Defendants have not indicated that they will oppose this Application.

This Application is made pursuant to Fed. R. Civ. P. 62(c) and 62(e) and Fed. R. App. P. 8(a)(1)(A), (C), and Local Rule 7-19, exhibits thereto; the pleadings and other documents on file in this action and such other matters that the Court may consider or of which the Court may take judicial notice.

Dated:  November 1, 2011                    CONSUMER ACTION LAW GROUP


                                             _/s/ Yelena Gurevich_____
                                             Yelena Gurevich
                                             Attorneys for Plaintiff

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER TO STAY THE PENDING UNLAWFUL DETAINER ACTION IN CITY INVESTMENT CAPITAL INC., AS TRUSTEE FOR THE SOLAR TRUST COMPANY V. LARRAINE MORRISON CASE NO. 11U00760**

Plaintiff hereby submits this Memorandum of Points and Authorities in support of her ex parte application for a temporary restraining order to stay enforcement of the pending eviction arising out the unlawful detainer action brought by SOLAR TRUST #2433 ("SOLAR TRUST #2433"), which is the Plaintiff in *SOLAR TRUST COMPANY V. LARRAINE MORRISON* (Los Angeles County Limited Civil Case No. 11U00760 (the Unlawful Detainer Action").

Injunctive relief is appropriate when it appears that the party applying for relief is entitled to the relief demanded, and all or parts of the relief consists in restraining the commission or continuance of the act complained of. (*See* C.C.P. 526(a).) Courts consider (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm the plaintiff is likely to sustain if the injunction is denied compared to the harm the defendants is likely to suffer if the court grants the injunction. (*See* Rights Site Coalition vs. Los Angeles Unified School District, 160 Cal.App.4th 336 (2008).)

**I. PLAINTIFF IS LIKELY TO PREVAIL AT TRIAL ON THE MERITS BECAUSE THE SALE WAS CONDUCTED IN VIOLATION OF THE CLASS ACTION COURT ORDER; NDEX WEST HAD NO STANDING TO HOLD THE TRUSTEE SALE AND THE TRUSTEE SALE MUST BE RESCINDED.**

The home that is the subject matter of this litigation is very unique in that it was built by Richard Neutra, a prominent Architect and sought-after real estate designer in the County of Los Angeles. Plaintiff has resided in her home, located at 2433 Solar Drive, Los Angeles, CA 90046 ("the Property") since 2002, when it was purchased, until the present. In February 2009, Plaintiff defaulted on her loan.

Once Plaintiff was in default on her loan and her home was in imminent threat of foreclosure, the myriad of fraud on the part of the lender began. Wachovia fraudulently pushed this home into a trustee sale, while it turned a blind eye to a settlement agreement binding it to specific express terms. Plaintiff will prevail at trial on the merits as a Court order in a class action settlement provided that Defendants must give Plaintiff with one of the three following forms of relief: 1) a loan modification; 2) deed in lieu of foreclosure or 3) short sale. Defendants placed Plaintiff in review for a loan modification and, while she was still in review, held a trustee sale conveying title of the property in the home to an entity by the name of Solar Trust Company #2344 for a sum that was substantially below the market value of the home. This was in violation of the court order.

Furthermore, NDEX WEST did not record the assignment of the Substitution of Trustee before it issued the Notice of Default therefore it lacked standing to hold the Trustee Sale. The purchaser of the home at the Trustee sale was not a bona fide purchaser as it was an investment company in the business of buying and selling homes. Evidence would lead the trier of the fact to conclude that the investment company created a fictitious entity solely to purchase this home and to mask their identity in order to claim bona fide purchaser status. Therefore the court must grant the Temporary Restraining Order enjoining Defendants from evicting Plaintiff from her home.

### A. DEFENDANT WACHOVIA VIOLATED THE TERMS OF A CLASS ACTION SETTLEMENT AGREEMENT BY HOLDING THE TRUSTEE SALE.

Plaintiff was in a class action lawsuit named *In RE: Wachovia Corporation "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation Case Number 5:09-md-02015-JF*. Attached hereto and incorporated by reference is an order providing terms the parties agreed to in settlement as to that particular lawsuit. (Exhibit "A" Settlement Order dated May 17, 2011) This order was issued by the Honorable Jeremy Fogel on May 17, 2011 and provides in relevant part:

> **Settlement Class C consists of borrowers who still hold their loans and are in default.** Under the terms of the settlement, Defendants will pay $50 million to the class. . . . Because the settlement fund will be divided on a *pro rata* basis, no unclaimed

4

> portion of the fund will remain after distribution. . . **In addition to paying $50 million to the class, Defendants will implement a loan modification program available to qualified Settlement Class C members** and to qualified Settlement Class B members who are in "imminent default." Eligible class members first will be considered for the federal Home Affordable Modification Program ("HAMP"). If the class member does not qualify under HAMP or elects not to accept a HAMP modification, the member will be considered for Defendants' new loan modification program, Mortgage Assistance Program 2 ("MAP2R"). . . . **The Court will retain continuing jurisdiction to interpret and enforce the settlement agreement. . . .** (Docket, 13-2, pages 5-6 of 86) (emphasis added.)

Defendants violated that court order entered on May 17, 2011 and Plaintiff will easily prove that at the time of the trustee sale in July 2011, she was in review for a loan modification without having yet received an approval or denial letter. This was in violation of the court order as the settlement agreement provided that the lender must consider Plaintiff for a loan modification or, in the alternative, offer a short sale if the Plaintiff does not qualify for a loan modification, or offer a deed in lieu of foreclosure. Plaintiff was deprived of the relief ordered by the court because Wachovia did not conclude the review of the loan modification, did not deny or approve the loan modification prior to the foreclosure sale, and did not offer any alternatives such as the option for a short sale or deed in lieu. The blatant violation of the court order is sufficient grounds for the court to issue a temporary restraining order enjoining the same Defendant, Wachovia, from evicting Plaintiff from her home.

### B. FRAUDULENT CONVEYANCE OF PROPERTY

Stemming back to May 3, 2007, the recorded documents show that Mortgage Electronic Registration Systems ("MERS") conveyed the property to ReconTrust. (Exhibit "B" Assignment of Trustee dated May 11, 2007) The importance here is that MERS was never a named beneficiary under the deed of trust. Under the original deed, Golden West Savings Association was the named Trustee. (Exhibit "C" deed of trust dated April 25, 2007) MERS was neither named as a beneficiary under the Deed of Trust nor was there any subsequent conveyance to MERS as the beneficiary/nominee in any subsequent assignment of deed of trust later recorded or documented.

5

MERS never had any express interest in the property and had no right to convey any interest. Compounding the issue, Plaintiff asserts that the recorded document was invalid and amongst those Robo-signed with a forged signature, the name provided, Roxanne Bermea, is completely different in style and format on other recorded documents bearing that name, and said documents bear different titles as well. (Exhibit "B" pages 2-5)

NDEX WEST LLC ("NDEX WEST"), the entity that conducted the trustee sale, was also a participant in the improper conveyance as it recorded a Notice of Default (Exhibit "D" Notice of Default dated September 17, 2009) **approximately 60 days prior** to recording a Substitution of Trustee from Golden West to NDEX WEST. (Exhibit "E" Assignment of Trustee dated October 30, 2009) NDEX WEST is barred from issuing a Notice of Default prior to substituting as Trustee for the property without a recorded affidavit attached to the Assignment of Trustee. On September 17, 2009, when NDEX WEST issued the Notice of Default, NDEX WEST was not the trustee. Golden West Savings Association was the original trustee of record and no valid substitution of trustee had occurred. On November 19, 2009 the Substitution of Trustee was recorded, 60 days after the Notice of Default was issued, naming NDEX WEST as the trustee substituting into Golden West's position. **NDEX WEST is barred from issuing a Notice of Default prior to substituting as Trustee for the property** without a recorded affidavit attached at the time of filing [emphasis added]. The Notice of Default was therefore issued in violation of the law.

### C. THE SALE OF THE PROPERTY IS VOID AS A RESULT OF THE FRAUDULENT CONVEYANCE AND THE MISAPPROPRIATION OF BONA FIDE PURCHASER STATUS TO SOLAR TRUST.

Plaintiff avers that Wachovia failed to properly record the assignment of the trustee to NDEX WEST and improperly recorded the Notice of Default prior to recording the assignment of the trustee to NDEX WEST, as a result, the subsequent actions taken by Wachovia to proceed with the foreclosure were void. Because NDEX WEST did not properly record the assignment of the

6

Substitution of Trustee, it lacked standing to hold the Trustee Sale; accordingly the sale must be set aside.

Plaintiff argues that Wachovia's failure to comply with California Civil Code sections 2934a(b) and 2934a(c) that impose the requirement of notice of substitution with the accompanying affidavit constitutes negligence per se. Section 2934a establishes procedures for the substitution of a trustee under a deed of trust for real property. Section 2934a(b) provides that if the substitution is executed prior to or concurrently with the recording of a NOD, then notice of the substitution must be mailed on or before that recordation date. Under section 2923a(c), if the substitution is executed after the NOD has been recorded, but before recording the NOS, then notice of the substitution must be mailed on or before the recording of the NOS. Under either provision, mailing of the notice of substitution must include an affidavit attesting that it was provided to all persons to whom the NOD must be sent in the manner specified within section 2924b. Finally, section 2934a(d) states that the trustee named in the substitution is authorized to act "from the date the substitution is executed."

Plaintiff contends that the pending foreclosure is invalid because the substitution of NDEx West as trustee was executed after the NOD was recorded. Furthermore, notice of the substitution was mailed after the NOD was recorded and without a proper affidavit. These actions constitute negligence per se.

In this case, the notice of substitution of trustee was mailed to plaintiffs in September 2009 and it was recorded on November 17, 2009. Plaintiff invokes section 2934a(b) insisting that the notice of substitution should have been sent by the time the NOD was recorded. Plaintiff argues that NDEx West was not authorized to issue the NOD, because the substitution of trustee was not executed until Sixty [60] days later. Furthermore, Plaintiff avers that NDEx West acted at all times as an agent for Wachovia.

Separately, Plaintiff avers that no affidavit indicating proper notice was attached to the substitution. Plaintiff never received an affidavit if one was sent.

Plaintiff further avers that the purchaser of the home at the Trustee sale was not a bona fide purchaser as it was an investment company in the business of buying and selling homes. Evidence

would lead the trier of the fact to conclude that the investment company created a fictitious entity solely to purchase this home and to mask their identity in order to claim bona fide purchaser status.

Plaintiff further questions the validity of the foreclosure sale, in which Solar Trust #2433 purchased the property at $500,000 below market value. Plaintiff avers that the Solar Trust #2433 was formed for the basis of hiding the identity of Wachovia, the basis for Plaintiff's belief is as follows:

1. At the trustee sale on July 25, 2011 the home was sold to City Investment Capital as Trustee for Solar Trust Company. (Exhibit "F" Deed Upon Sale dated August 4, 2011)
2. City Investment Capital, Inc. is in the business of buying properties at foreclosure sales. Evidence that a company is in the "business of buying properties at foreclosure sales" is "evidence that it is not a bona fide purchaser." *Estate of Yates*, 25 Cal. App. 4th 511, 523 (1994); *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.,* 85 Cal. App. 4th 1279, 1286 (2001).
3. The unique Neutra home was sold for $649,093.01 while the appraised value was $1,200.000.00. (Exhibit "G" Appraisal dated August 29, 2011) The home was sold for $500,000 below market value. No other bids on the property were entered at the foreclosure sale. It appears that the trustee handling the foreclosure sale made no attempt to raise the opening bid or to adhere to standard operating procedure to sell for the maximum value. Moroever, Wachovia states that Solar Trust was the high credit bid in the sale. (Exhibit "H" Motion in Opposition/ Notice of Errata dated October 26, 2011)
4. Solar Trust claims to be the cash purchaser of the property. However, Solar Trust has failed to produce evidence of the purchase, claiming to have tendered a cashier's check at the time of sale. Said testimony from Solar Trust in the Unlawful Detainer proceedings directly contradicts the express statement of Wachovia and further deteriorates the

strength of the ownership claim asserted by Solar Trust.

Therefore, Plaintiff can prove, through evidence, the sale was invalid she is likely to prevail at trial on the merits. Therefore, the court must grant the temporary restraining order to prevent eviction of Plaintiff from her home.

## II. 28 U.S.C. SECTION 2283 EXPRESSLY PROVIDES AN EXCEPTION TO PROTECT ORDERS OF THE COURT THEREFORE THE ANTI-INJUNCTION ACT DOES NOT APPLY.

The Ant-Injunction act expressly does not apply in this case where the court must protect its Order entered in the class action lawsuit. 28 U.S.C. § 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or **effectuate its judgments**." (emphasis added)

Plaintiff is trying to obtain relief by effectuating the judgment provided by this Court in the order of the class action lawsuit. The order expressly granted Plaintiff with three alternatives to a foreclosure, none of which were honored by Defendants. Defendants blatantly violated the court order by foreclosing on the premises without giving Plaintiff the option of a loan modification, short sale or deed in lieu of foreclosure. After their violation of the court order, Wachovia then proceeded with eviction proceedings and obtained a judgment in state court. The conduct of Wachovia was a disregard of the Order of this Court entered in May 2011. In order for the court to effectuate its judgment and protect the relief awarded to Plaintiff in the class action lawsuit the eviction must be stayed. The Anti-Injunction act does not apply to the matter at hand. Therefore, the court must grant an injunction to stay the eviction proceedings.

## III. DEFENDANTS WOULD NOT BE HARMED EXCESSIVELY BY THE INJUNCTION BECAUSE DEFENDANTS WOULD BE PLACED IN THE POSITION THEY WOULD HAVE BEEN IF THEY HAD ABIDED BY THIS COURT'S ORDER

9

Defendants would not be excessively harmed by the injunction as it would be placed in the position it was prior to the sale if they had abided by the terms of the court order. Wachovia was ordered by the court to provide a loan modification, short sale or a deed in lieu of foreclosure. It violated that order as it conducted the sale without providing any form of relief. Furthermore, Plaintiff was in a modification review when the foreclosure took place, and therefore, the foreclosure sale was in violation of state and federal rules. The harm is not on the part of Wachovia but on the part of Plaintiff as she would not receive the relief she sought through litigation of a class action lawsuit; the very same relief that was awarded to her. Therefore the court must grant the Preliminary Injunction.

The property subject to this litigation is a unique, one-of-a-kind home, designed by the esteemed architect Neutra. Plaintiff has lived in this property for over four (4) years; it is her home and her treasure. Defendants pushed to sell this home, violated the settlement terms of the class action lawsuit because it is so unique. Should the court allow the eviction to go forward, Plaintiff will lose her unique home. A damage of this kind cannot be replaced. Since the potential harm to Plaintiff is irreparable the court must grant the preliminary injunction.

**IV. TO GRANT THE PRELIMINARY INJUNCTION WOULD BE IN FAVOR OF THE PUBLIC INTEREST**.

Throughout the past decade the myriad of fraud perpetrated on the public has been the subject of mass scrutiny on the part of lenders. The Defendant, in this action, violated the court order along with state and federal laws, forged recorded documents, illegally transferred those recorded document and deprived Plaintiff of her home. The fraud in this case surpasses those of a typical denial of a loan modification. As illustrated below, the foreclosure proceedings were invalid. The Notice of Default was issued by NDEX WEST before NDEX WEST executed and recorded the Substitution of Trustee therefore NDEX WEST has no interest in the property when it issued the Notice of Default.

10

Furthermore, Defendants were ordered in the class action settlement to provide borrowers relief in the form of a loan modification, short sale or deed in lieu of foreclosure. These options were not provided to Plaintiff as it was bypassed through foreclosure. The trustee sale was illegally held. The public has an interest as to the legality of foreclosure proceedings and the trustee sales take place as the lenders must be held to a standard in which they must abide by not only the laws of the land but orders of the court. A preliminary injunction weighs heavily in favor of the public interest. Therefore the court must grant Plaintiff with a temporary restraining order staying the eviction procedure.

**V. IT IS APPROPRIATE TO STAY ENFORCEMENT OF THE UNLAWFUL DETAINER PROCEEDING.**

Ex parte relief is authorized and appropriate in this action pursuant to FRCP 65(b), because a real emergency exists - namely, *improper eviction* - threatening immediate and irreparable injury prior to the hearing date on a regularly noticed motion. See, FRCP 65(b).

In *Asuncion v. Superior Court* (1980) 108 Cal.App.3d 141, the Court determined that the trial court had committed an error in ordering the transfer of an unlawful detainer proceeding back to municipal court where the unlawful detainer defendants had contested the validity of the foreclosure sale and had filed a separate action in superior court for quiet title, cancellation of deed, fraud, etc. Thus, in a case that is procedurally analogous to this one, the appellate court sent it back to the superior court, suggesting, "an alternate possibility might be consolidation of the actions," (*id.,* at 147) given that the defendants were "entitled to defend this eviction action based on their claims of fraud and related causes of action they have asserted..."

Similarly, in *Rynsburger v. Dairyman's Fertilizer Co-Op. Inc.* (1968) 266 Cal.App.2d 269, the court granted injunctive relief to prevent an Orange County nuisance suit from going forward where there were common facts in two related cases brought by a municipality involving the same basic facts. The court in Rynsburger held:

11

"The propriety of injunctive relief to prevent conflicting or vexatious litigation has long been established in our law. [Citations.] Where there exists two or more actions involving the same subject matter or the same facts and principles, restraint is necessary to prevent a multiplicity of judicial proceedings. [Citation.]... In summary, the San Bernardino Superior Court's action in restraining the Orange County suit was fully justified since it was empowered to make such orders as necessary to prevent impairment of its judgement and to avoid... vexatious litigation." 66 Cal.App.2d, at 279.

*Rynsburger* and the cases cited therein stand for the proposition that injunctive relief is appropriate to prevent conflicting litigation. That is certainly the case here. It is an appropriate defense to an unlawful detainer action for a defendant to raise concerns regarding the validity of the plaintiff's ownership of the property to which the unlawful detainer action relates. These same issues are framed in the fraud and quiet title claims asserted in this action now pending in Federal Court. Given such circumstances, this Court should, at least, enter a temporary restraining order staying the unlawful detainer action from going forward so that Plaintiff's irreparable rights are not impaired in the interim.

In **Mehr v. Superior Court, supra, 139 Cal. App. 3d 1044**, the plaintiff in an unlawful detainer action claimed ownership of the property by purchase at a trustee's sale. The defendants filed a separate action to set aside the trustee's deed, based on a claim of fraud. After the plaintiff prevailed at trial of the unlawful detainer action, the defendants filed a notice of appeal and moved for a stay of execution pending determination of the appeal. The trial court denied the stay and the defendants filed a petition for writ of mandate. The Court of Appeal granted the petition, concluding the summary nature of an unlawful detainer proceeding is not a suitable vehicle to try complicated ownership issues. ( **Id. at p. 1049**.) The question of fraudulent acquisition [*5] of title is not foreclosed by an adverse judgment in an earlier summary proceeding. (*Ibid*.) The *Mehr* court held the claims of fraud must be resolved prior to eviction because the defendants would suffer irreparable injury arising by an eviction from their home prior to determination of the separate equity action. The court therefore ordered a stay of execution of the judgment in the unlawful detainer action pending determination of the related matters. ( **Id. at p. 1050**.)

Plaintiff, in this action, is prepared to conform to any reasonable bond requirements that are equitably ordered by this Court.

**A. The Elements for Injunctive Relief have Been Satisfied**

In determining whether to grant injunctive relief or not, courts are tasked with balancing the competing claims of injury and must consider the effect on each party I of the granting or withholding the requested relief. *Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 US 531, 107 S.Ct. 1396, 1402. In the 9th Circuit, Plaintiff may meet its burden by showing either:

a) A combination of probable success on the merits and the possibility of irreparable injury; or

b) Serious questions as to these matters and the balance of hardships tips *sharply* in plaintiff's favor. *Department of Parks & Rec. for State of Calif. v. Bazaar Del Mundo Inc.*, 448 F3d 1118, 1123 (9th Cir. 2006).

"[T]hese two formulations represent *two points on a sliding scale* in which the required degree of irreparable harm increases as the probability of success decreases... [I]f the plaintiff shows no chance of success on the merits the injunction should not issue, because as an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Calif v. Bazaar Del Mundo*, supra, 448 F3d at 1123, 1124 (emphasis added; internal quotes and brackets omitted)].

"The *critical* element in determining the test to be applied is the *relative hardship* to the parties. If the balance of harm tips *decidedly* toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *State of Alaska v. Native Village of Venetie*, 856 F2d 1384, 1389 (9th Cir. 1988) (emphasis added).

In this case, the legal analysis for injunctive relief is easy because this Court has already granted an order for settlement of the class action claim, under which Wachovia is required to act in good faith and offer assistance to Plaintiff. In the alternative, Wachovia is required to offer a short sale or deed in lieu prior to moving forward with a foreclosure. Wachovia violated the order of this court. Moreover, Wachovia engaged

in a fraudulent transfer of the deed of trust, and a trustee sale that was invalid. Plaintiff cannot be compensated by mere monetary damages, the unique nature of the Neutra home obviate the irreparable harm and the improper conduct of the trustee in the sale combined with the numerous other facts in this case tip the harm decidedly in Plaintiff's favor.

### B. An Injunction or Stay is Necessary to Aid Federal Court Jurisdiction

As a starting point, federal courts have a "virtually unflagging obligation to exercise the jurisdiction conferred upon them," and therefore federal courts should abstain from exercising jurisdiction only in "exceptional circumstances." *Colorado River Water Conservation v. U.S.* (1976) 424 US 800, 813, 815.

Federal courts are authorized to grant "an injunction to stay proceedings in a State court . . . where necessary in aid of its jurisdiction, . . ." 28 USC 2283 (exceptions to Anti-Injunction Act). More precisely, a federal court is empowered to issue injunctions relating to a pending state court case, or stay a state court case "to prevent a state court from so interfering with a federal court's consideration or disposition of case as to seriously impair the federal court's flexibility and authority to decide that case." *Piper v. Portnoff Law Associates*, 262 F. Supp. 2d 520, 529 (E.D. Penn 2003), quoting *Atlantic Coast v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970). The court in *Piper v. Portnoff* concluded that federal courts should evaluate several factors when "deciding whether a state court proceeding sufficiently interferes with a federal court's jurisdiction to justify an injunction," as follows:

"First, we look to be the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding. Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action. And finally, we consider principles of federalism and comity, for a primary aim of the Anti-Injunction Act is "to prevent needless friction between the state and federal courts." *Id.*, at 530.

The court in *Piper v. Portnoff* granted an injunction preventing plaintiffs eviction from her home because the ruling in the state court eviction proceeding threatened the federal court's pending adjudication of a federal statute, the Fair Debt Collection Practices Act (FDCPA). More precisely, the court in *Piper* ruled, as follows:

14

"In addition to court costs, this amount reflects the imposition of significant attorney's fees which the plaintiff has a reasonable probability of showing violate the FDCPA. If the sheriff's sale were to proceed, the state court proceeding would "present a sufficient threat to the federal action" in that Mrs. Piper would lose her home even though the fees and costs assessed against her property were unlawful. Furthermore, this court finds that enjoining the sheriff's sale of the plaintiff's home does not create needless friction between the federal and state courts. Therefore, this court finds that an injunction may issue in order to aid the jurisdiction of this court." *Id*, at 530.

Needless to say, *Piper v. Portnoff* is **extremely analogous** to this case. In this case, Plaintiff is on the verge of an eviction from her Home, which obviously would be directly contrary to the rulings this Court has already issued. These include the Settlement Order (which expressly prohibits Wachovia from doing exactly what it did); the sale rescission which would result from the improper recording of the NOD, Assignment of Trustee, and the NTS, which allegedly form the basis to evict Plaintiff from her Home. It is obviously improper for Plaintiff to be evicted from her Home, prior to adjudication of the pending issues, notably including rescission, disgorgement of mortgage payments, plus attorney fees, legal costs, and/or monetary or statutory damages. It is therefore necessary for this Court "in aid of its jurisdiction," to intervene at this time.

There are, of course, additional cases supporting the relief sought in this Motion, *some* of which are identified as follows:

i. *Zurich American Ins. Co. v. Superior Court for State of California*, 326 F.3d 816 (C.A.7 Ill. 2003) [federal injunctive relief may be necessary to prevent state court from so interfering with federal court's consideration or disposition of case as to seriously impair federal court's flexibility and authority to decide that case.]

ii. *Diablo v. Delisle*, 500 F.Supp.2d 159 (NDNY 2007) ["In aid of jurisdiction" exception to Anti-Injunction Act may be applied where court has been heavily involved in settlement negotiations or formulation of consent decree, or where issues subsequently raised in state court cannot be separated from relief previously ordered in federal court.]

iii. *Federal Sav. & Loan Ins. Corp. v. PSL Realty Co.*, 482 F.Supp. 74 (S.D. 111. 1979) [provision that states

court proceedings may be enjoined by a federal court when such action is necessary in aid of federal court's jurisdiction operates to require federal court to enjoin any state court action which impinges upon jurisdiction of federal court].

## VI. CONCLUSION.

For all of the above reasons, Plaintiff respectfully requests that this Court enter a temporary restraining order staying enforcement of the eviction. The harm if any to the defendant can be compensated with a damage award. Plaintiff stands to lose her unique one of a kind home, designed and built by Richard Neutra. This harm is irreparable; money damages cannot compensate plaintiff for the loss of her primary residence. In addition, the public interest weighs in favor of allowing plaintiff to maintain her home, particularly in light of the egregious lender actions. Status quo must be preserved to prevent immediate and irreparable harm and the court must preserve the issues presented in Plaintiff's complaint. This ex parte request is properly brought in order to preserve the status quo.

This Court is respectfully requested to grant the relief requested in this ex parte application to prohibit the pending sheriff's eviction from her home at the property located at 2433 Solar Drive, Los Angeles California

    Plaintiff is willing and able to provide the court with a bond reasonable to sustain the granting of the temporary restraining order to stay the eviction if necessary.

| | |
|---|---|
| Date: November 1, 2011 | CONSUMER ACTION LAW GROUP |
| | _/s/ Yelena Gurevich_ |
| | Yelena Gurevich, Esq. |