1  Jack R. Nelson (SBN 111863)
   Email:  jnelson@reedsmith.com
2  David J. De Jesus (SBN 197914)
   Email:  ddejesus@reedsmith.com
3  Alicia A. Adornato (SBN 254228)
   Email:  aadornato@reedsmith.com
4  REED SMITH LLP
5  101 Second Street, Suite 1800
   San Francisco, CA  94105-3659
6  Telephone:     +1 415 543 8700
7  Facsimile:      +1 415 391 8269

8  T. Thomas Cottingham, III (*admitted pro hac vice*)
   tcottingham@winston.com
9  Stacie C. Knight (*admitted pro hac vice*)
   sknight@winston.com
10 WINSTON & STRAWN LLP
11 214 North Tryon Street
   Charlotte, NC 28202-1078
12 Telephone:     +1 704 350 7700
   Facsimile:      +1 704 350 7800
13

14 Attorneys for Defendants Wachovia Mortgage,
   FSB, Wachovia Bank, FSB, Golden West
15 Financial Corporation and Wells Fargo Bank, N.A.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION,<br><br>This document relates to:<br><br>*ALL CASES* | Case No. M:09-cv-2015-JF<br><br>**MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br><br>Honorable Jeremy Fogel |

Wachovia Mortgage, FSB, formerly known as World Savings Bank, FSB, now known as Wachovia Mortgage, a division of Wells Fargo Bank, N.A. ("Wachovia") hereby moves to enforce the Agreement and Stipulation of Settlement (the "Settlement Agreement") against settlement class member Jerry Putz, the plaintiff in *Putz v. World Savings, Inc.,et al.,* Case No. 5:11-cv-05677-LHK (N.D. Cal.) (the "Putz Action"). In support, Wachovia states:

## I. Background Facts and Procedural Posture of the Putz Action

In November 2011, Jerry Putz filed his Complaint against Wachovia and other parties in Superior Court of the State of California, Santa Clara. On November 23, 2011, Wachovia removed to the Putz Action to United States District Court, Northern District, San Jose based on diversity. Declaration of Robert A. Bailey filed in support of Defendants' Motion to Enforce Settlement Agreement ("Bailey Dec."), Ex. A (Second Amended Complaint in the Putz Action). As set forth in the Complaint, Putz entered into entered into a "Pick-a-Payment" mortgage loan with World Savings Bank, FSB, in December 2006. *Id*. at ¶2, Exs. B, C. Putz executed a Note and Deed of Trust securing repayment of the loan with his San Jose, California residence. *Id*.; Bailey Dec. at Exs. B, C.

Putz's Complaint alleges that Wachovia violated the Truth in Lending Act by, *inter alia*, making inaccurate and misleading disclosures regarding features of his Pick-a-Payment mortgage loan including claims regarding negative amortization and other features of the Pick-a-Payment mortgage. Bailey Dec., Ex. A at ¶¶50-84. Putz also bring claims for injunctive relief, unfair business practices, breach of contract, breach of covenant of good faith and fair dealing, breach of covenant of good faith and fair dealing and quiet title arising out of alleged misleading and inaccurate disclosures regarding the features of their Pick-a-Payment mortgage, and claim that inadequate form of disclosures under the Truth In Lending Act entitle them to rescission. *Id*. at ¶¶50-84; Prayer at ¶¶1-14. On January 17, 2012, Wachovia filed its Motion to Stay Proceedings (the "Stay Motion") on the grounds that Jerry Putz is a member of the class action and the Complaint contains claims already settled by the Class Action Settlement (the "Settlement"). Bailey Dec., Ex. B. The Court continued the Stay Motion and requested that the Class Action Judge, Judge Fogel, to relate the cases. Bailey Dec. at ¶3. On February 17, 2012, Judge Fogel invited Wachovia to file a Motion to

1  Enforce Settlement Agreement in the Class Action, but declined to relate the cases. Bailey Dec., Ex.
2  C. Trial is not currently scheduled for the Putz Action. Bailey Dec. at ¶3.

**II.    The Class Action Settlement Agreement**

On December 10, 2010, the parties in this Pick a Payment MDL entered into the Settlement Agreement to fully resolve and compromise certain claims arising out of the origination of "Pick-a-Payment" mortgage loans. See Ex. A to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities in Support Thereof filed December 10, 2010 (Dkt. # 112) ("Settlement Agreement"). Specifically, the Settlement Agreement releases:

> (1) "the Alleged Claims (as defined)," and (2) all claims arising out of "the Alleged Claims (as defined), the origination of the Settlement Class Member's Pick-a-Payment mortgage loan, the manner in which the Defendants applied the Settlement Class Member's payments to principal and interest, negative amortization, the Pick-a-Payment mortgage loan's potential for negative amortization, the disclosure of the Pick-a-Payment mortgage loan's potential for negative amortization, and the disclosure of the manner in which payments would be applied to principal and interest." Settlement Agreement, § V(A).

The Settlement Agreement was finally approved by this Court on May 17, 2011, and became effective on September 1, 2011, when the final remaining appeal of the May 17, 2011 Order was dismissed by the United States Circuit Court of Appeals for the Ninth Circuit and the mandate docketed in this Court. (Dkt. # 253). Pursuant to the terms of the Settlement Agreement, upon its Effective Date, all claims by Settlement Class Members who did not timely opt-out of the Settlement Class that fall within the scope of Section V(A) of the Settlement Agreement are forever barred and discharged. Further, pursuant to Section XIV of the Settlement Agreement, upon the Effective Date, every Settlement Class Member is "permanently barred and enjoined from initiating, asserting,

and/or prosecuting any Alleged Claim(s) against any Released Entity in any court, tribunal, forum, or proceeding."

### III.     Putz Continues to Prosecute Claims That Are Barred by the Settlement Agreement.

Pursuant to the allegations of his Complaint, in which Putz asserts that, in December 2006, he entered into a "Pick-a-Payment" mortgage loan secured by his principal residence, Putz falls within the definition of "borrower" as set forth in Section I.1.7 of the Settlement Agreement. Because Putz was in default on the "Pick-a-Payment" mortgage loan as of the Preliminary Approval Date, he is a member of Settlement Class C.

Putz's Complaint also brings claims that fall within the scope of the Settlement Agreement's Release language. Specifically, the Release language encompasses "Alleged Claims," which includes all claims arising out of the disclosure of the Pick-a-Payment loan's various features. The scope of this Release language plainly covers claims that Putz alleges in his Complaint.

In accordance with Section X of the Settlement Agreement, Putz was provided with Notice of the Settlement Agreement and was advised of his right to opt-out of the Settlement Agreement. Although being on notice of the Settlement Agreement, Putz failed to timely opt out of the Settlement Agreement by giving proper notice to the Class Administrator and has cashed his settlement check. *See* Bailey Dec. at ¶6; Lake Dec. at ¶¶7-8.  Prior to filing this motion, counsel for Wachovia conferred with Putz's counsel on these issues.  Bailey Dec. at ¶5, Ex. F.  On March 30, 2012, Wachovia sent a meet and confer letter to plaintiff's counsel in the Putz Action to request voluntary dismissal of the claims covered under the Settlement.  *Id*.  To date, Putz does not refute that he failed to opt out the class and Putz has not dismissed his claims covered under the Settlement. Bailey Dec. at ¶6.

### IV.     This Court Should Enjoin Putz From Pursuing Claims That Are Covered By the Release.

Pursuant to the express terms of the Settlement Agreement, upon its Effective Date, Settlement Class Members are forever barred from pursuing claims within the scope of the Release.

By the terms of his own Complaint, Putz is a Member of Settlement Class. See Bailey Dec. Ex. A. Further, many of the claims in Putz's Complaint plainly are within the scope of the Release contained in Section V of the Agreement. Specifically, the Release expressly bars Class Members from prosecuting claims "arising out of" "the Alleged Claims, the origination of the Settlement Class Member's Pick-a-Payment mortgage loan, the manner in which the Defendants applied the Settlement Class Member's payments to principal and interest, negative amortization, the Pick-a-Payment mortgage loan's potential for negative amortization, the disclosure of the Pick-a-Payment mortgage loan's potential for negative amortization, and the disclosure of the manner in which payments would be applied to principal and interest."

A review of Putz's Complaint shows that most if not all of Putz's alleged claims against Wachovia fall within the scope of the Release. Bailey Dec. at Ex. A. Specifically, the Release encompasses all of Putz's claims that are based on the allegation that Wachovia made inaccurate and misleading disclosures regarding the Pick-a-Payment loan's potential for negative amortization and the other features of the Pick-a-Payment mortgage loan, including their claims that: (1) the TILA disclosures were defective and that Defendants "fail[ed] to clearly and conspicuously disclose the actual interest rate" (*id*. at ¶56); Defendants "fail[ed] to clearly and conspicuously disclose negative amortization" (*id*. at ¶64); Defendants "fail[ed] to clearly and conspicuously disclose that the initial interest rate is discounted" (*id*. at ¶71); Defendants "fail[ed] to disclose the composite interest rate" (*id*. at ¶79); "Plaintiff have [sic] the right to rescind" (*id*. at ¶84); Defendants "failed . . . to clearly or accurately disclose the terms of the ARM loan to Plaintiff" (*id*. at ¶90); Defendants "promised that the loan would have a very loaw, fixed interest rate for a period of three (3) to five (5) years and no negative amoritization" (*id*. at ¶101); Defendants "expressly and/or through their conduct and actions agreed that Plaintiff's monthly payment obligations would be sufficient to pay both the principal and interest owed" (*id*. at ¶123); Defendants "represented that if Plaintiff made the monthly payments in the amount prescribed . . . that no negative amortization would occur" (Id. at ¶134); Defendants "packaged the loan contracts in such a manner as to lead Plaintiff to believe that they had a low interest rate" (*id*. at ¶157); Defendants "breached their fiduciary duties owed to Plaintiff by placing and negotiating a series of loans without due care to the best interest of Plaintiff" (*id*. at

¶178); Defendants "willfully breached their implied covenant of good faith and fair dealing with Plaintiff when Defendants: failed to provide all proper disclosures" (*id*. at ¶184); Defendants "claimed an adverse interest in Plaintiff's title in the property" (*id*. at ¶188); and Plaintiff seeks injunctive relief "because the loan is an abusive and unlawful predatory loan" (*id*. at ¶193).

There can be no dispute that these claims are barred.  *See Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000) (holding that the plaintiffs "clearly fall within the Settlement Class . . . . [They] have not presented any argument to the contrary; nor do they claim to have opted out of the Hagen settlement class . . . . Plaintiffs' attempt to repackage the claims asserted and settled in Hagen as predicate acts under RICO is therefore barred."); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("the weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.'").

Finally, Putz received notice of the Settlement and did not opt out.  Instead, he cashed his settlement check.  Lake Decl. ¶ 10.  As this Court held in the May 17, 2011 Final Approval Order, "notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by United States mail, and additional notice was given by publication on the Internet and in USA Today. These were the best practicable means of informing class members of their rights and of the settlement's terms. *See Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994) (affirming district court's conclusion that notice by direct mail and publication was best practicable notice)." Final Approval Order at 5 (emphasis added).  Accordingly, Putz simply cannot claim that he has a right to prosecute a second action when he failed to exclude himself from the Settlement. See *Reppert v. Marvin Lumber and Cedar Co., Inc.*, 359 F.3d 53, 56 -57 (1st Cir. 2004) (holding that "[a]fter ... appropriate notice is given, if the absent class members fail to opt out of the class action, such members will be bound by the court's actions, including settlement and judgment, even though those individuals never actually receive notice").

The All-Writs Act, 28 U.S.C. § 1651, empowers this Court to protect its jurisdiction in overseeing the administration of the Settlement Agreement by issuing an injunction to prevent interference with its Final Approval Order. See, e.g., *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011 (9th Cir. 1998); *In re The Prudential Ins. Co. of Am. Sales Practices Litig. (Lowe)*, 261 F.3d 355, 365-66, 368 (3d Cir. 2001). Accordingly, Wachovia requests that this Court enter an order enjoining Putz from further prosecuting claims barred by the Release and requiring him to withdraw or dismiss those claims in the pending Putz Action.

DATED: May 1, 2012         REED SMITH LLP

**/s/ Jack R. Nelson**
Jack R. Nelson (SBN 111863)
David De Jesus (SBN 173263)
Alicia A. Adornato (SBN 254228)

WINSTON & STRAWN LLP

**/s/ T. Thomas Cottingham**
T. Thomas Cottingham*
Stacie C. Knight*

*Admitted *pro hac vice*

Attorneys for Defendants