**E-Filed 11/19/2012**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORPORATION "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION. | Case No. 5:09-md-02015-JF<br><br>ORDER RE MOTIONS HEARD OCTOBER 16, 2012<br><br>[re: dkt. entries 299, 307, 322, 326, 339, 342, 343, 344, 349, 318] |

Before the Court are ten motions arising from the settlement of this class action litigation: motions for relief from the class action settlement filed by Dina Flotte (Dkt. Entry 299) and Nick John Makreas (Dkt. Entry 307); six motions to enforce the class action settlement agreement filed by Defendants (Dkt. Entries 322, 326, 339, 342, 343, and 344); a motion to quash filed by Catherine Czyz (Dkt. Entry 349); and a motion to compel enforcement of the settlement agreement filed by Thomas Worthington (Dkt. Entry 318). The Court expressly has retained "continuing jurisdiction to interpret and enforce the settlement agreement." Dkt. Entry 207, Order Granting Final Approval Of Class Action Settlement, at 4. The Court thus has subject matter jurisdiction over the motions. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380-81 (1994) (district court has subject matter jurisdiction if its dismissal order expressly retains jurisdiction over disputes arising from the settlement agreement). The Court has considered both the written briefing with respect to each motion and the oral argument presented by those parties and attorneys who appeared at the

hearing on October 16, 2012.[1]

# I. APPLICABLE LAW

## A. Opt Out

"Absent a violation of due process or excusable neglect for failure to timely opt out, a class-action settlement agreement binds all class members who did not do so." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011). The Court may relieve a party from a final judgment or order under Federal Rule of Civil Procedure 60(b)(1) upon a showing of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Moreover, the Court may extend the time within which an act must be done "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Under these authorities, the Court may grant a request for a late opt out if the class member demonstrates that his or her failure to opt out in the time and manner provided by the class notice was a result of excusable neglect. Factors to be included in a court's analysis of a claim of excusable neglect include (1) the danger of prejudice to the opposing party, (2) the length of delay in seeking relief and the impact of such delay on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 (1993).

## B. Enforcement Of Settlement

Under the All Writs Act, federal courts have the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This power encompasses the authority to enjoin state court proceedings that "interfere, derogate, or conflict with federal judgments, orders, or settlements." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (internal quotation marks and citation omitted).

---

[1] Oral argument was heard with respect to Dkt. Entries 299, 307, 326, 339, 343, 344, and 349. No appearance was made by Lansing and Lura Eberling with respect to Dkt. Entry 322, by Iris Hecker with respect to Dkt. Entry 342, or by Thomas Worthington with respect to Dkt. Entry 318 – accordingly, those motions were submitted without oral argument pursuant to Civil Local Rule 7-1(b).

2
Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

## II. DISCUSSION

**A.    Dina Flotte's Motion For Relief From Settlement (Dkt. Entry 299)**

Dina Flotte ("Flotte") is a resident of Dublin, Alameda County, California.  Dkt. Entry 299-1, Flotte Decl., ¶ 2.  She obtained a pick-a-payment loan from World Savings FSB, predecessor in interest to Wachovia Mortgage,[2] in August 2006.  *Id*.  She has not made a payment on her mortgage loan since August 2008, and the unpaid principal balance on her loan is in excess of $1 million.  Dkt. Entry 305, Dolan Decl., ¶ 3.  She is a Class C member.  *Id*.

Flotte claims that she did not receive a notice of the class action but learned about it in February 2011 from her mother, who also had a pick-a-payment loan with Wachovia.  Dkt. Entry 299-1, Flotte Decl., ¶ 3; Dkt. Entry 299, Motion, p. 2.  Flotte states that she called Wachovia immediately and was informed that she had to opt out of the class action if she wished to bring her own lawsuit.  Dkt. Entry 299-1, Flotte Decl., ¶ 3.  She claims that the Wachovia representative with whom she spoke referred her to a website that contained information about the class action lawsuit.  *Id*.  However, according to Flotte, the website was down each time she tried to access it.  *Id*.  Flotte asserts that she called Wachovia back and was instructed to send Wachovia a letter stating that she wished to opt out of the class action.  *Id*. at ¶ 4.  Flotte claims that she mailed such a letter to Wachovia on February 22, 2011 and sent it by facsimile on the same date.  *Id*.  On October 4, 2011, she filed a lawsuit against Wachovia and related entities in the Alameda Superior Court, *Flotte v. Wachovia Mortgage Corp., et al.*, Case No. RG11598402.  *Id*. ¶ 5.  After filing the lawsuit, she received a check in the amount of $178.04 in settlement of the class action lawsuit.  *Id*. ¶ 6.  She has not cashed the check.  *Id*.

Flotte's state court lawsuit asserts four claims, including one for violation of California's Unfair Competition Law ("UCL").  Dkt. Entry 299, Motion, p. 2.  Defendants Wachovia *et al.* contend that Flotte may not assert a UCL claim in her state court action because such claim is barred by the class action settlement approved by this Court on May 17, 2011.  Flotte acknowledges that

---

[2] "On or about December 31, 2007, World Savings changed its name to Wachovia Mortgage, FSB." *Abuda v. Cal-Western Reconveyance Corp.*, 2012 WL 2564791, at *1 (D. Nev. June 29, 2012). "Effective November 1, 2009, Wachovia Mortgage, FSB merged with Wells Fargo and is now known as Wachovia Mortgage, a Division of Wells Fargo." *Id*.

she failed to follow the proper procedure for opting out of the class action. However, she seeks relief from the judgment in this case on the grounds that she did not receive formal notice of the class action and followed Wachovia's directions in sending the opt out directly to Wachovia instead of to the class action administrator.

Defendants dispute Flotte's version of events. Amy Lake ("Lake"), an employee of the class action administrator, Rust Consulting, Inc. ("Rust Consulting"), states in her declaration that class notice was sent to Flotte at her current address in Dublin and was not returned as undeliverable. Dkt. Entry 306, Lake Decl., ¶ 7. Lake also states that Rust Consulting monitored the settlement website carefully, and that she is not aware of any instance in which the website was not functioning. *Id*. ¶ 8. Michael Dolan ("Dolan"), an operations analyst with Wells Fargo, states in his declaration that Wells Fargo[3] did not receive the letter or facsimile requests for opt out that Flotte claims to have sent in February 2011. Dkt. Entry 305, Dolan Decl., ¶ 7. He also explains that each time a borrower calls Wells Fargo's customer service department, the time, date, and substance of the call are logged; once logged these notes cannot be changed. *Id*. ¶ 8. Dolan has reviewed the notes associated with Flotte's mortgage and there is no indication that Flotte called Wells Fargo at any time in February 2011, nor is there any indication that a customer service representative instructed Flotte to send an opt out directly to Wells Fargo. *Id*. ¶ 9. Wells Fargo customer service personnel are trained not to provide any information about how to opt out of the class, but rather are trained to direct the borrower to call Rust Consulting or visit the settlement website. *Id*. ¶ 8. Finally, Dolan states that Wells Fargo solicited Flotte to apply for a loan modification on multiple occasions, but Flotte failed to return Wells Fargo's telephone calls and failed to provide information necessary to process her modification application. *Id*. ¶¶ 4-5. Dolan also submitted a supplemental declaration following the hearing, in which he states that Flotte last applied for a loan modification in February 2010, at which time she was offered a loan modification but failed to accept it. Dkt. Entry 359, Suppl. Dolan Decl., ¶ 3.

---

[3] As noted in footnote 1, above, Wachovia Mortgage now is a division of Wells Fargo. Thus it appears that although Flotte refers to her communications with "Wachovia," inquiries about her mortgage actually would have been addressed by Wells Fargo personnel.

4

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

1    Applying the *Pioneer* factors, the Court concludes that Flotte has not demonstrated that the
2    relief she requests is warranted. Defendants would be prejudiced by having to defend a state law
3    UCL claim that they reasonably believed had been settled. While she does offer an explanation for
4    her delay in seeking to opt out of the settlement, that explanation is contradicted by credible
5    evidence submitted by Defendants. It appears that Flotte has remained in her home for more than
6    four years without making any mortgage payments whatsoever, and that when she was offered a
7    loan modification almost two years ago she failed to accept it. Based upon this record, Flotte's
8    request for a late opt out will be denied.

**B.   Nick John Makreas's Motion For Relief From Settlement (Dkt. Entry 307)**

Nick John Makreas ("Makreas"), proceeding *pro se*, requests relief from the class action settlement on the ground that he mailed a timely opt out pursuant to the provisions of the class notice. He submits an "affidavit of truth" stating that he mailed his opt out on February 21, 2011, well before the March 16, 2011 deadline. Dkt. Entry 307, Exhs. 1-2. He received a settlement check in the amount of $178.04. *Id*. Exh. 6. It is not clear when he received the check – the check and accompanying correspondence are dated October 7, 2011, but Makreas states in his motion that he received the check in November 2011. Dkt. Entry 307, Motion, p. 2 and Exh. 6. Makreas represents that he did not cash the check but instead marked it "VOID" and sent it to the Court. He states that he assumed that the check had been sent to him in error, but that when he followed up in December 2011, he was advised that he was not on the opt out list. Dkt. Entry 307, Motion, p. 3. Makreas filed the present motion for relief on January 4, 2012. Dkt. Entry 307, Motion.

Amy Lake of Rust Consulting states in her declaration that no opt out was received from Makreas. Dkt. Entry 312, Lake Decl., ¶ 8. Makreas theorizes that the unreliability of the United States Postal Service may explain why Rust Consulting did not receive the opt out. He offers evidence of other, unrelated occasions on which the Postal Service made errors. Dkt. Entry 316, Reply, Exhs. A and B.

Defendants will suffer prejudice if Makreas is permitted to opt out, as they are entitled to rely upon the fact that the case has been settled against all class members who failed to opt out by March 2011. However, there is no record evidence that undermines Makreas's declaration. The

5

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

Court found Makreas, who appeared telephonically at the hearing *pro se*, to be credible. He filed the present motion within two months of receiving a settlement check. That delay is not unreasonable given the fact that it spanned the winter holidays and given Makreas's *pro se* status. Accordingly, Makreas's motion for a late opt out will be granted.

Defendants remind the Court that they were entitled to withdraw from the settlement if the number of opt outs were too high, and that finality in the number of opt outs was very important in their decision to go forward with the settlement. This argument is not particularly compelling given the fact that the Court has received fewer than fifteen requests for late opt out since judgment was entered.

## C. Defendants' Motion To Enforce Settlement Against The Eberlings (Dkt. Entry 322)

Defendants move to enforce the settlement against Lansing and Lura Eberling, Class C members who are litigating against Defendants in the United States District Court for the Central District of California, *Eberling v. R.M. Sterling Mortgage Services, Inc., et al.*, Case No. 8:10-cxv-01831-AG. Defendants seek an injunction precluding the Eberlings from litigating in that action claims that were released in the settlement of this action.

The Eberlings, currently in their late seventies, filed the Central District action prior to settlement of the present action. They are suing Wachovia and related entities for claims arising out of their pick-a-payment mortgage. Dkt. Entry 329, Opp. & Decl. of Craig Boucher, p. 5. They initially filed suit in the California Superior Court, but in 2010 the case was removed to the Central District. *Id*. The Eberlings received notice of the class action settlement on February 1, 2011. *Id*. They showed the notice to their counsel in the Central District action, Craig Boucher ("Boucher"). *Id*. At a hearing in the Central District in March 2011, Boucher advised the court and opposing counsel that the Eberlings would be opting out of the settlement. *Id*. p. 6. Boucher also emailed opposing counsel in the Central District action on March 16, 2011, stating that an attached opt out request would be mailed to the class administrator's office on that date. Dkt. Entry 324, Bailey Decl., Exh. F. Boucher states in his declaration that he did timely mail the opt out on March 16, 2011, the last date upon which the opt out could be postmarked. Dkt. Entry 329, Opp. & Decl. of Craig Boucher, p. 6. He states that he also mailed copies to class counsel, the Arbogast & Berns

6

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

firm and the Buxner Law Firm. *Id*. Boucher attaches a copy of the opt out, which indicates that it was sent by certified mail to the Pick-a-Payment Exclusions address provided in the class notice as well as to Plaintiffs' counsel. *Id*. p. 10.

The Eberlings' opt out was not received by Rust Consulting. Amy Lake states in her declaration that the Eberlings are class members, that the class notice was mailed to them, that Rust Consulting did not receive an opt out from them, and that the settlement check mailed to them was not returned. Dkt. Entry 323, Lake Decl., ¶¶ 5-10.

Defendants filed the present motion on April 13, 2012. With respect to the Eberlings' assertion that they timely opted out, Defendants point to the declaration of Amy Lake as evidence that no opt out was received. Defendants also question the veracity of the Eberlings' counsel, Boucher, noting that although he claims to have mailed copies of the opt out to Rust Consulting and to class counsel, he has been able to produce proof of mailing only as to one of the class counsel. Defendants also point out that Boucher's declaration is unsigned. Finally, Defendants point to Amy Lake's description of the procedures at Rust Consulting for processing opt outs. Dkt. Entry 331-2, Reply Decl. of Amy Lake, ¶ 8. These include a dedicated post office box for exclusion requests that is checked daily, logging of such requests, and imaging of such requests. *Id*. The largest number of exclusion requests received in one day was 140. *Id*. ¶ 9. On March 21 2011, the date on which the Eberlings' opt out presumably would have arrived, thirty exclusion requests were received. *Id*. Defendants assert that in light of these safeguards, it is not likely that an opt out request would have been misplaced by Rust Consulting.

Boucher has submitted a supplemental declaration, which is signed under penalty of perjury, stating unequivocally that he personally deposited the opt out request in the United States mail at the United States Post Office at Big Bear Lake, California, on March 16, 2011. Dkt. Entry 337, Evid. Obj. and Boucher Supp. Decl., p. 7.

There is substantial evidence that Boucher intended to and did mail an opt out on behalf of the Eberlings on March 16, 2011. It is unfortunate that the document was not received and that Boucher does not have proof of mailing, but the Court is inclined to credit Boucher's declaration given his status as an officer of the court, the fact that the Central District suit was well under way

7

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

before the settlement of the present action, and the fact that Boucher informed the court and opposing counsel in the Central District action that the Eberlings would be be opting out. Accordingly, the motion to enforce the settlement agreement will be denied, and the Eberlings will be granted a late opt out from the class action settlement.

### D. Defendants' Motion To Enforce Settlement Against Jerry Putz (Dkt. Entry 326)

Defendants move to enforce the settlement agreement against Jerry Putz ("Putz"), who is litigating against Wachovia *et al.* in another case in this district, *Putz v. World Savings, Inc., et al.*, Case No. 5:11-cv-05677-LHK, assigned to Judge Lucy H. Koh. Dkt. Entry 328, Bailey Decl., ¶¶ 1-2. In the action before Judge Koh, Putz asserts claims based upon Defendants' alleged violations of the Truth in Lending Act and other claims arising out of the pick-a-payment mortgage loan into which he entered in December 2006. *Id.* Defendants present the declaration of Amy Lake of Rust Consulting that Putz is a class member, that a class notice was mailed to him in January 2011, that the notice was not returned, that a settlement check was mailed to Putz in October 2011, and that the check was cashed on November 30, 2011. Dkt. Entry 327, Lake Decl., ¶¶ 5-10.

In opposition, Putz declares that he has three pick-a-payment loans, that he did not receive notice of the class action, that if he did receive notice he did not realize what it was, and that he did not understand that the settlement check in the amount of $178.04 was related to settlement of his rights. Dkt. Entry 333, Putz Decl., ¶¶ 2, 7-11. Counsel expands upon Putz's declaration statements in Putz's opposition brief, stating that Putz is seventy-nine years old and is easily confused, that he thought the check was a refund of an overpayment on his account, and that the website containing information about the settlement was unavailable whenever counsel tried to access it. Unfortunately, counsel does not provide a declaration or other evidence that supports these asserted facts.

Applying the *Pioneer* factors to the only evidence presented, it appears that Putz was sent notice of the class action settlement, did not opt out within the period provided (or at all), and cashed his settlement check. He now requests leave to opt out in opposition to Defendants' motion to enforce the settlement. Clearly, permitting a late opt out at this point would prejudice Defendants, who are entitled to defend Putz's current action based upon the fact that he released

8

most of his current claims. It was within Putz's reasonable control to seek exclusion from the class at an earlier date. Although he appears to be acting in good faith, the evidence of confusion Putz presents is insufficient to warrant a finding of excusable neglect.[4] Accordingly, Defendants' motion to enforce the settlement will be granted, and Putz's request for a late opt out will be denied.

The Court concludes that the settlement agreement in the present action bars all of the claims asserted in Case No. 5:11-cv-05677-LHK, at least as those claims presently are framed: (1) the first claim for violation of the Truth in Lending Act ("TILA"); (2) the second claim for violation of California's Unfair Competition Law ("UCL") predicated on violation of TILA; (3) the third claim for violation of California's UCL based upon the loan's interest rate; (4) the fourth claim for breach of contract; (5) the fifth claim for breach of the implied covenant of good faith and fair dealing; (6) the sixth claim for violation of California's UCL based upon violation of California's Financial Code §22302; (7) the seventh claim for accounting; (8) the eighth claim for breach of fiduciary duty; (9) the ninth claim for breach of the implied covenant of good faith and fair dealing; (10) the tenth claim for quiet title (erroneously labeled as the ninth cause of action); and (11) the eleventh claim for injunctive relief (erroneously labeled as the tenth cause of action). At the hearing, Putz's counsel indicated that Putz may wish to assert claims based upon misapplication of loan payments or other theories that would not be barred by the settlement in the present case. The undersigned recommends that Judge Koh direct Putz to file an amended complaint omitting all claims that are barred by the settlement agreement and asserting only those claims that Putz believes fall outside the scope of the settlement agreement.

**E.     Defendants' Motion To Enforce Settlement Against Albert Del Sasso (Dkt. Entry 339)**

Defendants move to enforce the settlement agreement to bar affirmative defenses that class member Albert Del Sasso ("Del Sasso") has raised in a judicial foreclosure proceeding pending in

---

[4] At the hearing, Defendants' counsel stated that Putz already had received benefit under the settlement agreement, because he had applied and been considered for a loan modification. The Court directed Defendants to submit a supplemental declaration addressing this point. That declaration was filed on October 30, 2012, and it indicates that Putz sought loan modification for a sixth time on February 28, 2012, and that his application was denied on May 30, 2012 as a result of "insufficient income based upon the established debt-to-income ratios." Dkt. Entry 359, Suppl. Dolan Decl., ¶ 3.

9

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

Florida, *Wachovia Mortgage, FSB v. Albert Del Sasso, et al.*, Case No. 2009-CA-04462AW. Del Sasso does not deny that he is a class member bound by the settlement agreement, and he admits that he received and cashed his settlement check in the amount of $178.04. However, Del Sasso argues that the settlement agreement does not bar class members from asserting *affirmative defenses* arising out of Defendants' alleged violations of lending laws relating to class members' pick-a-payment mortgages. Defendants acknowledge that the settlement agreement does not expressly bar affirmative defenses, but they assert that the language of the agreement is broad enough to encompass the affirmative defenses asserted by Del Sasso. Defendants also argue that it would eviscerate the settlement agreement if class members could stop paying on their mortgages, wait until the lender institutes foreclosure proceedings, and then raise as affirmative defenses all of the alleged TILA violations and other alleged misconduct that was the subject of the present action.

The settlement agreement provides as follows:

> The Release: In consideration for the Settlement Benefits described herein, each and all of the Plaintiffs hereby agree to and by operation of law shall be deemed to agree to fully, finally, and completely release and forever discharge the Alleged Claims and any and *every actual or potential known or unknown claim, liability, right, demand, suit, matter, obligation, damage, loss or cost, action or cause of action, of every kind and description* that the Releasing Party has or may have, including assigned claims and Unknown Claims, asserted or unasserted, latent or patent, that is, has been, or could have been or in the future might be asserted by any Releasing Party in the Lawsuit, the Related Actions, any other case consolidated in the Lawsuit, or in any other action or proceeding in this Court, or any other court, administrative venue, tribunal or arbitration or other forum, *regardless of the type* or amount *of relief* or damages claimed, against any of the Released Entities arising out of the Alleged Claims, the origination of the Settlement Class Member's Pick-a-Payment mortgage loan, the manner in which the Defendants applied the Settlement Class Member's payments to principal and interest, negative amortization, the Pick-a-Payment mortgage loan's potential for negative amortization, the disclosure of the Pick-a-Payment mortgage loan's potential for negative amortization, and the disclosure of the manner in which payments would be applied to principal and interest.

Settlement Agreement ¶ V(A) (emphasis added).

There does not appear to be any authority directly on point. Defendants rely upon *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000), in which the court precluded class members from repackaging settled claims as predicate acts under RICO. Del Sasso asserts that the Circuit Court of Florida has accepted his legal position in the case of *Wells Fargo v. Leonard Marshall*, Case No. 50 2010 CA 015977. However, the ruling in question is a denial of summary judgment

1 without a recitation of reasons and without any comment as to the effect of the settlement agreement
2 in that case.

3     This Court concludes that the language of the release, in particular the portions italicized
4 above, encompasses defenses claiming negative amortization, violations of TILA, and the like.
5 Accordingly, Defendants' motion to enforce the settlement agreement will be granted with respect
6 to Del Sasso.

### F. Defendants' Motion To Enforce Settlement Against Iris Hecker (Dkt. Entry 342)

8     Defendants move to enforce the settlement agreement against class member Iris Hecker
9 ("Hecker"), who currently is litigating an action in the San Mateo Superior Court, *Hecker v. World*
10 *Savings Bank, FSB, et al.*, Case No. CIV502062. Hecker does not dispute that she is a class
11 member and that certain of her claims, which are based upon origination of her pick-a-payment
12 loan, are barred by the class action settlement in this case. She asserts, however, that her claims for
13 declaratory relief, violation of California Civil Code § 2923.5, and quiet title are not barred. She
14 also asserts that claims under California's UCL and for negligence are not barred to the extent that
15 such claims are not based upon loan origination but rather upon loan servicing. Defendants agree
16 that loan servicing claims are not barred by the settlement agreement, but they point out that as
17 presently drafted, Hecker's UCL and negligence claims appear to be based upon both loan
18 origination and loan servicing.

19     The Court agrees with Defendants that most of Hecker's claims appear to be barred by the
20 settlement agreement, and accordingly it will grant the motion to enforce the settlement agreement.
21 It does not appear that there is any real dispute between the parties as to this point. This Court
22 recommends that the San Mateo court direct Hecker to file an amended pleading omitting claims
23 based upon loan origination and asserting only those claims that are outside the scope of the
24 settlement agreement, including claims based upon loan servicing.

### G. Defendants' Motion To Enforce Settlement Against The Hares (Dkt. Entry 343)

26     Defendants move to enforce the settlement agreement against William and Tiffany Hare with
27 respect to a judicial foreclosure proceeding instituted against them in Florida, *Wachovia Mortgage,*
28 *FSB v. William and Tiffany Hare*, Case No. 36-2008-CA-053185. The Hares did not file a written

11

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

response, but their attorney appeared at the hearing telephonically and presented oral argument in opposition to the motion.

Defendants filed a foreclosure action against the Hares after they defaulted on their loan in 2008. In response, the Hares asserted defenses and counterclaims based upon Defendants' alleged violations of TILA and other conduct relating to the Hares' pick-a-payment loan. The Hares also argued that the settlement agreement in this case deprived the Florida court of jurisdiction. There does not appear to be any doubt that the Hares are class members – Defendants submit a copy of their cashed settlement check in the amount of $178.04. Dkt. Entry 343-11. The state court rejected the Hares' arguments with respect to jurisdiction, tried the case, and issued a final judgment of foreclosure in April 2012. Dkt. Entry 343-7, Final Judgment. The Hares filed a motion to vacate that judgment and a motion to stay the foreclosure sale, asserting that the foreclosure proceeding itself had been terminated by the settlement in the instant case. Defendants filed the present motion to enforce settlement in July 2012, requesting that this Court enjoin the Hares from asserting claims or defenses that are barred by the settlement agreement and enjoin them from challenging the state court's jurisdiction based upon the settlement agreement in this case.

Defendants' motion to enforce the settlement will be granted. It appears from the record before this Court that the Hares are class members and thus that any claims or defenses based upon origination of their pick-a-payment loans, alleged TILA violations, and the like, are barred by the settlement of the present action. There is no legal authority for the Hares' argument that the settlement in this case somehow deprived the Florida courts of jurisdiction over a separate judicial foreclosure proceeding. In any event, the Florida court has rejected that argument, and the Hares' appropriate course is to appeal that determination in Florida.

**H.    Defendants' Motion To Enforce Settlement Against Catherine Czyz (Dkt. Entry 344) And Czyz's Motion To Quash (Dkt. Entry 349)**

Defendants move to enforce the settlement agreement against Catherine Czyz ("Czyz") with respect to a judicial foreclosure proceeding instituted against her in Florida, *Wells Fargo Bank, NA v. Catherine Czyz, et al.*, Case No. 2010-CA-016011 AW. In that action, Czyz has asserted defenses and counterclaims arising out of alleged TILA violations and other violations in connection with

12

Case No. 5:09-md-02015-JF
ORDER RE MOTIONS HEARD OCTOBER 16, 2012

origination of her pick-a-payment loan. Defendants request that Czyz be precluded from asserting such defenses and counterclaims on the ground that she is a class member who did not opt out of the class action settlement in this case.

Czyz, an attorney who is proceeding *pro se*, does not address whether the defenses and counterclaims in question are barred by the language of the settlement agreement (as discussed above, it appears that they are). Instead she has filed a Motion to Quash Service of Process, arguing that she was not properly served with the instant motion to enforce settlement, that this Court lacks personal jurisdiction over her, and that she opted out of the settlement agreement.

Defendants initially served a copy of the motion to enforce upon Michael Kaiser, Czyz's Florida counsel in the foreclosure action. Dkt. Entry 351-2, Knight Decl., ¶¶ 3-5. When Kaiser refused to accept service of the motion, Defendants served Czyz with the motion via overnight mail at 290 Caravelle Drive, Jupiter, FL, 33458, the same address Czyz lists on her Motion to Quash. *Id*. ¶ 6. Defendants have submitted a confirmation of delivery by Federal Express. *Id*.

Czyz asserts that this Court lacks personal jurisdiction over her because she is a resident of Florida and she did not receive notice of the class action settlement until October 2011. The Court may exercise jurisdiction over an absent class member as long as notice is provided consistent with due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985). Due process does not require that class members actually receive notice. *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). This Court has determined that the notice given in this case comported with due process. Dkt. Entry 207, Final Approval Order, p. 5.

Nonetheless, the Court is inclined to permit Czyz to opt out of the class action settlement. She represents that she did not receive notice of the action until she received the settlement check for $178.04 at the end of October 2011. She did not cash the check, but instead sent a letter on December 15, 2011 opting out of the settlement and requesting that she be contacted if further information was needed. Dkt. Entry 349, p. 19. The Court found Czyz, who appeared telephonically at the hearing, to be credible. The declaration of Amy Lake submitted by Defendants does not establish that the notice of the settlement actually was received by Czyz. After applying

13

1   the *Pioneer* factors, the Court concludes that relief is warranted; accordingly, Czyz will be permitted
2   to opt out of the class.

3   **I.      Thomas Worthington's Motion To Enforce Settlement (Dkt. Entry 318)**

4   Thomas Worthington ("Worthington"), proceeding *pro se*, moves to enforce the settlement
5   agreement. In his two-page motion, which is not supported by a declaration or other evidence,
6   Worthington asserts that he applied for a loan modification in November 2010, and that he
7   discussed the application with Donna Jones of Wachovia/Wells Fargo in February 2011. He states
8   that he had several other contacts with Donna Jones into spring or summer of 2011, but then stopped
9   hearing back from her. He claims that he called Jones in August 2011 and was informed by her that
10  his file had been transferred to Isabel Flores. Flores in turn informed Worthington that he did not
11  have an application on file and that he had to begin the application process again. Worthington
12  asserts that he called class counsel and spoke to a number of individuals and eventually was
13  informed that Wachovia/Wells Fargo had determined that he did not qualify for modification under
14  the terms of the settlement. He received a settlement check in October 2011. Worthington requests
15  that the Court direct Defendants to comply with the settlement agreement by granting him a loan
16  modification and reducing his "DTI" to thirty-one percent or less by waiving accrued interest and
17  other charges, forgiving principal, and reducing interest, thereby converting his loan into a fully
18  amortizing loan.

19  In response, Defendants submit the declaration of Michael Dolan ("Dolan"), who has been
20  employed in various capacities by Wells Fargo, Wachovia, and World for more than twenty years.
21  Dolan states that Worthington has two outstanding loans with Wells Fargo, one secured by a
22  property in Rancho Cucamonga, California, and one secured by a property in Washington, D.C.
23  Dkt. Entry 320, Dolan Decl., ¶ 3. Dolan asserts that the loan on the California property is not
24  subject to the settlement because at the time the loan funded, Worthington indicated that he would
25  not occupy the California property as his primary residence. *Id*. ¶ 4. Dolan states that the loan on
26  the Washington, D.C. property is part of the settlement class, as it was Worthington's primary
27  residence. *Id*. ¶ 5. Worthington applied for loan modification as to the Washington, D.C. property
28  but failed to provide all required documentation when requested to do so. *Id*. Wells Fargo made

14

numerous attempts to reach Worthington throughout May and June 2011. *Id*. ¶¶ 5-6. Worthington finally provided the documents in June 2011, and his application was processed. *Id*. ¶ 6. Wells Fargo attempted to contact Worthington throughout July to obtain further information. *Id*. ¶ 7. When Worthington failed to respond to multiple telephone calls and to a letter warning that his file would be closed if he did not respond, the file in fact was closed on September 8, 2012. *Id*. ¶ 8. Wells Fargo's records do not show any contact by Worthington after August 8, 2011, when he called to dispute the characterization of his California property as not being his primary residence. *Id*.

Worthington's three-page reply brief, again unsupported by a declaration or other evidence, asserts that the California property was his primary residence at the time he obtained the loan and remains his primary residence to this date. In light of the evidence submitted by Defendants, and Worthington's failure to submit any admissible evidence, Worthington's motion to enforce the judgment will be denied.

### III. ORDER

For the reasons discussed above,

(1) Dina Flotte's motion for relief from class action settlement (Dkt. Entry 299) is DENIED;

(2) Nick John Makreas's motion for relief from class action settlement (Dkt. Entry 307) is GRANTED;

(3) Defendants' motion to enforce settlement against the Eberlings (Dkt. Entry 322) is DENIED, and the Eberlings are granted leave to opt out of the class action settlement;

(4) Defendants' motion to enforce settlement against Jerry Putz (Dkt. Entry 326) is GRANTED;

(5) Defendants' motion to enforce settlement against Albert Del Sasso (Dkt. Entry 339) is GRANTED;

(6) Defendants' motion to enforce settlement against Iris Hecker (Dkt. Entry 342) is GRANTED;

(7) Defendants' motion to enforce settlement against the Hares (Dkt. Entry 343) is GRANTED;

(8) Defendants' motion to enforce settlement against Catherine Czyz (Dkt. Entry 344) is DENIED and Czyz's motion to quash (Dkt. Entry 349) is GRANTED insofar as it is construed as a request for leave to opt out of the class action settlement; and

(9) Thomas Worthington's motion to enforce settlement (Dkt. Entry 318) is DENIED.

The disposition of Defendants' motions with respect to Jerry Putz and Iris Hecker is without prejudice to the right of those plaintiffs to file an amended pleading in another action to the extent that such amendment is not inconsistent with this order.

DATED: November 19, 2012

_____
JEREMY FOGEL
United States District Judge