Amanda L. Groves (SBN: 187216)
agroves@winston.com
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA  94111-5802
Telephone:     (415) 591-1000
Facsimile:     (415) 591-1400

T. Thomas Cottingham, III *(admitted pro hac vice)*
tcottingham@winston.com
Stacie C. Knight *(admitted pro hac vice)*
sknight@winston.com
WINSTON & STRAWN LLP
100 North Tryon Street, Suite 2900
Charlotte, NC 28202-1078
Telephone:     +1 704 350 7700
Facsimile:     +1 704 350 7800

Mark T. Flewelling (SBN: 96465)
mflewelling@afrct.com
Yaw-Jiun (Gene) (SBN: 228240)
gwu@afrct.com
ANGLIN, FLEWELLING, RASMUSSEN,
CAMPBELL, AND TRYTTEN
199 So. Los Robles Ave., #600
Pasadena, CA  91101
Telephone:     +1 626 535 1900
Facsimile:     +1 626 577 7764

Attorneys for Defendants
WACHOVIA MORTGAGE, FSB, WACHOVIA
BANK, FSB, AND GOLDEN WEST
FINANCIAL CORPORATION

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to:<br><br><br><br><br><br>*ALL CASES* | Case No. M:09-cv-2015-JF<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' EX PARTE REQUEST FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**<br><br>Judge:  Hon. Jeremy Fogel |

1        Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, defendants Wachovia

2 Mortgage, FSB, Wachovia Bank, FSB, and Golden West Financial, hereby request that the Court

3 take judicial notice of the following documents submitted in support of their Opposition to

4 Plaintiffs' Ex Parte Request for a Temporary Restraining Order and Order to Show Cause Re:

5 Preliminary Injunction:

6        1.     Relevant excerpts from the printout of the Federal Making Home Affordable

7 Program  Handbook for Servicers of Non-GSE Mortgages, Version 4.0 as of August 17, 2012

8 ("MHA Handbook v4.0) obtained from https://www.hmpadmin.com/portal/programs/index.jsp ,

9 a website administered by Fannie Mae.  (attached as Exhibit 1).

10       2.     Deed of Trust dated June 13, 2007 and recorded in the official records of the

11 Office of the Butte County Recorder on June 21, 2007 as Document No. 2007-0030044 (attached

12 as Exhibit 2).

13        Judicial notice is appropriate for Exhibit 1 is appropriate because the MHA Handbook

14 v4.0 is a document compiled by Fannie Mae, as a financial agent of the United States, and was

15 obtained from a governmental website, thus constituting information that can be accurately and

16 readily determined from sources whose accuracy cannot reasonably be questioned.  Fed. Rule

17 of Evid. 201(b)(2); *United States v. Chapel,* 41 F.3d 1338, 1343 (9th Cir. Cal. 1994)(taking

18 judicial notice of information from the FDIC); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d

19 453, 457 (5th Cir. 2005) (taking judicial notice of information published on the National

20 Mediation Board's website); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking

21 judicial notice of information on federal government's website).

22        Judicial notice is appropriate for Exhibit 2 because it is a true and correct copy of an

23 official public record of the Butte County Recorder's Office, whose authenticity is capable of

24 accurate and ready determination by resort to sources whose accuracy cannot reasonably be

25 questioned.  Fed. R. Evid. 201(b); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1026 (9th Cir. 1992)

26 (holding that notice may be taken of facts capable of accurate and ready determination by resort

27 to sources whose accuracy cannot reasonably be questioned); *Gamboa v. Tr. Corps & Cent.*

28 *Mortg. Loan Servicing Co.*, 2009 U.S. Dist. LEXIS 19613, *4-10 (N.D. Cal. Mar. 12, 2009) (J.

WINSTON & STRAWN LLP
A limited liability partnership

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION

1   Conti) (court took judicial notice of recorded documents related to the foreclosure sale, including

2   grant deed and deed of trust); *Velazquez v. GMAC Mortg. Corp.*, 2008 U.S. Dist. LEXIS 108215,

3   *13 (C.D. Cal. 2008).

4                                                   Respectfully submitted,

5   Dated:  December 12, 2012            WINSTON & STRAWN, LLP

6                                        By*:   /s/ Amanda L. Groves*

7                                        Amanda L. Groves (SBN: 187216)
                                         agroves@winston.com
8                                        101 California Street
                                         San Francisco, CA  94111-5802
9                                        Telephone:     (415) 591-1000
                                         Facsimile:     (415) 591-1400

10
                                         T. Thomas Cottingham, III *(admitted pro hac vice)*
11                                       tcottingham@winston.com
                                         Stacie C. Knight *(admitted pro hac vice)*
12                                       sknight@winston.com
                                         WINSTON & STRAWN llp
13                                       100 North Tryon Street, Suite 2900
                                         Charlotte, NC 28202-1078
14                                       Telephone:     +1 704 350 7700
                                         Facsimile:     +1 704 350 7800

15                                       AND

16
                                         ANGLIN, FLEWELLING, RASMUSSEN,
17                                       CAMPBELL, AND TRYTTEN, LLP

18                                       By*:  /s/ Yaw-Jiun (Gene) Wu* ___
                                         Mark T. Flewelling (SBN 96465)
19                                       mflewelling@afrct.com
                                         Yaw-Jiun (Gene) (SBN: 228240)
20                                       gwu@afrct.com
                                         199 So. Los Robles Ave., #600
21                                       Pasadena, CA  91101
                                         Telephone:     +1 626 535 1900
22                                       Facsimile:     +1 626 577 7764

23                                       Attorneys for Defendants
                                         WACHOVIA MORTGAGE, FSB, WACHOVIA
24                                       BANK, FSB, AND GOLDEN WEST FINANCIAL
                                         CORPORATION

25

26

27

28

WINSTON & STRAWN LLP
A limited liability partnership

# EXHIBIT 1



# MAKING HOME AFFORDABLE ®

  

Making Home Affordable® Program
# Handbook for Servicers of Non-GSE Mortgages

**Version 4.0**
As of August 17, 2012

**EXHIBIT 1 to RJN iso**
**Oppn to TRO**
**Page No. 4**

## *Foreword*

In February 2009, the Obama Administration introduced the Making Home Affordable Program, a plan to stabilize the housing market and help struggling homeowners get relief and avoid foreclosure. In March 2009, the Treasury Department (Treasury) issued uniform guidance for loan modifications across the mortgage industry and subsequently updated and expanded that guidance in a series of policy announcements.

The Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages (Handbook) is intended to provide a consolidated resource for programmatic guidance related to the MHA Program for mortgage loans that are not owned or guaranteed by Fannie Mae or Freddie Mac (Non-GSE Mortgages). Servicers of mortgage loans that are owned or guaranteed by Fannie Mae or Freddie Mac should refer to any relevant guidance issued by the applicable GSE. In addition to the applicable guidance in this Handbook, servicers of mortgage loans insured or guaranteed by a federal agency, such as the Federal Housing Administration or Rural Housing Service, should refer to any relevant guidance issued by the applicable agency

This Handbook incorporates and supersedes in their entirety the following Supplemental Directives (SDs), as well as related frequently asked questions (FAQs) and waivers: SD 09-01, 09-02, 09-03, 09-04, 09-05 Revised, 09-06, 09-07, 09-08, 09-09 Revised, 09-10, 10-01, 10-02, 10-03, 10-04, 10-05, 10-06, 10-07, 10-08, 10-09, 10-10, 10-11, 10-12, 10-13, 10-14, 10-15, 10-16, 10-17, 10-18, 11-01, 11-02, 11-03, 11-04, 11-05, 11-06, 11-07, 11-08, 11-09, 11-10, 11-11, 11-12, 12-01, 12-02 and 12-03. In addition, the portions of SD 12-05 that become effective August 7, 2012 are incorporated and superseded by this Handbook. Should a servicer identify a discrepancy between this Handbook and a previously issued SD, FAQ or waiver, the servicer should rely on the guidance in this Handbook. Unless otherwise noted, each reference to a "Section" in a Chapter of this Handbook is a reference to the applicable Section of that Chapter. This Handbook constitutes Program Documentation under the Servicer Participation Agreement and is incorporated by reference into the Servicer Participation Agreement.

To the extent that any SD, FAQ or waiver has not been incorporated into and superseded by this Handbook, it continues to apply, and any references in such documents to guidance that has been incorporated into this Handbook are deemed to refer to the applicable Chapter and Section of this Handbook containing such guidance.

This Handbook will be updated periodically with new policy or procedural changes as they are announced. Questions about the Handbook or compliance with Handbook guidance should be referred to the Program Administrator and the Compliance Agent, respectively. Fannie Mae serves as the Program Administrator and Freddie Mac serves as the Compliance Agent, each in its capacity as financial agent of the United States (as designated by Treasury).

EXHIBIT 1 to RJN iso
Oppn to TRO
Page No. 5

section that the RMA or Hardship Affidavit was received by mail, telephone, or Internet and note the fact that the borrower chose not to furnish the GMD.

### 4.1.2.3 GMD from Observation or Origination

If a borrower declines to provide GMD, the servicer should attempt to provide the information based on visual observation, information learned from the borrower or surname. The servicer must note on the form that the information is based on servicer observations. Servicing staff should be provided with training and job aids (e.g., desk references, scripts and, where feasible, system prompts) to supply this information based on visual observation or surname.

Alternately, if the servicer has reasonable access to GMD supplied by the borrower at origination and the borrower(s) remain the same, the servicer is required to provide that information.

## 4.2 IRS Form 4506-T or 4506T-EZ

All borrowers must provide a signed and completed IRS Form 4506-T or 4506T-EZ (Request for Transcript of Tax Return) with the Initial Package. Although either form is acceptable, use of the IRS Form 4506T-EZ is encouraged because of its relative simplicity. Both forms are posted on www.HMPadmin.com. Borrowers can locate and complete a version of IRS Form 4506T-EZ in either English or Spanish on www.MakingHomeAffordable.gov.

The servicer must submit the borrower's Form to the IRS for processing unless the borrower provides a signed copy of his or her most recent federal income tax return, including all schedules and forms.

## 4.3 Evidence of Income

The Initial Package must also include documentation to verify the borrower's income as described in Section 5.1. The income documentation may not be more than 90 days old as of the date the documentation is received by the servicer. There is no requirement to refresh the income documentation during the TPP.

## 4.4 Reasonably Foreseeable or Imminent Default for Owner-Occupied Property

A borrower who is an owner-occupant (as set forth in Section 1.1.2) of a property that is security for a loan that is current or has only one payment due and unpaid by the end of the month in which it is due (i.e., a borrower that is less than 60 days delinquent) and who contacts the servicer to request HAMP consideration must be evaluated to determine if he or she is at risk of imminent default. Each servicer must have written standards for determining imminent default that are consistent with applicable contractual agreements and accounting standards and must apply the standards equally to all borrowers. Such standards may, if consistent with investor guidelines, include a determination that a borrower is at risk of imminent default and will be evaluated for a HAMP modification if the borrower is at least 15 days delinquent, has documented a financial hardship, and has represented that he or she does not have sufficient liquid assets to make the monthly mortgage payment. The mortgage file and/or servicing system must contain evidence of this determination.

When making an imminent default determination, the servicer must evaluate the borrower's hardship as well as the condition of and circumstances affecting the property securing the mortgage loan. The servicer must consider the borrower's financial condition, liquid assets, liabilities, combined monthly income from wages and all other identified sources of income, monthly obligations (including personal debts, revolving accounts, and installment loans), and a reasonable allowance for living expenses such as food, utilities, etc. The hardship and financial condition of the borrower must be verified through documentation.

EXHIBIT 1 to RJN iso
Oppn to TRO
Page No. 6

A servicer must document in its servicing system and/or mortgage file the basis for its determination that a payment default is imminent and retain all documentation used to reach this conclusion.

## 4.5 Acknowledgment of Initial Package

Within 10 business days following receipt of an Initial Package, the servicer must acknowledge in writing the borrower's request for HAMP participation by sending the borrower confirmation that the Initial Package was received and a description of the servicer's evaluation process and timeline. If the Initial Package is received from the borrower via e-mail, the servicer may e-mail the acknowledgment.  Servicers must maintain evidence of the date of receipt of the borrower's Initial Package in its records.

A single written communication sent within 10 business days of receipt of a borrower's request for HAMP participation may also include, at the servicer's discretion, the results of its review of the Initial Package.

## 4.6 Review of Initial Package

Within 30 calendar days from the date an Initial Package is received, the servicer must review the documentation provided by the borrower and if the servicer has sufficient documentation to make a determination, the servicer must evaluate the borrower's eligibility for HAMP and either:

- Send the borrower a TPP Notice (see Section 8.1); or

- Make a determination that the borrower is not eligible for HAMP and communicate this determination to the borrower in accordance with the guidance in Section 2.3.2.

If the servicer receives either (i) an RMA but not an Initial Package or (ii) an Initial Package but needs additional documentation from the borrower to verify the borrower's eligibility and income, the servicer must send the borrower an Incomplete Information Notice in accordance with the guidance set forth in Section 2.3.3.

If the servicer cannot make a timely decision because it does not have documentation required from a party other than the borrower, such as a taxing authority or home-owners' association, the borrower's relationship manager, where applicable, or other servicer representative must contact the borrower by mail, email or phone within 30 calendar days of receipt of the Initial Package to describe the cause of the delay and provide a date, which shall be no more than 30 calendar days thereafter, by which the servicer expects to complete the evaluation and issue the HAMP decision.  If by that later date, the servicer still has not received necessary third-party documentation, the servicer must contact the borrower every 30 days with an updated status and the expected date of resolution until a decision is reached.  All such communications must be documented in the mortgage file and/or servicing system.

# 5 Verification

Servicers must develop and adhere to a written policy and procedures (Verification Policy) that describe the basis on which the servicer will determine a borrower's monthly gross income (or, in the case of co-borrowers, the combined monthly gross income). The Verification Policy must:

- Be compliant with the requirements set forth in this Handbook;

- Reflect the business judgment employed by the servicer when modifying loans held in its own portfolio;

- Be consistent with investor guidelines, when applicable; and

EXHIBIT 1 to RJN iso
Oppn to TRO
Page No. 7

## 6.1 Monthly Mortgage Payment Ratio

To qualify for HAMP Tier 1, verified income documentation must confirm that the borrower's monthly mortgage payment ratio prior to the modification is greater than 31 percent. For HAMP Tier 1, the monthly mortgage payment ratio is the ratio of the borrower's current monthly mortgage payment to the monthly gross income of all borrowers on the mortgage note, whether or not those borrowers reside in the property.

If the borrower's monthly mortgage payment ratio is less than 31 percent, the borrower is not eligible for HAMP Tier 1 and the servicer must consider the borrower for HAMP Tier 2.

In the case of HAMP Tier 2, the borrower's post-modification monthly mortgage payment ratio (also called a debt-to-income ratio or DTI ratio) must be greater than or equal to 25 percent and less than or equal to 42 percent (Acceptable DTI Range). In HAMP Tier 2, the DTI ratio is the ratio of the borrower's modified monthly mortgage payment to the monthly gross income of all borrowers on the mortgage note. If the borrower is seeking to modify a mortgage secured by a rental property, the DTI ratio is the ratio of the borrower's total housing expense to the monthly gross income of all borrowers on the mortgage note including any net rental income from the rental property being modified as described in Section 6.2.

If a borrower being considered for HAMP Tier 2 has a modified DTI ratio that is outside the Acceptable DTI Range, the borrower is not eligible for HAMP and the servicer must send the borrower a Non-Approval Notice (see Section 2.3.2) and consider the borrower for alternative loss mitigation options in accordance with Section 8.7.

### 6.1.1 Monthly Gross Income

Monthly gross income is the borrower's income amount before any payroll deductions and includes:

- Wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, and/or other compensation for personal services.

- Social Security payments, food stamps and adoption subsidies, including those received by adults on behalf of minors or by minors intended for their own support.

- Monthly income from annuities, insurance policies, retirement funds, pensions and disability or death benefits.

- Rental income and other miscellaneous sources of income.

If only net income is available, the servicer must multiply the net income amount by 1.25 (125 percent) to estimate the monthly gross income. All non-taxed income, including non-taxed social security income, is considered net income. Rental income from a rental property securing a mortgage loan being considered for a HAMP Tier 2 modification will be calculated as described in Section 6.2.

### 6.1.2 Monthly Mortgage Payment

The monthly mortgage payment used in calculating any monthly mortgage payment ratio in either HAMP Tier 1 or HAMP Tier 2 includes the monthly payment of principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's association fees, as applicable, regardless of whether these expenses are included in the borrower's current mortgage payment. For purposes of calculating the monthly mortgage payment of a subject property (i.e., the property securing the loan being considered for a modification), servicers should also include any escrow payment shortage amounts that are subject to a repayment plan. Escrow shortage amounts that are subject to a repayment plan associated with a non-subject

EXHIBIT 1 to RJN iso
Oppn to TRO
Page No. 8

published on another day such as Wednesday, as has occurred when Thursday was a holiday, the rate should be updated at 12:01 AM on the day following publication.

The Interest Rate Lock Date for a modification under HAMP Tier 1 is the date that the Interest Rate Cap for a modified mortgage loan is determined. For trial set up reporting, the servicer should report the date that it selected the PMMS Rate to determine eligibility for HAMP when establishing the interest rate terms in the HAMP Tier 1 standard waterfall process for the trial period payment under the HAMP Tier 1 TPP.

### 9.3.7 Escrow Accounts

All of the borrower's monthly payments must include a monthly escrow amount unless prohibited by applicable law.  The servicer must assume full responsibility for administering the borrower's escrow deposit account in accordance with the mortgage documents and all applicable laws and regulations.

Servicers are not required to escrow for the payment of condominium association fees, subject to investor guidelines.  A servicer must determine the monthly payment associated with the condominium association fees to calculate the borrower's monthly mortgage payment and evaluate the borrower for HAMP eligibility.

Once an escrow account is established, the borrower must continue to make monthly escrow payments.  However, if the borrower fails the trial period, a servicer may waive the requirement to make monthly escrow payments, subject to any limitations imposed by applicable law and any investor or other contractual requirements.  These requirements include those servicer obligations to advance tax, insurance and other third-party payments to protect the investor's first lien position.

### 9.3.7.1 Escrow Analysis

Servicers must perform an escrow analysis for all borrowers, including borrowers who do not currently escrow for property taxes and hazard insurance, to determine the exact escrow payments prior to establishment of the trial period payment.  When performing an escrow analysis, servicers must take into consideration tax and insurance premiums that may come due during the trial period.

### 9.3.7.2 Escrow Advances

Servicers should capitalize any escrow advance that has been or will be paid to a third party before the modification effective date.  If capitalization is prohibited by applicable law, the servicer should direct the borrower to repay the advance in accordance with investor guidelines, the underlying security instrument and all applicable laws, rules and regulations.  Servicers may not have the borrower execute a note for any escrow advance.

### 9.3.7.3 Escrow Shortages

In the event the initial escrow analysis identifies an escrow shortage – a deficiency in the escrow deposits needed to pay all future tax and insurance payments – the servicer must take steps to eliminate the shortage.  Any existing escrow shortage currently being paid by the borrower should be included in the borrower's monthly mortgage payment.

### 9.3.7.4 Non-Escrowed Loans

If the mortgage loan being considered for HAMP is a non-escrowed mortgage loan, the servicer must establish an escrow deposit account prior to the beginning of the trial period.  Servicers who do not have this capacity must implement an escrow process within six months of signing the SPA.  However, the servicer must ensure that the trial payments include escrow amounts and must place the escrow funds into a separate account identified for escrow deposits.

EXHIBIT 1 to RJN iso
Oppn to TRO
Page No. 9

EXHIBIT 2

(Page 1 of 18)

**RECORDING REQUESTED BY:**
**WORLD SAVINGS BANK**

**WHEN RECORDED MAIL TO:**
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

LOAN NUMBER: ████████

NOTE AMOUNT: $ ████████

39 201347JK

**2007-0030044**

Recorded | REC FEE    58.00
Official Records
County of
Butte
CANDACE J. GRUBBS
County Clerk-Recorder
| A86
12:45PM 21-Jun-2007 | Page 1 of 18

Received
JUL 09 2007
Martell Reed

**FOR RECORDER'S USE ONLY**

## DEED OF TRUST

**THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $131,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

I.      DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
        **(A)  Security Instrument.** This Deed of Trust, which is dated **June 13, 2007,** will be called the "Security Instrument "

        **(B)  Borrower.** CHAN PHARN, AN UNMARRIED MAN AND YIEN SENG SAEPHARN, AN UNMARRIED WOMAN, AS JOINT TENANTS  sometimes will be called "Borrower" and sometimes simply "I" or "me "

        **(C)  Lender. WORLD SAVINGS BANK, FSB,  ITS SUCCESSORS AND/OR ASSIGNEES,** will be called "Lender " Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States  Lender's address is  **1901 Harrison Street, Oakland, CA 94612**

SD001A (2004-03-3)
DEFERRED INTEREST

*Page 1*

CA

0 0 3
**LENDER'S USE ONLY**

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  10

**(D) Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U S $███████, plus accrued and deferred interest and such other amounts as stated in the Note I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **July 1, 2037** ("Maturity Date")

**(E) Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F) Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured "

**(G) Person.** Any person, organization, governmental authority or other party will be called "Person "

**(H) Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee "

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument  This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to.

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below

(i)   The Property which is located at ███████████████   The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument  This Property is called the "Described Property "

(ii)   All buildings and other improvements that are located on the Described Property,

SD0018 (2004-03-3)
DEFERRED INTEREST

CA

**EXHIBIT 2 to RJN iso
Oppn to TRO
Page No. 11**

(iii)   All rights in other property that I have as owner of the Described Property  These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property,

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that  (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

### COVENANTS

I promise and I agree with Lender as follows:

### 1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

### 2.   PAYMENTS FOR TAXES AND INSURANCE

(A)   **Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

SD001C (2004-03-3)

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  12

**(B)    Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for· (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any  These items are called "Escrow Items " Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C  § 2601 et seq  ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge  However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds  Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made  The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage  I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender  If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

SD001D (2004-03-3)

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No. 13

**3.    APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes

**4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property  I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument  However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person  If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien  I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property  The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage  The insurance must be in the amounts and for the periods of time required by Lender  I may choose the insurance company but my choice is subject to Lender's approval  Lender may not refuse to approve my choice unless the refusal is reasonable  All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender  The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals  If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  14

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender  If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds " Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows  (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds  I will notify Lender immediately of any offer to settle a claim I receive from the insurance company  I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender  Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above  However, Lender and I may agree in writing to delays or changes

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender  Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender  However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law

**6.   BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations  I will not destroy or substantially change the Property and I will not allow the Property to deteriorate  I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws  I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property  I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim  If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease  I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  15

### 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights. (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No. 16

## 10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A)   Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

### (B)   Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together This means that any one of us may be required to pay all of the Sums Secured

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

## 12.   MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  17

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **461 PARADOX DR, GRIDLEY, CA 95948-3225**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.   GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.   BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B) enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property, and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

CA

**EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  18**

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds

**18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender

**19.    CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error

**20.    LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**21.    WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

**22.    CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

**23.    MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

**24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest

EXHIBIT 2 to RJN isb
Oppn to TRO
Page No.  19

**(B)** The following are called the "Constituent Documents." (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

**(C)** If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master or blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master or blanket** policy, then (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage I shall provide a copy of such **master or blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, *with any excess paid to me* If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)** I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the **master or blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

**25. FUTURE ADVANCES**
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower Such future advances, with interest, will then be additional Sums Secured under this Security Instrument

**EXHIBIT 2 to RJN iso
Oppn to TRO
Page No. 20**

**26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

_Acceleration of Payment of Sums Secured._ Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

_Exception to Acceleration of Payment of Sums Secured._ If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if.

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii) Lender approves the creditworthiness of the transferee in writing;

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v) the transferee executes an assumption agreement which is satisfactory to Lender Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

**27. SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No. 21

**28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property  The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property

Lender will apply the proceeds from the sale of the Property in the following order  (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it

**29.   RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee  Trustee shall reconvey the Property without warranty to Borrower  Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30.   STATEMENT OF OBLIGATION**

Lender may collect a fee of $60 00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

CA

SD001M (2004-03-3)

**EXHIBIT 2 to RJN iso Oppn to TRO Page No.  22**

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly  This loan is called a "Quick Qualifying Loan." I have stated and I confirm that. (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the *Secured Notes and this Security Instrument;* and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes

**32.    ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan  I have stated and confirm that. (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

CA

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  23



BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

#### BORROWER(S):

_____     (Seal)
CHAN  PHARN

_____     (Seal)
YIEN  SENG  SAEPHARN

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT
Attached

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  24

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Butte }ss.

On 6/15/2007, before me, Stanley M. Young, Notary Public
Date                         Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared Chan Pharn and Yien Seng Sarpharn
Name(s) of Signer(s)

☐ personally known to me

☒ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above                Signature of Notary Public

━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━

*Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document Deed of Trust

Document Date _____ Number of Pages _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name _____ | Signer's Name _____ |
|---|---|
| ☒ Individual | ☒ Individual |
| ☐ Corporate Officer — Title(s): ___ | ☐ Corporate Officer — Title(s): ___ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER — Top of thumb here

RIGHT THUMBPRINT OF SIGNER — Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave. P.O. Box 2402 • Chatsworth, CA 91313-2402   Item No. 5907   Reorder: Call Toll-Free 1-800-876-6827

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  25

**WORLD SAVINGS BANK, FSB**

# E X H I B I T "A"

## LEGAL DESCRIPTION

**LOAN NO.** ███████

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF **BUTTE** STATE OF **CALIFORNIA**, DESCRIBED AS FOLLOWS:

**TAPE <u>ONLY</u> THE LEGAL DESCRIPTION TO THIS PAGE.**

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No. 26

Order No. 39201347

## LEGAL DESCRIPTION

## EXHIBIT "ONE"



2        CLTA Preliminary Report Form - Modified (11/17/06)

EXHIBIT 2 to RJN iso
Oppn to TRO
Page No.  27

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' EX PARTE REQUEST FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

*Attorneys for Plaintiffs and the Settlement Class*

| BERNS WEISS LLP | BERNS WEISS LLP |
|---|---|
| Jeffrey K. Berns | Lee A. Weiss |
| 20700 Ventura Blvd. Suite 140 | 626 RXR Plaza |
| Woodland Hills, CA 91364 | Uniondale, NY 11556 |
| jberns@bernsweiss.com | lweiss@bernsweiss.com |
| Tel: (818) 961-2000 | Tel: (516) 222-2900 |
| Fax: (818) 999-1500 | Fax: (818) 999-1500 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made.  This declaration is executed in Pasadena, California on December 12, 2012.

Nancy J. Peters                         */s/ Nancy J. Peters*
_____          _____
(Type or Print Name)                 (Signature of Declarant)

WINSTON & STRAWN LLP
A limited liability partnership