**E-Filed 12/21/2012**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE:  WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION. | Case No. 5:09-md-02015-JF<br><br>ORDER DENYING APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION<br><br>[re: dkt. entry 365] |

Thirty-one class members ("Movants") assert that Defendants have failed to comply with the settlement agreement in this case, which requires Defendants to follow certain procedures when a class member seeks modification of a Pick-A-Payment home mortgage loan.  Movants ultimately seek a preliminary injunction precluding Defendants from foreclosing on or otherwise attempting to sell Movants' properties without first allowing class counsel to evaluate all instances in which a potential loan modification covered by the settlement has been denied.  Pending a hearing on and disposition of their motion for preliminary injunction, Movants seek a temporary restraining order ("TRO") precluding Defendants from foreclosing upon, selling,or attempting to sell the homes of class members who have applied for but have not received a loan modification pursuant to the terms of the settlement agreement.  Having considered the briefing and the admissible evidence submitted

by the parties,[1] the Court concludes that the application for TRO is appropriate for disposition without oral argument.  *See* Civ. L.R. 7-1(b).  For the reasons discussed below, the application will be denied, and the motion for preliminary injunction will be set for hearing on January 31, 2013.

## I. BACKGROUND

On May 17, 2011, this Court granted final approval of a settlement agreement that resolved multi-district litigation concerning Defendants' "Pick-a-Payment" mortgage loans.  *See* Dkt. Entry 207 (Final Approval Order) at 2.  Pursuant to the terms of such loans, the borrower selected a monthly mortgage payment, choosing either:  (1) a fully-amortizing 30-year interest and principal payment, such that the loan would be satisfied in the traditional 30-year term; (2) a fully-amortizing 15-year interest and principal payment, such that the loan would be satisfied in a 15-year term; (3) an "interest-only payment"; or (4) a lesser, "minimum payment."  *Id*.  When a borrower chose a minimum payment, which by definition was insufficient to pay the interest owed, unpaid interest was added to the loan balance, and the outstanding loan balance increased.  *Id*.  The named plaintiffs alleged that the loans violated the federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and various state laws.  The named plaintiffs asserted that the relevant loan documents failed to make adequate disclosures regarding, among other things, the certainty of negative amortization if the minimum payment option was selected.  *Id*.

The settlement agreement identified three categories of class members:  Settlement Class A consists of borrowers who no longer hold their "Pick-A-Payment" loans; Settlement Class B consists of borrowers who still hold their loans and are not in default; and Settlement Class C consists of borrowers who still hold their loans and are in default.  *Id*. at 2-3.  Under the terms of the settlement, Defendants agreed to pay $50 million to the class and to implement a loan modification program available to qualified Settlement Class C members and to qualified Settlement Class B members who are in "imminent default."  *Id*. at 3.  Defendants agreed to consider an eligible class member for the federal Home Affordable Modification Program ("HAMP") and for Defendants' own loan modification program, Mortgage Assistance Program 2 ("MAP2R").  *Id*.  The loan

---

[1] Defendants' administrative motion for leave to file a sur-reply (Dkt. Entry 379) is granted. Defendants' objections to the declaration of Jeffrey Berns (Dkt. Entry 381) are overruled.

2

1   modification program is to remain in place through June 2013.  *Id.* at 4.  This Court expressly

2   retained "continuing jurisdiction to interpret and enforce the settlement agreement."  *Id.*

3         Movants believe that Defendants have failed to comply with the settlement agreement's

4   requirements, particularly with respect to consideration of borrowers for modification under the

5   MAP2R program.  Movants have filed a new action asserting claims for (1) breach of the settlement

6   agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) violation of

7   California's Unfair Competition Law ("UCL"); and (4) enforcement of the settlement agreement

8   under the All Writs Act, 28 U.S.C. § 1651(a).  That action, entitled *Murphy, et al. v. Wells Fargo*

9   *Home Mortgage, et al.*, Case No. 5:12-cv-06228-HRL, was filed on December 7, 2012 and has been

10  assigned to Magistrate Judge Howard R. Lloyd.  Also on December 7, class counsel sent

11  Defendants' counsel a pre-filed copy of Movants' administrative motion to determine whether

12  *Murphy* should be related to the present action under this Court's Civil Local Rules.  *See* Dkt. Entry

13  367-1 (Berns Decl.) at ¶ 2.  Defendants immediately (on the same date) filed a motion to enforce the

14  settlement agreement against Movants in this case.  *See id.* ¶ 3; Dkt. Entry 364 (Motion to Enforce

15  Settlement).  Movants then (also on December 7) filed the present application for TRO and their

16  administrative motion to determine whether *Murphy* should be related to the present action under

17  this Court's Civil Local Rules.  *See* Dkt. Entries 365 and 367.

18                                                       **II. DISCUSSION**

19        "The standard for issuing a temporary restraining order is identical to the standard for

20  issuing a preliminary injunction."  *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,*, 887

21  F. Supp. 1320, 1323 (N.D. Cal. 1995).  "A plaintiff seeking a preliminary injunction must establish

22  that he is likely to succeed on the merits,that he is likely to suffer irreparable harm in the absence of

23  preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public

24  interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The Ninth Circuit has

25  interpreted this standard to mean that, "serious questions going to the merits and a balance of

26  hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so

27  long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction

28  is in the public interest."  *Alliance for the Wild Rockies v. Cottrell*,  632 F.3d 1127, 1135 (9th Cir.

2011) (internal quotation marks omitted).  Under any formulation of the test, "[a] preliminary

injunction is an extraordinary remedy never awarded as of right."  *Winter*, 555 U.S. at 24.

**A.      Likelihood Of Success On The Merits**

As noted above, Movants have filed a separate lawsuit asserting claims for breach of

contract, breach of the implied covenant of good faith and fair dealing, violation of California's

UCL, and enforcement of the settlement agreement under the All Writs Act.  Because that lawsuit is

not before the undersigned judge at this time, consideration of Movants' likelihood of success on the

merits of that lawsuit is not presently at issue.  However, this Court expressly retained "continuing

jurisdiction to interpret and enforce the settlement agreement."   Dkt. Entry 207 (Final Approval

Order) at 4.  Defendants have moved to enforce the settlement agreement against Movants.

Movants have not filed a separate motion to enforce the settlement agreement against Defendants,

but Movants clearly assert that Defendants are in breach of the settlement agreement and seek a

TRO to prevent injury that might occur as a result of such breach.  Accordingly, to establish

entitlement to a TRO, Movants must demonstrate a likelihood of success on their claim that

Defendants are in breach of the settlement agreement (and thus that Movants are entitled to

enforcement of the settlement agreement).

Movants' counsel, Jeffrey Berns, states in his declaration that based upon Wells Fargo's

quarterly reports, in the eighteen-month period from April 2011 to September 2012, Settlement

Class B and C members submitted 66,671 applications for loan modification.  Dkt. Entry 365-2

(Berns Decl.) ¶ 8.  Defendants completed MAP2R modifications for 1,746 class members during

that time, and they completed HAMP modifications for 12,855 class members.  *Id*.  During the same

time period, Defendants classified more than 70% (37,079 of 52,252) of Settlement Class B

members and more than 25% (3,781 of 14,419) Settlement Class C members as "Fall-Outs,"

meaning that Wells Fargo never evaluated the loan modification applications of those class

members because of the applicants' alleged failure to provide all necessary documentation.  *Id*. ¶ 14.

Mr. Berns' law firm has spoken with more than 9,000 class members who believe that they

improperly were denied MAP2R loan modifications.  *Id*. ¶ 5.

These figures raise significant questions, as they suggest that class members may have been

Case No. 5:09-cv-02015-JF
ORDER DENYING APPLICATION FOR TRO

**United States District Court**
For the Northern District of California

denied the primary benefit for which they released their claims against Defendants, that is, fair consideration for loan modification under the procedures set forth in the settlement agreement. However, the Court cannot infer from statistics alone that the settlement agreement actually has been breached.

Movants assert that even though several of them had documented financial hardship and a monthly payment of Principal, Interest, Taxes, Insurance and Association dues ("PITIA") that exceeded 31% of gross monthly income, Defendants concluded that they did not face imminent threat of default, which is the threshold for qualification for loan modification for Settlement Class B members. Defendants correctly point out that the settlement agreement does not define "imminent default" in relation to a PITIA in excess of 31%. Dkt. Entry 365-2 (Berns Decl.), Ex. A (Settlement Agreement) § I.1.33. Movants assert that Defendants improperly used property valuations derived from automated valuation instead of from independent appraisals. However, the Settlement Agreement expressly allows valuations based upon automatic appraisals that are less than ninety days old. *Id*. § I.1.40. Finally, Movants cite a number of alleged administrative errors, for example, Defendants' failure to assign each loan modification applicant a single contact person. But it is not clear from the record if these alleged administrative errors resulted in denial of any specific loan modification.

In short, although the statistics that Movants present are sufficient to raise doubts as to Defendants' compliance with at least the spirit of the settlement agreement, the record evidence does not tie the aggregate numbers to express contract provisions or show that Defendants have breached any actual terms of the agreement. Nor have Movants presented evidence that a violation of any particular contract provision proximately caused the denial of any loan modification.[2]

---

[2] Defendants make an additional argument that to the extent that Movants' claims are not grounded in alleged breach of the settlement agreement, they are preempted under the Home Owner's Loan Act ("HOLA"). Movants make clear in their reply that their claims are grounded in the settlement agreement. As noted above, this Court has continuing jurisdiction to enforce the settlement agreement. Accordingly, there is no HOLA preemption. *See Tamburri v. Suntrust Mortg., Inc.,* No. C-11-2899 EMC, 2012 WL 2367881, at *9 (N.D. Cal. June 21, 2012); *Watkins v. Wells Fargo Bank,* No. 3:10-1004, 2011 WL 777895, at *12 (S.D. W. Va. Feb. 28, 2011). Defendants also argue that this Court lacks jurisdiction to grant injunctive relief in light of the Anti-Injunction Act, the *Rooker-Feldman* rule, and the *Younger* doctrine. The Anti-Injunction Act's bar on federal courts staying state court proceedings contains an express exception for a federal court's acts "where

Case No. 5:09-cv-02015-JF
ORDER DENYING APPLICATION FOR TRO

United States District Court
For the Northern District of California

**B.      Irreparable Harm**

Movants seek to impose a moratorium upon any foreclosures or sales with respect to homes of class members who have sought loan modification.  The basis for Movants' request is that class members will be irreparably harmed if they lose their homes.  While that is undoubtedly true, the only identified class members whose home is subject to a foreclosure sale before a noticed motion for preliminary injunction can be heard are John and Diana Burkett, the sale of whose property is scheduled for January 9, 2013.  Dolan Decl. ¶¶ 15-16.[3]  The Burketts did not contest the underlying foreclosure action or the state court judgment of foreclosure.  *Id*. ¶ 16.  Three other Movants, Sherri Goldfinch and George and Cynthia Biggs, have agreed to short sales of their properties.  *Id*. ¶¶ 13, 19.  Thus, even if it were to conclude that Movants have demonstrated a likelihood of success on the merits, the Court would be reluctant to grant the broad classwide relief requested here based upon Movants' showing as to these five individuals.

**C.      Balance Of Equities**

Movants argue that the equities tip sharply in their favor, because losing their homes would be devastating.  Movants also cite to other types of stress and financial hardship allegedly caused by Defendants' failure to comply with the settlement agreement.  While these considerations are entitled to substantial weight, Defendants point out that shutting down their ability to schedule foreclosures and short sales would have a significant financial effect on them.  Dkt. Entry 371-3 (Kreitzer Decl.) ¶¶ 2-9.  Indeed, Defendants argue that the harm to them would be more severe because Movants admittedly do not have the financial resources to post a bond.  Based on the record presently before it, the Court concludes that the equities do not tip sharply in favor of either side.

---

necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  *Rooker-Feldman* is not implicated, as Movants are not requesting this Court to review or reopen any state court proceeding.  *See District of Col. Ct. of App. v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923).  Finally, although *Younger v. Harris*, 401 U.S. 37 (1971) might be implicated by an injunction that interfered with pending judicial foreclosure or eviction actions, the Court could draft any order it issued to exclude application to judicial foreclosure and eviction actions, if necessary.

[3] Mr. Dolan's declaration has been submitted for filing under seal and thus does not yet have a docket number.

6

**United States District Court**
For the Northern District of California

**D.      Public Interest**

Both sides argue that their positions are consistent with the public interest.  Movants perhaps have the better part of this argument, as the public has a strong interest in the fair, lawful handling of their mortgages by lenders.

**E.      Conclusion**

For the reasons stated herein, the Court concludes that the current record does not justify issuance of a TRO restraining Defendants immediately from pursuing foreclosure or sale proceedings on a classwide basis.  *See Zepeda v. INS*, 753 F.2d 719, 728 (9th Cir. 1984) ("injunctive relief should be narrowly tailored to remedy the specific harms shown by plaintiffs.").  This ruling does not preclude the Burketts, the Briggs, and Ms. Goldfinch from seeking injunctive relief with respect to the specific proceedings affecting their homes.

Notwithstanding this conclusion, the Court is concerned by Movants' statistical evidence, particularly the data with respect to  the numbers of class members who have been denied consideration for loan modification based upon failure to provide documentation.  It may well be that Movants will be able to show a basis for less drastic injunctive relief, such as the proposed requirement that class counsel be afforded an opportunity to review denials of applications for loan modification before the denials become final.  Accordingly, the Court will set this matter for a hearing on Movants' motion for preliminary injunction on January 31, 2013, at 3:00 p.m.  The Court will take up the question of whether *Murphy* should be related to the present case at that time.

**III. ORDER**

(1)      Movants' application for TRO is DENIED; and

(2)      A hearing on Movants' motion for preliminary injunction is set for January 31, 2013, at 3 p.m.  Movants shall file any supplemental brief on or before January 11, 2013.  Defendants shall file any supplemental response brief on or before January 23, 2013.  Movants shall file any supplemental reply brief on or before January 28, 2013.

DATED:  December 21, 2012

_____
JEREMY FOGEL
United States District Judge

7