1  Amanda L. Groves (SBN: 187216)
   agroves@winston.com
2  WINSTON & STRAWN LLP
   101 California Street
3  San Francisco, CA  94111-5802
   Telephone:    (415) 591-1000
4  Facsimile:    (415) 591-1400

5  T. Thomas Cottingham, III *(admitted pro hac vice)*
   tcottingham@winston.com
6  Stacie C. Knight *(admitted pro hac vice)*
   sknight@winston.com
7  WINSTON & STRAWN LLP
   100 North Tryon Street, Suite 2900
8  Charlotte, NC 28202-1078
   Telephone:    +1 704 350 7700
9  Facsimile:    +1 704 350 7800

10 Mark T. Flewelling (SBN: 96465)
   mflewelling@afrct.com
11 Yaw-Jiun (Gene) (SBN: 228240)
   gwu@afrct.com
12 ANGLIN, FLEWELLING, RASMUSSEN,
   CAMPBELL, AND TRYTTEN
13 199 So. Los Robles Ave., #600
   Pasadena, CA  91101
14 Telephone:    +1 626 535 1900
   Facsimile:    +1 626 577 7764

15

16 Attorneys for Defendants
   WACHOVIA MORTGAGE, FSB, WACHOVIA
17 BANK, FSB, AND GOLDEN WEST
   FINANCIAL CORPORATION

18

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to:<br><br><br><br>*ALL CASES* | Case No. M:09-cv-2015-JF<br><br>*Assigned to the Hon. Jeremy Fogel*<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:    January 31, 2013<br>Time:    3:00 p.m.<br>Crtrm:   3, 5th Floor |

Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, Defendant Wells Fargo Bank, N.A. hereby request that the Court take judicial notice of the following documents submitted in support of its Supplemental Opposition to Plaintiffs' Motion for a Preliminary Injunction:

1. Relevant excerpts from the printout of the Federal Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages, Version 4.0 as of August 17, 2012 ("MHA Handbook v4.0) obtained from https://www.hmpadmin.com/portal/programs/index.jsp , a website administered by Fannie Mae. (attached as Exhibit 1).

Judicial notice is appropriate for Exhibit 1 is appropriate because the MHA Handbook v4.0 is a document compiled by Fannie Mae, as a financial agent of the United States, and was obtained from a governmental website, thus constituting information that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. Rule of Evid. 201(b)(2); *United States v. Chapel,* 41 F.3d 1338, 1343 (9th Cir. Cal. 1994)(taking judicial notice of information from the FDIC); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of information published on the National Mediation Board's website); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on federal government's website).

Respectfully submitted,

Dated: January 23, 2013            WINSTON & STRAWN, LLP

By: */s/ Stacie C. Knight*

Amanda L. Groves (SBN: 187216)
agroves@winston.com
101 California Street
San Francisco, CA  94111-5802
Telephone:    (415) 591-1000
Facsimile:     (415) 591-1400

T. Thomas Cottingham, III *(admitted pro hac vice)*
tcottingham@winston.com
Stacie C. Knight *(admitted pro hac vice)*
sknight@winston.com
WINSTON & STRAWN llp
100 North Tryon Street, Suite 2900
Charlotte, NC 28202-1078
Telephone:    +1 704 350 7700
Facsimile:     +1 704 350 7800

WINSTON & STRAWN LLP
A limited liability partnership

AND

ANGLIN, FLEWELLING, RASMUSSEN, CAMPBELL, AND TRYTTEN, LLP

By: _/s/ Yaw-Jiun (Gene) Wu_
Mark T. Flewelling (SBN 96465)
mflewelling@afrct.com
Yaw-Jiun (Gene) (SBN: 228240)
gwu@afrct.com
199 So. Los Robles Ave., #600
Pasadena, CA 91101
Telephone: +1 626 535 1900
Facsimile: +1 626 577 7764

Attorneys for Defendants
WACHOVIA MORTGAGE, FSB, WACHOVIA BANK, FSB, AND GOLDEN WEST FINANCIAL CORPORATION

EXHIBIT 1





# Making Home Affordable® Program
# Handbook for Servicers of Non-GSE Mortgages

**Version 4.0**
As of August 17, 2012

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 4

- IRS Form 4506-T or 4506T-EZ,
- Evidence of income, and
- Dodd-Frank Certification (either as part of the RMA form or as a stand alone document).

For all documents required by Treasury (other than for IRS Form 4506-T/4506T-EZ), electronic submission and signatures are acceptable. Evidence of borrower submission must be provided by postmark or other independent indicator such as a date and time stamp (electronic or otherwise).

## 4.1 Request for Mortgage Assistance (RMA) Form

The RMA provides the servicer with borrower financial information, including the cause of the borrower's hardship. The financial information and hardship sections of the RMA must be completed and executed by the borrower and, if applicable, any co-borrower. The RMA is available on www.HMPadmin.com.

Servicers may require use of the RMA by all borrowers requesting consideration for HAMP or may use other proprietary financial information forms that are substantially similar in content to the RMA. When provided by or on behalf of the borrower, the RMA form must be accepted by servicers in lieu of any servicer-specific form(s). When the RMA is not used, servicers must obtain an executed standalone Hardship Affidavit including a Dodd-Frank Certification and (if applicable) a Rental Property Certification, which is available on www.HMPadmin.com. Servicers may also incorporate all of the information on this standalone affidavit into their proprietary forms. Throughout this Handbook, the term RMA is used to indicate both the HAMP RMA form and servicer proprietary forms substituted for the RMA.

### 4.1.1 Hardship Affidavit and Rental Property Certification

#### 4.1.1.1 Hardship Affidavit

Included in the RMA is a Hardship Affidavit. Every borrower seeking a modification, regardless of delinquency status must sign a Hardship Affidavit that attests that the borrower is unable to continue making full mortgage payments and describes one or more of the following types of hardship:

- A reduction in or loss of income that was supporting the mortgage;
- A change in household financial circumstances;
- A recent or upcoming increase in the monthly mortgage payment;
- An increase in other expenses;
- A lack of sufficient cash reserves to maintain payment on the mortgage and cover basic living expenses at the same time. Cash reserves include assets such as cash, savings, money market funds, marketable stocks or bonds excluding retirement accounts and assets that serve as an emergency fund. Reserves are generally considered to be equal to three times the borrower's monthly debt payments.
- Excessive monthly debt payments and overextension with creditors, e.g., the borrower was required to use credit cards, a home equity loan, or other credit to make the mortgage payment;
- Other reasons for hardship detailed by the borrower.

The borrower is not required to have the Hardship Affidavit notarized.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 5

HAMP does not distinguish between short-term and long-term hardships for eligibility purposes.

### 4.1.1.2 Rental Property Certification

Included in the RMA and the stand alone Hardship Affidavit form is a Rental Property Certification. Every borrower seeking a modification, on a loan secured by a rental property must sign and complete the Rental Property Certification. In the Rental Property Certification, the borrower certifies that (i) he or she intends to rent the property to a tenant or tenants for at least five years following the Modification Effective Date and that he or she will make reasonable efforts to rent the property on a year-round basis if the property is or becomes vacant during such period; (ii) that the property is not his or her secondary residence and he or she has no intent to use the property as a secondary residence for at least five years following the Modification Effective Date; and (iii) he or she does not own more than five single family properties in addition to his or her principal residence; provided, however, that the borrower may at any time occupy the property as his or her principal residence, permit a legal dependent, parent or grandparent to occupy the property as such party's principal residence with no rent charged or collected, or sell the property.

Servicers are not required to obtain third party verification of the borrower's Rental Property Certification when evaluating a borrower for HAMP, unless it is necessary to resolve inconsistencies with other information provided by the borrower or is required by the investor or the servicer's internal underwriting policies. The servicer must use good business judgment in reconciling any such inconsistencies and, in accordance with Section 5.5, should not modify a mortgage loan if there is reasonable evidence that the borrower has made false or misleading statements in connection with a modification request.

If, following the HAMP Tier 2 Modification Effective Date of a mortgage loan secured by a rental property, it is determined that the borrower misrepresented or is non-compliant with representations made in the Rental Property Certification, Treasury or its agents may enforce all available rights and remedies against such borrower. The servicer will be held responsible for compliance with its obligations under MHA program guidelines, but will not be held responsible for the borrower's misrepresentation or non-compliance with his or her Rental Property Certification.

### 4.1.2 Government Monitoring Data (GMD)

In addition to financial information, the RMA (or Hardship Affidavit if the RMA form is not used) solicits data related to the race, ethnicity and sex of the borrower and co-borrower, referred to as Government Monitoring Data (GMD).

Treasury has directed the Program Administrator to enter into agreements on behalf of the Department of Housing and Urban Development (HUD) with loan servicers participating in HAMP for the purpose of directing servicers to request GMD in order to monitor compliance with the Fair Housing Act, 42 U.S.C. 3601 et seq., and other applicable fair lending and consumer protection laws. HUD has informed Treasury that it is requesting the monitoring information pursuant to this authority and its general regulatory authority under the Fair Housing Act. HUD and Treasury consider any agreements entered into between servicers and the Program Administrator on behalf of HUD to be agreements entered into with an enforcement agency to monitor or enforce compliance with federal law, within the meaning of 12 C.F.R. 202.5(a)(2).

Federal Reserve Board regulations interpreting ECOA permit creditors to collect information on the race, ethnicity and sex of borrowers if the information is "required by a regulation, order, or agreement issued by, or entered into with a court or an enforcement agency (including the Attorney General of the United States or a similar state official) to monitor or enforce compliance with [ECOA], this regulation, or other federal or state statutes or regulations." 12 C.F.R. 202.5(a)(2).

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 6

section that the RMA or Hardship Affidavit was received by mail, telephone, or Internet and note the fact that the borrower chose not to furnish the GMD.

#### 4.1.2.3 GMD from Observation or Origination

If a borrower declines to provide GMD, the servicer should attempt to provide the information based on visual observation, information learned from the borrower or surname. The servicer must note on the form that the information is based on servicer observations. Servicing staff should be provided with training and job aids (e.g., desk references, scripts and, where feasible, system prompts) to supply this information based on visual observation or surname.

Alternately, if the servicer has reasonable access to GMD supplied by the borrower at origination and the borrower(s) remain the same, the servicer is required to provide that information.

### 4.2 IRS Form 4506-T or 4506T-EZ

All borrowers must provide a signed and completed IRS Form 4506-T or 4506T-EZ (Request for Transcript of Tax Return) with the Initial Package. Although either form is acceptable, use of the IRS Form 4506T-EZ is encouraged because of its relative simplicity. Both forms are posted on www.HMPadmin.com. Borrowers can locate and complete a version of IRS Form 4506T-EZ in either English or Spanish on www.MakingHomeAffordable.gov.

The servicer must submit the borrower's Form to the IRS for processing unless the borrower provides a signed copy of his or her most recent federal income tax return, including all schedules and forms.

### 4.3 Evidence of Income

The Initial Package must also include documentation to verify the borrower's income as described in Section 5.1. The income documentation may not be more than 90 days old as of the date the documentation is received by the servicer. There is no requirement to refresh the income documentation during the TPP.

### 4.4 Reasonably Foreseeable or Imminent Default for Owner-Occupied Property

A borrower who is an owner-occupant (as set forth in Section 1.1.2) of a property that is security for a loan that is current or has only one payment due and unpaid by the end of the month in which it is due (i.e., a borrower that is less than 60 days delinquent) and who contacts the servicer to request HAMP consideration must be evaluated to determine if he or she is at risk of imminent default. Each servicer must have written standards for determining imminent default that are consistent with applicable contractual agreements and accounting standards and must apply the standards equally to all borrowers. Such standards may, if consistent with investor guidelines, include a determination that a borrower is at risk of imminent default and will be evaluated for a HAMP modification if the borrower is at least 15 days delinquent, has documented a financial hardship, and has represented that he or she does not have sufficient liquid assets to make the monthly mortgage payment. The mortgage file and/or servicing system must contain evidence of this determination.

When making an imminent default determination, the servicer must evaluate the borrower's hardship as well as the condition of and circumstances affecting the property securing the mortgage loan. The servicer must consider the borrower's financial condition, liquid assets, liabilities, combined monthly income from wages and all other identified sources of income, monthly obligations (including personal debts, revolving accounts, and installment loans), and a reasonable allowance for living expenses such as food, utilities, etc. The hardship and financial condition of the borrower must be verified through documentation.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 7

A servicer must document in its servicing system and/or mortgage file the basis for its determination that a payment default is imminent and retain all documentation used to reach this conclusion.

## 4.5 Acknowledgment of Initial Package

Within 10 business days following receipt of an Initial Package, the servicer must acknowledge in writing the borrower's request for HAMP participation by sending the borrower confirmation that the Initial Package was received and a description of the servicer's evaluation process and timeline. If the Initial Package is received from the borrower via e-mail, the servicer may e-mail the acknowledgment. Servicers must maintain evidence of the date of receipt of the borrower's Initial Package in its records.

A single written communication sent within 10 business days of receipt of a borrower's request for HAMP participation may also include, at the servicer's discretion, the results of its review of the Initial Package.

## 4.6 Review of Initial Package

Within 30 calendar days from the date an Initial Package is received, the servicer must review the documentation provided by the borrower and if the servicer has sufficient documentation to make a determination, the servicer must evaluate the borrower's eligibility for HAMP and either:

- Send the borrower a TPP Notice (see Section 8.1); or

- Make a determination that the borrower is not eligible for HAMP and communicate this determination to the borrower in accordance with the guidance in Section 2.3.2.

If the servicer receives either (i) an RMA but not an Initial Package or (ii) an Initial Package but needs additional documentation from the borrower to verify the borrower's eligibility and income, the servicer must send the borrower an Incomplete Information Notice in accordance with the guidance set forth in Section 2.3.3.

If the servicer cannot make a timely decision because it does not have documentation required from a party other than the borrower, such as a taxing authority or home-owners' association, the borrower's relationship manager, where applicable, or other servicer representative must contact the borrower by mail, email or phone within 30 calendar days of receipt of the Initial Package to describe the cause of the delay and provide a date, which shall be no more than 30 calendar days thereafter, by which the servicer expects to complete the evaluation and issue the HAMP decision. If by that later date, the servicer still has not received necessary third-party documentation, the servicer must contact the borrower every 30 days with an updated status and the expected date of resolution until a decision is reached. All such communications must be documented in the mortgage file and/or servicing system.

## 5 Verification

Servicers must develop and adhere to a written policy and procedures (Verification Policy) that describe the basis on which the servicer will determine a borrower's monthly gross income (or, in the case of co-borrowers, the combined monthly gross income). The Verification Policy must:

- Be compliant with the requirements set forth in this Handbook;

- Reflect the business judgment employed by the servicer when modifying loans held in its own portfolio;

- Be consistent with investor guidelines, when applicable; and

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 8

- Contain a level of detail similar to the underwriting guidelines published by Freddie Mac and Fannie Mae.

The Verification Policy must include use of an income calculation worksheet that demonstrates the analysis, assumptions and calculations used by the servicer to determine monthly gross income. The completed worksheet, which may be electronic or in hard copy, must be retained in the servicing system and/or mortgage file and made available to MHA-C upon request. A form of an income calculation worksheet is available on www.HMPadmin.com. Use of this form by servicers is optional; however, any alternative form used by the servicer must include a similar level of detail.

Prior to offering a TPP or sending a Non-Approval Notice to the borrower, servicers must verify a borrower's eligibility for HAMP using the documentation provided in the Initial Package and any other supplemental information provided by the borrower in a timely manner.

In the event a borrower fails a TPP for non-payment of the trial period payment, the servicer must, prior to issuing a Non-Approval Notice in accordance with Section 2.3.2.2, re-calculate the borrower's income to ensure that the trial period payment was accurately determined based on the income information originally provided by the borrower. This re-calculation of income must be conducted by an employee not involved in the original income calculation. No new income information or verification should be included in the re-calculation. Additionally, if the borrower fails a HAMP Tier 1 TPP for non-payment, this re-calculation must be completed before any consideration of the borrower for HAMP Tier 2.

If, as a result of the re-calculation, the servicer determines that the borrower's trial period payment exceeded by 10 percent or more the correct trial period payment, the servicer must cancel the initial TPP using the cancellation code number 8 "Offer Not Accepted by Borrower / Request Withdrawn" and offer the borrower a new TPP with the correct trial period payment. The new written TPP Notice must include an explanation that the borrower is able to re-start the TPP with a lower trial period payment based on a re-calculation of income. Should the borrower fail to remit the new trial period payment on or before the first trial period payment due date, the servicer must follow the guidelines set forth in Section 8.3. If as a result of the re-calculation the servicer determines that the borrower's trial period payment did not exceed by 10 percent or more the correct trial period payment, the servicer must cancel the TPP in accordance with Section 2.3.2.

Servicers are not required to complete the income re-calculation when the borrower's failure to make timely trial period payments was the result of a significant change in the borrower's circumstances resulting in a reduction of income (e.g., unemployment, divorce). Servicers must retain evidence in the servicing file documenting these changed circumstances. Such evidence may include statements made by the borrower as documented in the servicing notes.

When applicable, servicers must complete the re-calculation within 30 calendar days of the trial period payment default. Until the servicer completes the re-calculation, the servicer shall not report the TPP default in the HAMP Reporting Tool.

## 5.1 Evidence of Income

Servicers must request that the borrower provide the income verification documentation listed below but may, if consistent with investor guidelines and the servicer's Verification Policy, substitute other reliable forms of verification when appropriate. However, servicers may not require verification documentation in addition to the documentation listed below unless the servicer determines that additional documentation is necessary to resolve discrepancies between the RMA, tax documents and income documentation. Servicers are responsible for determining

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 9

### 5.1.2 Self-Employment Income

Each self-employed borrower must provide his or her most recent quarterly or year-to-date profit and loss statement. Audited financial statements are not required.

When calculating gross income for self-employed borrowers, a servicer must include the borrower's net profit plus any salary or draw amounts that were paid to the borrower in addition to making allowable adjustments used in analyzing the tax returns for the business, if applicable, to decrease gross income (e.g. nonrecurring income) or to increase gross income (e.g. expenses, depreciation and depletion).

If consistent with the Verification Policy, servicers may require up to four consecutive months of bank statements as an alternative to obtaining a profit and loss statement or if, following receipt, it is determined that the information in the profit and loss statement is insufficient.

### 5.1.3 Other Earned Income

Other earned Income includes, but is not limited to, bonus, commission, fee, housing allowance, tips and overtime. Borrowers with other earned income must provide reliable third party documentation describing the nature of the income (e.g., an employment contract or printouts documenting tip income). Educational grant funds that are intended for a specific learning purpose are not a source of income for the purposes of HAMP. The servicer's Verification Policy must describe whether and how the servicer will discount or not consider other earned income when such income is not likely to continue.

### 5.1.4 Benefit Income

Benefit income includes, but is not limited to, social security, disability, survivor benefits, pension, public assistance and adoption assistance. Government benefits granted under the Supplemental Nutrition Assistance Program (i.e., food stamps) are considered to be a source of income for the purposes of HAMP because, like other income, they are used by the borrower to cover reasonable monthly living expenses.

Borrowers who receive benefit income must provide evidence of (i) the amount and frequency of the benefits such as letters, exhibits, a disability policy or benefits statement from the provider, and (ii) receipt of payment, such as copies of the two most recent bank statements or deposit advices showing deposit amounts. If a benefits statement is not available, servicers may rely only on receipt of payment evidence, if it is clear that the borrower's entitlement is ongoing.

### 5.1.5 Unemployment Benefits

Borrowers who receive unemployment benefits and request assistance under HAMP must be evaluated for and, if eligible, offered an UP forbearance plan. Alternatively, servicers may evaluate unemployed borrowers for HAMP and can offer a TPP instead of an UP forbearance plan if, in the servicer's business judgment, HAMP is the better loss mitigation option. The servicer must document in the servicing system and/or mortgage file the reason the option selected was considered to be the best option for the borrower. See Chapter III, Home Affordable Unemployment Program. See also Section 5.1.10 (excluding unemployment benefits from gross income calculations under HAMP). If an unemployed borrower evaluated for HAMP is not offered a TPP, the servicer must consider the borrower for UP. If an unemployed borrower is offered a TPP, but requests UP forbearance instead, the servicer may, but is not required to, offer UP.

### 5.1.6 Rental Income

#### 5.1.6.1 Modification of Loan Secured by Principal Residence

A borrower seeking to modify the mortgage loan on his or her principal residence who receives rental income from another property must provide evidence of that income, which is generally

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 10

documented on IRS Schedule EError! Bookmark not defined. (Supplemental Income and Loss) of the borrower's tax return for the most recent tax year.

When Schedule E is not available to document rental income because the property was not previously rented, servicers may accept a current lease agreement and bank statements or evidence of damage deposits.

If the borrower is using income from the rental of a portion of the borrower's principal residence, the income may be calculated at 75 percent of the monthly gross rental income, with the remaining 25 percent considered vacancy loss and maintenance expense.

If the borrower is using rental income from properties other than the borrower's principal residence, the income to be calculated for HAMP purposes should be 75 percent of the monthly gross rental income, reduced by the monthly debt service on the property (i.e., principal, interest, taxes, insurance, including mortgage insurance, and association fees), if applicable.

Rental income should not be included in a borrower's monthly gross income if there is currently no income due to vacancy (even if rental income was identified in their tax return or tax transcript). The servicer must reconcile any differences between what the borrower communicates and the borrower's information. For example, the servicer might choose to perform a property inspection of the rental property.

### 5.1.6.2 Modification of Loan Secured by Rental Property

A borrower seeking to modify the mortgage loan on his or her rental property must provide evidence of that income, which is generally documented on IRS Schedule E (Supplemental Income and Loss) of the borrower's tax return for the most recent tax year. When Schedule E is not available to document rental income because the property was not previously rented, servicers may accept a current lease agreement and bank statements or evidence of damage deposits. All income from any other rental property owned by the borrower must be documented and included in the calculation of the borrower's gross income.

The monthly net income or loss on a rental property to be calculated for HAMP Tier 2 purposes should be 75 percent of the monthly gross rental income (to take into account potential costs associated with management and vacancy loss), reduced by the post-modification monthly mortgage payment (i.e., principal, interest, taxes, insurance and association fees, if applicable as (PITIA) as well as escrow shortages subject to a repayment plan).

- Net rental income is added to the borrower's monthly gross income from all other sources.

- Net rental loss from the subject property is applied to the monthly mortgage payment of the borrower's principal residence.

If 75 percent of the monthly gross income of a rental property securing the mortgage loan being evaluated for modification under HAMP Tier 2 is equal to or greater than the pre-modification PITIA of the rental property, the servicer must verify and document the cause of the borrower's hardship as delinquency alone is not considered a hardship.

To be clear, when the Base NPV Model is verifying whether the post-modification DTI is not less than 25 percent and not greater than 42 percent, the Base NPV Model will utilize the post-modification net rental income/loss and post-modification housing expense.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 11

- Unemployment benefits; and

- Payments from Non-MHA Unemployment Assistance programs.

### 5.2 Borrowers in Active Bankruptcy-Substitution of Evaluation Documents

When a borrower is in an active Chapter 7 or Chapter 13 bankruptcy, the servicer may accept copies of the bankruptcy schedules and tax returns (if returns are required to be filed) in lieu of the RMA and Form 4506T-EZ, and may use this information to determine borrower eligibility (with the income documentation). Servicers should request the schedules and tax returns from the borrower, borrower's counsel or bankruptcy court. If the bankruptcy schedules are greater than 90 days old as of the date that such schedules are received by the servicer, the borrower must provide updated evidence of income to determine HAMP eligibility. Additionally, either directly or through counsel, borrowers must provide a completed and executed Hardship Affidavit (or RMA).

### 5.3 Occupancy Verification

The servicer must obtain a credit report for each borrower or a joint report for a married couple who are co-borrowers to confirm whether the property securing the mortgage loan is the borrower's principal residence. If the credit report is inconsistent with other information provided by the borrower, the servicer must use good business judgment in reconciling the inconsistency.

A servicer must consider a mortgage loan for HAMP that, while originally secured by non-owner occupied property, has become the borrower's principal residence as long as such occupancy can be verified. However, if an individual's income, whether that individual is a borrower, co-borrower or non-borrower occupant, has previously been used as the basis for a HAMP Tier 1 permanent modification, that individual may not be considered for a subsequent HAMP Tier 1 permanent modification even if the individual's principal residence has changed.

### 5.4 Verifying Monthly Gross Expenses

Servicers must verify the borrower's monthly gross expenses as reported by the borrower on the RMA using the credit report, tax returns or transcripts and other verification documentation provided by the borrower. Monthly gross expenses include the monthly charges described in the following list:

- The monthly mortgage payment for the borrower's principal residence including taxes, property insurance, homeowner's or condominium association fee payments and assessments related to the property whether or not they are included in the mortgage payment. This information must be verified even if the borrower is seeking a modification of a rental property

- If applicable, the monthly mortgage payment for the rental property that the borrower seeks to modify, including taxes, property insurance, homeowner's or condominium association fee payments and assessments related to the property whether or not they are included in the mortgage payment.

- Any mortgage insurance premiums.

- Monthly payments on all closed-end subordinate mortgages.

- Alimony, child support and separate maintenance payments with more than ten months of payments remaining, if supplied by the borrower.

- Car lease payments, regardless of the number of payments remaining.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 12

- Monthly payments on revolving or open-end accounts, regardless of the balance. In the absence of a stated payment, the payment will be calculated by multiplying the outstanding balance by three-percent.

- Aggregate negative net rental income from all investment properties owned, if supplied by the borrower.

- Monthly mortgage payment(s) for a second home or seasonal rental property including principal, interest, taxes and insurance and, when applicable, leasehold payments, homeowner association dues, condominium unit or cooperative unit maintenance fees, but excluding unit utility charges.

- Payments on all installment debts with more than ten months of payments remaining, including debts that are in a period of either deferment or forbearance. When payments on an installment debt are not on the credit report or are listed as deferred, the servicer must obtain documentation to support the payment amount included in the monthly debt payment. If no monthly payment is reported on a student loan that is deferred or is in forbearance, the servicer will obtain documentation verifying the proposed monthly payment amount, or use a minimum of 1.5 percent of the balance.

- Monthly payment on a HELOC will be included in the payment ratio using the minimum monthly payment reported on the credit report. If the HELOC has a balance, but no monthly payment is reported, the servicer will obtain documentation verifying the payment amount, or use a minimum of one percent of the balance.

A servicer should not consider expenses of non-borrower household members when calculating monthly gross expenses.

## 5.5 Fraud

Servicers should not modify a mortgage loan if there is reasonable evidence indicating the borrower submitted income information that is false or misleading or if the borrower otherwise engaged in fraud in connection with the modification.

## 5.6 Document Perfection

Servicers must use good business judgment when determining the level of perfection of the verification documents. Servicers may elect to accept documents with imperfections (blank fields, erasures, use of correction tape, inaccurate dates, etc.) if the servicer determines that the imperfections are immaterial to the business decision, are not indicative of fraud and do not impact the servicer's ability to verify the completeness and accuracy of the borrower's financial representations.

## 5.7 Borrower Signatures

Unless a borrower is deceased or divorced, all parties who signed the original loan documents or their duly authorized representative(s) should sign HAMP documents. However, servicers may encounter circumstances where a co-borrower signature is not obtainable, for reasons such as mental incapacity, military deployment or contested divorce. Servicers should use good business judgment, in accordance with existing servicing agreements and investor guidelines, when determining whether to accept a document without a co-borrower's signature.

# 6 Underwriting

Servicers must determine the borrower's eligibility for a modification using information obtained in the Initial Package and subsequently verified. Servicers are required to notify the borrower of the eligibility determination within 10 business days of completion of such assessment.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 13

### 6.1 Monthly Mortgage Payment Ratio

To qualify for HAMP Tier 1, verified income documentation must confirm that the borrower's monthly mortgage payment ratio prior to the modification is greater than 31 percent. For HAMP Tier 1, the monthly mortgage payment ratio is the ratio of the borrower's current monthly mortgage payment to the monthly gross income of all borrowers on the mortgage note, whether or not those borrowers reside in the property.

If the borrower's monthly mortgage payment ratio is less than 31 percent, the borrower is not eligible for HAMP Tier 1 and the servicer must consider the borrower for HAMP Tier 2.

In the case of HAMP Tier 2, the borrower's post-modification monthly mortgage payment ratio (also called a debt-to-income ratio or DTI ratio) must be greater than or equal to 25 percent and less than or equal to 42 percent (Acceptable DTI Range). In HAMP Tier 2, the DTI ratio is the ratio of the borrower's modified monthly mortgage payment to the monthly gross income of all borrowers on the mortgage note. If the borrower is seeking to modify a mortgage secured by a rental property, the DTI ratio is the ratio of the borrower's total housing expense to the monthly gross income of all borrowers on the mortgage note including any net rental income from the rental property being modified as described in Section 6.2

If a borrower being considered for HAMP Tier 2 has a modified DTI ratio that is outside the Acceptable DTI Range, the borrower is not eligible for HAMP and the servicer must send the borrower a Non-Approval Notice (see Section 2.3.2) and consider the borrower for alternative loss mitigation options in accordance with Section 8.7.

#### 6.1.1 Monthly Gross Income

Monthly gross income is the borrower's income amount before any payroll deductions and includes:

- Wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, and/or other compensation for personal services.

- Social Security payments, food stamps and adoption subsidies, including those received by adults on behalf of minors or by minors intended for their own support.

- Monthly income from annuities, insurance policies, retirement funds, pensions and disability or death benefits.

- Rental income and other miscellaneous sources of income.

If only net income is available, the servicer must multiply the net income amount by 1.25 (125 percent) to estimate the monthly gross income. All non-taxed income, including non-taxed social security income, is considered net income. Rental income from a rental property securing a mortgage loan being considered for a HAMP Tier 2 modification will be calculated as described in Section 6.2.

#### 6.1.2 Monthly Mortgage Payment

The monthly mortgage payment used in calculating any monthly mortgage payment ratio in either HAMP Tier 1 or HAMP Tier 2 includes the monthly payment of principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's association fees, as applicable, regardless of whether these expenses are included in the borrower's current mortgage payment. For purposes of calculating the monthly mortgage payment of a subject property (i.e., the property securing the loan being considered for a modification), servicers should also include any escrow payment shortage amounts that are subject to a repayment plan. Escrow shortage amounts that are subject to a repayment plan associated with a non-subject

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 14

loss. Although securitization pooling or trust agreements often use the term "principal forbearance" in addressing the postponement for short periods of the dates on which certain payments of principal are due, the exception set forth in this paragraph will only apply if the relevant agreement specifically addresses principal forbearance in the manner set forth in (A) through (C) in the immediately preceding sentence.

HFSTHA also states that qualified loss mitigation plan guidelines issued by Treasury under the Emergency Economic Stabilization Act of 2008 (EESA) shall constitute standard industry practice for purposes of all Federal and State laws. The qualified loss mitigation plan guidelines issued by Treasury under EESA include this Handbook. Accordingly, actions described in clauses (i) through (iii) above, when taken by a servicer pursuant to this Handbook, shall constitute "standard industry practice" within the meaning of the Servicer Safe Harbor, and, when taken by any other person pursuant to this Handbook, including a trustee or securities administrator under a securitization pooling or trust agreement, shall constitute "cooperation of such person with a servicer when such cooperation is necessary for the servicer to implement a qualified loss mitigation plan" within the meaning of the Servicer Safe Harbor.

### 6.6.3 Reporting of Principal Forbearance to IRS

Servicers can use either IRS Form 1098 or an IRS-compliant Annual Borrower Statement to report principal forbearance to the IRS. The IRS Form 1098 does not contain the UPB for the applicable loan; therefore, for a loan with a principal forbearance, a notation is not necessary on the Form 1098 to remind the borrower of the principal forbearance. However, if servicers substitute an IRS-compliant Annual Borrower Statement that includes the UPB of the modified loan, then the servicer must include the principal forbearance amount on the statement.

## 6.7 Counseling Requirement

Borrowers with back-end ratios of 55 percent or more must agree in writing to obtain HUD-approved counseling as a condition of receiving a HAMP modification, even if they recently completed counseling. Servicers use income and expense information from borrowers provided on the RMA and other sources to calculate the back-end ratio. The borrower's total monthly debt ratio (back-end ratio) is the ratio of the borrower's monthly gross expenses divided by the borrower's monthly gross income.

Servicers must send a HAMP Counseling Letter to borrowers with a post-HAMP modification back-end ratio equal to or greater than 55 percent. The HAMP Counseling Letter states that the borrower must work with a HUD-approved housing counselor on a plan to reduce their total indebtedness below 55 percent. The letter also describes the availability and advantages of counseling and provides a list of local HUD-approved housing counseling agencies and directs the borrower to the appropriate HUD Website where such information is located. The borrower must represent in writing in HAMP documents that he or she will obtain such counseling.

Face-to-face counseling is encouraged. However, telephone counseling is also permitted from HUD-approved housing counselors provided it covers the same topics as face-to-face sessions. Telephone counseling sessions provide flexibility to borrowers that are unable to attend face-to-face sessions or for those borrowers that do not have an eligible provider within their area.

### 6.7.1 Approved Counselors

A list of approved housing counseling agencies is available at http://www.hud.gov/offices/hsg/sfh/hcc/fc or by calling the toll-free housing counseling telephone referral service at 1-800-569-4287. Servicers must retain in the mortgage file and or servicing system evidence of the borrower notification.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 15

#### 6.7.2 Paying for Counseling

There is no charge to either borrowers or servicers for HUD-approved counseling. Servicers may, at their discretion, use a portion of the servicer incentive compensation to compensate counselors for counseling services provided in conjunction with HAMP.

### 6.8 Property Valuation

Servicers must obtain an assessment of the current value of the property securing the mortgage loan being evaluated for HAMP. Servicers may use either an automated valuation model (AVM), provided that the AVM renders a reliable confidence score, a broker's price opinion (BPO) or an appraisal. Confidence scores deemed reasonable by bank examiners are also considered reasonable for purposes of this program. A servicer may use an AVM provided by one of the GSEs. As an alternative, servicers may rely on their internal AVM provided that:

- The servicer is subject to supervision by a Federal regulatory agency;
- The servicer's primary Federal regulatory agency has reviewed the model; and
- The AVM renders a reliable confidence score.

If a GSE AVM or the servicer AVM is unable to render a value with a reliable confidence score, the servicer must obtain an assessment of the property value utilizing a BPO, an appraisal or a property valuation method acceptable to the servicer's Federal regulatory supervisor. Such assessment must be rendered in accordance with the Interagency Appraisal and Evaluation Guidelines (as if such guidelines apply to loan modifications). In all cases, the property valuation used cannot be more than 90 days old as of the date the servicer first evaluates the borrower for a TPP using the NPV model. The information will remain valid for the duration of the TPP and does not need to be updated for any subsequent NPV evaluation. Servicers should follow regulatory and investor guidance when selecting the appropriate valuation method to determine the mark-to-market value of the property and use this value for both the NPV model and the PRA mark-to-market LTV ratio calculation.

Treasury does not provide any reimbursement for property valuations. Servicers should review investor guidelines to determine the applicable property valuation reimbursement policy.

## 7 Net Present Value (NPV) Testing

All loans that meet the applicable HAMP eligibility criteria in Section 1 must be evaluated using a standardized NPV test that compares the NPV result for a modification to the NPV result for no modification. The standardized NPV test will automatically be run contemporaneously for both HAMP Tier 1 and Tier 2, to the extent a borrower meets the eligibility requirements for HAMP Tier 1 under Sections 1.1.1 and Sections 1.1.2 (subject to the applicable limitations in Section 1.2). Prior to performing an NPV analysis on all loans, servicers must complete the escrow analysis and use the information derived from that analysis to calculate the UPB as of the "Data Collection Date" (i.e., the date on which the "Unpaid Principal Balance" and other data used in the NPV analysis was collected). When running NPV to evaluate borrowers for HAMP Tier 1 and Tier 2, servicers should not project UPB to a future date, but should use the current UPB amount as of the Data Collection Date.

- Using the applicable standard modification waterfall, if the NPV result for the modification scenario is greater than the NPV result for no modification, the result is deemed "positive". If the NPV result for no modification is greater than the NPV result for the modification scenario using the applicable standard modification waterfall, the modification result is deemed "negative".

- If there is a positive NPV result under the HAMP Tier 1 standard modification waterfall, the servicer must offer the HAMP Tier 1 TPP regardless of the HAMP Tier 2 NPV result.

EXHIBIT 1 to RJN iso Suppl.
Oppn to Mtn for PI
Page No. 16

**CERTIFICATE OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the foregoing document entitled:

**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the interested parties in said case as follows:

**Served Electronically Via the Court's CM/ECF System**

*Attorneys for Plaintiffs and the Settlement Class*

| | |
|---|---|
| BERNS WEISS LLP | BERNS WEISS LLP |
| Jeffrey K. Berns | Lee A. Weiss |
| 20700 Ventura Blvd. Suite 140 | 626 RXR Plaza |
| Woodland Hills, CA 91364 | Uniondale, NY 11556 |
| | |
| jberns@bernsweiss.com | lweiss@bernsweiss.com |
| Tel: (818) 961-2000 | Tel: (516) 222-2900 |
| Fax: (818) 999-1500 | Fax: (818) 999-1500 |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court, at whose direction the service was made. This declaration is executed in Pasadena, California on January 23, 2013.

| | |
|---|---|
| Nancy J. Peters | */s/ Nancy J. Peters* |
| (Type or Print Name) | (Signature of Declarant) |