**BERNS WEISS LLP**
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Telephone: (818) 961-2000
Facsimile: (818) 999-1500

Lee A. Weiss (admitted *pro hac vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone: (516) 222-2900
Facsimile: (818) 999-1500

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>―――<br><br>*This Document Relates to*:<br><br>ALL INCLUDED ACTIONS | Case NO.: 5:09-MD-02015-JF<br><br>[*Assigned to the Hon. Jeremy Fogel*]<br><br><u>CLASS ACTION</u><br><br>**PLAINTIFFS' SECOND REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF REPLY TO DEFENDANTS' SUPPLEMENTAL OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs, by and through Lead Class Counsel, hereby request that the Court take judicial notice pursuant to Federal Rule of Evidence 201(b)(2) of the following documents submitted in support of Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction:

1. Relevant excerpts from the printout of the Federal Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages, Version 3.4 as of December 15, 2011 ("MHA Handbook v.3.4"), obtained from www.hmpadmin.com/portal/programs/docs/ hamp_servicer/mhahandbook_34.pdf, a website administered by Fannie Mae.  Attached hereto as **Exhibit A**.

Judicial notice is appropriate for Exhibit A because this is a document compiled either by a financial agent of the United States Government (Fannie Mae) or by a department (Treasury, HUD) or agency (GAO) of the Government itself, and was obtained from a government website.  This Exhibit thus constitutes information that "is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *see also United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994) (district court did not err in taking judicial notice of FDIC document that "is a source whose accuracy cannot be reasonably questioned"); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (same, regarding handbook of U.S. Department of Labor, Wage and Hour Division); *Paralyzed Veterans of Am. v. McPherson*, 2008 WL 4183891, at *5 (N.D. Cal. Sept. 9, 2008) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.  This is particularly true of information on government agency websites, which have often been treated as proper subjects for judicial notice.") (citations omitted).

| | |
|---|---|
| DATED: January 28, 2013 | Respectfully submitted, |
| | **BERNS WEISS LLP** |
| | By:   /s/ Jeffrey K. Berns
Jeffrey K. Berns (SBN 131351)
jberns@law111.com
20700 Ventura Blvd., Suite 140
Woodland Hills, CA 91364
Telephone: (818) 961-2000
Facsimile: (818) 999-1500 |
| | Lee A. Weiss (admitted *pro hac vice*)
lweiss@law111.com
585 Stewart Avenue, Suite L-20
Garden City, NY 11530
Telephone: (516) 222-2900
Facsimile: (818) 999-1500 |
| | *Attorneys for Plaintiffs and the Settlement Class* |

# Exhibit A

IN RE:  WACHOVIA CORP.
"PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION
Case NO.: 5:09-MD-02015-JF

# Exhibit A

www.HMPadmin.com. Borrowers can locate and complete a version of IRS Form 4506T-EZ in either English or Spanish on www.MakingHomeAffordable.gov.

The servicer must submit the borrower's Form to the IRS for processing unless the borrower provides a signed copy of his or her most recent federal income tax return, including all schedules and forms.

### 4.3 Evidence of Income

The Initial Package must also include documentation to verify the borrower's income as described in Section 5.1. The income documentation may not be more than 90 days old as of the date the documentation is received by the servicer. There is no requirement to refresh the income documentation during the TPP.

### 4.4 Reasonably Foreseeable or Imminent Default

A borrower that is current or has only one payment due and unpaid by the end of the month in which it is due and who contacts the servicer to request HAMP consideration must be evaluated to determine if he or she is at risk of imminent default. Each servicer must have written standards for determining imminent default that are consistent with applicable contractual agreements and accounting standards and must apply the standards equally to all borrowers.

When making an imminent default determination, the servicer must evaluate the borrower's hardship as well as the condition of and circumstances affecting the property securing the mortgage loan. The servicer must consider the borrower's financial condition, liquid assets, liabilities, combined monthly income from wages and all other identified sources of income, monthly obligations (including personal debts, revolving accounts, and installment loans), and a reasonable allowance for living expenses such as food, utilities, etc. The hardship and financial condition of the borrower must be verified through documentation.

A servicer must document in its servicing system and/or mortgage file the basis for its determination that a payment default is imminent and retain all documentation used to reach this conclusion.

### 4.5 Acknowledgment of Initial Package

Within 10 business days following receipt of an Initial Package, the servicer must acknowledge in writing the borrower's request for HAMP participation by sending the borrower confirmation that the Initial Package was received and a description of the servicer's evaluation process and timeline. If the Initial Package is received from the borrower via e-mail, the servicer may e-mail the acknowledgment. Servicers must maintain evidence of the date of receipt of the borrower's Initial Package in its records.

A single written communication sent within 10 business days of receipt of a borrower's request for HAMP participation may also include, at the servicer's discretion, the results of its review of the Initial Package.

### 4.6 Review of Initial Package

Within 30 calendar days from the date an Initial Package is received, the servicer must review the documentation provided by the borrower for completeness and determine whether to respond with an Incomplete Information Notice, a TPP Notice or a Non-Approval Notice. If the documentation is incomplete or insufficient for use in underwriting, the servicer must send the borrower an Incomplete Information Notice in accordance with the guidance set forth in Section 2.3.3.

If the borrower's documentation is complete, within 30 calendar days from the date of receipt of the Initial Package the servicer must evaluate the borrower's eligibility for HAMP and within 10 business days of such determination, either:

- Send the borrower a TPP Notice (see Section 8.1); or

- Make a determination that the borrower is not eligible for HAMP and communicate this determination to the borrower in accordance with the guidance in Section 2.3.2.

## 5 Verification

Servicers must develop and adhere to a written policy and procedures (Verification Policy) that describe the basis on which the servicer will determine a borrower's monthly gross income (or, in the case of co-borrowers, the combined monthly gross income). The Verification Policy must:

- Be compliant with the requirements set forth in this Handbook;

- Reflect the business judgment employed by the servicer when modifying loans held in its own portfolio;

- Be consistent with investor guidelines, when applicable; and

- Contain a level of detail similar to the underwriting guidelines published by Freddie Mac and Fannie Mae.

The Verification Policy must include use of an income calculation worksheet that demonstrates the analysis, assumptions and calculations used by the servicer to determine monthly gross income. The completed worksheet, which may be electronic or in hard copy, must be retained in the servicing system and/or mortgage file and made available to MHA-C upon request. A form of an income calculation worksheet is available on www.HMPadmin.com. Use of this form by servicers is optional; however, any alternative form used by the servicer must include a similar level of detail.

Prior to offering a TPP or sending a Non-Approval Notice to the borrower, servicers must verify a borrower's eligibility for HAMP using the documentation provided in the Initial Package and any other supplemental information provided by the borrower in a timely manner.

In the event a borrower fails a TPP for non-payment of the trial period payment, the servicer must, prior to issuing a Non-Approval Notice in accordance with Section 2.3.2.2, re-calculate the borrower's income to ensure that the trial period payment was accurately determined based on the income information originally provided by the borrower. This re-calculation of income must be conducted by an employee not involved in the original income calculation. No new income information or verification should be included in the re-calculation.

If, as a result of the re-calculation, the servicer determines that the borrower's trial period payment exceeded by 10 percent or more the correct trial period payment, the servicer must cancel the initial TPP using the cancellation code number 8 "Offer Not Accepted by Borrower / Request Withdrawn" and offer the borrower a new TPP with the correct trial period payment. The new written TPP Notice must include an explanation that the borrower is able to re-start the TPP with a lower trial period payment based on a re-calculation of income. Should the borrower fail to remit the new trial period payment on or before the first trial period payment due date, the servicer must follow the guidelines set forth in Section 8.3. If as a result of the re-calculation the servicer determines that the borrower's trial period payment did not exceed by 10 percent or more the correct trial period payment, the servicer must cancel the TPP in accordance with Section 2.3.2.

Servicers are not required to complete the income re-calculation when the borrower's failure to make timely trial period payments was the result of a significant change in the borrower's circumstances resulting in a reduction of income (e.g., unemployment, divorce). Servicers must retain evidence in the servicing file documenting these changed circumstances. Such evidence may include statements made by the borrower as documented in the servicing notes.

When applicable, servicers must complete the re-calculation within 30 calendar days of the trial period payment default. Until the servicer completes the re-calculation, the servicer shall not report the TPP default in the HAMP Reporting Tool.

## 5.1 Evidence of Income

Servicers must request that the borrower provide the income verification documentation listed below but may, if consistent with investor guidelines and the servicer's Verification Policy, substitute other reliable forms of verification when appropriate. However, servicers may not require verification documentation in addition to the documentation listed below unless the servicer determines that additional documentation is necessary to resolve discrepancies between the RMA, tax documents and income documentation. Servicers are responsible for determining that any information provided by the borrower that is needed to evaluate the borrower's eligibility for HAMP is complete and accurate.

The servicer's Verification Policy should describe:

- Under what circumstances additional documentation will be required;

- How the servicer will reconcile discrepancies between the RMA, tax documents and income documentation;

- How the servicer will calculate non-traditional income scenarios such as underemployment, recent employment, overtime, seasonal or sporadic income; and

- Circumstances under which servicing personnel may exercise business judgment in calculating the borrower income, and how and where the business judgment is to be documented for the borrower's account.

When verifying a borrower's income and evaluating a borrower's eligibility for HAMP, servicers should use good business judgment consistent with the judgment employed when modifying mortgage loans held in their own portfolio.

### 5.1.1 Wage or Salary Income

Each wage earning borrower must provide copies of two recent pay stubs, not more than 90 calendar days old at time of submission, indicating year-to-date earnings.

A servicer may accept pay stubs that are not consecutive if, in the business judgment of the servicer, it is evident that the borrower's income has been accurately established. A servicer may also accept pay stubs that do not show year-to-date income, if, in its business judgment, and based on all other documentation, the pay stubs indicate the borrower's recurring monthly income.

When two pay stubs indicate different periodic income, servicers may use year-to-date earnings to determine the average periodic income, and account for any non-periodic income reflected in either of the pay stubs.

The Verification Policy should describe how the servicer will:

- Calculate income based on the frequency of payments;
- Make adjustments when it is likely that sources of additional income (bonus, commissions, etc.) are not likely to continue; and
- Utilize alternative forms of income documentation (IRS Forms 1099, 1040, W-2, and IRS tax transcripts or letters from employers) when pay stubs are not available or sufficient or do not show year-to-date income.

### 5.1.2 Self-Employment Income

Each self-employed borrower must provide his or her most recent quarterly or year-to-date profit and loss statement. Audited financial statements are not required.

When calculating gross income for self-employed borrowers, a servicer must include the borrower's net profit plus any salary or draw amounts that were paid to the borrower in addition to making allowable adjustments used in analyzing the tax returns for the business, if applicable, to decrease gross income (*e.g.* nonrecurring income) or to increase gross income (*e.g.* expenses, depreciation and depletion).

If consistent with the Verification Policy, servicers may require up to four consecutive months of bank statements as an alternative to obtaining a profit and loss statement or if, following receipt, it is determined that the information in the profit and loss statement is insufficient.

### 5.1.3 Other Earned Income

Other earned income includes, but is not limited to, bonus, commission, fee, housing allowance, tips and overtime. Borrowers with other earned income must provide reliable third party documentation describing the nature of the income (e.g., an employment contract or printouts documenting tip income). Educational grant funds that are intended for a specific learning purpose are not a source of income for the purposes of HAMP. The servicer's Verification Policy must describe whether and how the servicer will discount or not consider other earned income when such income is not likely to continue.

### 5.1.4 Benefit Income

Benefit income includes, but is not limited to, social security, disability, survivor benefits, pension, public assistance and adoption assistance. Government benefits granted under the Supplemental Nutrition Assistance Program (i.e., food stamps) are considered to be a source of income for the purposes of HAMP because, like other income, they are used by the borrower to cover reasonable monthly living expenses.

Borrowers who receive benefit income must provide evidence of (i) the amount and frequency of the benefits such as letters, exhibits, a disability policy or benefits statement from the provider, and (ii) receipt of payment, such as copies of the two most recent bank statements or deposit advices showing deposit amounts. If a benefits statement is not available, servicers may rely only on receipt of payment evidence, if it is clear that the borrower's entitlement is ongoing.

### 5.1.5 Unemployment Benefits

Borrowers who receive unemployment benefits and request assistance under HAMP must be evaluated for and, if eligible, offered an UP forbearance plan. Alternatively, servicers may evaluate unemployed borrowers for HAMP and can offer a TPP instead of an UP forbearance plan if, in the servicer's business judgment, HAMP is the better loss mitigation option. The servicer must document in the servicing system and/or mortgage file the reason the option selected was considered to be the best option for the borrower. See Chapter III, Home Affordable

Unemployment Program. See also Section 5.1.10 (excluding unemployment benefits from gross income calculations under HAMP). If an unemployed borrower evaluated for HAMP is not offered a TPP, the servicer must consider the borrower for UP. If an unemployed borrower is offered a TPP, but requests UP forbearance instead, the servicer may, but is not required to, offer UP.

### 5.1.6 Rental Income

Borrowers who receive rental income must provide evidence of that income, which is generally documented on IRS Schedule E (Supplemental Income and Loss) of the borrower's tax return for the most recent tax year.

When Schedule E is not available to document rental income because the property was not previously rented, servicers may accept a current lease agreement and bank statements or cancelled rent checks.

If the borrower is using income from the rental of a portion of the borrower's principal residence, the income may be calculated at 75 percent of the monthly gross rental income, with the remaining 25 percent considered vacancy loss and maintenance expense.

If the borrower is using rental income from properties other than the borrower's principal residence, the income to be calculated for HAMP purposes should be 75 percent of the monthly gross rental income, reduced by the monthly debt service on the property (i.e., principal, interest, taxes, insurance, including mortgage insurance, and association fees), if applicable.

Rental income should not be included in a borrower's monthly gross income if there is currently no income due to vacancy (even if rental income was identified in their tax return or tax transcript). The servicer must reconcile any differences between what the borrower communicates and the borrower's information. For example, the servicer might choose to perform a property inspection of the rental property.

### 5.1.7 Alimony, Separation Maintenance, and Child Support Income

Servicers may not require borrowers to use alimony, separation maintenance or child support income to qualify for HAMP. However, if the borrower chooses to provide this income, it must be documented with (i) copies of the divorce decree, separation agreement or other legal written agreement filed with a court, or a court decree that provides for the payment of alimony or child support and states the amount of the award and the period of time over which it will be received, and (ii) evidence of receipt of payment, such as copies of the two most recent bank statements or deposit advices showing deposit amounts. If the borrower voluntarily provides such income, and that income renders the borrower ineligible for a HAMP offer, the servicer is allowed to remove that income from consideration and re-evaluate the borrower for HAMP eligibility.

### 5.1.8 Threshold for Documenting Passive and Non-Wage Income

Notwithstanding the other provisions of this Section 5.1, passive and non-wage income (including rental, part-time employment, bonus/tip, investment and benefit income) does not have to be documented if it constitutes less than 20 percent of the borrower's total gross income. Servicers must identify the specific sources and amount of a borrower's passive or non-wage income and may not assume that a portion of the borrower's income is passive. Servicers must obtain income documentation to verify passive or non-wage income when it equals or exceeds 20 percent of the borrower's total gross income.

### 5.1.9 Non-Borrower Household Income

A non-borrower is someone who is not on the original note (and may or may not be on the original security instrument), but whose income has been relied upon to support the mortgage payment. Non-borrower household income that may be considered for HAMP qualification must come from someone who resides in the residence. Examples include a non-borrower spouse,

parent, child or a non-relative, but in each case, a person who shares in the occupancy of the home and provides some support for the household expenses.

Servicers should include non-borrower household income in monthly gross income if it is voluntarily provided by the borrower and if, in the servicer's business judgment, that the income reasonably can continue to be relied upon to support the mortgage payment. Non-borrower household income included in the monthly gross income must be documented and verified by the servicer using the same standards for verifying a borrower's income. If income is being used for a non-borrower, the servicer should use only the income that the non-borrower will contribute to the mortgage. The servicer must verify the occupancy of a non-borrower in the same manner it verifies the occupancy of a borrower under Section 5.3 after obtaining written authorization from the non-borrower to obtain the non-borrower's credit report.

### 5.1.10 Excluded Income

The servicer must not consider the following items when verifying the borrower's income:

- Income tax refunds;
- Non-borrower non-household income;
- Grants, including mortgage assistance payments;
- Severance payments;
- Unemployment benefits; and
- Payments from Non-MHA Unemployment Assistance programs.

## 5.2 Borrowers In Active Bankruptcy-Substitution of Evaluation Documents

When a borrower is in an active Chapter 7 or Chapter 13 bankruptcy, the servicer may accept copies of the bankruptcy schedules and tax returns (if returns are required to be filed) in lieu of the RMA and Form 4506T-EZ, and may use this information to determine borrower eligibility (with the income documentation). Servicers should request the schedules and tax returns from the borrower, borrower's counsel or bankruptcy court. If the bankruptcy schedules are greater than 90 days old as of the date that such schedules are received by the servicer, the borrower must provide updated evidence of income to determine HAMP eligibility. Additionally, either directly or through counsel, borrowers must provide a completed and executed Hardship Affidavit (or RMA).

## 5.3 Occupancy Verification

The servicer must obtain a credit report for each borrower or a joint report for a married couple who are co-borrowers to confirm that the property securing the mortgage loan is the borrower's principal residence. If the credit report is inconsistent with other information provided by the borrower, the servicer must use good business judgment in reconciling the inconsistency.

A servicer must consider a mortgage loan for HAMP that, while originally secured by non-owner occupied property, has become the borrower's principal residence as long as such occupancy can be verified. However, if an individual's income, whether that individual is a borrower, co-borrower or non-borrower occupant, has previously been used as the basis for a permanent modification, that individual may not be considered for a subsequent permanent modification even if the individual's principal residence has changed.

### 5.4 Verifying Monthly Gross Expenses

Servicers must verify the borrower's monthly gross expenses as reported by the borrower on the RMA using the credit report, tax returns or transcripts and other verification documentation provided by the borrower. Monthly gross expenses include the monthly charges described in the following list:

- The monthly mortgage payment, taxes, property insurance, homeowner's or condominium association fee payments and assessments related to the property whether or not they are included in the mortgage payment.

- Any mortgage insurance premiums.

- Monthly payments on all closed-end subordinate mortgages.

- Alimony, child support and separate maintenance payments with more than ten months of payments remaining, if supplied by the borrower.

- Car lease payments, regardless of the number of payments remaining.

- Monthly payments on revolving or open-end accounts, regardless of the balance. In the absence of a stated payment, the payment will be calculated by multiplying the outstanding balance by three-percent.

- Aggregate negative net rental income from all investment properties owned, if supplied by the borrower.

- Monthly mortgage payment for second home including principal, interest, taxes and insurance and, when applicable, leasehold payments, homeowner association dues, condominium unit or cooperative unit maintenance fees, but excluding unit utility charges.

- Payments on all installment debts with more than ten months of payments remaining, including debts that are in a period of either deferment or forbearance. When payments on an installment debt are not on the credit report or are listed as deferred, the servicer must obtain documentation to support the payment amount included in the monthly debt payment. If no monthly payment is reported on a student loan that is deferred or is in forbearance, the servicer will obtain documentation verifying the proposed monthly payment amount, or use a minimum of 1.5 percent of the balance.

- Monthly payment on a HELOC will be included in the payment ratio using the minimum monthly payment reported on the credit report. If the HELOC has a balance, but no monthly payment is reported, the servicer will obtain documentation verifying the payment amount, or use a minimum of one percent of the balance.

A servicer should not consider expenses of non-borrower household members when calculating monthly gross expenses.

### 5.5 Fraud

Servicers should not modify a mortgage loan if there is reasonable evidence indicating the borrower submitted income information that is false or misleading or if the borrower otherwise engaged in fraud in connection with the modification.

### 5.6 Document Perfection

Servicers must use good business judgment when determining the level of perfection of the verification documents. Servicers may elect to accept documents with imperfections (blank fields,

erasures, use of correction tape, inaccurate dates, etc.) if the servicer determines that the imperfections are immaterial to the business decision, are not indicative of fraud and do not impact the servicer's ability to verify the completeness and accuracy of the borrower's financial representations.

### 5.7 Borrower Signatures

Unless a borrower is deceased or divorced, all parties who signed the original loan documents or their duly authorized representative(s) should sign HAMP documents. However, servicers may encounter circumstances where a co-borrower signature is not obtainable, for reasons such as mental incapacity, military deployment or contested divorce. Servicers should use good business judgment, in accordance with existing servicing agreements and investor guidelines, when determining whether to accept a document without a co-borrower's signature.

## 6 Underwriting

Servicers must determine the borrower's eligibility for a modification using information obtained in the Initial Package and subsequently verified. Servicers are required to complete their assessment of borrower eligibility within 30 calendar days of receiving all required borrower documentation and notify the borrower of the eligibility determination within 10 business days of completion of such assessment.

### 6.1 Monthly Mortgage Payment Ratio

To qualify for HAMP, verified income documentation must confirm that the borrower's monthly mortgage payment ratio prior to the modification is greater than 31 percent. The monthly mortgage payment ratio is the ratio of the borrower's current monthly mortgage payment to the monthly gross income of all borrowers on the mortgage note, whether or not those borrowers reside in the property.

If the borrower's monthly mortgage payment ratio is less than 31 percent, the borrower is not eligible for HAMP and the servicer must send the borrower a Non-Approval Notice (see Section 2.3.2) and consider the borrower for alternative loss mitigation options in accordance with Section 8.7.

#### 6.1.1 Monthly Gross Income

Monthly gross income is the borrower's income amount before any payroll deductions and includes:

- Wages and salaries, overtime pay, commissions, fees, tips, bonuses, housing allowances, and/or other compensation for personal services.

- Social Security payments, food stamps and adoption subsidies, including those received by adults on behalf of minors or by minors intended for their own support.

- Monthly income from annuities, insurance policies, retirement funds, pensions and disability or death benefits.

- Rental income and other miscellaneous sources of income.

If only net income is available, the servicer must multiply the net income amount by 1.25 (125 percent) to estimate the monthly gross income. All non-taxed income, including non-taxed social security income, is considered net income.

(ii) The trustee or securities administrator must allocate any such reported forborne principal as a realized loss to the trust[2]; and

(iii) The servicer must act consistent with the presumption that such allocation has occurred, and may conclusively rely that it has.

The direction to the servicer and the trustee or securities administrator to take the actions described in clauses (i) through (iii) above shall apply to any mortgage loan within a securitization vehicle unless the applicable securitization pooling or trust agreement: (A) explicitly provides for or allows repayment of principal to be postponed or forborne for a long period of time; (B) explicitly provides for or allows interest on such principal amount to be permanently forgiven; and (C) explicitly and affirmatively directs that such forborne principal not be treated as a realized loss. Although securitization pooling or trust agreements often use the term "principal forbearance" in addressing the postponement for short periods of the dates on which certain payments of principal are due, the exception set forth in this paragraph will only apply if the relevant agreement specifically addresses principal forbearance in the manner set forth in (A) through (C) in the immediately preceding sentence.

HFSTHA also states that qualified loss mitigation plan guidelines issued by Treasury under the Emergency Economic Stabilization Act of 2008 (EESA) shall constitute standard industry practice for purposes of all Federal and State laws. The qualified loss mitigation plan guidelines issued by Treasury under EESA include this Handbook. Accordingly, actions described in clauses (i) through (iii) above, when taken by a servicer pursuant to this Handbook, shall constitute "standard industry practice" within the meaning of the Servicer Safe Harbor, and, when taken by any other person pursuant to this Handbook, including a trustee or securities administrator under a securitization pooling or trust agreement, shall constitute "cooperation of such person with a servicer when such cooperation is necessary for the servicer to implement a qualified loss mitigation plan" within the meaning of the Servicer Safe Harbor.

### *6.6.3 Reporting of Principal Forbearance to IRS*

Servicers can use either IRS Form 1098 or an IRS-compliant Annual Borrower Statement to report principal forbearance to the IRS. The IRS Form 1098 does not contain the UPB for the applicable loan; therefore, for a loan with a principal forbearance, a notation is not necessary on the Form 1098 to remind the borrower of the principal forbearance. However, if servicers substitute an IRS-compliant Annual Borrower Statement that includes the UPB of the modified loan, then the servicer must include the principal forbearance amount on the statement.

## *6.7 Counseling Requirement*

Borrowers with back-end ratios of 55 percent or more must agree in writing to obtain HUD-approved counseling as a condition of receiving a HAMP modification, even if they recently completed counseling. Servicers use income and expense information from borrowers provided on the RMA and other sources to calculate the back-end ratio. The borrower's total monthly debt ratio (back-end ratio) is the ratio of the borrower's monthly gross expenses divided by the borrower's monthly gross income.

Servicers must send a HAMP Counseling Letter to borrowers with a post-HAMP modification back-end ratio equal to or greater than 55 percent. The HAMP Counseling Letter states that the borrower must work with a HUD-approved housing counselor on a plan to reduce their total indebtedness below 55 percent. The letter also describes the availability and advantages of counseling and provides a list of local HUD-approved housing counseling agencies and directs

---

[2] The reported forborne principal should be allocated as a realized loss such that, for purposes of calculating distributions to security holders, such forborne amount is no longer outstanding under the amortization schedule applicable to the related mortgage loan.

the borrower to the appropriate HUD Website where such information is located. The borrower must represent in writing in HAMP documents that he or she will obtain such counseling.

Face-to-face counseling is encouraged. However, telephone counseling is also permitted from HUD-approved housing counselors provided it covers the same topics as face-to-face sessions. Telephone counseling sessions provide flexibility to borrowers that are unable to attend face-to-face sessions or for those borrowers that do not have an eligible provider within their area.

### 6.7.1 Approved Counselors

A list of approved housing counseling agencies is available at www.hud.gov/offices/hsg/sfh/hcc/fc/ or by calling the toll-free housing counseling telephone referral service at 1-800-569-4287. Servicers must retain in the mortgage files evidence of the borrower notification.

### 6.7.2 Paying for Counseling

There is no charge to either borrowers or servicers for HUD-approved counseling. Servicers may, at their discretion, use a portion of the servicer incentive compensation to compensate counselors for counseling services provided in conjunction with HAMP.

## 6.8 Property Valuation

Servicers must obtain an assessment of the current value of the property securing the mortgage loan being evaluated for HAMP. Servicers may use either an automated valuation model (AVM), provided that the AVM renders a reliable confidence score, a broker's price opinion (BPO) or an appraisal. Confidence scores deemed reasonable by bank examiners are also considered reasonable for purposes of this program. A servicer may use an AVM provided by one of the GSEs. As an alternative, servicers may rely on their internal AVM provided that:

- The servicer is subject to supervision by a Federal regulatory agency;
- The servicer's primary Federal regulatory agency has reviewed the model; and
- The AVM renders a reliable confidence score.

If a GSE AVM or the servicer AVM is unable to render a value with a reliable confidence score, the servicer must obtain an assessment of the property value utilizing a BPO, an appraisal or a property valuation method acceptable to the servicer's Federal regulatory supervisor. Such assessment must be rendered in accordance with the Interagency Appraisal and Evaluation Guidelines (as if such guidelines apply to loan modifications). In all cases, the property valuation used cannot be more than 90 days old as of the date the servicer first evaluates the borrower for a TPP using the NPV model. The information will remain valid for the duration of the TPP and does not need to be updated for any subsequent NPV evaluation. Servicers should follow regulatory and investor guidance when selecting the appropriate valuation method to determine the mark-to-market value of the property and use this value for both the NPV model and the PRA mark-to-market LTV ratio calculation.

Treasury does not provide any reimbursement for property valuations. Servicers should review investor guidelines to determine the applicable property valuation reimbursement policy.

## 7 Net Present Value (NPV) Testing

All loans that meet HAMP eligibility criteria and are either deemed to be in imminent default or delinquent as to two or more payments must be evaluated using a standardized NPV test that compares the NPV result for a modification to the NPV result for no modification.