\*\*E-Filed 9/25/2013\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION. | Case No. 5:09-md-02015-JF<br><br>ORDER (1) ADOPTING REPORT AND RECOMMENDATION; (2) IMPOSING MONETARY SANCTIONS ON WELLS FARGO; (3) DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION; (4) DENYING AS MOOT DEFENDANT'S MOTION TO ENFORCE SETTLEMENT; (5) DEFERRING CONSIDERATION OF PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT; (6) ADDRESSING CASE MANAGEMENT ISSUES; AND (7) DIRECTING THAT CASE BE REASSIGNED<br><br>[Re ECF Nos. 364, 394, 489, 507, 516] |

This order addresses the following motions and issues: (1) Defendant's motion for *de novo* review of the report and recommendation ("R&R") issued by Magistrate Judge Paul Grewal, ECF No. 507; (2) Plaintiffs' motion for preliminary injunction, ECF No. 394; (3) Defendant's motion to enforce the Settlement Agreement, ECF No. 364; (4) Plaintiffs' motion to enforce the Settlement Agreement, ECF No. 489; and (5) case management issues. For the reasons discussed below, the R&R will be adopted; monetary sanctions will be imposed against Wells Fargo; Plaintiffs' motion

for preliminary injunction will be denied without prejudice; Defendant's motion to enforce the Settlement Agreement will be denied as moot; Plaintiffs' motion to enforce the Settlement Agreement will be deferred; and the Clerk will be directed to reassign the case.

## I. BACKGROUND

On May 17, 2011, the Court granted final approval of a class action settlement between Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] and hundreds of thousands of individuals who claimed that Wells Fargo had failed to disclose material information in connection with their "Pick-a-Payment" home mortgage loan transactions. *See* Final Approval Order, ECF No. 207. The Settlement Agreement has two components: (1) a cash component that has resulted in each eligible class member receiving a payment of $178.04; and (2) a non-cash component that obligated Wells Fargo to consider class members for loan modification under what Magistrate Judge Grewal aptly has termed a "Lexus" loan modification program. *See* R&R, ECF No. 507. Although the cash payment to each eligible class member is relatively modest, the Court approved the class action settlement because it believed that the bargained-for loan modification program would confer real and substantial benefit to the class; indeed, Plaintiffs' expert estimated the value of the loan modification program as being in the range of $839 million to $2.7 billion. *See* Final Approval Order at 4, ECF No. 207.

In its order granting final approval of the settlement, the Court noted that the parties' agreement required Wells Fargo to inform Class Counsel of all denials of loan modification so that Class Counsel could "follow up with Defendants to ensure that the loan modification program is functioning as intended." *Id*. The Court "retain[ed] continuing jurisdiction to interpret and enforce the Settlement Agreement." *Id*. During the year and a half following final approval of the class action settlement, the Court disposed of approximately a dozen motions seeking relief from or enforcement of the Settlement Agreement. Those motions were not brought by Class Counsel, and

---

[1] Defendant's name has changed several times since this action began: originally World Savings Bank, FSB, Defendant changed its name to Wachovia Mortgage, FSB and then merged with and into Wells Fargo Bank, N.A. *See Caovilla v. Wells Fargo Bank, N.A.*, No. 13-cv-1003 JSC, 2013 WL 2153855, at *1 (N.D. Cal. May 16, 2013); *Abuda v. Cal-Western Reconveyance Corp.*, No. 2:11-CV-01823-KJD-(GWF), 2012 WL 2564791, at *1 (D. Nev. June 29, 2012). For ease of reference, Defendant is referred to herein as "Wells."

2

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

they did not suggest global defects in the Settlement Agreement or the loan modification program; rather, each motion was based upon the individual circumstances of the borrowers involved. *See, e.g.,* Order Re Motions Heard October 16, 2012, ECF No. 361.

**Plaintiffs' Motions For Injunctive Relief**

As of November 2012, then, it appeared from the record that the bargained-for loan modification program was functioning as intended. However, on December 7, 2012, Class Counsel filed an application for a temporary restraining order ("TRO") on behalf of a group of thirty-one class members ("Plaintiffs"), claiming that Wells Fargo has failed to evaluate thousands of class members for loan modification in the manner required by the Settlement Agreement. *See* TRO Appl., ECF No. 365. Plaintiffs sought a TRO precluding Wells Fargo from foreclosing on or otherwise selling class members' properties pending disposition of Plaintiffs' companion motion for preliminary injunction ("PI"). *See id.* The motion for PI requested that Class Counsel be permitted to review every denial of loan modification before foreclosure of the subject property. *See id*; Mot. for PI, ECF No. 394.

On December 21, 2012, the Court denied Plaintiffs' application for a TRO and set a hearing on their motion for a PI. The Court was troubled by Plaintiffs' statistical evidence suggesting "that class members may have been denied the primary benefit for which they released their claims . . . that is, fair consideration for loan modification under the procedures set forth in the Settlement Agreement." Order Den. TRO Appl. at 4-5, ECF No. 390. The Court concluded that although the record did not justify issuance of a TRO restraining Wells Fargo from pursuing foreclosure proceedings on a class-wide basis, Plaintiffs might well "be able to show a basis for less drastic injunctive relief, such as the proposed requirement that class counsel be afforded an opportunity to review denials of applications for loan modification before the denials become final." *Id*. at 7.

Unfortunately, when it reviewed the parties' submissions in connection with the motion for PI, the Court could not reconcile the substantial disparities in the statistical evidence presented by each side. *See* Hr'g Tr. at 8-9, ECF No. 418. Stating that it was "not going to be persuaded that either side walks out of here with a victory this afternoon," the Court explained that it was "trying to figure out how to get enough information . . . [to] make an intelligent decision." *Id*. at 38. The

3

1    Court deferred consideration of the motion for PI, and decided on a three-step process to resolve the
2    conflict. *Id*. at 40; Order Deferring Disp. of PI Mot., ECF No. 416. First, Plaintiffs were to take the
3    deposition of Michael Dolan ("Dolan"), Wells Fargo's designated Compliance Officer for purposes
4    of the Settlement Agreement, with respect to his methodology in producing Wells Fargo's statistics.
5    *Id*. Second, the thirty-one Plaintiffs seeking injunctive relief were to submit supplemental
6    declarations describing the information they believe should be in their mortgage files. *Id*. Third,
7    Wells Fargo was to produce Plaintiffs' files to the Court for *in camera* review. *Id*.
8         The process envisioned by the Court ground to a halt following completion of the first step,
9    Dolan's deposition. After taking the deposition, Plaintiffs filed a written request for a case
10   management conference to discuss alleged discrepancies in Dolan's declaration and deposition
11   statements. *See* ECF No. 424. Wells Fargo filed a response to that request, *see* ECF No. 427, and
12   Plaintiffs filed a reply, *see* ECF No. 429. The Court held a case management conference on April 3,
13   2013. The parties continued to challenge each other's statistics. The Court informed the parties that
14   it could not resolve the pending motion for PI as the record stood, and obtained their agreement to a
15   limited referral to Magistrate Judge Grewal for disposition by R&R of the following issue:
16   "whether the figures provided by Defendant with respect to the number of loan modification
17   applications requested by class members, the number of such applications actually mailed to class
18   members, and the outcomes of those applications, are sufficiently reliable that this Court should
19   continue with the three-step process outlined at the hearing on the motion for preliminary
20   injunction." Referral Order at 2, ECF No. 432. On May 28, 2013, Judge Grewal heard oral
21   argument, and on July 2, 2013, he issued his R&R, which is discussed in part II, below. *See* ECF
22   Nos. 476, 507.
23        **Wells Fargo's Motion To Enforce The Settlement**
24        On December 7, 2012, the same date that Plaintiffs filed their application for a TRO, Wells
25   Fargo filed a motion to enforce the Settlement Agreement against Plaintiffs. *See* Mot. to Enforce,
26   ECF No. 364. Having been informed by Class Counsel that Plaintiffs intended to file a freestanding
27   class action complaint alleging breach of the Settlement Agreement, Wells Fargo preemptively
28   sought an order precluding Plaintiffs from filing the proposed new action and holding that the sole

4

remedy for any breach of the Settlement Agreement is a motion to enforce filed in the present action. *See id.*

Plaintiffs ultimately filed three new freestanding class actions relating to Wells Fargo's alleged breaches of the Settlement Agreement: *Murphy v. Wells Fargo Home Mortgage*, Case No. 3:12-cv-06228-SI; *D'Alessio v. Wells Fargo Home Mortgage*, Case No. 3:13-cv-0999-SI; and *McDermed v. Wells Fargo Home Mortgage*, Case No. 3:13-cv-01407-SI. At the hearing on Plaintiffs' motion for a PI, the Court addressed the question of whether it should relate *Murphy* to the present action (*D'Alessio* and *McDermed* had not yet been filed). *See* Hr'g Tr. 41-42, ECF No. 418. Although it acknowledged that ordinarily it would have related *Murphy* as a matter of course, the Court informed the parties that it could not do so because of scheduling considerations.[2] *See id.* *Murphy*, *D'Alessio*, and *McDermed* ultimately were assigned to Judge Susan Illston. On August 19, 2013, Judge Illston dismissed all three cases with prejudice, concluding that a motion before this Court is the exclusive mechanism by which class members may seek relief for Wells Fargo's alleged breach of the Settlement Agreement. *See* Dismissal Order, ECF No. 40 in Case No. 3:12-cv-06228-SI, ECF No. 52 in Case No. 3:13-cv-0999-SI, and ECF No. 29 in Case No. 3:13-cv-01407-SI. Judge Illston also concluded that the filing of the three new actions constituted improper claim splitting. *See id.*

In light of Judge Illston's ruling, Wells Fargo's motion to enforce the Settlement Agreement will be denied as moot.

**Plaintiffs' Motion To Enforce The Settlement**

On June 18, 2013, after Magistrate Judge Grewal had conducted a hearing with respect to the referred matter but before he issued his R&R, Plaintiffs filed a motion to shorten time for hearing on a motion to enforce the Settlement Agreement. *See* ECF No. 489. Plaintiffs asserted that Wells Fargo's practice of screening out certain class members who telephoned Wells Fargo to inquire

---

[2] In October 2011, the undersigned became the Director of the Federal Judicial Center and now resides in Washington, D.C. Despite transitioning to another full-time job, the undersigned retained a small number of complex cases in advanced stages, including this one, for reasons of judicial economy. However, taking on new cases or managing time-consuming new litigation in retained cases is unworkable given the duties arising from the undersigned's current position.

5

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

1  about loan modification – that is, declining to send those class members loan modification
2  applications – constitutes a breach of the Settlement Agreement. *Id*. Plaintiffs requested that the
3  Court preclude Wells Fargo from continuing to screen class members and order an appropriate
4  remedy for Wells Fargo's breach of the Settlement Agreement, including extending the June 30,
5  2013 deadline for applying for loan modification under the Settlement Agreement. *Id*. Wells Fargo
6  opposed the motion to shorten time and asked that it be afforded twenty-one days to provide a
7  substantive response to Plaintiffs' motion to enforce. *See* ECF No. 493. On June 20, 2013, the
8  Court denied Plaintiffs' motion to shorten time and deferred consideration of their motion to enforce
9  the settlement pending a R&R from Magistrate Judge Grewal. *See* Order Den. Mot. to Shorten
10 Time, ECF No. 497. The Court noted that, "Because Plaintiffs' motion was made prior to the June
11 30, 2013 deadline for seeking loan modification under the settlement, the Court retains authority to
12 extend that deadline and/or grant other relief requested by Plaintiffs even though the Court may not
13 issue a ruling until after the deadline." *Id*. at 1. The Court indicated that it would set a briefing
14 schedule on Plaintiffs' motion to enforce the settlement after Magistrate Judge Grewal issued his
15 R&R and after the Court had adopted or declined to adopt the R&R. *Id*. at 2.

**Magistrate Judge Grewal's Report And Recommendation**

17 On July 2, 2013, Magistrate Judge Grewal issued a R&R concluding *inter alia* that "Wells
18 Fargo's reports to Class Counsel pursuant to the Settlement Agreement, as well as its statistics
19 submitted to the Court in opposition to Plaintiffs' request for injunctive relief, are misleading and
20 unreliable." R&R at 17, ECF No. 507. He acknowledged that new reports submitted on behalf of
21 Wells Fargo by a new declarant, Pamela McKone ("McKone"), "suggest that in fact class members
22 are reaping the benefits of the 'Lexus' loan modification program for which they bargained." *Id*. at
23 18. He also noted that McKone's figures were supported by the declaration of an outside
24 consultant, Michael Wei ("Wei"). *Id*. Nonetheless, Magistrate Judge Grewal expressed reluctance
25 to rely upon McKone's reports for a number of reasons, including Plaintiffs' lack of opportunity to
26 respond to them. *Id*. On July 16, 2013, Wells Fargo filed a motion for *de novo* review of the R&R.
27 *See* ECF No. 516. Plaintiffs filed a response, *see* ECF No. 533, and Wells Fargo filed a reply with

6

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

leave of Court, *see* ECF Nos. 538, 549.[3]

## II. *DE NOVO* REVIEW OF REPORT AND RECOMMENDATION

Magistrate Judge Grewal issued the R&R pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). *See* Referral Order at 2, ECF No. 432. Under those provisions, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).

Wells Fargo objects to two aspects of the R&R. First, Wells Fargo contends that Magistrate Judge Grewal erred in concluding that Wells Fargo's reporting has been misleading and unreliable. Specifically, Wells Fargo contends that the magistrate judge erred in: going beyond the scope of the referral to construe the Settlement Agreement; concluding that Wells Fargo's failure to include fall-outs in its quarterly reports breached the Settlement Agreement; finding that Class Counsel was unaware of the fall-out category prior to July 2012; concluding that Wells Fargo's screening of class members breached the Settlement Agreement; and finding that Wells Fargo's failure to track all screened class members rendered its statistics unreliable. Second, Wells Fargo contends that more weight should have been given to its new data showing that class members in fact are reaping the benefits of the loan modification program for which they bargained. The Court reviews these aspects of the R&R *de novo*.

### A.   Wells Fargo's Reporting

As the R&R discusses in detail, the Settlement Agreement requires Wells Fargo to report certain information to Class Counsel. Specifically, Wells Fargo must provide Class Counsel with: "(1) the number of Settlement Class Members who have requested loan modifications; (2) the number of Settlement Class Members who received HAMP Modifications or MAP2R Modifications; (3) the number of Settlement Class Members denied loan modifications; and (4) the number of Settlement Class Members who received HAFA/Short Sale/Deed-in-Lieu of Foreclosure

---

[3] The Court has determined that Wells Fargo's motion for *de novo* review is appropriate for disposition without oral argument pursuant to Civil Local Rule 7-1(b).

7

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

payments." Settlement Agreement § VI.H. Wells Fargo has provided this information to Class Counsel in what the parties refer to as "Quarterly Summary Reports." *See* R&R at 3, ECF No. 507. With respect to category (3), the "Settlement Class Members denied loan modifications," Wells Fargo additionally "shall provide Lead counsel information about who did not qualify and the reasons for the denial." Settlement Agreement § VIE.8.d. Wells Fargo has provided this information to Class Counsel in what the parties refer to as "Quarterly Denial Reports." *See* R&R at 2, ECF No. 507.

### (1) Fall-Outs

In their briefing to Magistrate Judge Grewal, Class Counsel explained that for more than a year after final approval of the Settlement Agreement, they understood the Quarterly Summary Reports and Quarterly Denial Reports to include all class members who requested loan modification. *See* Pls.' Br. at 2-3, ECF No. 464. Class Counsel read Section VI.H, governing the Quarterly Summary Reports, to require Wells Fargo to report on the total number of class members who requested loan modification, and then to break that number down into the total number of class members granted modification and the total number of class members denied modification. With respect to the latter figure, Class Counsel read Section VI.E.8.d to require Wells Fargo to provide the name of each class member and the reason for denial.

At the hearing before the magistrate judge, Class Counsel reiterated their understanding that the number of class members who were granted loan modification and the number of class members who were denied loan modification generally should add up to the total number of class members who requested loan modification. *See* Hr'g Tr. at 4-7, ECF No. 482. Magistrate Judge Grewal questioned Class Counsel closely about this issue. *Id.* Class Counsel explained that they became suspicious that Wells Fargo was not reporting on all class members who sought loan modification after being contacted by many class members who were not granted loan modification but who did not appear on Wells Fargo's Quarterly Denial Reports. *See id.*; Pls.' Br. at 2-3, ECF No. 464. After Class Counsel made inquiries to Wells Fargo's counsel, the two sides agreed to meet face-to-face in July 2012. *Id.* Class Counsel told the magistrate judge that the July 2012 meeting was the first time they learned that Wells Fargo was not including "fall-outs" in its quarterly reporting, and that Wells

8

Fargo was using the label "fall-out" to encompass all class members who sought modification but were not granted modification because of a failure to submit documents.[4] *Id*. Wells Fargo's explanation for not including fall-outs in its quarterly reporting was that it did not consider class members in the fall-out category to have been either granted or denied modification. *Id*.

Wells Fargo' brief, which was submitted after Plaintiffs' brief, did not dispute Class Counsel's characterization of events. *See* Def.'s Br., ECF No. 471. Nor did Wells Fargo's counsel challenge Class Counsel's account during oral argument. *See* Hr'g Tr., ECF No. 482. Instead, Wells Fargo argued that under the Settlement Agreement a loan modification request is not considered "denied" unless the class member has submitted all requested documents. *See* Def.'s Br., ECF No. 471; Hr'g Tr. at 37, ECF No. 482. Applying this construction, Wells Fargo maintained that it properly excluded fall-outs from its quarterly reporting. *See* Def.'s Br., ECF No. 471; Hr'g Tr. at 37, ECF No. 482. Wells Fargo simply ignored the representations that Class Counsel did not know that Wells Fargo was excluding a significant percentage of loan modification applicants from its reporting and that as a result they were misled by Wells Fargo's quarterly reports prior to July 2012.

Magistrate Judge Grewal found Wells Fargo's position to be untenable, concluding that:

> Even more troubling is Wells Fargo's apparent disregard of the purpose of the reporting requirements. As noted above, the cash portion of the settlement amounted to less than $200 per eligible class member. The Settlement Agreement's real benefit to class members was supposed to be a sort of "Lexus" loan modification program that was more favorable to borrowers than programs available to the general public. The reporting requirements, while inartfully drafted, clearly were intended to provide a degree of transparency sufficient to satisfy Class Counsel and the Court that class members were getting the consideration for which they bargained. Rather than complying with the letter and spirit of the reporting requirements, Wells Fargo unilaterally created a category of borrowers that were not granted loan modification but that were not considered to have been denied loan modification either. Wells Fargo did not inform Class Counsel of this "fall-out" category for more than a year after final approval of the settlement. The existence of the unreported "fall-outs" rendered the reports that were provided to Class Counsel meaningless, because Class Counsel was not aware that significant numbers of class members were not accounted for by those reports.

---

[4] According to Wells Fargo's Compliance Officer, Dolan, the fall-out category also includes class members who were approved for modification but defaulted on the HAMP trial plan period, declined offered modification, or canceled the loan modification process at any time. *See* Dolan Decl. ¶ 8, ECF No. 428.

9

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

R&R at 17, ECF No. 507.

Wells Fargo asserts that Magistrate Judge Grewal exceeded the scope of the referral in construing the Settlement Agreement and finding that Wells Fargo had breached it, and that in any event Judge Grewal's finding of breach is erroneous because the Settlement Agreement did not require it to disclose information regarding class members who were not granted loan modification as a result of failure to submit documents. Wells Fargo is correct to the extent that the purpose of the referral was to ask the magistrate judge to evaluate Wells Fargo's statistics rather than to determine whether Wells Fargo had breached the Settlement Agreement. *See* Hr'g Tr. at 11, ECF No. 447. However, Plaintiffs argued that Wells Fargo's quarterly reports were unreliable prior to July 2012 *because* they omitted a significant group of class members who sought but were not granted loan modification. Thus, to evaluate Plaintiffs' arguments, the magistrate judge necessarily had to consider the parameters of Wells Fargo's reporting obligations under the Settlement Agreement.

Having reviewed the Settlement Agreement, and having considered both parties' arguments with respect to proper construction of the provisions governing Wells Fargo's reporting requirements, this Court concludes that Wells Fargo violated both the letter and the spirit of these requirements by excluding from its reports information about class members who were not granted loan modification because of their failure to submit documents. "The construction and enforcement of Settlement Agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989); *see also Navarro v. Mukasey*, 518 F.3d 729, 733 (9th Cir. 2008) (applying California contract law to interpret a class action Settlement Agreement negotiated in California). As the Court observed when it approved the Settlement Agreement, the purpose of the reporting requirements is "to ensure that the loan modification program is functioning as intended." Final Approval Order at 4, ECF No. 207. Or, as Magistrate Judge Grewal put it, "to provide a degree of transparency sufficient to satisfy Class Counsel and the Court that class members were getting the consideration for which they bargained." R&R at 17, ECF No. 507. Given this purpose, it would have made little sense for Plaintiffs to agree to – and the Court to approve – a provision that required Wells Fargo to report the total number of

10

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

1   class members who requested loan modification and at the same time required it to report only some
2   of the outcomes. Such an agreement would have been particularly illogical given how *many* class
3   members Wells Fargo categorized as fall-outs. According to Wells Fargo's latest figures,
4   approximately 27,000 requests for modification were classified as fall-outs between December 16,
5   2010 and December 31, 2012, as compared to approximately 24,000 that were classified as denials
6   for the same period. *See* McKone Decl. ¶ 42, ECF No. 471-2.

Wells Fargo nonetheless urges the Court to adopt its proposed construction, arguing that Class Counsel simply failed to bargain for reporting on fall-outs, and that Wells Fargo cannot be held accountable for that purported failure. *See* Def.'s Br. at 10, ECF No. 516. It is difficult to see why Class Counsel would have thought to bargain expressly for reporting on fall-outs, since the Settlement Agreement makes no mention of that term and is structured in such a way to suggest that approval or denial are the only possible outcomes for a request for loan modification. *See* Settlement Agreement § VI.H.

Wells Fargo relies on language in Section VI.E.8.d, which obligates it to:

> Provide Settlement Class Members who do not qualify for HAMP or MAP2R Modifications, within thirty (30) calendar days of the Defendants' receipt of all required documentation from the Settlement Class member, with a written explanation. Defendants shall provide Lead Counsel information about who did not qualify and the reasons for the denial.

The first sentence governs Wells Fargo's notification obligations to class members, requiring that if a class member submits all required documents, Wells Fargo must provide any denial of loan modification within thirty days of receipt of such documents. The second sentence governs Well's Fargo's reporting obligations to Class Counsel, requiring that Wells Fargo must tell Class Counsel which class members did not qualify for loan modification and the reasons for those denials. Wells Fargo conflates its notification obligation to class members with its reporting requirement to Class Counsel, and concludes that the "denials" that must be reported to Class Counsel are limited to those that are communicated to class members who have submitted all requested documentation. The Court concludes that this reading is not supported by the specific provision upon which Wells Fargo relies or by the Settlement Agreement as a whole.

Finally, Wells Fargo argues that the history of the parties' negotiations supports its

11

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

construction of the Settlement Agreement, and it submits a series of drafts that were exchanged during those negotiations. Knight Decl. and Exs., ECF No. 538-2. Wells Fargo relies heavily on an early draft proposed by Class Counsel that would have required denial letters to class members to specify whether modification was denied on any of the following grounds: "a) a negative NPV, and if so, the figures used to make that calculation; b) a DTI that was already below 31%, and if so, the figures used to make that calculation; c) the Settlement Class member rejected the modification proposal; d) *the Settlement Class Member failed to provide necessary documents or failed to respond to communications from Defendants*; or e) any other reason for the denial." *Id*. (emphasis added). That draft also would have required Wells Fargo to copy Class Counsel on the denial letters sent to class members. *Id*. Ultimately, the provision was pared down to require only that Wells Fargo provide "a written explanation" to the class member. Settlement Agreement § VI.E.8.d. The requirement that Wells Fargo copy Class Counsel on denials also evolved into a requirement that Wells Fargo provide Class Counsel with "information" about who was denied and why. *Id*.

The Court fails to perceive how this evolution of the Settlement Agreement supports Wells Fargo's position. The fact that language requiring a laundry list of particular reasons for denial was streamlined into language requiring only that Wells Fargo provide "a written explanation" for denial does not speak to the scope of the term "denial." The Court notes that failure to return documents is listed among the grounds for "denial" in Plaintiffs' early settlement draft, suggesting that Class Counsel always has believed that failure to return documents would result in "denial" of loan modification.

As is discussed in the R&R, the precise details of Wells Fargo's actual reporting practices remained unclear even after Wells Fargo's omission of fall-outs was disclosed. The R&R sets forth a detailed account of the many instances in which Wells Fargo's Compliance Officer, Dolan, made contradictory statements regarding the meaning of "Number of modifications requested" as that term is used on Wells Fargo's quarterly reports, the total number of fall-outs, and other data. *See* R&R at 10-15, ECF No. 507. Wells Fargo does not challenge that aspect of the R&R.

To summarize, the record before Magistrate Judge Grewal contained undisputed evidence that Wells Fargo unilaterally created the fall-out category and failed to inform Class Counsel prior

12

to July 2012 that fall-outs were omitted from the quarterly reporting. After the omission of the fall-outs was disclosed in July 2012, the confusion created by Dolan made it virtually impossible for Class Counsel to make heads or tails of Wells Fargo's reports. This record amply supports a determination that Wells Fargo's reporting and statistics were misleading as a result of the issues arising from the fall-out category.

Wells Fargo now presents *new* evidence that in fact Class Counsel knew about the fall-out category as early as July 2011.[5] In particular, Wells Fargo submits seventeen emails to Class Counsel, sent between July 2011 and March 2012, in which Wells Fargo informed Class Counsel that certain class members had failed to return all documents and thus were being categorized as "fall-outs." *See* Knight Decl. and Exs. 1-17, ECF No. 515-2. The Court is at a loss to understand why Wells Fargo did not present this evidence to the magistrate judge or otherwise dispute Class Counsel's repeated representations throughout the referral proceedings regarding Wells Fargo's unilateral and secret creation of the fall-out category. For their part, Class Counsel acknowledge that Wells Fargo used the term "fall-out" in a number of email exchanges prior to July 2012, but they assert that Wells Fargo never disclosed that it had categorized *thousands* of class members as fall-outs and *omitted* them from its quarterly reporting. Class Counsel submit evidence of a lengthy email exchange in June and July 2012 in which Class Counsel clearly are trying to understand the discrepancy between the total modifications requested on the one hand and the total number of approvals and denials on the other hand. *See* Lum Decl. and Ex. B, ECF No. 533-2. During this email exchange, Wells Fargo never informed Class Counsel that the discrepancy was the result of Wells Fargo's omission of fall-outs from its reporting; to the contrary, Wells Fargo claimed that the reason for the discrepancy was that many applications for loan modification had not yet "been decisioned," and later claimed that the apparent discrepancy was a result of Class Counsel's failure to understand the reports. *Id*. The Court thus concludes that, at most, Wells Fargo's new evidence suggests that Class Counsel perhaps should have suspected earlier that Wells Fargo was omitting fall-outs. The new evidence does not undermine Magistrate Judge Grewal's determination.

---

[5] On July 26, 2013, the Court granted Wells Fargo's motion to augment the record to present this evidence. *See* ECF No. 529.

13

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

2. **Screening**

The magistrate judge also was troubled by evidence that when class members telephone Wells Fargo to inquire about loan modification, Wells Fargo screens them for eligibility and declines to send loan modification applications to class members who fail the screening. *See* R&R at 13. Wells Fargo's new declarant, McKone, explains what happens at Wells Fargo's end when a class member calls to inquire about loan modification. *See* McKone Decl. ¶¶ 14-35. The R&R accurately summarizes McKone's explanation, which need not be repeated in full here. *See* R&R at 12-13. In brief, class members may be subjected to two types of screening: a computerized screening in which the class member's loan number is entered into a computer, which then determines whether the loan is eligible for modification; or an oral screening in which a Wells Fargo employee questions the class member about residency, income, willingness to establish an escrow account, and the like. *See id*. Class members who fail either screening are not sent loan modification applications. *See id*.

Class Counsel assert that this screening is not authorized by the Settlement Agreement and in fact is a breach of the agreement. Wells Fargo disputes this assertion. Magistrate Judge Grewal opines that the screening "may well violate the Settlement Agreement." R&R at 13, ECF No. 507. The Court leaves this question for another day. As is noted above, Plaintiffs have filed a motion to enforce the Settlement Agreement based upon this alleged breach. The Court deferred consideration of that motion and indicated that it would set a briefing schedule after review of the R&R. Given this procedural posture, the it would be inappropriate for the Court to resolve the issue in the context of reviewing the R&R, particularly since the magistrate judge did not (and did not need to) make a dispositive finding as to this point.

As relevant to the issue that was referred to the magistrate judge – the reliability of Wells Fargo's statistics – Wells Fargo does keep track of some screened class members by opening "working queues" or creating "ER Contacts." *See* McKone Decl. ¶¶ 33-34, ECF No. 471-2. Wells Fargo includes loans with working queues and ER Contacts in its quarterly reports under the heading "Number of modifications requested." *See id.* However, Wells Fargo also has conceded that loans that are screened out by the computer do not receive working queues or ER Contacts, are

14

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

not tracked, and are not included in the "Number of modifications requested" in Wells Fargo's quarterly reports. Def.'s Br. at 2 n.2, ECF No. 471. Magistrate Judge Grewal concluded that as a result, "Wells Fargo's screening practices render unreliable both its reporting and the accuracy of the picture it presents." R&R at 13, ECF No. 507.

Wells Fargo asserts that Plaintiffs failed to submit any evidence as to how many class members were screened but not tracked, and argues that absent such evidence the magistrate judge erred in assuming that the number is so large as to render its quarterly reports unreliable. However, information as to how many class members have been screened but not tracked is uniquely within *Wells Fargo's* control. Until recently, neither the Court nor Class Counsel were aware of Wells Fargo's screening practices. Confronted with evidence that some unknown number of class members sought loan modification but were not included in Wells Fargo's reporting, the magistrate judge had no choice but to conclude that Wells Fargo's quarterly reporting was unreliable.

Wells Fargo again presents *new* evidence, this time in the form of a declaration from Rudy Leonard ("Leonard").[6] *See* Leonard Decl., ECF No. 515-3. Leonard states that the computerized screening – the only screening that could have resulted in failure to track a loan modification request – uses "investor codes" to determine whether a loan is eligible for any loan modification product offered by Wells Fargo. *Id*. ¶ 5. Having reviewed the investor codes associated with loans belonging to Class B and Class C members, Leonard has determined that "[o]ther than the investor code associated with 32 individual loans, none of the investor codes associated with Class B or Class C Member loans would have rendered those loans ineligible for either HAMP or MAP2R modifications." *Id*. ¶ 6. All thirty-two of those loans had been transferred to a third-party servicer, and had been modified by Wells Fargo before transfer. *Id*. Leonard does concede that if a loan has been previously modified, the borrower may have to meet additional conditions in order to be eligible for another modification. *Id*. ¶ 7. However, Wells Fargo points out that a prior modification would have eliminated the "Pick-a-Payment" feature of the loan, converting the loan to a settlement Class A loan and rendering it ineligible for subsequent modification under the

---

[6] The Court's order granting Wells Fargo leave to augment the record extended to Leonard's declaration. *See* ECF No. 529.

15

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

1 Settlement Agreement. Given Leonard's declaration, Wells Fargo contends that the number of
2 screened but untracked class members must be statistically insignificant.

3 In light of the information in Leonard's declaration, it appears likely that Wells Fargo does
4 track substantially all loans as to which modification is requested. However, this conclusion does
5 not affect the correctness of Magistrate Judge Grewal's determination that Wells Fargo's reporting
6 and statistics were unreliable and misleading, because that determination is supported by evidence
7 of Wells Fargo's failure to report fall-outs.

8 Based upon its *de novo* review of the record, the Court adopts the R&R's conclusion that
9 "Wells Fargo's reports to Class Counsel pursuant to the Settlement Agreement, as well as its
10 statistics submitted to the Court in opposition to Plaintiffs' request for injunctive relief, are
11 misleading and unreliable." R&R at 17, ECF No. 507.

12 **B.   Determination That Wells Fargo's New Data Is Not Entitled To Great Weight**

13 Plaintiffs appear to believe that they will prevail on their motion for preliminary injunction if
14 the Court adopts the R&R with respect to Wells Fargo's past reporting and statistics. However, that
15 is not the case. The Court made the referral because it wanted to ascertain whether it would make
16 sense to proceed with the three-step process articulated at the PI hearing. *See* Order Deferring Disp.
17 of PI Mot., ECF No. 416. Clearly, it would not. However, the fact that the quality of Wells Fargo's
18 *reporting* has been demonstrably poor does not establish that Wells Fargo has breached *substantive*
19 provisions of the agreement governing agreed-upon loan modification procedures.

20 Perhaps recognizing that Dolan was, as Magistrate Judge Grewal observed, "ill-suited to the
21 task" of ensuring and reporting on its compliance with the Settlement Agreement, Wells Fargo has
22 presented entirely new reports tracking to completion each loan modification request that was
23 pending as of December 16, 2010 or was made between December 16, 2010 and December 31,
24 2012. *See* McKone Decl., ECF No. 471-2. According to those reports, 44% of requests pending as
25 of December 16, 2010 and 19% of requests made between December 16, 2010 and December 31,
26 2012 resulted in completed modifications. *Id*. ¶¶ 42-51. Additionally, Wells Fargo presented expert
27 opinion that Wells Fargo's approval rate for Pick-a-Payment loans is higher than industry standard.
28 Wei Report, ECF No. 471-1. After reviewing this evidence, the magistrate judge concluded that it

16

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

1   "suggest[s] that in fact class members are reaping the benefits of the 'Lexus' loan modification
2   program for which they bargained." R&R at 18, ECF No. 507. However, Magistrate Judge Grewal
3   expressed reluctance to rely upon Wells Fargo's new evidence because Plaintiffs had not had an
4   opportunity to respond to it, and because in his view even if McKone's reports otherwise were
5   "above reproach," they were undermined by Wells Fargo's failure to track all screened class
6   members.

7   The Court has conducted a *de novo* review of the entire record, including McKone's declaration and reports and Wei's report. The Court agrees with Magistrate Judge Grewal that Wells Fargo's new evidence, which is far more comprehensive and understandable than that provided previously, suggests that in fact class members are getting the benefit of the agreed-upon loan modification program. Wells Fargo also has addressed the magistrate judge's concern that screened class members are not captured by McKone's new reports, and based upon Leonard's declaration the number of such class members appears to be insignificant. Like Magistrate Judge Grewal, the Court is reluctant to rely fully upon the new evidence because Plaintiffs have not had a meaningful opportunity to challenge it. However, the appropriate next step is to give Plaintiffs such an opportunity. While it is loathe to order further discovery and briefing given the case's procedural history, and while it is fully aware that at least some class members may be at risk of losing their homes with each passing month, the Court will not impose class-wide injunctive relief that would have a significant impact on regulated banking activity absent a stronger showing that Wells Fargo in fact is not providing class members with the type of loan modification program bargained for under the Settlement Agreement. Accordingly, the Court will authorize Plaintiffs to depose Leonard, McKone and Wei and to challenge their statements in further proceedings, if Plaintiffs find such challenge to be appropriate.

Based upon its *de novo* review of the record, the Court adopts the R&R's conclusion that "[t]he new reports prepared by McKone, as supported by her declaration and by Wei's expert report, suggest that in fact class members are reaping the benefits of the "Lexus" loan modification program for which they bargained." R&R at 18, ECF No. 507. The Court likewise adopts the R&R's conclusion that the Court should not rely fully upon Wells Fargo's new evidence until

Plaintiffs have had a chance to challenge it.

**C       Monetary Sanctions**

The Court has the inherent authority to impose sanctions for "bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id*.

As is discussed at length above, Wells Fargo unilaterally created the fall-out category and thereby omitted the outcomes of *thousands* of loan modification requests from its quarterly reporting. The fall-out category was neither authorized nor contemplated by the Settlement Agreement. Wells Fargo did not disclose its omission of fall-outs from its quarterly reporting for more than a year after the Settlement Agreement became final. The omission of the fall-outs rendered Wells Fargo's quarterly reports unreliable and misleading. Wells Fargo's response to the confusion that has ensued as a result of its conduct has been to suggest that Class Counsel were incompetent for failing to negotiate more comprehensive reporting requirements. *See* Def.'s Br. at 10, ECF No. 516. Following Wells Fargo's ultimate disclosure of the omission of fall-outs from its quarterly reporting, its designated Compliance Officer, Dolan, "muddled and multiplied this litigation" with his numerous misrepresentations. *See* R&R at 17, ECF No. 507.

Wells Fargo's failure to comply with its reporting obligations and to provide consistent, comprehensible data was at least reckless and on this record appears to have been willful. As a result of Wells Fargo's conduct, Class Counsel has incurred significant expense in bringing the application for TRO and motion for PI, and in trying to make sense of Wells Fargo's shifting and confusing numbers. Resolving the multitude of issues created by this conduct also has been extremely burdensome for the Court and has impeded order administration of a case that at least in theory had been settled. What should have been a straightforward, transparent process – determining how many class members applied for loan modification, how many were approved, and how many were denied – has turned into a convoluted nightmare. Accordingly, the Court will require Wells Fargo to reimburse Class Counsel for their reasonable fees and costs incurred in bringing the application for TRO and motion for PI, and in briefing the matters before the magistrate

1  judge and before this Court on *de novo* review of the R&R. Class Counsel shall submit
2  documentation of these fees and costs on or before November 1, 2013. Wells Fargo may submit
3  objections to the amount of the fees and costs requested within fifteen days after such
4  documentation is filed, after which the Court will make a determination of the amounts to be
5  awarded. This monetary sanction is based upon an express finding that Wells Fargo's actions as
6  described above rose to the level of "bad faith or conduct tantamount to bad faith." *See Fink*, 239
7  F.3d at 994.

### III. CASE MANAGEMENT ISSUES

As noted above, the undersigned has full-time responsibilities outside of the Northern District of California. Given the fact that further discovery and briefing will be required with respect to Plaintiffs' request for injunctive relief, and the likelihood that future proceedings in this case are likely to be contentious and protracted, the undersigned has concluded that it is neither practicable nor fair to the parties for him to continue presiding over this case. Accordingly, the Clerk will be directed to reassign the case. However, the undersigned will retain jurisdiction to decide the amount of fees and costs to be awarded as sanctions pursuant to this order.

Because the case will be transferred to another judge, and because it now is clear that Plaintiffs' request for injunctive relief will turn on evaluation of Wells Fargo's new evidence following further discovery, the Court will deny Plaintiffs' pending request for PI without prejudice to the filing of a renewed motion for PI, if appropriate, once all necessary discovery is completed.

With respect to Plaintiffs' pending motion to enforce the Settlement Agreement based upon their contention that Wells Fargo's screening practices breach the agreement, the Court leaves it for the next judge to decide whether that motion should be decided on its own or in conjunction with any renewed motion for PI.

In addition to the motions and issues addressed herein, there are a number of motions pending in this case that the Court has refrained from addressing in the expectation that they would be resolved by the Court's ultimate ruling on Plaintiffs' motion for PI. In order to clarify the record for the next judge, the Court has disposed of or expressly deferred those additional motions in a separate order.

19

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.

**IV.**

For the foregoing reasons, it is HEREBY ORDERED that:

(1) the R&R issued by Magistrate Judge Grewal is ADOPTED as set forth herein;

(2) Sanctions shall be imposed pursuant to the Court's inherent powers as set forth herein;

(3) Plaintiffs' motion for preliminary injunction is DENIED WITHOUT PREJUDICE;

(4) Plaintiffs may take LIMITED ADDITIONAL DISCOVERY and, if appropriate, file a renewed motion for preliminary injunction as set forth herein;

(5) Defendant's motion to enforce the Settlement Agreement is DENIED AS MOOT;

(6) Plaintiff's motion to enforce the Settlement Agreement is DEFERRED; and

(7) the Clerk shall reassign the case.

DATED: September 25, 2013

_____
JEREMY FOGEL
United States District Judge

20

Case No. 5:09-cv-02015-JF
ORDER ADDRESSING DEFENDANT'S MOTION FOR *DE NOVO* REVIEW OF R&R ETC.