United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: WACHOVIA CORP. "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION<br><br>This document relates to: *ALL CASES*<br>_____/ | No. 3:09-MD-02015 RS<br><br>**ORDER DENYING MOTION FOR RELIEF AND TO ENFORCE SETTLEMENT, ORDERING DEFENDANT TO PROVIDE FURTHER DISCOVERY, AND SETTING FURTHER CASE MANAGEMENT CONFERENCE** |

## I. INTRODUCTION

On May 8, 2014, the court issued an order granting in part and denying in part plaintiffs' motion to enforce certain terms of the settlement agreement reached between Wells Fargo and a class of borrowers who held Wachovia "Pick-a-Payment" mortgages. As recounted in the prior order, the settlement covered the class members' loan origination claims against Wells Fargo and included two primary provisions: a monetary settlement and a detailed scheme for loan modification relief. According to plaintiffs, Wells Fargo had breached its settlement obligations concerning loan modification by using improper criteria to determine whether individuals are eligible for loan modification, by improperly pre-screening settlement class members otherwise entitled to seek loan modification, and by denying loan modification relief to a group of settlement class members who received erroneous notifications that they were members of

multiple settlement classes. The prior order concluded that certain pre-screening practices employed by Wells Fargo violated the terms of the settlement and instructed the parties to submit a joint statement regarding proposed next steps. They did so on May 22, 2014. (ECF No. 635.)

That same date, plaintiffs filed a motion for relief from the court's prior order and, further, to enforce the settlement agreement. Further briefing was ordered and the motion was determined to be appropriate for disposition without oral argument according to Civil Local Rule 7-1(b). For the reasons explained below, plaintiffs' motion is denied without prejudice, and defendant is ordered to provide further discovery.

## II.  BACKGROUND

The background of this case was recounted in the prior order. In brief, the parties entered a settlement agreement in 2010 pursuant to which Wells Fargo agreed to pay $50 million to the settlement class. Wells Fargo also agreed to make two loan modification programs available to qualifying settlement class members who still had their "Pick-a-Payment" ("PAP") loans: the federal government's Home Affordable Mortgage Program ("HAMP") and a proprietary Wells Fargo program called MAP2R. The programs were designed to lower a qualifying borrower's monthly mortgage payments such that those payments did not exceed 31% of the borrower's gross monthly income. The settlement class was divided into three groups: current and former borrowers who obtained a PAP mortgage loan between August 1, 2003 and December 31, 2008, but who no longer had such a loan at the time of the settlement (Class A); borrowers who still had such a loan at the time of the settlement and who were not then in default (Class B); and borrowers who still had such a loan at the time of the settlement and who were already in default (Class C). Members of all three classes were entitled to payment from the settlement fund. Only certain class members, however, were eligible for a loan modification review: those who were already in payment default (Class C members), and those members of Class B who were current but in "imminent default" or who later defaulted.

Plaintiffs previously moved to enforce the settlement, alleging Wells Fargo had violated the settlement agreement by (1) relying on an impermissibly narrow financial hardship standard;

(2) failing to account for taxes and other income deductions in calculating imminent default; (3) improperly pre-screening settlement class members; and (4) failing to evaluate loan modification applications from certain class members who received two different settlement class notices. According to plaintiffs, each of these issues was ripe for decision as a matter of law, without the need for any discovery.

As detailed in the prior order, the pre-screening process employed by Wells Fargo violates the terms of the settlement agreement. Although the agreement does not preclude Wells Fargo from pre-screening class members for basic eligibility before providing application materials for loan modification, the specific process described by plaintiffs and admitted to by Wells Fargo violates the agreement. It does so by excluding borrowers from consideration for loan modification based on certain prerequisites that were unique to the HAMP loan modification procedure but not applicable to the broader relief afforded by the settlement's MAP2R loan modification process. Plaintiffs' remaining arguments concerning the imminent default analysis and treatment of dual-notice class members were rejected.

### III. LEGAL STANDARD

Rule 60(b) provides for relief from a final judgment if it is warranted by: (1) mistake, inadvertence, surprise, or excusable neglect of counsel; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by the opposing party; (4) the voiding of a judgment; (5) satisfaction, release, or discharge of the judgment; or (6) any other reason justifying it. *See* Fed. R. Civ. Proc. 60(b). A motion for relief from judgment brought pursuant to FRCP 60(b) is an extraordinary form of relief which may only be granted upon a showing of "exceptional circumstances." *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1044 (9th Cir. 1992). This remedy is to be used sparingly "to prevent manifest injustice." *Lehman v. United States*, 154 F.3d 1010, 1017 (9th Cir. 1998) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993).

A motion to enforce a settlement agreement is, at its core, an exercise in contract interpretation governed by applicable state law. In construing a contract, "the trial court 'give[s]

effect to the mutual intention of the parties' as it existed at the time the contract was executed." *Cachil Dehe Band of Wintun Indians v. California*, 618 F.3d 1066, 107 (9th Cir. 2010) (quoting Cal. Civ. Code § 1636)). "Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms." *Id.* "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." Cal. Civ. Code § 1639.

## IV. DISCUSSION

A. <u>Motion for Relief From the Prior Order</u>

Plaintiffs first argue the court erred by referring to paragraph 5.4 of the HAMP handbook in order to determine whether a borrower's taxes and other withholding should be taken into account when determining whether it is reasonably foreseeable that he or she is in imminent default. As stated in the prior order:

> Neither the settlement agreement nor the HAMP guidance, however, makes any reference to taxes and other withholding, even though HAMP extensively details the monthly expenses to be accounted for by servicers, including mortgage-related expenses for the property, alimony and child support, car lease payments, monthly credit payments, net negative rental income, second home mortgage expenses, payments on installment debts, and HELOC payments, as well as "a reasonable allowance for living expenses such as food, utilities, etc." (MHA Handbook, version 2.0, ¶¶ 5.4, 4.4.) Though the HAMP list does not purport to be exhaustive, it does suggest that if the parties intended that a borrower's income taxes and other withholding should be accounted for in Wells Fargo's loan modification program, they would have specified as much in the agreement. . . . Absent any references to taxes, plaintiffs ask too much of the court to read taxes into the bare mention of "liabilities" in ¶ 1.33 of the agreement.

While plaintiffs focus solely on paragraph 5.4, the above passage makes reference to two different HAMP provisions, paragraphs 4.4 and 5.4, each detailing various liabilities and obligations a service is required to document and take into account in the loan modification process. Despite the specificity with which HAMP articulates the various expenses and liabilities to be considered in the HAMP process, neither these two provisions, *nor any other provision of the HAMP guidance or the settlement agreement*, references a borrower's taxes or other payroll withholding.

1   Paragraph 4.4, for example, details several specific factors that a service must evaluate to
2   make an imminent default determination: "the borrower's financial condition, liquid assets,
3   liabilities, combined monthly income from wages and all other identified sources of income,
4   monthly obligations (including personal debts, revolving accounts, and installment loans), and a
5   reasonable allowance for living expenses such as food, utilities, etc. The hardship and financial
6   condition of the borrower must be verified through documentation." [1] Section 5 of the handbook
7   then articulates the documentation that a borrower must provide to the service in order to "verify
8   a borrower's eligibility for HAMP." Paragraph 5.4 details the verification process for the
9   borrowers "monthly gross expenses." These expenses include the monthly obligations referred
10  to in paragraph 4.4 (personal debts, revolving accounts, and installment loans), as well as a
11  variety of other obligations including alimony and child support, car lease payments, negative
12  net rental income from investment properties, and home financing obligations.
13  Plaintiffs have not directed the court to a single reference in the 63-page settlement
14  agreement, the 12-page Class B Settlement Notice, or the 84-page HAMP handbook to taxes as a
15  form of liability to be taken into account in the imminent default analysis. Neither the prior
16  order nor this order should be read to imply that the items enumerated in paragraph 5.4 are the
17  *only* items to be considered under the rubric of liabilities. Rather, the absence of any reference in
18  either the HAMP Guidance or the Settlement Agreement to taxes as a liability suggests that this
19  is not part of the bargain struck by the parties. This issue was briefed extensively and was the
20  subject of a significant portion of the hearing on plaintiffs' motion to enforce the settlement.
21  Plaintiffs raise no new arguments now that would justify relief from the prior order.

22  B.  Motion to Enforce

23  Plaintiffs next renew their motion to enforce the settlement, arguing that Wells Fargo's
24  imminent default test does not comply with the terms of the settlement agreement, as interpreted
25  in the prior order. Plaintiffs continue to assert this issue can be decided without additional

---

[1] Plaintiffs incorrectly suggest that ¶ 5.4 covers only one of these three items; in fact, that paragraph addresses a variety of personal debts (residential, automobile, and familial), and specifically addresses revolving accounts and installment loans.

discovery but, in the alternative, suggest that discovery should be allowed before their position is rejected.

Throughout these proceedings, Wells Fargo has offered various articulations of its imminent default analysis. Wells Fargo's standard remained unclear in advance of the most recent hearing, though its response did suggest its imminent default analysis entailed two separate steps: a debt-to-income calculation and some other undefined process. At the hearing, Wells Fargo submitted a series of slides that purported to explain its three-step analysis: (1) calculate the borrower's debt-to-income ratio; (2) determine whether the borrower demonstrated a "long term hardship," defined in the settlement notice as difficulty making his or her mortgage payments for greater than twelve months; and (3) determine whether the borrower had experienced financial hardship as defined in the class settlement notice.

Wells Fargo now pulls six separate steps out of the settlement agreement and class notice. (Opp. at 6–7.) The first through third steps are, presumably, the same as those enumerated above. To those steps, Wells Fargo would now add the following: (4) determine whether the borrower has less than $25,000 in cash reserves, excluding retirement accounts; (5) confirm the property is occupied by the borrower as a principal residence; and (6) confirm that the borrower's loan-to-value ratio exceeds 80% or that the loan has a positive "net present value." According to Wells Fargo, the borrower's liabilities are accounted for in each of steps one, two, and three.

This latest articulation is not necessarily inconsistent with Wells Fargo's prior position, nor does it necessarily contradict the terms of the settlement agreement as construed in the court's prior order. The fact that defendant continues to equivocate on its process for complying with the terms of a settlement agreement entered by the parties more than three and a half years ago is, however, troubling. On that basis, plaintiffs' motion for limited discovery is hereby granted to the following extent: defendant shall provide a copy of its written policies governing the evaluation of imminent default and financial hardship—whether under a two-, three- or six-

1  step analysis—and shall make available for deposition, consistent with Rule 30(b)(6) of the
2  Federal Rules of Civil Procedure, a witness knowledgeable about the methodology.
3        Although additional discovery is warranted, the evidence submitted by plaintiffs in
4  support of this motion is not sufficient at this time to establish that Wells Fargo has failed to
5  comply with the terms of the agreement.  As Wells Fargo correctly points out, the declarations
6  submitted by plaintiffs rely on multiple levels of hearsay to suggest that specific borrowers who
7  were denied loan modifications in fact satisfied all necessary conditions.  Other contentions rely
8  on incompetent evidence, including later-obtained pricing estimates from Zillow.com, to suggest
9  that certain borrowers would have satisfied the settlement's loan-to-value requirement at the time
10 the request was denied.  *See Vaughn v. Montague*, 924 F. Supp. 2d 1256, 1262–63 (W.D. Wash.
11 2013) (a non-expert's search of Zillow.com does not provide reliable evidence of a home's
12 value).  Wells Fargo contests both the veracity of plaintiffs' assertions as well as the relevance of
13 evidence that a borrower communicated grounds for financial hardship to plaintiffs' counsel at
14 some point in time after their modification had been denied.  As such, it cannot be said a material
15 dispute of fact is absent as to whether those borrowers were denied loan modifications in
16 violation of the settlement agreement.  On the present record, plaintiffs' renewed motion to
17 enforce the settlement therefore must be denied without prejudice to a renewal of the motion if
18 warranted following the limited discovery ordered herein.

19 C. <u>Administrative Motions to File Under Seal</u>

20       In support of their instant motion, plaintiffs submitted an administrative motion to file
21 certain documents under seal: an unredacted version of the instant motion, an unredacted
22 declaration of Albert G. Lum in support of that motion, and exhibits B, D, E, G, H, L. L, and M
23 to the Lum declaration.  (ECF No. 637.)  As plaintiffs explain, the unredacted motion and the
24 Lum Declaration contain statistical information regarding Wells Fargo's loan modification
25 application process.  Similar information was subject to an administrative motion to seal that was
26 granted by Magistrate Judge Grewal in this case on November 27, 2013.  Exhibits D, E, G, H, I,
27 L, and M to the Lum declaration contain personal and financial information of settlement class

members. Consistent with the prior order, and good cause appearing, plaintiff's motion is granted.

The parties submitted similar motions in support of their briefing in advance of the court's prior order. (ECF Nos. 606, 613, and 620.) Those documents, too, contain personal financial information pertaining to certain of Wells Fargo's borrowers or statistical information concerning the loan modification program. For the reasons stated above, and good cause appearing, those motions are also granted.

Finally, plaintiffs submitted an additional administrative motion to file certain documents under seal in support of their reply: an unredacted version of their reply, and unredacted declaration of Jeffrey K. Berns, and unredacted exhibits A through G and I through L to the Berns declaration. (ECF No. 643.) Both the reply and the Berns Declaration contain statistical information regarding Wells Fargo's loan modification application process and are, therefore, properly subject to filing under seal for the reasons stated above. The reply also contains the personal financial information of settlement class members, as do exhibits A, C, I, J, K, and L; those documents, too, are the proper subject for filing under seal.

Exhibits B, D, E, F, and G to the Berns Declaration contain excerpts of documents previously designated by Wells Fargo as confidential. The sealing request as to these documents is, therefore, governed by Civil Local Rule 79-5(e), which requires the designating party (in this case, Wells Fargo) to file a declaration within 4 days of the filing of the Administrative Motion to File Under Seal establishing that all of the designated material is sealable. Civil L.R. 79-5(e)(1). Wells Fargo is, once again, directed to comply with the requirements of the local rules. If no such declaration is received within 4 days of the date of this order, plaintiffs' motion shall be denied as to Exhibits B, D, E, F, and G.

## V. CONCLUSION

For the reasons stated above, plaintiffs' motion for relief from the prior order is denied. Plaintiffs' motion to enforce the settlement is denied, and defendants are ordered to produce additional discovery as discussed above.

A further case management conference shall be held on July 17, 2014 at 11:00 a.m. All parties shall appear telephonically and must contact Court Conference at 866/582-6878 at least one week prior to the Conference to arrange their participation. That conference will focus primarily on the appropriate course of action to address defendant's violation of the settlement agreement in relation to its pre-screening procedure and any steps necessary to effect the limited discovery ordered herein. The parties shall meet and confer and provide the court with an updated status report on or before July 10, 2014.

IT IS SO ORDERED.

DATED: June 26, 2014

_____
RICHARD SEEBORG
United States District Judge